**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MATTHEW GEBERT** | ) |
| 270 Philadelphia Ave. | ) |
| Purgitsville, WV 26852 | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| V. | ) |
| | ) |
| **DEPARTMENT OF STATE** | )      **Civil Action No: _____** |
| 2201 C St., NW | ) |
| Washington, District of Columbia 20520 | ) |
| | ) |
| **BRUCE COLE** | ) |
| Executive Director | ) |
| Bureau of Economic and Business Affairs | ) |
| Bureau of Energy Resources | ) |
| | ) |
| **JEANNE M. JULIAO** | ) |
| Deputy Assistant Secretary | ) |
| Office of the Director General | ) |
| Bureau of Human Resources | ) |
| State Department | ) |
| | ) |
| **CALLI FULLER** | ) |
| Acting Director | ) |
| Office of Employee Relations | ) |
| Bureau of Human Resources | ) |
| State Department | ) |
| | ) |
| **DOUGLAS P. QUIRAM** | ) |
| Director | ) |
| Bureau of Diplomatic Security | ) |
| | ) |
| **TODD J. BROWN** | ) |
| Director | ) |
| Diplomatic Security Service | ) |
| | ) |

**JOHN DOE #1**                                    )
Supervisory Special Agent (SSA)                    )
Diplomatic Security (DS)                            )
Assigned to Office of Special Investigations       )
                                                    )
**JOHN DOE #2**                                    )
Special Agent (SA)                                  )
Diplomatic Security (DS)                            )
Assigned to Office of Special Investigations       )
                                                    )
**JOHN DOES 1-10**                                 )
Federal Government Employee                         )
                                                    )
_____            )
                                                    )
<u>**As to each Defendant Serve:**</u>             )
    U.S. Attorney for the District of Columbia   )
    Attn: Civil Process Clerk                     )
    555 4th Street, NW                            )
    Washington, DC 20530                          )
                                                    )
    Office of the Legal Advisor (L/EX)            )
    Department of State                           )
    Suite 5600                                    )
    600 19th Street, NW                           )
    Washington DC 20522                           )
                                                    )
                                                    )
            Defendant.            )
_____            )


## <u>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

For his Complaint, Matthew Gebert ("Mr. Gebert" or "Plaintiff"), by the undersigned

counsel, states as follows:

1.    The Plaintiff brings this action for declaratory, injunctive, and other appropriate

relief against the Defendants for actions they have taken and continue to take against their

employee, Mr. Gebert (Plaintiff); specifically, the Defendants have placed Plaintiff in an indefinite Leave Without Pay (LWOP) status and have revoked his Top Secret security clearance pending the outcome of a suitability determination.

2.      Further, Plaintiff brings this action for injunctive relief and other appropriate relief and seeks the disclosure and release of agency records improperly withheld from the Plaintiff by the Defendant, the Department of State, and their subordinate agencies, pursuant to the Privacy Act of 1974, 5 U.S.C. §552a et seq. and the Freedom of Information Act, 5 U.S.C. §552(a) et seq.

3.      While the Plaintiff acknowledges security clearance revocations and denials are reserved for the individual agencies' review, these claims satisfy the constitutional exceptions to the rule. In this case, the Defendants' basis for their employment-related actions were based on violating Plaintiff's: (1) First Amendment protections of free speech; (2) unequal enforcement of SEAD 4, Security Clearance Guidelines; (3) freedom of association; (4) freedom of assembly; (5) due process; (6) First Amendment retaliation; and (7) violating the Administrative Procedures Act by failing to follow their own rules and regulations.

## **PARTIES**

4.       Plaintiff is a United States citizen and a resident of West Virginia.

5.      The Defendant, Department of State, is a "federal government agency" within the meaning of (1) 28 U.S.C. §1346(b), 28 U.S.C. §2401(b), and 28 U.S.C. §2671, and (2) 5 U.S.C. §552(f)(1) and 5 U.S.C. §552a(a)(1). The Defendant is in possession, custody, and control over documents and records about Plaintiff. Defendant is headquartered at the Harry S. Truman Building, 2201 C Street NW, Washington, D.C., U.S. 20520.

6. All named individual Defendants are/were "employees of the government" and/or "federal officers," at all relevant times herein, within the meaning of (1) 28 U.S.C. §1346(b), 28 U.S.C. §2401(b), and 28 U.S.C. §2671, and (2) *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, acting in their official capacity/acting under color of federal authority.

## JURISDICTION

7. The Court has both subject matter jurisdiction over this action and personal jurisdiction over the Defendants pursuant to 5 U.S.C. §552(a)(4)(B), 5 U.S.C. §552a(g)(1), and 28 U.S.C. §1331.

8. The Court has authority to issue declaratory and injunctive relief under 28 U.S.C § 1361.

9. Venue is proper in this Court pursuant to 5 U.S.C. §552(a)(4)(B), 5 U.S.C. §552a(g)(5), and 28 U.S.C. §1391 (b) and (e).

10. The Court has the authority to award attorneys' fees and expenses under 28 U.S.C. § 2412.

## FACTS

11. The Plaintiff has been employed by the Defendant, State Department, since May 19, 2013, in the role of Foreign Affairs Officer in the Bureau of Energy Resources, Office of Energy Diplomacy, Middle East & Asia Division (ENR/EDP/MEA).

12. As part of his position, Plaintiff underwent a background investigation that resulted in him being granted a Top Secret security clearance on April 19, 2013; holding and maintaining this level of security clearance is a condition of Plaintiff's employment.

13.     As part of a routine periodic background reinvestigation that was necessary for the Plaintiff to hold his Top Secret security clearance, the Plaintiff was interviewed on January 28, 2019.

14.     In this reinterview, the Plaintiff was asked by Defendant State Department's employees, *inter alia*, the following questions:

      i.     Whether he had any association with any person, group, or business venture that could be used, even unfairly, to criticize, impugn or attack his character or qualifications for a government position.

      ii.     Whether he was aware of any people or organizations that would criticize or oppose his employment in a government position.

      iii.     Lastly, he was asked if there was any information regarding members of his family that would be a possible source of embarrassment to the United States Department of State.

15.     The Plaintiff responded in the negative to all three questions.

16.     This routine reinvestigation was concluded on May 9, 2019.

17.     On June 7, 2019, Plaintiff was notified that he had been granted continued access, which meant, for all intents and purposes, he "passed" the reinvestigation.

18.     On August 7, 2019, the Hatewatch blog of the Southern Poverty Law Center (SPLC) published an online article titled, "U.S. State Department Official Involved in White Nationalist Movement, Hatewatch Determines," which made several allegations against the Plaintiff.

19.     In summary, the Hatewatch blog, a non-profit organization, served as the basis for Plaintiff's security clearance suspension, alleging, *inter alia*: Plaintiff engaged in activity to keep

his involvement with white nationalists secret by utilizing rudimentary online forum protocols such as pseudonyms and utilizing *sophisticated* anti-detection tactics by wearing a hat and sunglasses to the Charlottesville, Virginia, Unite the Right demonstration on August 12, 2017; and that Plaintiff's statement on a podcast is alleged to show proof that he knowingly lied.

20.   Upon information and belief, the Department of State relies heavily on one particular statement that Gebert allegedly made as proof that he intentionally concealed his "white nationalism" from them. Specifically, the Department of State argued that, "Gebert understood that his connection to white nationalism (if discovered) could end his career with the Department of State," when he stated in an article: "There are bigger things than a career and a paycheck, and I don't want to lose mine."

