UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MATTHEW GEBERT,

                *Plaintiff*,

     v.

U.S. DEPARTMENT OF STATE, et al.,

                *Defendants*.

Civil Action No. 22-2939 (DLF)

## **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iv

ARGUMENT ........................................................................................................ 1

I.      This Court Lacks Personal Jurisdiction Over the Individual Defendants ........................ 1

II.     Gebert Failed to Perfect Service of Process on Several Defendants ............................. 1

III.    Gebert Does Not Plausibly Allege a First Amendment Violation Claim .......................... 2

        A.      Gebert Does Not Plausibly Allege Retaliation Based on His Ideological
                Beliefs ............................................................................................ 2

                1.      The Sludge article does not support Gebert's retaliation claims ............... 2

                2.      Temporal proximity does not support a plausible inference of
                        retaliation ............................................................................. 5

                3.      Defendants' possession of articles regarding the circumstances that led
                        to the discovery of Gebert's dishonesty does not support his retaliation
                        claims ................................................................................... 6

                4.      Characterizing the activities and associations of Gebert's wife as a
                        possible embarrassment does not support a plausible inference of
                        retaliation ............................................................................. 6

                5.      Defendants' public statements do not support Gebert's retaliation
                        claims ................................................................................... 7

                6.      Defendants' response to Gebert's records request does not support
                        a plausible inference of retaliation ............................................... 8

                7.      *Garcia* does not support Gebert's retaliation claims .......................... 8

        B.      Gebert's Vagueness and Overbreadth Arguments Lack Merit ............................. 9

                1.      Gebert's vagueness argument lacks merit ...................................... 11

                2.      Gebert's overbreadth argument lacks merit .................................... 12

IV.     Gebert Does Not Plausibly Allege a Due Process Violation ..................................... 13

        A.      Gebert's Substantive Due Process Theory Fails ......................................... 14

        B.      Gebert's Procedural Due Process Theory Fails .......................................... 16

1.   This Court lacks jurisdiction over any challenge to Gebert's suspension .................................................. 16

2.   Gebert fails to identify a protected interest ................................ 16

   a.   Gebert has no protected interest in his job, as it requires a clearance ................................ 17

   b.   Gebert has no protected interest in his reputation ........................ 17

3.   Gebert received all the process he is due .................................. 19

C.   Gebert's Equal Protection Theory Fails ................................................ 20

V.   Gebert Does Not Plausibly Allege an APA Violation ...................................... 21

VI.   Gebert Does Not State a FOIA or Privacy Act Claim ................................ 22

VII.   Gebert is Not Entitled to Damages ...................................................... 23

A.   The Back Pay Act Does Not Waive the Department's Sovereign Immunity ....... 23

B.   Gebert is Not Entitled to *Bivens* Relief ............................................ 23

1.   Gebert's claims arise in a new context ...................................... 23

2.   Special factors foreclose *Bivens* relief ...................................... 24

C.   The Individual Defendants are Entitled to Qualified Immunity .......................... 25

CONCLUSION ........................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*A.N.S.W.E.R. Coal. v. Basham*,
   845 F.3d 1199 (D.C. Cir. 2017) ............................................................. 12

*Ashcroft v. Iqbal*,
   556 U.S. 662, 678 (2009) ........................................... 6, 8, 12, 16, 21

*Baird v. State Bar of Ariz.*,
   401 U.S. 1 (1971) .................................................................................. 13

*Bd. of Regents v. Roth*,
   408 U.S. 564 (1972) .............................................................................. 14

*Bennett v. Chertoff*,
   425 F.3d 999 (D.C. Cir. 2005) ............................................................... 8

*Bivens v. Six Unknown Named Agents*,
   403 U.S. 388 (1971) ................................................................................ 1

*Bloch v. Powell*,
   348 F.3d 1060 (D.C. Cir. 2003) ........................................................... 14

*Bryant v. Gates*,
   532 F.3d 888 (D.C. Cir. 2008) ........................................................ 10, 11

*Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*,
   846 F.3d 1235 (D.C. Cir. 2017) ........................................................... 21

*Clark v. Library of Congress*,
   750 F.2d 89 (D.C. Cir. 1984) ............................................................... 13

*Collingsworth v. Drummond Co. Inc.*,
   Civ. A. No. 19-1263 (ABJ), 2020 WL 2800612 (D.D.C. May 29, 2020) ................................ 2

*Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*,
   31 F. Supp. 3d 237 (D.D.C. 2014) ....................................................... 10

*Crooks v. Mabus*,
   845 F.3d 412 (D.C. Cir. 2016) ........................................................ 14, 15

*Davis v. Passman*,
   442 U.S. 228 (1979) .............................................................................. 23

**Cases (cont.)**

*Dep't of Navy v. Egan*,
   484 U.S. 518 (1988) ............................................................................................. 16, 17

*Deryck v. Dep't of Def.*,
   Civ. A. No. 22-3290 (TNM), 2023 WL 3303832 (D.D.C. May 8, 2023) ................... 17, 18, 23

*Doe v. Casey*,
   796 F.2d 1508 (D.C. Cir. 1986) ............................................................................. 20

*Doe v. Cheney*,
   885 F.2d 898 (D.C. Cir. 1989) ............................................................................... 20

*Dorfmont v. Brown*,
   913 F.2d 1399 (9th Cir. 1990) ............................................................................... 17

*Egbert v. Boule*,
   142 S. Ct. 1793 (2022) ..................................................................................... 23, 24

*Elec. Privacy Info. Ctr. v. IRS*,
   910 F.3d 1232 (D.C. Cir. 2018) ............................................................................. 21

*Elgin v. Dep't of Treasury*,
   567 U.S. 1 (2012) ................................................................................................. 16

*Expressions Hair Design v. Schneiderman*,
   581 U.S. 37 (2017) ............................................................................................... 13

*Farrington v. Mayorkas*,
   Civ. A. No. 21-3240 (BAH), 2022 WL 16834018 (D.D.C. Nov. 9, 2022) ................. 5

*Fried v. Hinson*,
   78 F.3d 688 (D.C. Cir. 1996) ................................................................................. 15

*Garcia v. Pompeo*,
   Civ. A. No. 18-1822 (APM), 2020 WL 134865 (D.D.C. Jan. 13, 2020).......... 2, 8, 19

*George Wash. Univ. v. District of Columbia*,
   318 F.3d 203 (D.C. Cir. 2003) ............................................................................... 15

*Gilbert v. FDIC*,
   950 F. Supp. 1194 (D.D.C. 1997) .......................................................................... 23

*Gill v. Dep't of Just.*,
   875 F.3d 677 (D.C. Cir. 2017) ........................................................................... 19, 25

**Cases (cont.)**

*Goland v. CIA,*
   607 F.2d 339 (D.C. Cir. 1978) ................................................................................. 8

*Graham v. Ashcroft,*
   358 F.3d 931 (D.C. Cir. 2004) ................................................................................ 16

*Greenberg v. Dep't of Treasury,*
   10 F. Supp. 2d 3 (D.D.C. 1998) .............................................................................. 22

*Greenhill v. Spellings,*
   482 F.3d 569 (D.C. Cir. 2007) ................................................................................. 9

*Hairston v. Vance-Cooks,*
   773 F.3d 266 (D.C. Cir. 2014) ................................................................................. 7

*Harrison v. Bowen,*
   815 F.2d 1505 (D.C. Cir. 1987) ........................................................................ 18, 19

*Harrison v. Fed. Bureau of Prisons,*
   248 F. Supp. 3d 172 (D.D.C. 2017) ........................................................................ 21

*Hettinga v. United States,*
   677 F.3d 471 (D.C. Cir. 2012) .......................................................... 3, 6-7, 9, 17-18

*Hill v. Colorado,*
   530 U.S. 703 (2000) ............................................................................................... 10

*Hurd v. District of Columbia,*
   864 F.3d 671 (D.C. Cir. 2017) ............................................................... 3, 7, 9, 17

*Hutchins v. District of Columbia,*
   188 F.3d 531 (D.C. Cir. 1999) ............................................................................... 10

*Kartseva v. Department of State,*
   37 F.3d 1524 (D.C. Cir. 1994) ............................................................................... 19