21.   To the contrary, this statement literally means ***the exact opposite*** of what the Department of State alleged. While the Department of State interpreted that statement as meaning that Plaintiff will do anything, including lie, in an effort to conceal his white nationalism to keep his job, it actually says just the opposite. While Plaintiff acknowledged that he did not want to lose his job ("I don't want to lose mine"), when read together with the phrase at the beginning of the sentence ("There are bigger things than a career and a paycheck"), it is clear that what Plaintiff was saying is that his beliefs are ***more important*** to him than his job is. In other words, Plaintiff was saying that if he were ever forced to decide between his beliefs and his career, he would choose his beliefs. Thus, the statement itself negates the very point the Department of State previously alleged that it proved. It also clearly evidences that Plaintiff is proud of his beliefs, that he has integrity and conviction, and that he is not subject to blackmail on the basis of his beliefs.

22.     Defendant State Department became aware of the Hatewatch article, and in response, on August 16, 2019, Plaintiff received a memorandum from Defendant, Douglas Quiram, Director of DS/SI/PSS, informing him that Defendant would be suspending Plaintiff's security clearance pending the outcome of a "for cause" investigation. Defendant Quiram made the decision in his determination regarding Plaintiff based on a biased blog post that had no proof of actually being reviewed or fact-checked: in short, this is not a credible news source. Further, later in the investigation Defendant Quiram, as the director of DS/SI/PSS either willfully partook in the intentional violations of Plaintiff's constitutional rights and/or oversaw the grossly negligent and reckless work of Defendants John Doe #1 and John Doe #2, which, either way, the result was the same: the Plaintiff's constitutionally protected rights were violated and infringed upon.

23.     Specifically, the August 16, 2019, memorandum alleged "concerns that [Plaintiff] concealed and omitted information in [his] periodic reinvestigation completed May 9, 2019," and that this raised "serious security concerns that could be disqualifying under National Security Adjudicative Guidelines E (Personal Conduct)."

24.     Upon information and belief, after Plaintiff and his counsel requested information, the State Department and its investigatory agencies never produced any audio clips or transcripts, bolstering the belief the entirety of its investigation relied upon a blog article.

25.     Because holding a valid Top Secret security clearance is a condition of employment for Plaintiff, this suspension of his security clearance resulted in a proposal to suspend the Plaintiff from his employment indefinitely without pay from his position as a Foreign Affairs Officer, GS-13, in the Office of Middle East and Asia, Bureau of Energy Resources.

26.     A subsequent memo was sent to Plaintiff on August 16, 2019, signed by Defendant Calli Fuller who - at best was simply complacent in violating Plaintiff's constitutional rights, and, at worst, one of the main culprits responsible for violating Plaintiff's constitutional rights - informed Plaintiff that he would be suspended without pay and that he had fifteen (15) calendar days from the date of receipt to respond orally, in writing, or both.

27.     On August 28, 2019, Plaintiff, through his legal representative at the time, submitted a written reply on Plaintiff's behalf.

28.     On September 24, 2019, Plaintiff received a written response from Defendant Jeanne M. Juliao, Deputy Assistant Secretary Bureau of Human Resources for the Department of State, which informed Plaintiff that the proposed indefinite suspension without pay would be sustained.

29.     The September 24, 2019, letter from Ms. Juliao who - at best was simply complicit in violating Plaintiff's constitutional rights, and, at worst, the main culprit in effectuating the violation of Plaintiff's constitutional rights - provided, a cursory review of Plaintiff's issues; essentially, Ms. Juliao's letter states nothing more than, in summary: Your security clearance is suspended; security clearance is a condition of employment; because your security clearance is suspended and you have provided no evidence that it is not suspended, your suspension without pay from your employment is upheld.

30.     On September 24, 2019, Defendant's Human Resources employee, Carol Marks, sent a memorandum to Defendant Bruce Cole, wherein Marks relayed the decision of Defendant Juliao and mandated the immediate removal and continued suspension of Plaintiff. Similar to the other individual Defendants, Defendant Cole was complicit in violating Plaintiff's

constitutional rights, and, at worst, one of the main culprits in effectuating the violation of Plaintiff's constitutional rights.

31.     The "for cause" investigation was conducted by the Bureau of Diplomatic Security (DS), Office of Special Investigations (DS/DO/OSI) shortly after Plaintiff was notified of his pending suspension.

32.     As part of this "for cause" investigation, Plaintiff was interviewed on September 27, 2019, by Defendants John Doe #1 and John Doe #2 with the Office of Special Investigations with the Bureau of Diplomatic Security, a division under the Defendant State Department, whereby Plaintiff was confronted with many of the allegations from the Hatewatch blog article, as well as re-questioned regarding his answers to the previous questions identified in Paragraph 14, above.

33.     In this September 27, 2019, interview, Plaintiff explicitly denied withholding information during his January 2019 interview, affirmed he was not ashamed or embarrassed of any of his views or activities, and specifically stated that the article sensationalized and mischaracterized his activities and involvement to make them seem much more nefarious than they actually were.

34.     During this interview, the Plaintiff specifically and unabashedly articulated the beliefs he expressed on race and immigration, which at the core of his beliefs, are the ideas of advocating (1) for white interests; and (2) against mass immigration. In fact, many of Plaintiff's beliefs center around being an "immigration restrictionist," through which he celebrates federal immigration laws from the 1920's through the mid-1960's that resulted in strict limitations on immigration. Plaintiff believes that these policies contributed to America's robust economy and our nation's ascension as a global superpower.

35.    Plaintiff followed up his September 2019 interview with additional responses on October 23, 2019, where he informed Defendants John Doe #1 and John Doe #2 that he: did not think any of his writings, podcasts, or tweets would rise to a level that they would ever be considered an embarrassment to himself or the Department of State; was never a member of any formal white nationalist organization; believed he would be protected as his speech and activities were protected by the First Amendment; and never engaged in any illegal activity. For these reasons, Plaintiff believed he had a reasonable and good faith basis to answer the questions from his January 2019 interview in the manner in which he did.

36.    Most importantly, at no point did Plaintiff lie or provide any false information during any of his interviews or re-interviews.

37.    Upon information and belief, the Defendant interviewers, John Doe #1 and John Doe #2, conducted what appeared to be a very biased interview, proposing counter-political beliefs to intentionally mischaracterize and sensationalize Plaintiff's own positions, and used a flawed, unsanctioned interpretation of the underlying regulations to improperly and erroneously draw conclusions and make reckless recommendations on their investigative findings.

38.    Upon information and belief, the Defendants sought to "trap" or "catch" the Plaintiff in a lie or with him providing false information; when that failed, Defendants attempted to attach Plaintiff to more extreme and hateful viewpoints on race, religion, national origin, immigration, and other political beliefs to what Plaintiff actually subscribed to and spoke and wrote about.

39.    Plaintiff reiterated multiple times that he was a "race realist" and "pro-white," but fell far short of adopting outright neo-nazism or aligning explicitly or officially with any terrorist organization or criminal entity's platform or belief system.

40.     The DS/DO/OSI "for cause" investigation subsequent to the suspension was completed on March 6, 2020, and determined that Plaintiff had been intentionally misleading in his answers to the questions identified in Paragraph 14, above.

41.     Plaintiff received a letter from Defendant Todd J. Brown, Director of the Diplomatic Security Service of the United States Department of State dated July 1, 2020, wherein Defendant Brown informed Plaintiff that his security clearance was being revoked under Guideline E (Personal Conduct) concerns. Put more simply, the United States Department of State and the individual Defendants intended to regulate freedom of association and freedom of speech.