*Lamb v. Millennium Challenge Corp.,*
   498 F. Supp. 3d 104 (D.D.C. 2020) .................................................................. 17, 19

*Lancaster v. Vance-Cooks,*
   967 F. Supp. 2d 375 (D.D.C. 2013) ......................................................................... 5

*Lapera v. Fed. Nat'l Mortg. Ass'n,*
   210 F. Supp. 3d 164 (D.D.C. 2016) ......................................................................... 9

**Cases (cont.)**

*Mastro v. Potomac Elec. Power Co.*,
  447 F.3d 843 (D.C. Cir. 2006) ............................................................................... 17

*Mead Data Cent., Inc. v. Dep't of Air Force*,
  566 F.2d 242 (D.C. Cir. 1977) ............................................................................... 22

*Metroil, Inc. v. Exxonmobil Oil Corp.*,
  672 F.3d 1108 (D.C. Cir. 2012) ............................................................................... 9

*Military Audit Project v. Casey*,
  656 F.2d 724 (D.C. Cir. 1981) ............................................................................... 8

*Milkovich v. Lorain J.*,
  497 U.S. 1 (1990) ............................................................................... 18

*Molerio v. FBI*,
  749 F.2d 815 (D.C. Cir. 1984) ............................................................................... 18

*Moses v. Howard Univ. Hosp.*,
  474 F. Supp. 2d 117 (D.D.C. 2007) ............................................................................... 5

*Nat'l Sec. Counselors v. CIA*,
  898 F. Supp. 2d 233 (D.D.C. 2012) ............................................................. 14, 16, 19, 21, 24

*Nat'l Treasury Emps. Union v. Von Raab*,
  489 U.S. 656 (1989) ................................................................................. 7, 12, 13, 20

*Newdow v. Roberts*,
  603 F.3d 1002 (D.C. Cir. 2010) ............................................................................... 2

*O'Donnell v. Barry*,
  148 F.3d 1126 (D.C. Cir. 1998) ............................................................................... 17, 18, 19

*Oryszak v. Sullivan*,
  576 F.3d 522 (D.C. Cir. 2009) ............................................................................... 9

*Ozonoff v. Berzak*,
  744 F.2d 224 (1st Cir. 1984) ............................................................................... 12, 13

*Palmieri v. United States*,
  896 F.3d 579 (D.C. Cir. 2018) ............................................................................... 1, 25

*Park S. Neighborhood Corp. v. Vesta Mgmt. Corp.*,
  80 F. Supp. 3d 192 (D.D.C. 2015) ............................................................................... 9

**Cases (cont.)**

*Payne v. District of Columbia*,
  722 F.3d 345 (D.C. Cir. 2013) ................................................................... 5

*Rivas-Villegas v. Cortesluna*,
  142 S. Ct. 4 (2021) .................................................................................... 25

*Smith v. Clinton*,
  886 F.3d 122 (D.C. Cir. 2018) ................................................................. 17

*Sparrow v. United Air Lines, Inc.*,
  216 F.3d 1111 (D.C. Cir. 2000) ............................................................ 5, 9

*Taylor v. Solis*,
  571 F.3d 1313 (D.C. Cir. 2009) ................................................................. 5

*Townsend v. United States*,
  236 F. Supp. 3d 280 (D.D.C. 2017) ........................................................... 5

*United States v. Cisneros*,
  26 F. Supp. 2d 24 (D.D.C. 1998) ............................................................. 11

*United States v. Culliton*,
  328 F.3d 1074 (9th Cir. 2003) ................................................................. 11

*United States v. Delgado*,
  798 F. App'x 105 (9th Cir. 2020) ............................................................ 12

*United States v. Fausto*,
  484 U.S. 439 (1988) ................................................................................. 23

*United States v. Hsia*,
  176 F.3d 517 (D.C. Cir. 1999) ................................................................. 11

*United States v. Kerik*,
  615 F. Supp. 2d 256 (S.D.N.Y. 2009) ..................................................... 11

*United States v. Safavian*,
  528 F.3d 957 (D.C. Cir. 2008) ................................................................. 11

*United States v. Sarwari*,
  669 F.3d 401 (4th Cir. 2012) ................................................................... 12

*Virginia v. Hicks*,
  539 U.S. 113 (2003) ........................................................................... 10, 12

**Cases (cont.)**

*Wannall v. Honeywell, Inc.*,
  775 F.3d 425, 428 (D.C. Cir. 2014) ................................................................ 14, 16, 19, 21, 24

*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989) ............................................................................................................ 12

*Wash. Legal Clinic v. Barry*,
  107 F.3d 32 (D.C. Cir. 1997) .............................................................................................. 15

*Welsh v. Dep't of State*,
  Civ. A. No. 21-1380 (TJK), 2023 WL 2424606 (D.D.C. Mar. 8, 2023) ................................ 22

*Woodruff v. Peters*,
  482 F.3d 521 (D.C. Cir. 2007) .............................................................................................. 5

*Yeager v. DEA*,
  678 F.2d 315 (D.C. Cir. 1982) ............................................................................................ 22

*Zummer v. Sallet*,
  37 F.4th 996 (5th Cir. 2022) .............................................................................................. 16

**Statutes**

5 U.S.C.
  § 704 .................................................................................................................................. 21
  § 706 .................................................................................................................................. 21
  § 2302(a)(2)(A)(iii) ............................................................................................................ 16
  § 5596(b)(1) ...................................................................................................................... 23

**Other Authorities**

3 Foreign Affairs Manual § 3418 ............................................................................................ 14

Alex Kotch, *Government Employees Donate to White Supremacist Candidate*,
  Sludge (July 3, 2018) .......................................................................................................... 3

Exec. Order 12,968, 60 Fed. Reg. 40,245 (Aug. 2, 1995) ...................................................... 7, 8

*Individual Contributions*, Fed. Election Comm'n .................................................................... 4

**Rules**

Fed. R. Civ. P. 4(i) .................................................................................................................. 2

Defendants—certain entities and individuals allegedly involved in the decisions to suspend or revoke Plaintiff Matthew Gebert's security clearance due to his dishonesty during his clearance background reinvestigation—respectfully reply in support of their motion to dismiss.

## ARGUMENT

This Court lacks personal jurisdiction over the individual defendants, and Gebert failed to perfect service of process on several defendants. He does not plausibly allege a First Amendment, Due Process Clause, Administrative Procedure Act ("APA"), Freedom of Information Act ("FOIA"), or Privacy Act claim. And he is not entitled to damages—sovereign immunity shields the Department of State ("Department"), while the doctrine announced in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), does not afford relief against the individual defendants, who are in any event entitled to qualified immunity. As such, this Court should dismiss his complaint.

## I.     This Court Lacks Personal Jurisdiction Over the Individual Defendants

A court lacks personal jurisdiction over officials "in their personal capacity" if their "only alleged conduct in the District was undertaken in their official capacity." *Palmieri v. United States*, 896 F.3d 579, 590 (D.C. Cir. 2018). As the individual defendants acted in their official capacities when taking the only acts in this District Gebert challenges, the Court lacks personal jurisdiction over them. *Id.* Gebert tries to distinguish *Palmieri* because the challenged acts there occurred in Bahrain, Pl.'s Resp. at 4, n.4, ECF No. 28, but that was immaterial—what mattered was simply that the individual defendants took all the challenged acts in this District in their official capacities. 896 F.3d at 590. Even if the District of Columbia long-arm statute reaches the individual defendants, it does so only in their official capacities, which, as explained, is insufficient. *See id.*

## II.     Gebert Failed to Perfect Service of Process on Several Defendants

In moving to dismiss, Defendants explained that Gebert failed to perfect service of process. Defs.' Mot. at 11-12. This Court gave him until April 21, 2023 to perfect service, Min. Order (Feb.