42.     In the July 2020 letter, Plaintiff was specifically cited for violating the following:

i.      refusal to provide, full, frank, and truthful answers to lawful questions of investigators, security officials, or other official representatives in connection with a personnel security or trustworthiness determination;

ii.     deliberately providing false or misleading information; or concealing or omitting information concerning relevant facts to an employer, investigator, security official, competent medical or mental health professional involved in making a recommendation relevant to a national security eligibility determination, or other official government representative;

iii.    personal conduct, or concealment of information about one's conduct that creates a vulnerability to exploitation, manipulation, or duress by a foreign intelligence entity or other individual or group. Such conduct includes:

a.      Engaging in activities which, if known, could affect the person's personal, professional, or community standing.

43.     Upon information and belief, the Defendants heavily relied on making their own determinations regarding what Plaintiff knew or should have known regarding what thoughts or theories regarding race and immigration should have been "embarrassing" or not. However, upon information and belief, the Defendants enforce their reasoning unevenly or otherwise fail to apply a similar policy to other groups; namely, authorizing and/or applying significantly reduced application of its harsh position to those who publicly support Black Lives Matter (BLM). There is no evidence that the Defendants are revoking the security clearance and suspending similarly situated employees for failing to disclose their affiliation and/or content created furthering BLM; in fact, to the contrary, the U.S. Office of Special Counsel (OSC) expressly authorizes employees *to publicly support the movement on the job*: https://cdn.govexec.com/media/gbc/docs/pdfs_edit/071620cb1.pdf.

44.     Upon information and belief, the Defendants by discriminatory motive or intent, or through reckless or callous indifference, invoked and implemented a policy to intentionally discriminate against the Plaintiff by using the security clearance and national security laws and regulations to impose barriers that could thwart, and in this case, did thwart the exercise of the Plaintiff's constitutional rights based on his association with the D.C. Pilots group.

45.     The D.C. Pilots were not a terrorist organization, criminal entity, or even on the SPLC's radar as a white nationalist group. See https://www.splcenter.org/sites/default/files/splc-2021-year-in-hate-extremism-report.pdf.

46.     In fact, it is only the SPLC, without citing an actual reference or actual law enforcement report or record, that tied the D.C. Pilots to the organization The Right Stuff; there is no official affiliation between the two groups, which further supports the Plaintiff's reasonable belief he was doing nothing wrong.

47.     Further, The Right Stuff is only listed in the SPLC resource cited as a "white nationalist" group.

48.     There are currently members of our Congress who are members of white nationalist groups and/or speak at white nationalist events. White nationalism, no matter how much someone disagrees with it, is not per se unlawful or a prohibited ideology by a government employee. There are varying levels and degrees, as well as different sects within different white nationalism movements; the one specifically endorsed by the Plaintiff is one focused on U.S. policy on immigration, which actually mirrors several members' of Congress's beliefs, former President Trump, and multiple members of his Cabinet and senior advisors, and such positions have oscillated in and out of our country's official policy and/or major political parties' platforms on the matter for over 200 years.

49.     In response to Plaintiff's LWOP and revocation of his security clearance, the undersigned counsel provided a written rebuttal on Plaintiff's behalf on February 4, 2021, denying the allegations from the July 1, 2020, memorandum in their entirety.

50.     Plaintiff's undersigned counsel provided a Supplemental Response to the February 2021 rebuttal on November 23, 2021, alleging multiple violations by Defendants of the Freedom of Information Act (FOIA) and the Privacy Act.

51.     To date, Defendants have not responded to either the February 2021 rebuttal nor the November 2021 supplemental response addressing the FOIA concerns.

52.     Regarding Plaintiff's work performance otherwise, outside of the investigation and actions taken in response to an opinion-piece blog, Plaintiff's performance was exemplary and there were no indications whatsoever that his character and/or any personal views held by

Plaintiff compromised his work or his full and unbiased cooperation with all State Department employees and partners:

      i.   Plaintiff was a presidential management fellow, a prestigious fellowship, where he was highlighted in George Washington University's *GW Magazine*, https://archives.magazine.gwu.edu/sites/g/files/zaxdzs1136/f/downloads/Summer2013GWMag_web.pdf;

      ii.   Plaintiff's evaluations for each year since 2013 were "Exceeds expectations";

      iii.   Plaintiff received a performance bonus in 2015 for $1,500, the alleged year he began to engaged in white nationalist activities;

      iv.   Plaintiff received two performance bonuses in 2019 for $3,000 and $500, the very year he was suspended/placed on leave without pay.

53.   Due to a select few State Department employees - the Defendants - disagreeing with the viewpoints held and expressed by Plaintiff - in his personal capacity and during his personal time - the Defendants have caused irreparable harm to the federal protected rights of the Plaintiff's freedom of speech and association in the attempt to harass, threaten, silence, and/or chill these constitutional rights.

54.   The Defendant has provided a pretextual reason for revoking Plaintiff's security clearance and suspending him without leave; namely, stating Plaintiff failed to disclose, misled, and/or omitted information that are either (1) "relevant facts" that could be "relevant to a national security eligibility determination, (2) "personal conduct" that "creates a vulnerability to exploitation, manipulation, or duress," or (3) engaging in activities, which, if known, could affect the person's personal, professional, or community standing.

55.    Upon information and belief, in couching Plaintiff's removal as a matter of "national security" and suppressing his speech and rights via the revocation of security clearance route, the Defendant appears to cling to and attempt to hide behind *Egan* to allow them complete discretion with no judicial oversight; however, the true basis for the revocation and subsequent state of purgatory that the Defendants believe they can subject the Plaintiff to is predicated on the trampling of constitutionally protected rights.

56.    Upon information and belief, the Defendants have applied highly subjective standards of what might be embarrassing or qualify as "dirt" in the eye of an individual beholder within the State Department, setting a precedent that anything someone finds incorrect or different from their own viewpoint can later qualify as "intentionally omitting" if someone fails to disclose their political ideologies or maybe who they voted for in a previous election if they legitimately believed it was not the answer the specific investigator wanted to hear.

57.    Furthermore, upon information and belief, the Defendants seek to impugn a subjective, moving target of what qualifies as "embarrassing" to the Plaintiff and declare his claim that he did not believe his thoughts, speech, or actions to be embarrassing was "improbable."

58.    Further, the basis of the investigation is rooted in protected speech, activites, and association; therefore, the resulting effects and consequences that stemmed from the investigation - the suspension without pay and revocation of security clearance - only serve to deprive the Plaintiff of his right to engage in protected speech and activities without due process.

59.    The government may not regulate speech based on overbroad policies that encompass a substantial amount of constitutionally protected speech.

60.     To date, the Defendants have claimed their letters clearly informed the Plaintiff of his due process rights and was entitled to provide written and oral responses to their actions, to play on the old legal maxim, due process delayed is due process denied. It is now over three years since the Plaintiff was suspended without pay, and there is no end in sight, nor is there any process, other than through this Court, to require or motivate the Defendant to correct its errors.

61.     These grants of unbridled discretion to Defendants' officials violates the First Amendment because they create a system in which the permissibility of speech is judged without any standards, thus giving employees such as Plaintiff no way to prove that a denial, restriction, or relocation of their speech was based on unconstitutional considerations.

62.     Because Defendants have failed to establish a compelling government interest that is narrowly tailored governing the decision whether to allow employees to speak about certain topics and which viewpoints they may hold regarding certain topics, and ergo, which viewpoints need to be disclosed as part of an investigation, there is a substantial risk that Defendant officials will engage in content and viewpoint discrimination: exactly what occurred to Plaintiff's detriment as alleged herein.

**The Defendants incorrectly withheld portions of their security clearance investigation under an incorrect application of the Freedom of Information Act (FOIA).**

63.     On July 15, 2020, Plaintiff's counsel submitted an initial FOIA request. The FOIA request was both emailed and sent via certified mail, yet the Defendants failed to process the request in a timely manner. The Defendants signed for the certified mail on July 30, 2020.