21, 2023), but he never did so as to the Department, Douglas Quiram, or John Does 1-10. He never served Quiran, *see* Ex. A, or John Does 1-10, or the Attorney General, as is required to serve any defendant. Fed. R. Civ. P. 4(i)(1)(B), 4(i)(2), 4(i)(3). Nor can he show that the identities of John Does 1 to 10 (as opposed to John Does Nos. 1 and 2) "will eventually be made known through discovery," *Newdow v. Roberts*, 603 F.3d 1002, 1010 (D.C. Cir. 2010), as he pleads no facts about them. *See Collingsworth v. Drummond Co. Inc.*, Civ. A. No. 19-1263 (ABJ), 2020 WL 2800612, at *14 (D.D.C. May 29, 2020), *aff'd*, 839 F. App'x 567 (D.C. Cir. 2021) (courts dismiss "unnamed defendants where the complaint fails to allege specific allegations of wrongdoing against them").

## III.   Gebert Does Not Plausibly Allege a First Amendment Violation Claim

As Defendants explained in moving to dismiss, Gebert does not plausibly allege that Defendants retaliated against him due to his ideological beliefs. None of the arguments he offers in response show otherwise. He also asserts First Amendment vagueness and overbreadth claims in his response, but did not raise such claims in his complaint, and, regardless, they lack merit.

### A.   Gebert Does Not Plausibly Allege Retaliation Based on His Ideological Beliefs

Gebert emphasizes (1) an article on the website Sludge, (2) temporal proximity between the Hatewatch article's publication and his clearance suspension, (3) Defendants' possession of articles regarding the circumstances that led to their discovery of his dishonesty, (4) Defendants' characterization of the activities and association of his wife as a possible source of embarrassment, (5) Defendants' public statements, (6) Defendants' response to his records request, and (7) *Garcia v. Pompeo*, Civ. A. No. 18-1822 (APM), 2020 WL 134865 (D.D.C. Jan. 13, 2020). As explained in further detail below, none of these things supports Gebert's First Amendment retaliation claim.

#### 1.   The Sludge article does not support Gebert's retaliation claims

The Sludge article does not suggest that Defendants' given reasons for suspending and then revoking Gebert's clearance were pretextual. He does not plausibly allege that Defendants knew

2

about the article, or even mention it in his complaint. *See Hettinga v. United States*, 677 F.3d 471, 477 (D.C. Cir. 2012) (court "need not accept inferences drawn by plaintiff" that "are not supported by the facts set out in the complaint"); *Hurd v. District of Columbia*, 864 F.3d 671, 686 (D.C. Cir. 2017) (court cannot consider materials outside complaint "for the truth of the matter asserted").

Even assuming Defendants knew about the Sludge article, that fact would only undermine Gebert's claim. The idea that Defendants knew "that Gebert supported white nationalist/pro-white ideologies" for over a year before the Hatewatch article came out, Pl.'s Resp. at 7, merely bolsters their point that they acted solely due to Gebert's dishonesty during his clearance adjudication, not his beliefs. By Gebert's own account, Defendants long knew he is a white nationalist, yet took no action against him until the Hatewatch article brought to light his dishonesty during his clearance adjudication. *Id.* He notes that Defendants did not make "referrals," perform "investigations," or conduct "interviews," after the Sludge article, *id.* at 8, but that only shows they did not target him for his beliefs. His insistence on this narrative is puzzling, as it undercuts, not supports, his claim.

Gebert's argument that the Sludge article suggests that Defendants' reasons for suspending and revoking his clearance were pretextual is meritless. The Sludge and Hatewatch articles differed in three significant ways, such that any knowledge Defendants might have had of the Sludge article would not support a plausible inference that their concerns relating to the Hatewatch article were insincere. First, the Hatewatch article catalogued a far more extensive degree of white nationalist activities and associations than did the Sludge article. The Sludge article reported that Gebert had contributed $225 to a political candidate who had made certain "racist and anti-Semitic statements" and $1,000 to another candidate who was "outspoken about preserving public Confederate flags and monuments." Alex Kotch, *Government Employees Donate to White Supremacist Candidate*, Sludge (July 3, 2018), https://readsludge.com/2018/07/03/government-employees-donate-to-whit

e-supremacist-candidate/ ("Sludge Article"). The Hatewatch article, in contrast, revealed that Gebert led a chapter of a prominent white nationalist organization, made many violent and bigoted remarks while speaking on podcasts and writing online, hosted events with other white nationalists at his home, and dined in secret with a notorious Holocaust denier, among other things. *See* Defs.' Mem. at 1-4. The Sludge article did not provide notice of any of these things. Any inference that Defendants knew of Gebert's extensive white nationalist activities and associations because the Sludge article had reported that he had made contributions to certain politicians is unwarranted.

Second, the Sludge article, unlike the Hatewatch article, did not suggest that Gebert had tried to conceal his activities and associations, and thus did not suggest that he had been dishonest during his clearance adjudication. Nothing in the Sludge article indicated that he tried to hide his contributions, and one can find records of them online. *See Individual Contributions*, Fed. Election Comm'n, https://www.fec.gov/data/receipts/individual-contributions/?contributor_name=matthew%20gebert. The Hatewatch article, in contrast, revealed that he tried to conceal his activities and associations, such as by disguising his appearance and using pseudonyms in podcasts and online. Defs.' Mem. at 15-17. Gebert's attempts to prevent his activities and associations from becoming public, which the Hatewatch article documented but the Sludge article did not, support Defendants' belief that he was dishonest during his clearance adjudication. Any inference that Defendants knew of his efforts to conceal his activities and associations due to the Sludge article is unwarranted.

Third, the Hatewatch article, unlike the Sludge article, showed that Gebert had responded untruthfully when asked "if there was any information regarding members of his family that would be a possible source of embarrassment to" the Department. Compl. ¶ 14. As explained earlier, the Hatewatch article revealed that Gebert's wife had numerous white nationalist activities and associations of her own. *See* Defs.' Mem. at 4. The Sludge article, in contrast, did not mention her

or any other member of Gebert's family. *See* Sludge Article, *supra*. The Hatewatch article, unlike the Sludge article, thus suggested that Gebert responded dishonestly to the family question, one of the three responses forming the basis of Defendants' conclusion that he had been dishonest.

2.    <u>Temporal proximity does not support a plausible inference of retaliation</u>

The temporal proximity between the Hatewatch article's publication and the suspension of Gebert's clearance does not support a plausible inference of First Amendment retaliation, either, for two reasons. First, it does not suggest that Defendants suspended Gebert's clearance soon after learning of his white nationalist beliefs—by Gebert's own account, Defendants had known about his beliefs for over a year, too long to support a plausible inference of causation. *See* Pl.'s Resp. at 7; *see also Payne v. District of Columbia*, 722 F.3d 345, 354 (D.C. Cir. 2013) ("there is no temporal proximity" when gap in time is "two-thirds of a year"); *Taylor v. Solis*, 571 F.3d 1313, 1322 (D.C. Cir. 2009) ( "two and one-half month[ ]" gap cannot suggest causation).

Second, an obvious alternative explanation for the decision to suspend Gebert's clearance —the Hatewatch article's revelation of his uncandor during his clearance adjudication—precludes any plausible inference of viewpoint retaliation. *See Townsend v. United States*, 236 F. Supp. 3d 280, 298 (D.D.C. 2017) ("when [a] complaint contains fulsome factual context for the challenged adverse employment action, those allegations must be considered collectively in evaluating the reasonableness and plausibility of the inferences urged by the plaintiff" (internal quotation marks omitted)); *Moses v. Howard Univ. Hosp.*, 474 F. Supp. 2d 117, 125 (D.D.C. 2007) ("closeness in time does not inevitably or necessarily support an inference of causation, particularly where the inference is undermined by . . . other related events" (internal quotation marks omitted)); *Woodruff v. Peters*, 482 F.3d 521, 530 (D.C. Cir. 2007) ("positive evidence beyond mere proximity is required to defeat the presumption that the proffered explanations are genuine"); *Farrington v. Mayorkas*, Civ. A. No. 21-3240 (BAH), 2022 WL 16834018, at *3 (D.D.C. Nov. 9, 2022) (same

5

under Rule 12(b)(6)); *Lancaster v. Vance-Cooks*, 967 F. Supp. 2d 375, 388 (D.D.C. 2013) (same);

*cf. Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1116 (D.C. Cir. 2000) (a plaintiff can "plead

too much . . . plead himself out of court by alleging facts that [preclude] success on the merits").