64.     The email and letter were initially sent to the wrong department in the Defendant State Department, DSPSSCRP, however, this mistake was immediately corrected and the request was submitted via email to FOIArequest@state.gov on July 16, 2020. 65. On October 29, 2020

the Office of Personnel Security and Suitability emailed Plaintiff indicating that the letter was sent to the wrong office and that they had just received it and started to process the request - despite this not being the case. The Defendants incorrectly redacted documents that were part of the investigation but did not provide the required corresponding FOIA/PA exemptions.

66.     Since Plaintiff filed a Privacy Act request, the Defendants could only assert a (b)(7)(e) exception if it also claimed a (k)(2) exemption, but that would be legally impossible because (k)(2) can only be asserted when the "investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit, or privilege under Federal programs."

67.     The Defendants' actions suggest that the Defendants intentionally tried to frustrate and obfuscate the truth to avoid providing Plaintiff with a reasonable opportunity to respond.

68.     On October 29, 2020, the Office of Personnel Security and Suitability responded that they were consulting with their Legal Advisor and subsequently informed Plaintiff that the Defendants would be processing the records under FOIA/PA; the Defendants also incorrectly stated that they were not obligated to provide the corresponding FOIA/PA exemptions, in an attempt to exempt themselves from federal requirements.

69.     On or about October/November 2020, there was a follow up phone call from the Legal Advisor and Plaintiff's counsel wherein the Defendants advised Plaintiff's counsel that the pages were being redacted under the "National Security" exemption: an exemption that does not exist.

70.     After substantial back and forth between the Office of Personnel Security and Suitability, Plaintiff was forced to submit a supplemental FOIA/PA request on December 23, 2020.

71.     On December 23, 2020 Plaintiff sent an email to the Office of Personnel Security and Suitability following-up on the original FOIA request from July 16, 2020, and asking the Defendants to analyze the redacted documents from the initial disclosure of the investigation under FOIA/PA. On December 29, 2020, the Office of Personnel Security and Suitability responded after consultation with the FOIA/PA office in pertinent part:

> If, instead, you are asking that we review the set of documents produced to you pursuant to E.O. 12968 and indicate the bases for the redactions in those documents (separate and apart from your FOIA request), as we informed you on October 30, 2020, Executive Order 12968, Sec.5 does not mandate the production of documents under the Freedom of Information Act (FOIA) or the Privacy Act (PA), but simply requires that they be provided to you "to the extent the documents" would be provided if requested under those laws and such, the Department provided you with the relevant documents, redacted as relevant and appropriate, but without indication the exemptions that are required for requests made under the FOIA or the PA.

72.     On December 30, 2020, Plaintiff resubmitted another FOIA/PA request because the Defendants were ignoring their responsibilities to process the request.

73.     In the December 30, 2020, FOIA request, Plaintiff requested expedited processing when he stated:

> All agency record requests must be reviewed under FOIA and the Privacy Act. A failure to provide those documents without a corresponding exemption creates a significant due process violation that is not supported in law, regulation, or executive order and on its face appears retaliatory. **For the aforementioned reasons, we ask for an expedited processing of our request since Mr. Gebert will not be able to properly defend himself against the proposed action and will subsequently lose his job since his clearance is a condition for his employment.**

74.    Plaintiff expressing confusion at the State Department's response and saying in pertinent part, "[the excerpt above]That is effectively denying my request and it is problematic. I would ask that section 5 is reread because it does not say the FOIA/PA does not apply. The sentence is saying if documents would be denied under FOIA/PA you can deny them as well - but that does not mean you do not have to give an explanation. It does not mean that when a FOIA/PA request is submitted you can deny it under that section. It does not grant any additional authority for the Defendant."

75.    On September 24, 2021, a final determination was made by the Defendant's FOIA and Privacy Act Division, Bureau of Diplomatic Security, wherein approximately 278 pages of previously-redacted materials were determined to be eligible for release under FOIA. However, the Defendant continues to partially redact 171 pages, and fully redacted 7 pages.

76.    On September 24. 2021 a final determination was made by the Defendant's FOIA and Privacy Division, Bureau of Diplomatic Security, wherein approximately 296 pages were released in full, and 124 pages were withheld because "they are about other persons."

## **COUNT I**

**Violation of the First Amendment of the United States Constitution By Infringing on Plaintiff's Right of Freedom of Speech**

77.    The Plaintiff adopts and incorporates by reference paragraphs 1 through 76 as if fully stated.

78.    The Defendant injured Plaintiff by depriving him of his ability to work for the Agency and earn a living, property, because of personal opinions asserted under pseudonyms and handles - at no point identifying himself as a government employee.

79.     The Defendant acted negligently and wrongfully by revoking Plaintiff's security clearance for asserting his personal beliefs without identifying himself as a government employee while on his personal time.

80.     Plaintiff asserted his First Amendment right to freedom of speech for which his clearance was revoked. Not a national security concern, but a constitutional violation.

81.     The First Amendment of the United States Constitution guarantees individuals the right to free speech, association, and the right to assemble.

82.     The Defendant either intentionally, recklessly, or with callous indifference to the federally protected rights of the Plaintiff has threatened, silenced, and/or chilled Plaintiff's rights to freedom of speech and association by using Plaintiff's lawful speech and associations with lawful groups in his private life as the basis to strip him of his security clearance and position in the State Department.

83.     Defendant's actions also serve to violate the freedom of the press, as much of the speech they are attempting to chill, restrict, impede, and prevent was specifically related to Plaintiff's writings on websites and blogs, as well as times he spoke as a guest speaker on radio shows and podcasts.

84.     Defendant's discriminatory actions and associated practices are also overbroad because they prohibit and restrict protected expression.

85.     Defendant has not established a sufficient nexus to censor private speech on matters of public concern. The First Amendment protection provided for public employee speech is limited to speech by a citizen on a matter of public concern where the government does not have an adequate justification for treating an employee differently from another member of the public. In fact, the Defendant allows for employees to publicly support the BLM movement *in*

*the workplace* while revoking the Plaintiff's security clearance for expressing the same concerns for a different race.

86.     Every day that the Defendant fails to act on the February 2021 response and November 2021 supplemental response is another day that the Plaintiff is irreparably harmed. The Defendant is abusing its power by not only revoking the Plaintiff's security clearance based upon constitutionally protected speech, but they are depriving the Plaintiff of his job and health insurance.

87.     WHEREFORE, Plaintiff is entitled to relief in the form of (1) a declaratory order that Defendant State Department is in violation of the First Amendment; (2) an injunction compelling the Defendant to cease violating Plaintiff's constitutional rights by using the security clearance process to censor his constitutionally protected freedoms; (3) award Plaintiff reasonable costs and attorney's fees; and (4) grant such other relief as the Court may deem just and proper.

### <u>COUNT II</u>
**Due Process Claims against the Defendant for violating the Due Process Clause of the Fifth Amendment of the United States Constitution**

88.      Plaintiff adopts and incorporates by reference paragraphs 1 through 87 as if fully stated.

89.     Plaintiff has a Fifth Amendment right to Due Process of law before the government deprives him of life, liberty, or property.

90.     Plaintiff has protectable liberty interests – fundamental rights — in free speech and association under the First Amendment and due process of law under the Fifth Amendment.

91.     The Defendant, either by discriminatory motive or intent, or through reckless or callous indifference to the Plaintiff's federally protected rights erroneously applied Guideline E in a subjective, errororeous, arbitrary, capricious, and with standardless discretion over what

expressive conduct is characterized as embarrassing or not embarrassing to the Defendant, leaving them free to censor ideas and enforce their own personal preferences.