> 3.  Defendants' possession of articles regarding the circumstances that led to
> the discovery of Gebert's dishonesty does not support his retaliation claims

Gebert's assertion that "[h]undreds of pages of 'investigative' material in this matter are

nothing but copies of media articles discussing Gebert and shaming the Department for employing

him," Pl.'s Resp. at 9, does not support a plausible inference of retaliation. As an initial matter, he

does not plead these facts in his complaint. *See Hettinga*, 677 F.3d at 477. He cites paragraph 75

of his complaint for this claim, but paragraph 75 says no such thing. Compl. ¶ 75. Regardless, it is

hard to see how Defendants' possession of articles about the circumstances that led to the discovery

of Gebert's dishonesty during his clearance adjudication suggest retaliation. Gebert does not even

explain why it does—he just insists it does. *But see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

> 4.  Characterizing the activities and associations of Gebert's wife as a possible
> embarrassment does not support a plausible inference of retaliation

As an initial matter, Gebert did not, as he incorrectly claims, plead that Defendants asserted

that his "ideological beliefs would 'embarrass' the Department." Pl.'s Resp. at 9. According to

Gebert's complaint, Defendants used the term "embarrass" or a variant thereof only five times—

twice in recounting that Gebert was asked "if there was any information regarding members of his

family that would be a possible source of embarrassment to" the Department, once in noting his

own assertions that he "was not ashamed or embarrassed of any of his views or activities" and "did

not think any of his writings, podcasts, or tweets would rise to a level that they would ever be

considered an embarrassment to himself or" the Department, and once in summarizing a case's

holding. Defs.' Mem. at 5-6, 15, 17 (quoting Compl. ¶¶ 14, 33, 35). Nothing in the complaint

suggests that Defendants ever characterized Gebert's beliefs as "embarrassing."

Regardless, characterizing the activities and associations of Gebert's wife as "a possible source of embarrassment" to the Department Compl. ¶ 14, does not support a plausible inference of retaliation. In the context of a background check for a security clearance, it is well understood that such a statement suggests only that a malign actor potentially could exploit such information to coerce or blackmail one into revealing classified information, and does not cast aspersions on Gebert or his wife personally. *See* Exec. Order 12,968 § 3.1(b), 60 Fed. Reg. 40,245, 40,250 (Aug. 2, 1995) (eligibility for access to classified information requires "freedom from . . . potential for coercion"); *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 677 (1989) (recognizing the "compelling interest" in securing classified information "from those who, under compulsion of circumstances or for other reasons, might compromise" it (cleaned up)); Defs.' Mem. at 17. Even if Gebert truly felt such information would not embarrass him or leave him vulnerable to coercion or blackmail, he pleads no facts to support a plausible inference that Defendants knew or believed such a thing, and that their national security concern thus was pretextual. *See Hairston v. Vance-Cooks*, 773 F.3d 266, 273 (D.C. Cir. 2014) ("the key question . . . is not the correctness or desirability of the reasons offered but whether the employer honestly believes in the reasons it offers" (internal quotation marks omitted)). In fact, his concededly "deliberate concealment," Pl.'s Resp. at 15, of similar activities and associations gave Defendants a reasonable basis to believe that he understood the potentially embarrassing nature of this information. Defs.' Mem. at 15-16.[1]

5.   Defendants' public statements do not support Gebert's retaliation claims

Nor do the Department's public statements following the Hatewatch article's publication support Gebert's retaliation claims. Gebert emphasizes the Department's statements that it is

---

[1]   Gebert asserts that there is a "logical and benign explanation" for his concealment of his activities and associations, Pl.'s Resp. at 15, but the relevant issue is whether Defendants "honestly believe[d]" he was trying to hide those activities and associations from them. *Hairston*, 773 F.3d at 273. Gebert pleads no facts to support a plausible inference that Defendants did not believe this.

"[c]ommitted to providing an inclusive workplace" and "to providing a workplace that is free from discriminatory harassment," Pl.'s Resp. at 9-10, but he mentions neither of these statements in his complaint, and so cannot rely on them now. *See Hettinga*, 677 F.3d at 477; *Hurd*, 864 F.3d at 686. Regardless, the Department's commitment to providing a workplace that is inclusive and free from discriminatory harassment plainly does not give rise to a plausible inference of retaliation.

6. Defendants' response to Gebert's records requests does not support a <u>plausible inference of retaliation</u>

Nor does the Department's response to Gebert's records requests suggest retaliation. Neither a delay in responding to a records request nor withholding records suggests bad faith in general, and Gebert pleads no facts to suggest otherwise here. *See Iqbal*, 556 U.S. at 678; *Military Audit Project v. Casey*, 656 F.2d 724, 745 (D.C. Cir. 1981) ("no indication of bad faith" in withholding records); *Goland v. CIA*, 607 F.2d 339, 355 (D.C. Cir. 1978) ("delay alone cannot be said to indicate an absence of good faith"). Whether or not the Department's response to Gebert's records request can support a claim under FOIA or the Privacy Act, it does not suggest retaliation.

7. *Garcia* does not support Gebert's retaliation claims

Lastly, *Garcia* does not support Gebert's retaliation claims. There, Judge Mehta concluded that a genuine dispute existed "as to whether [the plaintiff] was denied a security certification due to his exercise of First Amendment rights." 2020 WL 134865, at *8. As relevant here, Judge Mehta concluded that the evidence that the plaintiff had "provided false information to visa applicants and assisted in circumventing immigration law," among other things, was "at best, weak"—indeed, the defendants "offer[ed] no evidence" for these claims. *Id.* Here, in contrast, Gebert's own pleadings demonstrate that Defendants had a reasonable basis to believe that he had been dishonest during his clearance adjudication, and Gebert pleads no facts to support a plausible inference that this belief was pretextual. *See* Compl. ¶¶ 14-15; *see also Bennett v. Chertoff*, 425 F.3d 999, 1003

(D.C. Cir. 2005) ("misrepresentation" is "a basis for denying security clearance"); Exec. Order 12,968, § 3.1(b), 60 Fed. Reg. at 40,250 (eligibility for access to classified information shall be granted only to those "whose personal and professional history affirmatively indicates . . . strength of character, trustworthiness, honesty, reliability, discretion, and sound judgment"); *cf. Sparrow*, 216 F.3d at 1116 ("Intentional dishonesty on an employment application surely constitutes" a "legitimate, nondiscriminatory reason" for an adverse employment action).[2]

### B.    Gebert's Vagueness and Overbreadth Arguments Lack Merit

Gebert's arguments that the questions posed during his interview were unduly vague and overbroad, in violation of the First Amendment, Pl.'s Resp. at 19, cannot save his First Amendment claims from dismissal. As an initial matter, Gebert did not raise any such claims in his complaint, which does not even mention the terms "vagueness," "vague," or any variants thereof. *See Metroil, Inc. v. Exxonmobil Oil Corp.*, 672 F.3d 1108, 1117 (D.C. Cir. 2012) ("Metroil did not assert that claim in its complaint, and we therefore do not consider it"). Gebert's three fleeting and conclusory allusions to the concept of overbreadth, meanwhile, without tying that concept to the questions at issue, do not suffice to raise an overbreadth claim. *See* Compl. ¶¶ 59, 84, 162 (asserting that "[t]he government may not regulate speech based on overbroad policies that encompass a substantial amount of constitutionally protected speech," and that "Defendants' discriminatory actions and associated practices are also overbroad because they prohibit and restrict protected expression"); *see also Oryszak v. Sullivan*, 576 F.3d 522, 524 n.1 (D.C. Cir. 2009) ("that allegation . . . [was] too obscure a hint to have put the court on notice of [the] claim"); *Greenhill v. Spellings*, 482 F.3d 569, 573 (D.C. Cir. 2007) ("nothing in our case law requires a district court to go on a fishing

---

[2]       Gebert's assertion that he "intends to show" certain facts, Pl.'s Resp. at 18, is immaterial. With limited exceptions not relevant here, a plaintiff cannot rely on material outside the complaint to survive a Rule 12(b)(6) motion, and certainly not on evidence that he intends to adduce in the future. *See Hettinga*, 677 F.3d at 477; *Hurd*, 864 F.3d at 686.

expedition for new claims"); *Lapera v. Fed. Nat'l Mortg. Ass'n*, 210 F. Supp. 3d 164, 175 (D.D.C. 2016) ("[m]ere reference" to basis of possible claim does not suffice); *Park S. Neighborhood Corp. v. Vesta Mgmt. Corp.*, 80 F. Supp. 3d 192, 195 (D.D.C. 2015) (a "passing" reference to basis of possible claim in complaint insufficient to raise it); *Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 31 F. Supp. 3d 237, 274 (D.D.C. 2014) ("This fleeting, ambiguous reference, in contrast to the specific, repeated allegations elsewhere in the Complaint, is insufficient").