92.     The Defendant has failed to develop objective standards to ensure that federal civilians in their employ, such as the Plaintiff, were not disenfranchised, harassed, or otherwise deprived of constitutional rights without due process of law.

93.     The threat was imminent and did occur, that the conduct of the Defendant deprived the Plaintiff of due process of law under the laws of the United States on August 16, 2019, and every day since, and the deprivation directly and proximately caused Plaintiff to suffer the loss of his protected freedoms, as well as his career he had worked hard to obtain and maintain, unlawfully depriving him of his means to provide for his family.

94.     The Defendant has violated the Plaintiff's procedural due process by failing to follow the proper processes and procedures for governing security clearances. Instead, the Defendant has held the Plaintiff in purgatory pending an unknown timeline for a decision on the petition submitted in February 2021.

95.     The Defendant violated the Plaintiff's substantive due process by revoking the client's security clearance due to him expressing opinions with which Defendant did not agree. In short, the Plaintiff asserted his fundamental First Amendment right, as a U.S. citizen, and the Defendant is attempting to deprive him of his job and benefits as a result of the Plaintiff exercising that right.

96.     WHEREFORE, Plaintiff is entitled to relief in the form of (1) a declaratory order that Defendant State Department is in violation of the Fifth Amendment; (2) an injunction compelling the Defendant to: (i) cease discriminating against the client; (ii) cease inserting unconstitutional criteria into Defendant's processes; and (iii) adjudicate Plaintiff's clearance

issue favorably and reinstate Plaintiff with all benefits, backpay, and compensate him for harm

caused; (3) award Plaintiff reasonable costs and attorney's fees; and (4) grant such other relief as

the Court may deem just and proper.

### COUNT III
**Due Process Claims against the Defendant for violating the Due Process Clause of the Fifth Amendment of the United States Constitution.**

97.      Plaintiff adopts and incorporates by reference paragraphs 1 through 96 as if fully

stated.

98.    Plaintiff is a Foreign Affairs Officer. His employment requires a security clearance.

99.    The Defendants' revoked Plaintiff's security clearance for engaging in protected

speech on July 1, 2020.

100.   Plaintiff cannot continue to pursue a career as a Foreign Affairs Officer because his

security clearance suspension will prevent him from obtaining a condition of employment, a

security clearance.

101.   As a consequence of this deprivation, Plaintiff suffered and continues to suffer

adverse and harmful effects, including, but not limited to, lost or jeopardized present or future

financial opportunities.

102.   In short, the Defendant's revocation of Plaintiff's security clearance creates a

continuing stigma and disability that foreclose the Plaintiff's freedom to take advantage of other

employment opportunities because the all government databases for security clearance will

reflect that Plaintiff's security clearance is revoked.

103.   WHEREFORE, Plaintiff is entitled to relief in the form of (1) a declaratory order

that Defendant State Department is in violation of the Fifth Amendment; (2) an injunction

compelling the Defendant to: (i) cease discriminating against the clinet; (ii) cease inserting

unconstitutional criteria into Defendant's processes; and (iii) adjudicate Plaintiff's clearance issue favorably and reinstate Plaintiff with all benefits, backpay, and compensate him for harm caused; (3) award Plaintiff reasonable costs and attorney's fees; and (4) grant such other relief as the Court may deem just and proper.

## COUNT IV

### Due Process Claims against the Defendant for violating the Due Process Clause of the Fifth Amendment of the United States Constitution.

104.    Plaintiff adopts and incorporates by reference paragraphs 1 through 103 as if fully stated.

105.    Plaintiff accrued annual leave throughout his employment with the Defendant.

106.    Plaintiff requested to use his annual leave, property, prior to initiation of the Suspension without pay.

107.    Defendant denied the request, thereby depriving Plaintiff of both procedural and substantive due process while depriving him of his property (accrued annual leave).

108.    Defendant is continuing to deny his accrued leave thereby continuing to commit an ongoing constitutional violation.

109.    WHEREFORE, Plaintiff is entitled to relief in the form of (1) a declaratory order that Defendant State Department is in violation of the Fifth Amendment; (2) an injunction compelling the Defendant to: (i) cease discriminating against the clinet; (ii) cease inserting unconstitutional criteria into Defendant's processes; and (iii) adjudicate Plaintiff's clearance issue favorably and reinstate Plaintiff with all benefits, backpay, and compensate him for harm caused; (3) award Plaintiff reasonable costs and attorney's fees; and (4) grant such other relief as the Court may deem just and proper.

## COUNT V

**Due Process Claims against the Defendant for violating the Due Process Clause of the Fifth Amendment of the United States Constitution - Reputational Harm**

110.   The Plaintiff adopts and incorporates by reference paragraphs 1 through 109 as if fully stated.

111.   Defendant has failed to meaningfully allow Plaintiff the opportunity to defend himself and clear his name; to date, Plaintiff has issued no public statements, has rejected all requests for interview, and has never responded to media inquiries regarding his employment with or suspension by Defendant. Absent any guidance from Defendant, this essentially amounts to a three-year voluntary gag order stemming from Plaintiff's belief that such silence would be in his and the Defendants' best interests.

112.   Defendant's failure has deprived Plaintiff of his liberty interest in his reputation.

113.   There is continued stigma and disability arising from the Defendant's official action.

114.   Defendant has tailored his education and dedicated his professional life to a career as a foreign affairs officer through the State Department.

115.   Defendant has dedicated and invested a significant portion of his professional life into public service and time as a civil servant; however, one cannot concurrently hold two federal positions at the same time.

116.   Plaintiff attempted to gain employment through the United States Postal Service (USPS), in February 2020, and the Census Bureau, late 2020 to early 2021, while he was suspended by Defendant. Plaintiff received employment offers from both employers (in writing

with the USPS and verbally from the Census Bureau; however, during the pre-onboarding phase with the agencies' respective Human Resources departments both prospective employers specifically stated he would need to resign from the State Department before being further considered for the opportunity.

117.   As the Plaintiff is unwilling, nor should he be forced to, resign his employment with Defendant State Department while they continue to fail to act on his matters.

118.   Therefore, the Defendant's official action, as well as their lack of action, have had a broad effect of largely precluding Plaintiff from pursuing his chosen career.

119.   The Defendant has seriously affected, if not destroyed, his ability to obtain employment in his field.

120.   WHEREFORE, Plaintiff is entitled to relief in the form of (1) a declaratory order that Defendant State Department is in violation of the Fifth Amendment; (2) an injunction compelling the Defendant to: (i) cease discriminating against the clinet; (ii) cease inserting unconstitutional criteria into Defendant's processes; and (iii) adjudicate Plaintiff's clearance issue favorably and reinstate Plaintiff with all benefits, backpay, and compensate him for harm caused; (3) award Plaintiff reasonable costs and attorney's fees; and (4) grant such other relief as the Court may deem just and proper.

## <u>COUNT VI</u>
### Unequal Enforcement of SEAD 4 against the Defendant

121.   The Plaintiff adopts and incorporates by reference paragraphs 1 through 120 as if fully stated.

122.   Plaintiff's Fifth Amendment right to equal protection under the law protects him from intentional and arbitrary discrimination.

123.   Even though the Defendant has attempted to point to Plaintiff's alleged misleading or omissions during the security clearance interview process as the basis for its actions, the Defendant admits that the crux of its violations of Plaintiff's constitutional rights stem from what Plaintiff said or failed to say about what the Plaintiff previously said.