Regardless, Gebert's vagueness and overbreadth arguments lack merit, as the questions at issue do not regulate speech. The First Amendment vagueness doctrine applies only if a "regulation of speech" is not "clear enough to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited" and "avoid fostering arbitrary and discriminatory application." *Bryant v. Gates*, 532 F.3d 888, 893 (D.C. Cir. 2008) (cleaned up). A law is overbroad for First Amendment purposes, meanwhile, only if it "punishes a substantial amount of protected free speech, judged in relation to [its] plainly legitimate sweep." *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003) (internal quotation marks omitted). But none of the questions at issue regulated, much less prohibited, any speech at all—they were, after all, simply questions. *See Bryant*, 532 F.3d at 893 ("because [the regulation] does not threaten [plaintiff] (or anyone else) with a sanction for prohibited speech, and therefore does not seem likely to deter anyone from engaging in any protected speech, it is not clear whether the vagueness doctrine applies here at all"). The only regulation of speech that this case implicates is the prohibition on "[d]ishonesty during a background reinvestigation for a job requiring a clearance," which "plainly is not protected speech." Defs.' Mem. at 18.[3] Regardless, even if the questions could be construed to regulate speech, they are neither vague nor ambiguous.

_____

[3]    Any claim that Defendants would have suspended or revoked Gebert's clearance had he answered the questions honestly is pure speculation, because he did not answer them honestly. *See Hill v. Colorado*, 530 U.S. 703, 733 (2000) ("speculation about possible vagueness in hypothetical

1.     Gebert's vagueness argument lacks merit

None of the questions at issue are unconstitutionally vague, and certainly not when "[r]ead in context." *United States v. Hsia*, 176 F.3d 517, 525 n.4 (D.C. Cir. 1999) (internal quotation marks omitted). To the extent they reflected any ambiguity at all, "it was well within the province of the [Department] to determine what [Gebert] meant." *United States v. Safavian*, 528 F.3d 957, 966 n.9 (D.C. Cir. 2008); *see also United States v. Cisneros*, 26 F. Supp. 2d 24, 42 (D.D.C. 1998) ("specific questions asked . . . regarding [responder's] past" were not fundamentally ambiguous); *United States v. Culliton*, 328 F.3d 1074, 1078 (9th Cir. 2003) ("the existence of some ambiguity in a falsely answered question will not shield [one] from a perjury or false statement prosecution").

Gebert stresses the term "embarrassing" in the family question, Pl.'s Resp. at 21; Compl. ¶ 14, but "the term 'embarrassing' is not fundamentally ambiguous *per se*." *United States v. Kerik*, 615 F. Supp. 2d 256, 273 (S.D.N.Y. 2009). Gebert's assertion that "there was [ ] no qualifier to the word 'embarrassing,'" meanwhile, Pl.'s Resp. at 21, is simply incorrect. The question asked him whether "there was any information regarding members of his family that would be a possible source of embarrassment to the United States Department of State"—not whether he had anything "embarrassing" to disclose at all. Compl. ¶ 14. By limiting the scope of inquiry to "members of his family," *id.* the question offered "clarity about the specific information sought." *Kerik*, 615 F. Supp. 2d at 273. And both the specific reference to the Department and the "context" of a clearance adjudication suggested "a mutual understanding" that the question sought to elicit information that someone might exploit to coerce or blackmail one into disclosing classified information. *Id.* ("the

---

situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications" (internal quotation marks omitted)); *Hutchins v. District of Columbia*, 188 F.3d 531, 546 (D.C. Cir. 1999) ("That the fertile legal imagination can conjure up hypothetical cases in which the meaning of disputed terms could be questioned does not render the provision unconstitutionally vague" (internal quotation marks omitted)).

context" of "vetting process for a high-level executive position" suggests "a mutual understanding that the questioner sought general information that might be publicly and politically damaging to the nominee or the President"); *see also Bryant*, 532 F.3d at 893 ("the context in which that term appears . . . makes clear that it relates specifically to elections and policy matters of concern to public officials"); *United States v. Delgado*, 798 F. App'x 105, 107 (9th Cir. 2020) (question asked during background reinvestigation for security clearance not unduly vague given "the context of the inquiry"); *United States v. Sarwari*, 669 F.3d 401, 408 (4th Cir. 2012) ("The context here—an application for a United States passport—is a formal one . . . .  [W]e cannot conclude that the word [ ] is fundamentally ambiguous"). As to the remaining two questions, Gebert does not even attempt to explain how they ostensibly are vague—he simply insists in a conclusory manner that they were, which does not suffice. *See* Pl.'s Resp. at 19-21; *see also Iqbal*, 556 U.S. at 678.

### 2.   Gebert's overbreadth argument lacks merit

Gebert's overbreadth argument is equally meritless. Even if the questions somehow could be construed to punish speech, he offers no reason to think they do so to a degree that is "substantial . . . in relation to [their] plainly legitimate function," *Hicks*, 539 U.S. at 118, of learning what malign actor can exploit to coerce or blackmail one into sharing classified information. *See Ozonoff v. Berzak*, 744 F.2d 224, 230 (1st Cir. 1984) ("'overbreadth' must be measured in light of whatever special job-related security requirements that governmental security . . . needs may reasonably dictate"); *Von Raab*, 489 U.S. at 677; Exec. Order 12,968, § 3.1(b), 60 Fed. Reg. at 40,250.

Gebert's claim that the questions "require applicants to disclose their political associations and speech as well as their ideological beliefs," Pl.'s Resp. at 20, is inaccurate. The questions on their face do not directly elicit any information about political associations, speech, or ideological beliefs. Compl. ¶ 14. To the extent that a person might disclose such information while providing full and truthful answers to these questions, eliciting such information would be at most only an

ancillary, incidental byproduct of the questions, not their primary purpose. *See A.N.S.W.E.R. Coal. v. Basham*, 845 F.3d 1199, 1210 (D.C. Cir. 2017) ("A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)); *Expressions Hair Design v. Schneiderman*, 581 U.S. 37, 47 (2017) (law's "effect on speech would be only incidental to its primary effect"). And even if the questions possibly could be construed "to inquire about an individual's beliefs and associations," they would be proper as "necessary to protect [the] legitimate state interest" in ensuring that those with access to classified information are not vulnerable to coercion or blackmail. *Baird v. State Bar of Ariz.*, 401 U.S. 1, 6-7 (1971).[4]

\*   \*   \*

Finally, Gebert's reliance on *Ozonoff* to support his vagueness and overbreadth arguments is misplaced, as it involved an Executive Order targeting "disloyalty" and "advocacy" of "[t]reason or sedition," terms that "radiate confusion." 744 F.2d at 226, 232. The questions here neither target any speech nor use similarly (or, as explained, any) vague terms. The only "speech" for which Gebert was penalized—his dishonesty during his clearance adjudication—plainly is not protected.[5]

## IV.   <u>Gebert Does Not Plausibly Allege a Due Process Violation</u>

Gebert does not plausibly allege a due process claim under a substantive due process, procedural due process, or equal protection theory, and none of his contrary arguments has merit.

---

[4]    *Clark v. Library of Congress*, 750 F.2d 89, 94-95 (D.C. Cir. 1984), which required a "vital" rather than merely legitimate interest and a least restrictive means analysis, is inapposite, because the questions were not "motivated solely by [Gebert's] lawful beliefs or associations." Regardless, there is a "compelling" interest in safeguarding classified information, *Von Raab*, 489 U.S. at 677, and withdrawing a clearance due to dishonesty is the least restrictive way to protect it, *infra* § 4.C.