124.   In addition, the standardless discretion resulted in the inconsistent enforcement of the Defendant's policies and interpretation of existing laws and regulations regarding speech on the topic of race and immigration and an employee's obligations on whether to disclose certain speech or not that caused violations of the equal protection of the laws afforded to the Plaintiff under the Constitution.

125.   The Defendant's actions deprived the Plaintiff of equal protection under the laws of the United States Constitution at the State Department on August 16, 2022, and every day thereafter.

126.   WHEREFORE, Plaintiff is entitled to relief in the form of (1) a declaratory order that Defendant State Department is in violation of SEAD 4; (2) an injunction compelling the Defendant to: (i) cease discriminating against the clinet; (ii) cease inserting unconstitutional criteria into Defendant's processes; and (iii) adjudicate Plaintiff's clearance issue favorably and reinstate Plaintiff with all benefits, backpay, and compensate him for harm caused; (3) award Plaintiff reasonable costs and attorney's fees; and (4) grant such other relief as the Court may deem just and proper.

**COUNT VII**
**Violation of the First Amendment - Freedom of Association**

127.   The Plaintiff adopts and incorporates by reference paragraphs 1 through 126 as fully stated.

128.    The First Amendment of the United States provides the Freedom of Association.

129.   The Defendant violated the Plaintiff's constitutional protected right of a freedom to associate with others who have similar political, religious, and cultural beliefs.

130.   Instead the Defendant revoked the Plaintiff's security clearance because he associated with individuals whose beliefs would bring discredit and embarrassment to the Defendant. This standard on its face violates the Constitution.

131.    The Defendant's actions violated the Plaintiff's right to Freedom of Association.

132.    WHEREFORE, Plaintiff is entitled to relief in the form of (1) a declaratory order that Defendant State Department is in violation of the First Amendment; (2) an injunction compelling the Defendant to cease violating Plaintiff's constitutional rights through using the security clearance process to censor his constitutionally protected freedoms; (3) award Plaintiff reasonable costs and attorney's fees; and (4) grant such other relief as the Court may deem just and proper.

## COUNT VIII
### Violation of the First Amendment - Freedom of Assembly

133.   The Plaintiff adopts and incorporates by reference paragraphs 1 through 132 as fully stated.

134.   The Defendant revoked the Plaintiff's security clearance for attending meetings, dinners, conferences, gatherings, and the Charlottesville protests because the content of the meetings was deemed offensive and embarrassing.

135.   The Plaintiff's constitutional right to freedom of assembly is being violated and the Constitution does not differentiate between offensive and non-offensive, embarrassing and non-embarrassing because it is subjective and violates the intent of the First Amendment.

136.   Plaintiff has constitutionally protected right to assemble with whomever he chooses even if the security clearance adjudicator does not agree with the ideologies held by other attendees.

137.   WHEREFORE, Plaintiff is entitled to relief in the form of (1) a declaratory order that Defendant State Department is in violation of the First Amendment; (2) an injunction compelling the Defendant to cease violating Plaintiff's constitutional rights through using the security clearance process to censor his constitutionally protected freedoms; (3) award Plaintiff reasonable costs and attorney's fees; and (4) grant such other relief as the Court may deem just and proper.

### COUNT IX
### First Amendment Retaliation

138.   The Plaintiff adopts and incorporates by reference paragraphs 1 through 137 as fully stated.

139.   The Plaintiff engaged in protected speech by discussing matters of public concern (i.e. the country's immigration policies and beliefs on race) on his own time, under pseudonyms, never stating or implying that he was speaking on the behalf of the Defendant.

140.   The Defendant retaliated against the Plaintiff by revoking his security clearance for said speech.

141.   The Defendant notified the Plaintiff that they were revoking the Plaintiff's security clearance for aforementioned speech thereby satisfying the causal link between the conduct and the adverse effect.

142.   Defendant's revocation of Plaintiff's security clearance satisfies the elements of First Amendment retaliation.

143.   WHEREFORE, Plaintiff is entitled to relief in the form of (1) a declaratory order that Defendant State Department is in violation of the First Amendment; (2) an injunction

compelling the Defendant to cease violating Plaintiff's constitutional rights through using the security clearance process to censor his constitutionally protected freedoms; (3) award Plaintiff reasonable costs and attorney's fees; and (4) grant such other relief as the Court may deem just and proper.

## COUNT X
**(Violation of the Administrative Procedures Act - - Defendant Department of State) Violation of 12 FAM 230, *et al*.**

144.    The Plaintiff adopts and incorporates by reference paragraphs 1 through 143 as fully stated.

145.    The Defendant provides for a process to adjudicate security clearances under 12 FAM 230 wherein the Defendant describes the reasons that a security clearance can be suspended or revoked.

146.    More specifically, 12 FAM 233.2 describes the thirteen adjudicative guidelines which does not include the constitutionally protected speech.

147.    The Plaintiff submitted their response to the revocation in February 2021 and a supplemental response in November 2021.

148.    To date, the Defendant has not responded to either response. Instead the Defendant has continued to keep the Plaintiff in a Leave Without Pay Status and they have removed his ability to receive health insurance.

149.    WHEREFORE, Plaintiff is entitled to relief in the form of a declaratory order that Defendant is in violation of its regulation and an injunction compelling Defendant pursuant to the APA to follow its self-imposed mandate of 12 FAM 230.

## COUNT XI
**(Violation of the Administrative Procedures Act - - Defendant Department of State) Violation of 3 FAM 3600, *et al*.**

150.   The Plaintiff adopts and incorporates by reference paragraphs 1 through 149 as fully stated.

151.   The Defendant provides for a process to notify Plaintiff of his option to continue receiving health insurance for up to 365 days by way of paying his own premiums.

152.   The Defendant did not notify Plaintiff of this option, as they were required to by law and policy.

153.   Initially during Plaintiff's suspension, Plaintiff's paystubs reflected Defendant had been covering the employer-responsible portion of health benefits, which was consistent with the Provider, Aetna's, practices and procedures.

154.   At some point during the Fall of 2021, prescription and medical bills began getting denied retroactively by the Provider.

155.   Upon information and belief, Defendant, without prior notice to or consent by Plaintiff and without proper authorization, retroactively terminated Plaintiff's health benefits as of the date of his suspension without pay in September 2019.

156.   Such act by Defendant, either through intentional malice or through gross negligence, violated applicable law, regulation, and policy as well as the Administrative Procedures Act.

157.   WHEREFORE, Plaintiff is entitled to relief in the form of a declaratory order that Defendant is in violation of its regulation and an injunction compelling Defendant pursuant to the APA to follow its self-imposed mandate of 3 FAM 3600, *et al*.

### COUNT XII

*(Bivens* - All Individual Defendants)
**Violation of the First Amendment of the United States Constitution and Threats to the Plaintiffs' Rights of Freedom of Speech**

158.   The Plaintiff adopts and incorporates by reference paragraphs 1 through 157 as fully stated.

159.   The First Amendment of the United States Constitution guarantees individuals the right to free speech, association, and the right to assemble.

160.   The individual Defendants either intentionally, recklessly, or with callous indifference to the federally protected rights of the Plaintiff have threatened, silenced, and/or chilled Plaintiff's rights to freedom of speech and association by using Plaintiff's lawful speech and associations with lawful groups in his private life as the basis to strip him of his security clearance and position in the State Department.

161.   Defendants' actions also serve to violate the freedom of the press, as much of the speech they are attempting to chill, restrict, impede, and prevent was specifically related to Plaintiff's writings on websites and blogs, as well as times he spoke as a guest speaker on radio shows and podcasts.

162.   Defendants' discriminatory actions and associated practices are also overbroad because they prohibit and restrict protected expression.