[5]    Gebert asserts that the questions here "have not been approved by U.S. Office of Personnel Management," "did not directly relate to any questions on the SF-86," and "exceeded the scope and authority that the interviewer could lawfully inquire about during the personal interview," Pl.'s Resp. at 20, but such conclusory and unformed assertions, unpled in the complaint, are irrelevant.

### A.    Gebert's Substantive Due Process Theory Fails

Gebert's substantive due process claim fails because he does not identify either a protected liberty interest or the egregious and irrational deprivation of a property interest. Gebert asserts two protected interests for purposes of his substantive due process claim—his (1) ability to "express[ ] opinions" without suffering adverse employment consequences, Compl. ¶ 95, and (2) a property interest in using "his annual leave, property, prior to initiation of the [s]uspension without pay," *id.* ¶ 107. As Defendants explained in moving to dismiss, Gebert's speech-based substantive due process argument fails for the same reasons that his First Amendment claims. Defs.' Mem. at 22. Gebert does not dispute, and so concedes, that if his First Amendment claims fail, then his speech-based substantive due process claim fails as well. *See Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) ("if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded"); *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 268 (D.D.C. 2012) ("the Court may treat the plaintiff's failure to oppose the defendant's arguments as a decision to concede those arguments").

Gebert's accrued leave-based substantive due process claim fails, meanwhile, as he was not entitled to use his leave in lieu of non-pay status during his suspension, and any deprivation of such a right was not egregious or irrational. A constitutionally protected property interest requires "a legitimate claim of entitlement." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). "To create a protected property interest, regulations must limit discretion by explicitly mandatory language, i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." *Bloch v. Powell*, 348 F.3d 1060, 1069 (D.C. Cir. 2003) (internal quotation marks omitted). "Generally, a 'claim of entitlement' is not viable when a government agency wields significant or unfettered discretion in determining whether to award or rescind a particular benefit." *Crooks v. Mabus*, 845 F.3d 412, 419 (D.C. Cir. 2016).

Relevant Department policy did not, on its face, entitle Gebert to use his accrued leave in lieu of non-pay status during his suspension. 3 Foreign Affairs Manual § 3418 provides that:

> Annual leave in lieu of non-pay status during suspension may not be granted except when an employee is suspended summarily in the interest of national security under the provisions of 5 U.S.C. 7532. In such case, the employee may request, and with the approval of the appropriate headquarters office, be granted annual leave not to exceed the balance to the employee's credit as of the date of suspension in lieu of non-pay status. In the event the employee is restored with back pay, the annual leave charged for the period covered by back pay is restored.

Thus, Gebert could use accrued leave only if the Department "granted" him its "approval." *Id.*; *see also Crooks*, 845 F.3d at 419 (regulation providing agency "expansive authority and discretion to determine whether an individual should be allowed to remain . . . certainly does not suffice" to create "a protected property interest"); *Wash. Legal Clinic v. Barry*, 107 F.3d 32, 36 (D.C. Cir. 1997) ("no constitutionally protected property interest exists" where "final determination of which eligible individuals receive benefits [is left] to the unfettered discretion of administrators" (cleaned up)); *Fried v. Hinson*, 78 F.3d 688, 692 (D.C. Cir. 1996) ("relevant regulations explicitly permit the agency to not renew an examiner . . . . Because no existing rule even implied that renewal was guaranteed, . . . Fried did not possess a legitimate property interest" (citation omitted)).[6]

Even if Gebert had a property interest in using his leave in lieu of non-pay status, any denial thereof cannot support a substantive due process claim. Property deprivation offends substantive due process only if it amounts to "egregious government misconduct." *George Wash. Univ. v. District of Columbia*, 318 F.3d 203, 209 (D.C. Cir. 2003). As Defendants explained, it was not "irrational," *id.* at 210, to deny Gebert's leave request given his clearance suspension. Defs.' Mem.

---

[6]     While Gebert asserts that he can "only carry over 240 hours of accrued leave" from year to year, such that he must "use or lose it," Pl.'s Resp. at 23, he does not plead any such allegations in his complaint. Regardless, the idea that Gebert loses unused accrued leave at the end of the year is immaterial to the specific substantive due process claim that he raises—that he was denied the ability to use his accrued leave in lieu of non-pay status at the beginning of his suspension.

at 24-25. Gebert responds to this only with conclusory assertions that the denial worked "grave unfairness" and was a "deliberate flouting of the law that trammels significant personal or property rights," Pl.'s Resp. at 23, which are not entitled to be taken as true, *Iqbal*, 556 U.S. at 678, and so concedes the point. *See Wannall*, 775 F.3d at 428; *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 268.

**B.     Gebert's Procedural Due Process Theory Fails**

Gebert's procedural due process claim likewise fails. In his response, Gebert clarified that he asserts only two protected interests—in his job and reputation. Pl.'s Resp. at 24-34. But this Court lacks jurisdiction over any challenge to Gebert's suspension. Regardless, neither interest can support a due process claim, and, regardless, Gebert has received all the process that he is due.

1.     This Court lacks jurisdiction over any challenge to Gebert's suspension

As an initial matter, this Court lacks jurisdiction over any challenge to Gebert's suspension. The Civil Service Reform Act ("CSRA") requires him to raise any such challenge before the Merit System Protection Board ("Board"), then appeal any adverse ruling to the proper U.S. Court of Appeals. *See* 5 U.S.C. § 2302(a)(2)(A)(iii) (CSRA covers suspensions); *Elgin v. Dep't of Treasury*, 567 U.S. 1, 13, 15 (2012) (CSRA's "review scheme is exclusive" even for "constitutional" claims). That is so even though the Board's inability to review clearance suspensions or revocations, *Dep't of Navy v. Egan*, 484 U.S. 518, 526-34 (1988), means that the fact that Gebert "lacked a security clearance, a precondition of the job," effectively "would end the matter." *Zummer v. Sallet*, 37 F.4th 996, 1007 (5th Cir. 2022); *accord Graham v. Ashcroft*, 358 F.3d 931, 935 (D.C. Cir. 2004) (CSRA process is exclusive even if it "provides no relief and precludes other avenues of relief").

2.     Gebert fails to identify a protected interest

Gebert identifies no interest that can support a procedural due process claim. No protected interest lies in a job requiring a clearance, and Gebert does not allege cognizable reputational harm.

*a.   Gebert has no protected interest in his job, as it requires a clearance*

Gebert's interest in his job cannot support a procedural due process claim, as there is no protected interest in a job requiring a clearance. *See* Defs.' Mem. at 26-27 (citing cases). "It should be obvious that no one has a 'right' to a security clearance," *Egan*, 484 U.S. at 528, and it follows axiomatically that "[i]f there is no protected interest in a security clearance, there is no liberty interest in employment requiring such clearance," *Dorfmont v. Brown*, 913 F.2d 1399, 1403 (9th Cir. 1990). Any other result "would swallow the rule that an employee cannot hold a property interest in a security clearance. . . . [F]or jobs that require a clearance," the job and the clearance "form one indivisible whole." *Lamb v. Millennium Challenge Corp.*, 498 F. Supp. 3d 104, 111 (D.D.C. 2020). Thus, as Judge McFadden recently explained, "[w]hile some federal employees may have property interests in their jobs, those who must hold security clearances do not." *Deryck v. Dep't of Def.*, Civ. A. No. 22-3290 (TNM), 2023 WL 3303832, at *3 (D.D.C. May 8, 2023).

*b.   Gebert has no protected interest in his reputation*

While Defendants had assumed in moving to dismiss that Gebert may have a protectable interest in his reputation, Gebert's response makes clear that this assumption was a generous and mistaken one. Indeed, while unnecessary to resolve Defendants' motion, the record is now clear that Gebert's interest in his reputation cannot support a procedural due process claim, under either a reputation-plus or stigma-plus theory.