163.   Defendants' discriminatory actions and associated practices unconstitutionally censor or restrict all private speech on this topic – or at least with this specific viewpoint - that occurs outside the State Department.

164.   Due to these Defendants disagreeing with the viewpoints held and expressed by Plaintiff - again, in his personal capacity and during his personal time - the Defendants have caused irreparable harm to the federal protected rights of the Plaintiff's freedom of speech and association in the attempt to harass, threaten, silence, and/or chill these constitutional rights.

165.   Because Defendants have failed to establish a compelling government interest that is narrowly tailored governing the decision whether to allow employees to speak about certain topics and which viewpoints they may hold regarding certain topics, and ergo, which viewpoints need to be disclosed as part of an investigation, there is a substantial risk that Defendants will engage in content and viewpoint discrimination: exactly what occurred to Plaintiff's detriment as alleged herein.

166.   An actual live controversy exists between the Plaintiff and the Defendants in which the parties have genuine and opposing interests that are direct and substantial and of which a judicial determination will be final and conclusive.

167.   WHEREFORE, Plaintiff is entitled to relief in the form of (1) a declaratory order that Defendants have violated the First Amendment; (2) an injunction compelling the Defendant to cease violating Plaintiff's constitutional rights through using the security clearance process to censor his constitutionally protected freedoms; (3) award Plaintiff reasonable costs and attorney's fees; and (4) grant such other relief as the Court may deem just and proper.

## COUNT XIII
### (*Bivens* - All Individual Defendants)
### Violation of the First Amendment - Freedom of Association

168.   The Plaintiff adopts and incorporates by reference paragraphs 1 through 167 as fully stated.

169.    The First Amendment of the United States provides the Freedom of Association.

170.   The Defendants violated the Plaintiff's constitutional protected right of a freedom to associate with others who have similar political, religious, and cultural beliefs.

171.   Instead, the Defendants revoked the Plaintiff's security clearance because, in their subjective opinion, he associated with individuals whose beliefs would bring discredit and embarrassment to the Defendants. This standard on its face violates the Constitution.

172.    The Defendants' actions violated the Plaintiff's right to Freedom of Association.

173.    WHEREFORE, Plaintiff is entitled to relief in the form of (1) a declaratory order that Defendants have violated the First Amendment; (2) an injunction compelling the Defendant to cease violating Plaintiff's constitutional rights through using the security clearance process to censor his constitutionally protected freedoms; (3) award Plaintiff reasonable costs and attorney's fees; and (4) grant such other relief as the Court may deem just and proper.

## COUNT XIV
### (*Bivens* - All Individual Defendants)
### Violation of the First Amendment - Freedom of Assembly

174.    The Plaintiff adopts and incorporates by reference paragraphs 1 through 173 as fully stated.

175.    The Defendants revoked the Plaintiff's security clearance for attending meetings, dinners, conferences, gatherings, and the Charlottesville protests because the content of the meetings was, in their subjective opinion, deemed offensive and embarrassing.

176.    The Plaintiff's constitutional right to freedom of assembly is being violated and the Constitution does not differentiate between offensive and non-offensive, embarrassing and non-embarrassing because it is subjective and violates the intent of the First Amendment.

177.    WHEREFORE, Plaintiff is entitled to relief in the form of (1) a declaratory order that Defendants have violated the First Amendment; (2) an injunction compelling the Defendant to cease violating Plaintiff's constitutional rights through using the security clearance process to censor his constitutionally protected freedoms; (3) award Plaintiff reasonable costs and attorney's fees; and (4) grant such other relief as the Court may deem just and proper.

## COUNT XV
### (*Bivens* - All Individual
### Defendants) First Amendment
### Retaliation

178.  The Plaintiff adopts and incorporates by reference paragraphs 1 through 177 as fully stated.   The Plaintiff engaged in protected speech by discussing matters of public concern (i.e. the country's immigration policies and beliefs on race) on his own time, under pseudonyms, never stating or implying that he was speaking on the behalf of the Defendants.

179.  The Defendants retaliated against the Plaintiff by revoking his security clearance for said speech.

180.  The Defendants notified the Plaintiff that they were revoking the Plaintiff's security clearance for aforementioned speech thereby satisfying the causal link between the conduct and the adverse effect.

181.  WHEREFORE, Plaintiff is entitled to relief in the form of (1) a declaratory order that Defendants have violated the First Amendment; (2) an injunction compelling the Defendant to cease violating Plaintiff's constitutional rights through using the security clearance process to censor his constitutionally protected freedoms; (3) award Plaintiff reasonable costs and attorney's fees; and (4) grant such other relief as the Court may deem just and proper.

## COUNT XVI
### *(Bivens* - All Other Individual Defendants)
**Due Process Claims against the Defendant for violating the Due Process Clause of the Fifth Amendment of the United States Constitution**

182.   Plaintiff adopts and incorporates by reference paragraphs 1 through 182  as if fully stated.

183.  Plaintiff has a Fifth Amendment right to Due Process of law before the federal government deprives him or her of life, liberty, or property.

184.  Plaintiff has protectable liberty interests – fundamental rights — in free speech and association under the First Amendment and due process of law under the Fifth Amendment.

185.  The Defendants, either by discriminatory motive or intent, or through reckless or

callous indifference to the Plaintiff's federally protected rights erroneously applied Guideline E in a subjective, erroneous, arbitrary, capricious, and with standardless discretion over what expressive conduct is characterized as embarrassing or not embarrassing to the Defendants, leaving them free to censor ideas and enforce their own personal preferences.

186.   The Defendants have failed to develop objective standards to ensure that federal civilians in their employ, such as the Plaintiff, were not disenfranchised, harassed, or otherwise deprived of constitutional rights without due process of law.

187.   The threat was imminent and did occur, that the conduct of the Defendants deprived the Plaintiff of due process of law under the laws of the United States on August 16, 2019, and every day since, and the deprivation directly and proximately caused Plaintiff to suffer the loss of his protected freedoms, as well as his career he had worked hard to obtain and maintain, unlawfully depriving him of his means to provide for his family.

188.   WHEREFORE, Plaintiff is entitled to relief in the form of (1) a declaratory order that Defendants have violated the Fifth Amendment; (2) an injunction compelling the Defendants to: (i) cease discriminating against the clinet; (ii) cease inserting unconstitutional criteria into Defendants' processes; and (iii) adjudicate Plaintiff's clearance issue favorably and reinstate Plaintiff with all benefits, backpay, and compensate him for harm caused; (3) award Plaintiff reasonable costs and attorney's fees; and (4) grant such other relief as the Court may deem just and proper.

## **COUNT XVII**
### (***Bivens* - All Other Individual Defendants)**
### **Equal Protection Claim against the Defendants**

189.   The Plaintiff adopts and incorporates by reference paragraphs 1 through 189 as if fully stated.

190.   Plaintiff's Fifth Amendment right under the law protects them from intentional and

arbitrary discrimination.   Even though the Defendants have attempted to point to Plaintiff's alleged misleading or omissions during the security clearance interview process as the basis for their actions, the Defendants admit that the crux of its violations of Plaintiff's constitutional rights stem from what Plaintiff said or failed to say about what the Plaintiff previously said.

191.   The standardless discretion resulted in the inconsistent enforcement of the Defendants' policies and interpretation of existing laws and regulations regarding speech on the topic of race and immigration and an employee's obligations on whether to disclose certain speech or not that caused violations of the equal protection of the laws afforded to the Plaintiff under the Constitution.