A plaintiff states a reputation-plus claim where he "points to the conjunction of official defamation and adverse employment action." *O'Donnell v. Barry*, 148 F.3d 1126, 1140 (D.C. Cir. 1998). Under District of Columbia law, defamation requires a "false and defamatory statement," *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 858 (D.C. Cir. 2006) (citation omitted), but Gebert identifies no false or defamatory statement by the Department. He argues in his response that "[s]pokespersons for the Department of State made various statements to the media directly

17

expressing how they did not condone or agree with [his] viewpoints," Pl.'s Resp. at 32, but alleges no such thing in his complaint, *see Hettinga*, 677 F.3d at 477; *Hurd*, 864 F.3d at 686, and anyway, mere "disagreement [does not] constitute defamation" under District of Columbia law, *Smith v. Clinton*, 886 F.3d 122, 129 (D.C. Cir. 2018) (citation omitted); *see also Milkovich v. Lorain J.*, 497 U.S. 1, 21 (1990) (a statement that is not "sufficiently factual to be susceptible of being proved true or false" is not defamatory). Nor is it clear how any such statement could cause "damage to [Gebert's] reputation," *id.* at 11, if, as he says, he is "not ashamed at all of [his] views," Pl.'s Resp. at 15; *accord* Compl. ¶ 33 (Gebert "not ashamed or embarrassed of any of his views or activities").

Gebert's assertion that "the action of revoking his security clearance, in and of itself, was intended by the Department to send a clear message to the public that they did not support [him]," Pl.'s Resp. at 32, does not support a reputation-plus claim, either. Gebert pleads no facts to support a plausible inference that the act of revoking his clearance is a "statement" at all, much less that Defendants publicized that act. *See Hettinga*, 677 F.3d at 477; *Harrison v. Bowen*, 815 F.2d 1505, 1518 (D.C. Cir. 1987) ("there was no publication of the reasons for her dismissal, and thus no stigmatic harm"); *Molerio v. FBI*, 749 F.2d 815, 824 (D.C. Cir. 1984) ("it is doubtful, that [a] confidential and unpublished denial of security clearance, even for a specified defamatory reason, would be sufficiently disseminated to be 'stigmatizing'"). Even if the revocation conveyed that Defendants "did not support" Gebert, Pl.'s Resp. at 32, that would not be defamatory, as explained.

Nor can Gebert state a stigma-plus claim. A stigma-plus claim requires "the combination of an adverse employment action and a stigma or other disability that foreclosed the plaintiff's freedom to take advantage of other employment opportunities." *O'Donnell*, 148 F.3d at 1140 (cleaned up). But a clearance revocation is not the sort of stigma or disability that can support a stigma-plus claim even if it forecloses jobs that require a security clearance, as no protected interest

can lie in a job requiring a clearance. *See supra* § II.B.2.a; *Deryck*, 2023 WL 3303832, at *4 n.5 ("Some tension exists between the stigma-plus line of cases and those affirming the Government's broad discretion to revoke security clearances in the interests of national security. Surely, if the Government considers an employee an ongoing threat, it may preclude that individual from holding a clearance-level position again."); *Garcia*, 2020 WL 134865, at *7 (no stigma-plus claim where "the loss of employment flow[ed] directly from the modification of a security clearance").

*Kartseva v. Department of State*, 37 F.3d 1524, 1528 (D.C. Cir. 1994), does not suggest a different result. It did not involve a security clearance—only a "background check," *id.* at 1536—and thus did not implicate the principle that no protected interest can lie in a security clearance or a job requiring one. *See id.* at 1528 n.16 ("denial of security clearances . . . were not the actions taken against Kartseva . . . . Had she been denied a security clearance, she would have been entitled to extensive procedural safeguards"). Nor is *O'Donnell* to the contrary—while it characterized *Kartseva* as involving a "security clearance" denial, 148 F.3d at 1140, it seems to have been using that term in a loose, colloquial sense to refer merely to an ordinary background check, not an actual security clearance, given that *Kartseva* expressly did not involve a security clearance. Lastly, *Lamb* is not to the contrary, either. In concluding that a stigma-plus claim based on a security clearance denial was viable, the court misread *Kartseva*—a decision that it characterized as "on point"—as involving a clearance, when in fact *Kartseva* did not involve a clearance, as explained above. 498 F. Supp. 3d at 113. Significantly, *Lamb* did not enjoy the benefit of full adversarial briefing on the question of *Kartseva*'s significance as "neither party" there had "cited" *Kartseva*. *Id.*

### 3.    Gebert received all the process he is due

Even if Gebert had a protected interest, he has received all the process he is due. As to his suspension, the CSRA provides constitutionally adequate process, *see Harrison*, 815 F.2d at 1519; Defs.' Mem. at 30-31. Gebert does not respond to this point, and thus concedes it. *See Wannall*,

775 F.3d at 428; *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 268. As to his ostensible reputational interest, the Department's extensive procedures governing clearance revocation offer an adequate opportunity to clear his name. *See Gill v. Dep't of Just.*, 875 F.3d 677, 681 (D.C. Cir. 2017) ("he received all the process that was due: a full hearing before the [agency] where he had the right to counsel and the opportunity to make his case"); *Doe v. Cheney*, 885 F.2d 898, 910 (D.C. Cir. 1989) (revocation process gave opportunity "to refute the charges against [plaintiff] and to clear his name"); *Doe v. Casey*, 796 F.2d 1508, 1524 (D.C. Cir. 1986), *aff'd in part, rev'd in part*, 486 U.S. 592 (1988) (revocation process offered adequate "opportunity to clear [plaintiff's] name").

### C.      Gebert's Equal Protection Theory Fails

Finally, Gebert's equal protection theory fails because his dishonesty during his clearance adjudication furnished a rational basis to suspend and then eventually revoke his clearance. *See* Defs.' Mem. at 31. Gebert argues that strict scrutiny applies because Defendants have violated his First Amendment and Due Process rights, Pl.'s Resp. at 34-35, but does not plausibly allege that Defendants violated those rights. *See supra* §§ III, IV.A-B; Defs.' Mem. at 14-31. Even if strict scrutiny applied, moreover, Defendants have a "compelling interest in protecting [classified] information from those who . . . might compromise such information." *Von Raab*, 489 U.S. at 677 (cleaned up). And suspending and then revoking Gebert's clearance due to his dishonesty during his clearance adjudication is the least restrictive means to protect that interest, as Gebert "cannot reasonably expect to keep from [the Department] personal information that bears directly on [his] fitness" to access classified information. *Id.* at 672; *cf. id.* at 677 ("employees who seek promotions to positions where they would handle sensitive information can be required to submit to a urine test . . . especially if the positions . . . require background investigations . . . that may be expected to diminish their expectations of privacy").

## V.   <u>Gebert Does Not Plausibly Allege an APA Violation</u>

In moving to dismiss, Defendants explained that neither the suspension and then eventual revocation of Gebert's clearance nor the termination of his health insurance coverage could support an APA claim. *See* Defs.' Mem. at 31-33. In response, Gebert clarifies that he does not actually challenge the suspension or revocation of his clearance—only the Department's failure to respond to his records requests. *See* Pl.'s Resp. at 35-36. But APA review is available only when, as relevant here, "there is no other adequate remedy." 5 U.S.C. § 704. Because FOIA and the Privacy Act provide adequate remedies to compel the production of any withheld records, Gebert cannot premise an APA claim on the Department's failure to produce any such records. *See Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*, 846 F.3d 1235, 1246 (D.C. Cir. 2017) ("FOIA offers an 'adequate remedy' within the meaning of [the APA] such that [an] APA claim is barred."); *Elec. Privacy Info. Ctr. v. IRS*, 910 F.3d 1232, 1244 (D.C. Cir. 2018) (no APA claim because FOIA provides "the very relief [plaintiff] seeks"); *Harrison v. Fed. Bureau of Prisons*, 248 F. Supp. 3d 172, 182 (D.D.C. 2017) ("a plaintiff cannot bring an APA claim to obtain relief for an alleged Privacy Act violation" (internal quotation marks omitted)).