192.   Because Defendants have failed to establish a compelling government interest that is narrowly tailored governing the decision whether to allow employees to speak about certain topics and which viewpoints they may hold regarding certain topics, and ergo, which viewpoints need to be disclosed as part of an investigation, there is a substantial risk that Defendants will engage in content and viewpoint discrimination: exactly what occurred to Plaintiff's detriment as alleged herein.

193.   The threat was imminent and did occur that Defendants' actions deprived the Plaintiff of equal protection under the laws of the United States Constitution at the State Department on August 16, 2022, and every day thereafter.

194.   WHEREFORE, Plaintiff is entitled to relief in the form of (1) a declaratory order that Defendants have violated the Fifth Amendment; (2) an injunction compelling the Defendants to: (i) cease discriminating against the clinet; (ii) cease inserting unconstitutional criteria into Defendants' processes; and (iii) adjudicate Plaintiff's clearance issue favorably and reinstate Plaintiff with all benefits, backpay, and compensate him for harm caused; (3) award Plaintiff reasonable costs and attorney's fees; and (4) grant such other relief as the Court may

deem just and proper.

## COUNT XVIII

195.   Plaintiff realleges paragraphs 1 through 196 as if fully stated herein.

196.   At the time and place aforesaid John Does 1-10 and the federal government,
acted in such a manner as to violate the Plaintiff's constitutional rights, acted in retaliation for
constitutionally protected speech, denied the Plantiff their due process, freedom of assembly,
freedom of speech, freedom of association, the unequal application of SEAD 4 and other
applicable, laws, regulations, and/or policies; and otherwise acted in a manner that harmed the
Plaintiff.

197.   WHEREFORE, Plaintiff, demands judgment against the defendant John Does 1-10
and the federal government individually, jointly and severally plus damages, interest and costs of
suit.

## COUNT XIX
### (Department of State's Violation of the Privacy Act, 5 U.S.C. §552a )

198.   Plaintiff realleges paragraphs 1 through 199 as if fully stated herein.

199.   Plaintiff is an individual seeking access to information about himself.

200.   Any documentation in the possession, custody, and control of Defendant is a
record maintained in a system of records, as described 5 U.S.C. §552a(a)(4)- (5).

201.   Upon information and belief, there are records responsive to Plaintiff's request that
are being withheld in full and the Defendants violated 5 U.S.C. §552a when the agency closed
the Plaintiff's properly referred FOIA/PA request. The Defendant is wrongfully withholding
records and information requested.

202.   Plaintiff has exhausted all required and available administrative remedies.

203.   Plaintiff has a legal right under the Privacy Act to obtain the information he seeks, and there is no legal basis for Defendant's denial of said right. Defendant's refusal to provide Plaintiff with the requested records amounts to a deprivation of Plaintiff's federal rights.

The Defendant's failure to respond to Plaintiff's FOIA request violated the statutory deadline imposed by the FOIA in 5 U.S.C. §552(a)(6)(A)(ii).

204.   WHEREFORE, the Plaintiff requests that this Court award him the following relief: (1) declare the Defendant violated the Privacy Act; (2) order Defendant to immediately disclose the requested records; (3) award Plaintiff reasonable costs and attorney's fees as provided in 5 U.S.C. §552a(g)(3)(B); and (4) grant such other relief as the Court may deem just and proper.

## COUNT XX
### Department of State's Violation of the Freedom of Information Act-5 U.S.C. §552a

205.   Plaintiff realleges paragraphs 1 through 206 as if fully stated herein.

206.   Defendant is unlawfully withholding records requested by Plaintiff pursuant to 5 U.S.C. §552.

207.   Plaintiff has exhausted applicable administrative remedies.

208.   Plaintiff is being irreparably harmed by reason of Defendant's unlawful withholding of requested records. Plaintiff will continue to be irreparably harmed unless Defendant is compelled to conform its conduct to the requirements of law.

209.   WHEREFORE, Plaintiff respectfully requests that the Court: (1) declare that Defendant violated the Freedom of Information Act; (2) order Defendant to immediately disclose the requested records; (3) award Plaintiff reasonable costs and attorney's fees as provided in 5 U.S.C. §552(a)(4)(E); and (4) grant such other relief as the Court deems just and proper.

### PRAYER FOR RELIEF AS TO COUNTS I - XI

**WHEREFORE,** the Plaintiff prayerfully requests that this Court:

210.   Declare that the Defendant is acting in violation of the First Amendment of the United States Constitution;

211.   Declare that the Defendant violated the Plaintiff's protected constitutional rights under the Due Process Clause of the Fifth Amendment of the United States Constitution;

212.    Enjoin the Defendant from continuing Plaintiff's suspension without leave;

213.   A preliminary and permanent injunction prohibiting Defendant, their agents, officials, servants, employees, and any other persons acting on its behalf from continually violating Plaintiff's constitutional rights and associated practices challenged in this Complaint;

214.   Order the Defendant to immediately reinstate Plaintiff's employment, granting accrued seniority rights to account for his unlawful suspension, and order Defendant to pay all back pay and front pay;

215.    Award compensatory damages against Defendant in the amount of $100,000,000.00 (ONE-HUNDRED MILLION DOLLARS);

216.   Order the State Department to pay Plaintiff all back pay for compensation and benefits, including but not limited to leave, healthcare, retirement, and fringe benefits, which continue to accrue;

217.   Order the State Department to pay Plaintiff such front pay and future benefits, including but not limited to leave, healthcare, retirement, and fringe benefits, which continue to accrue, and other benefits and relief as may be appropriate; and

218.   Award Plaintiff his reasonable attorney fees, litigation expenses, and costs as allowed under applicable laws, and grant such other relief as this Court deems just to the Plaintiff and his attorneys.

## PRAYER FOR RELIEF AS TO COUNTS XII-XVIII

**WHEREFORE,** the Plaintiff prayerfully requests that this Court:

219.   Declare that the Defendants are acting in violation of the First Amendment of the United States Constitution;

220.   Declare that the Defendants violated the Plaintiff's protected constitutional rights under the Due Process Clause of the Fifth Amendment of the United States Constitution;

221.    Enjoin the Defendants from continuing Plaintiff's suspension without leave;

222.   A preliminary and permanent injunction prohibiting Defendants from continually violating Plaintiff's constitutional rights and associated practices challenged in this Complaint;

223.   Award compensatory and punitive damages against Defendants in the amount of $150,000,000.00 (ONE-HUNDRED FIFTY MILLION DOLLARS); and

224.   Award Plaintiff his reasonable attorney fees, litigation expenses, and costs as allowed under applicable laws/case law, and grant such other relief as this Court deems just to the Plaintiff and his attorneys.

## PRAYER FOR RELIEF AS TO COUNTS XIX AND XX

**WHEREFORE,** the Plaintiff prayerfully request that this Court:

225.   Declare the Defendant State Department's failure to comply with FOIA to be unlawful;

226.   Order the Defendant State Department to conduct an independent and comprehensive search of its documents and records in response to Plaintiff's FOIA Request, control number P-2020-00021;

227.   Order the Defendant Department of State to produce all responsive records without further delay or charge;

228.   Enjoin the Defendant Department of State from continuing to withhold records responsive to Plaintiff's FOIA Request;

229.   Award Plaintiff attorney's fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. 5§52(a)(4)(E); and

230.    Grant such other relief as the Court deems just and proper.

Dated: September 26, 2022                          Respectfully submitted,


By: /s/ *Brett J. O'Brien*
BRETT O'BRIEN, ESQ
Bar License #: 1753983
NATIONAL SECURITY LAW FIRM, LLC
1250 Connecticut Avenue
NW Suite 700
Washington, DC 20036
Phone: (202) 600-4996
Fax:     (202) 545-6318