Nor does the termination of Gebert's health insurance coverage support an APA claim. He asserts that Defendants did not provide him proper notice or explain his available benefits options, Pl.'s Resp. at 37-38, but pleads no facts to support a plausible inference that any such action either was "final agency action," 5 U.S.C. § 704, or caused him harm, *see id.* § 706 (harmless error rule). Defs.' Mem. at 33 n.10. Gebert does not respond to, and thus concedes, these points. *See Wannall*, 775 F.3d at 428; *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 268. And although Gebert argues that retroactively cancelling his coverage was arbitrary or capricious, he offers no arguments or citation to relevant authority to support this wholly conclusory assertion. *See Iqbal*, 556 U.S. at 678.

**VI.**    <u>**Gebert Does Not State a FOIA or Privacy Act Claim**</u>

     In moving to dismiss, Defendants explained that Gebert's FOIA and Privacy Act claims fail because "he did not describe the records sought reasonably and in enough detail to permit their identification." Defs.' Mem. at 36. His requests, phrased using the indeterminate terms "pertaining to" and "related to," as a matter of law did not reasonably describe the records sought. *See id.* at 33-37 (collecting cases). In response, Gebert disregards the sizable body of case law recognizing that such indeterminate language does not suffice to reasonably describe records. He argues only that because the Department has produced some responsive records, he necessarily described the records reasonably and in sufficient detail. Pl.'s Resp. at 38. That does not follow, for two reasons.

     First, the Department could have chosen to go above and beyond the minimal obligations FOIA and the Privacy Act imposed on it. *See Welsh v. Dep't of State*, Civ. A. No. 21-1380 (TJK), 2023 WL 2424606, at *4 (D.D.C. Mar. 8, 2023) ("The State Department's discretionary decision to go beyond its FOIA obligations . . . does not change" those obligations, so the fact "that the Department has shown that it can . . . provide [certain] information" does not mean that it "*should* provide such" information (internal quotation marks omitted)); *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 258 (D.C. Cir. 1977) ("an agency may impose upon itself a more liberal disclosure rule than that required by the FOIA"). And "[p]enalizing agencies by holding that they waive their [failure to describe] defense if they make a discretionary document release . . . would not advance the underlying purpose of the FOIA—the broadest possible responsible disclosure of government documents." *Greenberg v. Dep't of Treasury*, 10 F. Supp. 2d 3, 23 (D.D.C. 1998).

     Second, the fact that the Department found some responsive records does not mean it could "determine precisely what records [were] requested," *Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982) (cleaned up). The problem with Gebert's requests is not that the impossibility of identifying any responsive records at all, but the significant zone of indeterminacy they create. Many records

requests will suffice to enable an agency to locate at least a few pieces of low-hanging fruit. Were that enough to reasonably describe records sought, this requirement would be drained of substance.

## VII.   Gebert is Not Entitled to Damages

Gebert is not entitled to damages against (1) the Department due to sovereign immunity or (2) the individual defendants because *Bivens* relief is unavailable and qualified immunity applies.

### A.   The Back Pay Act Does Not Waive the Department's Sovereign Immunity

In moving to dismiss, Defendants explained that sovereign immunity bars a damages claim against the Department. *See* Defs.' Mem. at 37. Gebert argues that the Back Pay Act abrogates that immunity, Pl.'s Resp. at 39, but that statute applies only if "a timely appeal or an administrative determination" results in a favorable finding by an "appropriate authority," 5 U.S.C. § 5596(b)(1), a term that means "the agency itself, or the [Board] or the [proper] Federal Circuit." *United States v. Fausto*, 484 U.S. 439, 454 (1988). Gebert has not sought administrative review or filed an appeal of any sort, and no appropriate authority has ruled in his favor. *See Gilbert v. FDIC*, 950 F. Supp. 1194, 1198 (D.D.C. 1997) ("an independent determination has not been made by any authority (including this court) that [plaintiff] suffered an unwarranted or unjustified personnel action").

### B.   Gebert is Not Entitled to *Bivens* Relief

Gebert is not entitled to *Bivens* relief because his claims all arise in a new context, and both national security concerns and alternative remedial structures are special factors foreclosing relief.

#### 1.   Gebert's claims arise in a new context

Gebert "concedes" that his First Amendment claims arise in "a new context," but argues that his due process claims "align closer to" *Davis v. Passman*, 442 U.S. 228 (1979). Pl.'s Resp. at 41. *Davis*, which "permitted a congressional staffer to sue a congressman for sex discrimination under the Fifth Amendment," *Egbert v. Boule*, 142 S. Ct. 1793, 1808 (2022), is "meaningfully different"—Gebert is not a congressional staffer, does not sue a congressman, does not allege sex

discrimination, and sues individuals involved in adjudicating clearances, who are "a new category of defendants." *Id.* at 1803 (cleaned up). "The only similarity between his case and *Davis* is that both invoke the Fifth Amendment." *Deryck*, 2023 WL 3303832, at *7. And "[e]ven assuming the factual parallels are as close as [he] claims, [*Davis*] carries little weight because it predates [the] current approach to implied causes of action and diverges from [it]." *Egbert*, 142 S. Ct. at 1808.

2.     Special factors foreclose *Bivens* relief

Two special factors foreclose *Bivens* relief. First, *Bivens* relief "may not lie where, as here, national security is at issue." *Egbert*, 142 S. Ct. at 1805. Granting Gebert *Bivens* relief would pose a "risk of undermining" adjudications of security clearances. *Id.* at 1804 (internal quotation marks omitted). While Gebert tries to "distinguish[ ]" D.C. Circuit cases disallowing *Bivens* relief in the national security context in a "fact-specific" manner, Pl.'s Resp. at 42-43, *Egbert* itself disallows such claims categorically. *Id.* at 1804. Regardless, special factor analysis does not turn on "the balance of circumstances in the particular case," as "such a narrow level of generality" will "impair governmental interests" and "frustrate Congress' policymaking role." *Id.* at 1805 (cleaned up).

Second, alternative remedial structures—namely, the CSRA and Department's clearance adjudication process—preclude *Bivens* relief. *See* Defs.' Mem. at 42-43; *Egbert*, 142 S. Ct. at 1804 ("a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure" (internal quotation marks omitted)). While Gebert asserts that the Department "blatantly ignores and/or refuses to actually go through the process," Pl.'s Resp. at 43, that cannot be true as to the CSRA process, which he has never pursued. And it would be immaterial even were it true (it is not), because what matters is whether "Congress or the Executive has created a remedial process that *it* finds sufficient," not whether that remedy "is adequate" or leaves a wrong "unredressed," *Egbert*, 142 S. Ct. at 1804, 1807 (emphasis added).

C.       **The Individual Defendants are Entitled to Qualified Immunity**

In moving to dismiss, Defendants explained that the individual defendants are entitled to qualified immunity. Defs.' Mem. at 43-44. Gebert does not dispute, and so concedes, that they are entitled to qualified immunity as to his due process claims. *See Wannall*, 775 F.3d at 428; *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 268. As to his First Amendment claims, he cites no authority that puts the "question beyond debate . . . in light of the specific context of the case"—a clearance adjudication—not merely "as a broad general proposition." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (internal quotation marks omitted); Pl.'s Resp. at 45. To the contrary, the question is not clearly established—the D.C. Circuit has expressly left open whether "clearance decisions" can "deprive[ ] an individual of their constitutional rights." *Gill*, 875 F.3d at 682; *see also Palmieri*, 896 F.3d at 590 (Katsas, J., concurring) ("At some point, we will likely need to decide it"). As such, any violation of Gebert's constitutional rights would not have been clearly established.

## CONCLUSION

This Court should dismiss Gebert's complaint.

Dated: May 18, 2023                              Respectfully submitted,

                                                 MATTHEW M. GRAVES
                                                 D.C. Bar No. 481052
                                                 United States Attorney

                                                 BRIAN P. HUDAK
                                                 Chief, Civil Division

                                                 By: /s/_____
                                                      BRADLEY G. SILVERMAN
                                                      D.C. Bar No. 1531664
                                                      Assistant United States Attorney
                                                      601 D Street NW
                                                      Washington, DC 20530
                                                      (202) 252-2575
                                                      bradley.silverman@usdoj.gov

                                                 *Attorneys for the United States of America*