UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MATTHEW GEBERT,

                *Plaintiff*,

    v.

U.S. DEPARTMENT OF STATE et al.,

                *Defendants*.

Civil Action No. 22-2939 (DLF)

**REPLY IN SUPPORT OF DEFENDANTS' MOTION
<u>TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iv

ARGUMENT ....................................................................................................................... 1

I.     This Court Lacks Personal Jurisdiction Over the Individual Defendants .......................... 1

II.    Gebert Failed to Perfect Service of Process on Quiram and John Does 1-10 ................... 2

III.   Gebert Fails to State a Plausible First Amendment Claim ............................................... 2

       A.     Gebert Fails to State a Plausible First Amendment Retaliation Claim ................. 2

              1.     The *Sludge* article does not support a plausible inference of retaliation .... 7

              2.     The Department's response to the records requests does not suggest
                     pretext ........................................................................................................ 8

              3.     Defendants have already addressed Gebert's remaining arguments ........... 9

       B.     Gebert Fails to State a Plausible Overbreadth Claim .............................................. 9

IV.    Gebert Fails to State a Plausible Due Process Claim ...................................................... 11

       A.     Gebert Fails to State a Plausible Substantive Due Process Claim ...................... 11

       B.     Gebert Fails to State a Plausible Procedural Due Process Claim ........................ 13

              1.     Gebert fails to identify a protected interest ............................................... 13

                     a.     Gebert has no protected interest in his job-related benefits .......... 13

                     b.     Gebert was not deprived of any right to speak or voice his
                            opinions ...................................................................................... 14

                     c.     Gebert was not deprived of any protected interest in his
                            reputation ..................................................................................... 15

                            i.     Gebert fails to state a plausible reputation-plus claim ...... 15

                            ii.    Gebert fails to state a plausible stigma-plus claim ........... 16

              2.     Gebert received all the process he is due ................................................... 16

       C.     Gebert Fails to State a Plausible Vagueness Claim .............................................. 17

              1.     Gebert was not deprived of a protected interest ........................................ 17

       2.      The questions at issue do not regulate speech ........................................... 17

       3.      The questions at issue are not vague ........................................................ 17

    D.      Gebert Fails to State a Plausible Equal Protection Claim..................................... 18

V.      Gebert Fails to State a Plausible APA Claim...................................................................... 19

    A.      Gebert Fails to State an APA Claim as to the Revocation of His Clearance........ 19

    B.      Gebert Fails to State an APA Claim as to His Health Insurance's Termination .. 20

    C.      Gebert Did Not Raise an Unreasonable Delay Claim in His Pleadings ............... 20

VI.    Gebert Does Not State a FOIA or Privacy Act Claim ...................................................... 20

VII.   Gebert is Not Entitled to Damages ................................................................................... 22

    A.      The Back Pay Act Does Not Waive the Department's Sovereign Immunity ....... 22

    B.      Gebert is Not Entitled to *Bivens* Relief............................................................... 22

       1.      Gebert's claims arise in a new context .................................................... 22

       2.      Special factors foreclose *Bivens* relief .................................................... 23

    C.      The Individual Defendants are Entitled to Qualified Immunity .......................... 24

CONCLUSION.................................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................... 3, 8, 13

*Bd. of Regents v. Roth*,
  408 U.S. 564 (1972) .............................................................................................. 12

*Bivens v. Six Unknown Named Agents*,
  403 U.S. 388 (1971) ................................................................................................ 1

*Bloch v. Powell*,
  348 F.3d 1060 (D.C. Cir. 2003) ............................................................................ 12

*Bryant v. Gates*,
  532 F.3d 888 (D.C. Cir. 2008) .............................................................................. 18

*Buchanan v. Barr*,
  71 F.4th 1003 (D.C. Cir. 2023) ............................................................................. 23

*Collingsworth v. Drummond Co. Inc.*,
  Civ. A. No. 19-1263 (ABJ), 2020 WL 2800612 (D.D.C. May 29, 2020) ................................ 2

*Comm. on Ways & Means v. Dep't of Treasury*,
  45 F.4th 324 (D.C. Cir. 2022) ................................................................................. 2

*Council on Am.- Islamic Rels. Action Network, Inc. v. Gaubatz*,
  31 F. Supp. 3d 237 (D.D.C. 2014) ........................................................................ 20

*Crooks v. Mabus*,
  845 F.3d 412 (D.C. Cir. 2016) .............................................................................. 12

*Davis v. Passman*,
  442 U.S. 228 (1979) .............................................................................................. 22

*Dep't of Navy v. Egan*,
  484 U.S. 518 (1988) ................................................................................................ 5

*Deryck v. Dep't of Def.*,
  Civ. A. No. 22-3290 (TNM), 2023 WL 3303832 (D.D.C. May 8, 2023) ................................ 23

*Doe v. Casey*,
  796 F.2d 1508 (D.C. Cir. 1986) ............................................................................ 16

**Cases (cont.)**

*Doe v. Cheney*,
    885 F.2d 898 (D.C. Cir. 1989) ............................................................................ 16

*Egbert v. Boule*,
    142 S. Ct. 1793 (2022) ......................................................................... 22, 23, 24

*Florio v. Gallaudet Univ.*,
    619 F. Supp. 3d 36 (D.D.C. 2022) ..................................................................... 15

*Fried v. Hinson*,
    78 F.3d 688 (D.C. Cir. 1996) ............................................................................. 13

*George Wash. Univ. v. District of Columbia*,
    318 F.3d 203 (D.C. Cir. 2003) ........................................................................... 13

*Gilbert v. FDIC*,
    950 F. Supp. 1194 (D.D.C. 1997) ...................................................................... 22

*Gill v. Dep't of Just.*,
    875 F.3d 677 (D.C. Cir. 2017) ................................................................ 16, 19, 24

*Goland v. CIA*,
    607 F.2d 339 (D.C. Cir. 1978) .............................................................................. 8

*Graham v. Connor*,
    490 U.S. 386 (1989) ............................................................................................ 11

*Greenberg v. Dep't of Treasury*,
    10 F. Supp. 2d 3 (D.D.C. 1998) ..................................................................... 7, 21

*Hairston v. Vance-Cooks*,
    773 F.3d 266 (D.C. Cir. 2014) ........................................................................... 2, 7

*Hettinga v. United States*,
    677 F.3d 471 (D.C. Cir. 2012) ........................................................................... 15

*Hodge v. Talkin*,
    799 F.3d 1145 (D.C. Cir. 2015) ......................................................................... 17

*Kartseva v. Dep't of State*,
    37 F.3d 1524 (D.C. Cir. 1994) ........................................................................... 16

*Lapera v. Fed. Nat'l Mortg. Ass'n*,
    210 F. Supp. 3d 164 (D.D.C. 2016) ................................................................... 20

**Cases (cont.)**

*Lewis v. Mutond,*
    62 F.4th 587 (D.C. Cir. 2023) ................................................................. 1

*Mead Data Cent., Inc. v. Dep't of Air Force,*
    566 F.2d 242 (D.C. Cir. 1977) ............................................................... 21

*Military Audit Proj. v. Casey,*
    656 F.2d 724 (D.C. Cir. 1981) ................................................................. 8

*Nat'l Sec. Counselors v. CIA,*
    898 F. Supp. 2d 233 (D.D.C. 2012) .................................... 12, 16, 19, 24

*Newdow v. Roberts,*
    603 F.3d 1002 (D.C. Cir. 2010) ............................................................... 2

*Oryszak v. Sullivan,*
    576 F.3d 522 (D.C. Cir. 2009) ......................................................... 19, 20

*Ozonoff v. Berzak,*
    744 F.2d 224 (1st Cir. 1984) ................................................................. 10

*Palmieri v. United States,*
    896 F.3d 579 (D.C. Cir. 2018) ........................................................... 1, 24

*Price v. Unite Here Local 25,*
    883 F. Supp. 2d 146 (D.D.C. 2012) ..................................................... 15

*Rivas-Villegas v. Cortesluna,*
    142 S. Ct. 4 (2021) ............................................................................... 24

*Statewide Bonding, Inc. v. Dep't of Homeland Sec.,*
    980 F.3d 109 (D.C. Cir. 2020) ............................................................. 14

*Trump v. Thompson,*
    20 F.4th 10 (D.C. Cir. 2021) ................................................................... 9

*United States v. Caceres,*
    440 U.S. 741 (1979) ............................................................................. 10

*United States v. Fausto,*
    484 U.S. 439 (1988) ............................................................................. 22

*United States v. Safavian,*
    528 F.3d 957 (D.C. Cir. 2008) ............................................................. 18

**Cases (cont.)**

*United States v. Williams*,
553 U.S. 285 (2008) ........................................................................................... 17

*United States v. Yunis*,
924 F.2d 1086 (D.C. Cir. 1991) ........................................................................ 10

*Vantage Commodities Fin. Servs. I, LLC v. Willis Ltd.*,
531 F. Supp. 3d 153 (D.D.C. 2021) ................................................................... 15

*Virginia v. Hicks*,
539 U.S. 113 (2003) ............................................................................................. 9

*Wannall v. Honeywell, Inc.*,
775 F.3d 425 (D.C. Cir. 2014) ........................................................ 12, 16, 19, 24

*Wash. Legal Clinic v. Barry*,
107 F.3d 32 (D.C. Cir. 1997) ............................................................................ 13

*Welsh v. Dep't of State*,
Civ. A. No. 21-1380 (TJK), 2023 WL 2424606 (D.D.C. Mar. 8, 2023) ................ 21

*Yeager v. DEA*,
678 F.2d 315 (D.C. Cir. 1982) ......................................................................... 21

**Statutes**

5 U.S.C. § 5596(b)(1) ................................................................................................ 22

**Other Authorities**

3 Foreign Affairs Manual § 3418 ............................................................................. 12

Exec. Order 12,968, 60 Fed. Reg. 40,234 (Aug. 2, 1995) ..................................... 4, 11

Standard Form 86, *Questionnaire for National Security Positions*, Off. of Personnel Mgmt. ...... 18

**Rules**

Fed. R. Civ. P. 4 ........................................................................................................ 2

**Regulations**

5 C.F.R. § 890.502(b) ........................................................................................ 14, 20

Defendants—certain entities and individuals allegedly involved in the decisions to suspend

and/or revoke Plaintiff Matthew Gebert's security clearance due to his lack of candor during his

clearance background reinvestigation—respectfully reply in support of their motion to dismiss.

**ARGUMENT**

This Court lacks personal jurisdiction over the individual defendants, and Gebert failed to

perfect service of process on some defendants. He does not plausibly allege any of his claims, and

is not entitled to damages—sovereign immunity shields the Department of State ("Department"),

while the doctrine announced in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), offers

no relief against the individual defendants, who, regardless, are entitled to qualified immunity.

**I.      This Court Lacks Personal Jurisdiction Over the Individual Defendants**

A court lacks personal jurisdiction over officials "in their personal capacity" if their "only

alleged conduct in the District was undertaken in their official capacity." *Palmieri v. United States*,

896 F.3d 579, 590 (D.C. Cir. 2018). The individual defendants acted in their official capacities in

taking the only acts in this District that Gebert challenges, so the Court lacks personal jurisdiction

over them. *Id.* Gebert tries to distinguish *Palmieri* on the ground that there, the challenged acts all

occurred outside the District and the individual defendants' only tie to this District was their federal

employment, but that is irrelevant to *Palmieri*'s reasoning—all that mattered is that the defendants

took the only challenged acts in this District in their official capacities. 896 F.3d at 590. As such,

even if the District of Columbia long-arm statute reaches the individual defendants, it does so only

in their official capacities. *Id.* And notably, the Office of Personnel Security and Suitability, within

the Department's Bureau of Diplomatic Security, is located in Arlington, Virginia, making it all

the less plausible that the suspension and/or revocation of his clearance occurred in this District at

all. *See* Ex. A, Stankus Decl. ¶ 2. Nor is Gebert entitled to discovery, as he fails at the threshold to

allege personal jurisdiction plausibly. *See Lewis v. Mutond*, 62 F.4th 587, 592 (D.C. Cir. 2023).

## II.   **Gebert Failed to Perfect Service of Process on Quiram and John Does 1-10**

Although this Court gave Gebert until April 21, 2023 to perfect service, *see* Min. Order (Feb. 21, 2023), Gebert never timely served Defendant Douglas Quiram, and never served John Does 1 to 10. Although Gebert claims that he served Quiram, he plainly served the wrong person. *See* Quiram Decl., ECF No. 31-1. Nor did he serve the Attorney General, as is necessary to serve Quiram and the Does, Fed. R. Civ. P. 4(i)(1)(B), 4(i)(2), 4(i)(3), and the undersigned did not accept service on the Attorney General as to Quiram or John Does 1 to 10. And Gebert fails to show that the identities of John Does 1 to 10 "will eventually be made known through discovery," *Newdow v. Roberts*, 603 F.3d 1002, 1010 (D.C. Cir. 2010), as he pleads virtually no facts about them at all. *See Collingsworth v. Drummond Co. Inc.*, Civ. A. No. 19-1263 (ABJ), 2020 WL 2800612, at *14 (D.D.C. May 29, 2020), *aff'd*, 839 F. App'x 567 (D.C. Cir. 2021) (courts will dismiss "unnamed defendants where the complaint fails to allege specific allegations of wrongdoing against them").

## III.   **Gebert Fails to State a Plausible First Amendment Claim**

As Defendants explained in moving to dismiss, Gebert does not plausibly allege that they retaliated against him due to his white nationalist views or that the questions at issue are overbroad.

### A.   **Gebert Fails to State a Plausible First Amendment Retaliation Claim**

An essential element of a First Amendment retaliation claim is that an employer acted with "retaliatory motive." *Comm. on Ways & Means v. Dep't of Treasury*, 45 F.4th 324, 340 (D.C. Cir. 2022). In determining whether or not an employer's stated reason for its action is pretextual, "the key question is not the correctness or desirability of the reasons offered but whether the employer honestly believes in the reasons it offers." *Hairston v. Vance-Cooks*, 773 F.3d 266, 273 (D.C. Cir. 2014) (internal quotation marks omitted). To state a plausible First Amendment retaliation claim, Gebert thus must plausibly allege not merely that he subjectively intended to be candid, but that Defendants did not truly believe that he had been uncandid—i.e., that Defendants' stated reason

2

was not merely wrong or even unreasonable, but insincere. *Id.* This is a tall order, one he does not

meet. Gebert pleads only bare speculation and innuendo, not facts to support a plausible inference

that Defendants suspended/revoked his clearance due to his white nationalist beliefs, rather than

due to his lack of candor during his interview. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[1]

There is no merit to Gebert's argument that because the information he failed to disclose

relates to matters that the First Amendment protects, Defendants cannot require him to disclose

such information, or suspend/revoke his clearance for failing to disclose it. While Gebert has every

right to adhere to his beliefs and, within certain legal limits, act or associate based on those beliefs,

he has no constitutional right to conceal responsive information when answering a question posed

to him during a background reinvestigation for a job that requires a security clearance, even if that

information touches upon protected beliefs. Defs.' Mem. at 13-14. The Constitution may protect

adherence to white nationalism, but it does not protect uncandor during a clearance investigation.

Nor did Defendants engage in viewpoint discrimination simply by deeming Gebert's white

nationalist activities and associations to be responsive to the questions posed to him. It is simply a

fact that white nationalism is highly stigmatic—indeed, Gebert emphasizes that fact himself. *See,*

*e.g.*, Am. Compl. ¶ 54 ("Gebert knows that his opinions are unpopular and that many people would

be offended. He knows that society does not accept them."); Pl.'s Resp. at 11-12 (same). Enemies

of the nation thus could exploit a person's concealed white nationalist activities or associations to

coerce that person into divulging classified information. Recognizing this commonsense factual

point, for purposes of determining whether Gebert's activities and associations are responsive to

the questions at issue, is not discrimination against white nationalism. The First Amendment does

---

[1]     As a threshold matter, Gebert's insistence that he did not lack candor in filling out his SF-86, *see* Pl.'s Resp. at 4, is beside the point, as Defendants suspended/revoked his clearance due to his uncandor in answering questions during a subsequent interview, Am. Compl. ¶¶ 14, 29, 59.

not require Defendants to turn a blind eye to this reality, or tolerate a risk of entrusting access to classified information to someone who might be vulnerable to coercion. *See Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 677 (1989) (recognizing the "compelling interest" in securing classified information "from those who, under compulsion of circumstances or for other reasons, might compromise" it (cleaned up)); Exec. Order 12,968 § 3.1(b), 60 Fed. Reg. 40,234, 40,250 (Aug. 2, 1995) (eligibility for access to classified information requires "freedom from . . . potential for coercion"). Notably, the questions were phrased in a way that did not cast moral judgment on Gebert, which undermines any inference of discriminatory intent. One question asked whether he had associations that could be used to criticize, impugn, to attack his character "even unfairly." Am. Compl. ¶ 14. Another question asked merely whether anyone would "criticize or oppose" his federal employment. *Id.* And a third question asked about "possible" sources of embarrassment. *Id.* These innocuous questions do not suggest animus based on First Amendment-protected beliefs.

Nor does the bare fact that answering the questions candidly would have entailed disclosing white nationalist activities and associations somehow mean that the questions discriminate against white nationalists. A question that seeks to elicit information that might make one susceptible to coercion naturally will tend to elicit some information relating to beliefs, activities, or associations that the First Amendment protects—that does not suggest that the question targets those subjects, or excuse a person from disclosing otherwise-responsive information that happens to concern such subjects. Notably, Gebert's reasoning, if accepted, would give individuals underdoing clearance investigations a constitutional right to conceal the very information that may make them vulnerable to coercion, merely so long as that information touches on some constitutionally-protected matter. Such a rule would severely degrade the government's ability to investigate individuals to whom it entrusts access to classified information, and thus, protect such information. It also would infringe

upon the President's constitutional authority and responsibility to control the dissemination of national security information, including eligibility for access to classified information. *See Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988) (the President's "authority to classify and control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to occupy a position in the Executive Branch that will give that person access to such information flows primarily from this constitutional investment of power in the President and exists quite apart from any explicit congressional grant" (citing U.S. Const. art. II, § 2)).

The fact that the questions did not specifically ask about white nationalist activities and/or associations, meanwhile, does not mean that Gebert's white nationalist activities and associations were non-responsive to them. That is because his activities and associations fell within the plain sweep of the questions' broad phrasing. Gebert thus was obliged to disclose this information even though the questions did not ask about white nationalism specifically. A contrary conclusion would enable the government to elicit information about a matter that may make a person vulnerable to coercion only by asking specifically about that precise topic, rather than through general questions. Turning over countless individual stones in this manner would not only be inefficient, but run a risk of inadvertently failing to elicit important information that a question framed in broad, general terms would elicit. The fact that the questions did not, on their face, relate to Gebert's beliefs is relevant only insofar as it underscores Defendants' utter disinterest in his beliefs for their own sake. All Defendants wanted to know was whether he might be vulnerable to coercion. Ironically, being honest during his reinvestigation about his white nationalist activities and associations would have been a more prudent way for Gebert to attempt to demonstrate that these things were unlikely to render him vulnerable to coercion than was concealing them.

Unsurprisingly, Gebert repeatedly attempts to muddy the waters with arguments that have no relevance to his claims. This case does not present the question of whether Defendants could have suspended/revoked his clearance due to his white nationalist activities and/or associations, because Gebert pleads no facts to support a plausible inference that Defendants did so. Rather, his pleadings show only that Defendants suspended/revoked his clearance due to his dishonesty during his background reinvestigation. Likewise, whether other activities or associations that are not at issue here, such as support for LGBT rights or the Black Lives Matter movement, are so stigmatic that omitting them from one's responses to the questions at issue here would render such responses uncandid has no bearing on whether Defendants sincerely believed that Gebert's own responses to the questions were uncandid. Defendants surely would be likelier to conclude that omitting such facts from one's response reflected a lack of candor if the respondent took active steps to conceal such facts from becoming known, as Gebert did. And plainly, not every activity or association is as stigmatic as white nationalism, so whether different activities or associations clear that high bar says nothing about whether candor required Gebert to disclose his own activities or associations.

Gebert's argument that by wearing a hat and sunglasses to the Unite the Right Rally and using pseudonyms online and on podcasts, he was not concealing anything from the government, misses the point. These actions show that Gebert understood the stigmatic nature of his activities and associations and took steps to conceal them. In fact, he concedes outright that wearing the hat and sunglasses and using pseudonyms were "attempts to keep his unpopular political/ideological beliefs private from the world at large." Pl.'s Resp. at 11. That supported Defendants' belief that he likewise deliberately concealed such activities and associations during the investigation. Gebert opines that certain other explanations are more "logical," *id.* at 10, but whether or not that is so is immaterial—what matters is only whether Defendants sincerely believed that Gebert had been

uncandid, not whether he in fact was. *See Hairston*, 773 F.3d at 273. Anyway, it is hardly illogical to conclude that Gebert deliberately concealed his white nationalist activities and associations from the government when he had on prior occasions taken steps to prevent them from becoming known.

Gebert also mischaracterizes the significance that Defendants attributed to his remark that "[t]here are bigger things than a career and a paycheck, and I don't want to lose mine." Am. Compl. ¶ 26. As explained, the Department cited this statement only as evidence of Gebert's motive and intent for uncandor—"Gebert understood that his connection to white nationalism (if discovered) could end his career with the Department of State." *Id.*; Defs.' Mem. at 20-21. While he disputes this interpretation, he pleads no facts to support a plausible inference that Defendants themselves did not sincerely believe it, which is the only relevant question. *See Hairston*, 773 F.3d at 273.

Finally, Gebert marshals various allegations that he argues show that Defendants retaliated against him due to his protected speech—including the *Sludge* article's publication, the manner in which the Department responded to his records requests, the Department's possession of articles relating to the *Hatewatch* article and its aftermath, and certain statements the Department made after the *Hatewatch* article's publication—but none supports a plausible inference to that effect.

      1.    The *Sludge* article does not support a plausible inference of retaliation

The *Sludge* article undermines, not supports, Gebert's allegation of retaliation. By Gebert's own account, Defendants knew that he harbored white nationalist beliefs for over a year before the *Hatewatch* article's publication, yet took no action against him during that time. That only bolsters Defendants' point that they suspended/revoked Gebert's clearance due not to his beliefs, but only for his uncandor during his clearance interview, which the *Hatewatch* article brought to light. While Gebert emphasizes that he was never asked about the *Sludge* article during his earlier January 2019 clearance interview, that only underscores that Defendants did not think that his beliefs were relevant to his clearance adjudication in and of themselves. Only once the *Hatewatch*

article revealed that Gebert had concealed his white nationalist activities and associations during his clearance investigation did Defendants have reason to believe that he had been uncandid, thus leading to the suspension and then revocation of his clearance.

Nor does Defendants' alleged knowledge of the *Sludge* article at the time of the clearance interview mean they knew that Gebert was withholding information, but did not care. The *Sludge* article revealed only that he made contributions totaling $1,225 to two political candidates, one of whom had made "racist and anti-Semitic statements" and the other of whom was "outspoken about preserving public Confederate flags and monuments." Defs.' Mem. at 17. Such information was unresponsive to the questions at issue. The *Hatewatch* article, in contrast, revealed information that plainly was responsive to the questions. *See id.* at 18. The *Hatewatch* article also revealed that Gebert took deliberate steps to conceal his white nationalist activities and associations from the public, whereas the *Sludge* article only spotlighted information about his campaign donations that already was publicly available. *Id.* And the *Hatewatch* article revealed activities by Gebert's wife that were responsive to the question about his family, while the *Sludge* article said nothing about his family. *Id.* at 18-19; Am. Compl. ¶ 14. The *Hatewatch* article thus revealed significant new information showing that Gebert had been uncandid during his clearance interview.

> 2.    The Department's response to the records requests does not suggest pretext

Nor does the Department's response to Gebert's records requests suggest pretext. Neither a delay in responding to a records request nor withholding records suggests bad faith in general, and Gebert pleads no facts to suggest otherwise here. *See Iqbal*, 556 U.S. at 678; *Military Audit Proj. v. Casey*, 656 F.2d 724, 745 (D.C. Cir. 1981) ("no indication of bad faith" from withholding records); *Goland v. CIA*, 607 F.2d 339, 355 (D.C. Cir. 1978) ("delay alone cannot be said to indicate an absence of good faith"). Whether or not the Department's response to Gebert's records requests can support a FOIA or Privacy Act claim, they do not suggest retaliation due to his speech.

3.    Defendants have already addressed Gebert's remaining arguments

Gebert's remaining arguments merit little analysis, as Defendants already addressed them in moving to dismiss, and Gebert offers nothing new in response. He asserts that "[h]undreds of pages of 'investigative' material in this matter are nothing but copies of media articles discussing Gebert and shaming the Department for employing him," and cites the Departments' statements that it is "[c]ommitted to providing an inclusive workplace" and "to providing a workplace that is free from discriminatory harassment." Pl.'s Resp. at 18-19. Defendants have explained why these facts plainly do not support a plausible inference that they retaliated against Gebert because of his white nationalist activities or associations, *see* Defs.' Mem. at 20, and Gebert adds nothing further.

\*        \*        \*

For all these reasons, Gebert fails to state a plausible First Amendment retaliation claim.

**B.    Gebert Fails to State a Plausible Overbreadth Claim**

Gebert's overbreadth claim likewise fails. As a threshold matter, none of the questions at issue "punishes" speech at all, *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003), as they are simply questions. The only "punishment"—to the extent that this term even applies to a security clearance suspension or revocation—at issue here is the prohibition on lack of candor during a clearance investigation, but such uncandor plainly is not protected speech. What "cause[d] [Gebert] to lose [his] security clearance and [his] career" is not the questions themselves, as Gebert argues, Pl.'s Resp. at 21, but rather, only his own lack of candor in his responses to those questions.

In any event, Gebert fails to show that any of the questions are overbroad. While he argues that "the questions . . . are so broad it is impossible to determine what they actually cover, as they cover everything and nothing all at once," Pl.'s Resp. at 20, he fails to flesh out this conclusory assertion with analysis or citation to authority. *See Trump v. Thompson*, 20 F.4th 10, 46 (D.C. Cir. 2021) ("'mentioning an argument in the most skeletal way, leaving the court to do counsel's work,

create the ossature for the argument, and put flesh on its bones is tantamount to failing to raise it'"). In moving to dismiss, Defendants explained at length why the questions at issue are not overbroad. *See* Defs.' Mem. at 22. Tellingly, Gebert does not engage with this analysis at all.

Gebert's reliance on *Ozonoff v. Berzak*, 744 F.2d 224 (1st Cir. 1984), is misplaced, as he mischaracterizes both the facts and holding of that case. As an initial matter, *Ozonoff* did not, as Gebert puts it, involve an Executive Order that allowed the government to consider "a person's political associations and speech" during a clearance adjudication. Pl.'s Resp. at 22. Rather, the Executive Order provided, in relevant part, only that the government may consider (1) "[t]reason or sedition or advocacy thereof" (2) and certain unauthorized disclosures of documents "under circumstances which may indicate disloyalty to the United States" in making a clearance decision. *Ozonoff*, 744 F.2d at 226. Further, *Ozonoff*'s overbreadth holding was tied to the Executive Order's specific language, 744 F.2d at 226, 232, language that the questions at issue here do not use.

Gebert's observation that the questions are not on the SF-86 is simply irrelevant. No statute, regulation, or rule obliges a security clearance interviewer to limit her inquiry to the questions that are already in an SF-86—indeed, such a rule would drain the interview of significance. And even assuming, for the sake of argument, that the interviewer lacked authority under statute, regulation, or rule to ask the questions at issue, it is not clear why that would then require Defendants to ignore information that it by then possessed indicting that Gebert had been uncandid. *See United States v. Caceres*, 440 U.S. 741, 754-55 (1979) ("In view of our conclusion that none of respondent's constitutional rights has been violated here, . . . by the agency violation of its own regulations, our precedents enforcing the exclusionary rule to deter constitutional violations provide no support for the rule's application in this case"); *United States v. Yunis*, 924 F.2d 1086, 1094 (D.C. Cir. 1991)

("Nor would a violation of the regulations at issue amount to a constitutional violation, making application of an exclusionary rule or similar prophylactic measures inappropriate.").

Finally, although Gebert characterizes the questions at issue as a "fishing expedition," Pl.'s Resp. at 22, there is nothing inherently improper, in the security clearance investigation context, about fishing for any information that bears on whether granting "access to classified information is clearly consistent with the national security interests of the United States." Exec. Order 12,968 § 3.1(b), 60 Fed. Reg. at 40,250. To the contrary, "[i]n determining eligibility for access under this order, agencies may investigate and consider any matter that relates to the determination of whether access is clearly consistent with the interests of national security." *Id.* § 3.1(d).

IV.   **Gebert Fails to State a Plausible Due Process Claim**

As Defendants have explained, Gebert does not plausibly allege a due process claim under a substantive due process, procedural due process, equal protection, or vagueness theory.

A.      **Gebert Fails to State a Plausible Substantive Due Process Claim**

Gebert's substantive due process claim fails because he does not identify either a protected liberty interest or an egregious and irrational deprivation of a property interest. Gebert asserts two protected interests to support his substantive due process claim—a liberty interest in "expressing opinions" without suffering adverse employment consequences, Am. Compl. ¶ 112, and a property interest in using "his annual leave, property, prior to initiation of the [s]uspension without pay," *id.* ¶ 123. As to his speech-based claim, "[b]ecause the [First] Amendment provides an explicit textual source of constitutional protection against this sort of . . . governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing [the] claim[.]" *Graham v. Connor*, 490 U.S. 386, 395 (1989). Regardless, his speech-based substantive due process claim fails for the same reasons as his First Amendment claims— Defendants suspended/revoked his clearance due to his uncandor, not his beliefs. *See* Defs.' Mem.

at 23. Gebert does not dispute, and so concedes, that if his First Amendment claims fail, his speech-based substantive due process claim fails. *See Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) ("if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded"); *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 268 (D.D.C. 2012) ("the Court may treat the plaintiff's failure to oppose the defendant's arguments as a decision to concede those arguments").

Gebert's accrued leave-based substantive due process claim fails, meanwhile, as he was not entitled to use accrued leave in lieu of non-pay status during his suspension, and in any event a deprivation of any such right was neither egregious nor irrational. A constitutionally protected property right requires "a legitimate claim of entitlement." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). "To create a protected property interest, regulations must limit discretion by explicitly mandatory language, i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." *Bloch v. Powell*, 348 F.3d 1060, 1069 (D.C. Cir. 2003) (cleaned up). "Generally, a 'claim of entitlement' is not viable when a government agency wields significant or unfettered discretion in determining whether to award or rescind a particular benefit." *Crooks v. Mabus*, 845 F.3d 412, 419 (D.C. Cir. 2016).

Relevant Department policy did not, on its face, entitle Gebert to use his accrued leave in lieu of non-pay status during his suspension. 3 Foreign Affairs Manual § 3418 provides that:

> Annual leave in lieu of non-pay status during suspension may not be granted except when an employee is suspended summarily in the interest of national security under the provisions of 5 U.S.C. 7532. In such case, the employee may request, and with the approval of the appropriate headquarters office, be granted annual leave not to exceed the balance to the employee's credit as of the date of suspension in lieu of non-pay status. In the event the employee is restored with back pay, the annual leave charged for the period covered by back pay is restored.

Thus, Gebert could use accrued leave only if the Department "granted" him its "approval." *Id.*; *see also Crooks*, 845 F.3d at 419 (regulation providing agency "expansive authority and discretion to

determine whether an individual should be allowed to remain . . . certainly does not suffice" to create "a protected property interest"); *Wash. Legal Clinic v. Barry*, 107 F.3d 32, 36 (D.C. Cir. 1997) ("no constitutionally protected property interest exists" where "final determination of which eligible individuals receive benefits [is left] to the unfettered discretion of administrators" (cleaned up)); *Fried v. Hinson*, 78 F.3d 688, 692 (D.C. Cir. 1996) ("relevant regulations explicitly permit the agency to not renew an examiner . . . . Because no existing rule even implied that renewal was guaranteed, . . . Fried did not possess a legitimate property interest" (citation omitted)).

Even if Gebert had a property interest in using his accrued leave in lieu of non-pay status, any denial thereof cannot support a substantive due process claim. A property deprivation offends substantive due process only if it amounts to "egregious government misconduct." *George Wash. Univ. v. District of Columbia*, 318 F.3d 203, 209 (D.C. Cir. 2003). As Defendants have explained, Gebert pleads no facts giving rise to a plausible inference (1) of retaliatory animus, or (2) that not letting him use his accrued leave prior to his suspension was a "deliberate" violation of the law, much less a "significant" one. *Id.* Gebert's allegations, such as they are, on this point are entirely conclusory, and thus cannot support a plausible due process claim. *See Iqbal*, 556 U.S. at 678.

## B.     Gebert Fails to State a Plausible Procedural Due Process Claim

Gebert's procedural due process claim likewise fails for two reasons: he has not plausibly alleged a deprivation of a protected interest, and in any event, received all the process he is due.

### 1.     Gebert fails to identify a protected interest

As explained further below, Gebert does not plausibly allege a protected interest in his job-related benefits, speech, or reputation.

#### a.     Gebert has no protected interest in his job-related benefits

Gebert's ostensible interest in job-related benefits cannot support a procedural due process claim. As Gebert acknowledges, "an employee has no right to a job requiring a clearance." Pl.'s

Resp. at 25; *see also* Defs.' Mem. at 26-27 (citing cases). If Gebert has no right to his job, it follows that he no longer has any right to the benefits of that job. Regardless, the only benefits he identifies are his accrued leave and health insurance, *see* Pl.'s Resp. at 25-27, but any claim based on his accrued leave fails for the reasons explained, *see supra* § IV.A; Defs.' Mem. at 24-25, 28, and he did not raise a procedural due process claim based on his insurance's cancellation, *see* Am. Compl. ¶¶ 103, 165, 168 (only mentioning insurance in context of First Amendment and statutory claims). Even had he raised a due process claim based on his insurance's cancellation, he does not plausibly allege it—"he pleads no facts to support a plausible inference that this action was unlawful." Defs.' Mem. at 37-38. He cites 5 C.F.R. § 890.502(b), but that regulation did not prohibit the Department from terminating Gebert's health insurance, as Defendants have explained. *See* Defs.' Mem. at 38.

> *b.    Gebert was not deprived of any right to speak or voice his opinions*

While Gebert largely attempts to bootstrap a procedural due process claim onto his First Amendment retaliation claim, he does not really allege that he was deprived of his ability to speak. Rather, he alleges that he suffered certain deprivations in retaliation for his speech. For purposes of his procedural due process claim, the thing that he allegedly was "deprived," *Statewide Bonding, Inc. v. Dep't of Homeland Sec.*, 980 F.3d 109, 118 (D.C. Cir. 2020), is not his right to speak itself, but rather, whatever it is that speaking out allegedly cost him. In any event, because Gebert's First Amendment retaliation claim fails, *see supra* § III.A, his derivative procedural due process claim fails as well. Nor does his assertion that his choice not to speak to the media about his situation is due to the "chilling effect" of Defendants' actions, Pl.'s Resp. at 27, support a claim. His clearance already has been revoked and he already has been suspended without pay, and he pleads no facts to support a plausible inference that speaking out now will result in any further deprivations.

       *c.*      *Gebert was not deprived of any protected interest in his reputation*

Last, Gebert does not plausibly allege a deprivation of a protected interest in his reputation, under either a reputation-plus or stigma-plus theory.

       i.      <u>Gebert fails to state a plausible reputation-plus claim</u>

Gebert's reputation-plus claim is borderline frivolous. As explained earlier in detail, the Department's statement of commitment to "providing a workplace that is free from discriminatory harassment" plainly does not defame Gebert. Defs.' Mem. at 28-29. Gebert does not engage with Defendants' analysis on this point at all. Instead, he tries to reach beyond "what was specifically pleaded in the Amended Complaint," Pl.'s Resp. at 29, but this Court should not let him, especially as it already has let him amend his complaint once, after Defendants' prior motion to dismiss was fully briefed. *See* Min. Order (June 7, 2023); *Hettinga v. United States*, 677 F.3d 471, 477 (D.C. Cir. 2012) (a court "need not accept inferences drawn by plaintiff" that "are not supported by the facts set out in the complaint"); *Hurd v. District of Columbia*, 864 F.3d 671, 686 (D.C. Cir. 2017) (cannot consider materials outside complaint "for the truth of the matter asserted"); *Price v. Unite Here Local 25*, 883 F. Supp. 2d 146, 154 (D.D.C. 2012) ("plaintiff cannot keep this case alive indefinitely by shifting [its] legal theories at the last minute."); *Vantage Commodities Fin. Servs. I, LLC v. Willis Ltd.*, 531 F. Supp. 3d 153, 174-75 (D.D.C. 2021) ("Courts rarely allow plaintiffs to change their legal theories once briefing is underway, especially when new theories depart from what appears in the operative complaint"). Regardless, Gebert's new allegations—namely, that two Congressmen called him a white supremacist and a bigot, *see* Pl.'s Resp. at 29—do not support a defamation claim against Defendants, none of whom are those Congressmen. And for what it's worth, calling Gebert a white supremacist and/or a bigot are "non-actionable opinion" statements, given that the actual facts upon which those characterizations rest are undisputed. *See Florio v. Gallaudet Univ.*, 619 F. Supp. 3d 36, 47 (D.D.C. 2022) (citing cases). In fact, Gebert openly calls

himself a "white nationalist." *See, e.g.*, Am. Compl. ¶¶ 30, 54, 65. Any meaningful conceptual distinction between white nationalism and white supremacy eludes Defendants.

ii.   Gebert fails to state a plausible stigma-plus claim

Nor does Gebert state a stigma-plus claim. As Defendants have explained, "a clearance revocation is not the sort of stigma or disability that can support a stigma-plus claim even if it forecloses jobs that require a security clearance, as no protected interest can lie in a job requiring a clearance." Defs.' Mem. at 29. Gebert does not engage with Defendants' analysis on this point at all. And while Gebert relies largely on *Kartseva v. Department of State*, 37 F.3d 1524, 1528 (D.C. Cir. 1994), that case, as Defendants explained, is inapposite, as it did not involve a clearance. *See id.* at 1528 n.16; Defs.' Mem. at 29 n.10. Gebert does not engage with that point, either.

2.   Gebert received all the process he is due

Even if Gebert had a protected interest, he has received all the process he is due. As to his suspension, the Civil Service Reform Act ("CSRA") provides constitutionally adequate process. *See* Defs.' Mem. at 30-31. As to his ostensible reputational interest, meanwhile, the Department's procedures relating to clearance revocations furnish Gebert adequate opportunity to clear his name. *See Gill v. Dep't of Just.*, 875 F.3d 677, 681 (D.C. Cir. 2017) ("he received all the process that was due: a full hearing before the [agency] where he had the right to counsel and the opportunity to make his case"); *Doe v. Cheney*, 885 F.2d 898, 910 (D.C. Cir. 1989) (revocation process gave opportunity "to refute the charges against [plaintiff] and to clear his name"); *Doe v. Casey*, 796 F.2d 1508, 1524 (D.C. Cir. 1986), *aff'd in part, rev'd in part*, 486 U.S. 592 (1988) (revocation process offered adequate "opportunity to clear [plaintiff's] name"). Gebert does not engage with these points, and so concedes them. *See Wannall*, 775 F.3d at 428; *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 268. He argues that the process is taking longer than he believes is proper, but cites no authority for the dubious idea that the duration of otherwise-constitutionally adequate procedures

16

supports a procedural due process claim. He notes that in the cases cited above, proceedings took less time than here, but those cases ascribed no analytic significance to the proceedings' duration.

###    C.     Gebert Fails to State a Plausible Vagueness Claim

Gebert's vagueness claim fails for three reasons—he was not deprived of any protected interest, the questions at issue do not regulate speech, and the questions at issue are not vague.

####         1.     Gebert was not deprived of a protected interest

As Defendants have explained, Gebert's vagueness claim fails at the threshold because he was not deprived of a protected interest. *See* Defs.' Mem. at 33. While Gebert argues that he need not plead the deprivation of a protected interest because this Court can analyze his vagueness claim outside "a due process construct," Pl.'s Resp. at 33, the "[v]agueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment." *United States v. Williams*, 553 U.S. 285, 304 (2008); *accord Hodge v. Talkin*, 799 F.3d 1145, 1171 (D.C. Cir. 2015) (same). Each case Gebert cites for a contrary position predates *Williams*. *See* Pl.'s Resp. at 33-34 n.9. To whatever extent the question of whether the vagueness doctrine sounds in the First Amendment or Due Process Clause once was open, *Williams* settled it conclusively.

####         2.     The questions at issue do not regulate speech

As Defendants previously explained, the vagueness doctrine applies only to a regulation of speech, and the questions at issue do not regulate speech. *See supra* § I.B; Defs.' Mem. at 34. The only regulation of speech at issue here is the prohibition on uncandor during a clearance interview.

####         3.     The questions at issue are not vague

Regardless, the questions at issue are not unconstitutionally vague. *See* Defs.' Mem. at 34-35. Even if, as Gebert contends, the term "embarrassing" might be unconstitutionally vague when removed from context, it is not so in the context of a security clearance background investigation. *Id.* at 35. Gebert argues that this context did not clarify the questions because the SF-86 "is only

concerned about questions relating to overthrowing the government and anti-American terrorism," Pl.'s Resp. at 35, but that is not remotely true, *see* Standard Form 86, *Questionnaire for National Security Positions*, Off. of Personnel Mgmt., https://www.opm.gov/forms/pdf_fill/sf86.pdf. He also contends that the questions must be vague because he, personally, did not understand them, *see* Pl.'s Resp. at 34, but even assuming for the sake of argument that this were true, the vagueness standard is objective, not subjective. *See Bryant v. Gates*, 532 F.3d 888, 893 (D.C. Cir. 2008).[2]

### D.   Gebert Fails to State a Plausible Equal Protection Claim

Finally, Gebert's equal protection claim fails because his dishonesty during his clearance investigation furnished a rational basis to suspend/revoke his clearance. *See* Defs.' Mem. at 35-36. Gebert asserts that strict scrutiny applies because Defendants violated his First Amendment and Due Process rights, *see* Pl.'s Resp. at 38-39, but does not plausibly allege that Defendants violated those rights. *See supra* §§ III, IV.A-C; Defs.' Mem. at 10-35. Even under strict scrutiny, there is a "compelling interest in protecting [classified] information from those who . . . might compromise such information." *Von Raab*, 489 U.S. at 677 (cleaned up). Here, suspending/revoking Gebert's clearance due to his dishonesty during his clearance investigation is the least restrictive means to protect that interest, as Gebert "cannot reasonably expect to keep from [the Department] personal information that bears directly on [his] fitness" to access classified information. *Id.* at 672; *cf. id.* at 677 ("employees who seek promotions to positions where they would handle sensitive information can be required to submit to a urine test . . . especially if the positions . . . require background investigations . . . that may be expected to diminish their expectations of privacy").

---

[2]   In replacing the term "jury" with "[Department]" when quoting *United States v. Safavian*, 528 F.3d 957, 966 n.9 (D.C. Cir. 2008), Defs.' Mem. at 34, Defendants did not, as Gebert puts it, "conced[e]" that "there are genuine issues of material fact," Pl.'s Resp. at 36. Rather, Defendants only recognized that while a jury may be the finder of fact in judicial proceedings, the Department is the finder of fact in Gebert's security clearance proceedings. Notably, *Safavian* was a criminal case, and thus could not have involved a genuine issue of material fact. *See* 528 F.3d at 959.

**V.     Gebert Fails to State a Plausible APA Claim**

In moving to dismiss, Defendants explained that Gebert failed to state an APA claim as to the Department's (1) refusal to let him use his accrued annual leave in lieu of non-pay status during his suspension or (2) response to his records requests. *See* Defs.' Mem. at 38-39. Gebert does not address, and thus concedes, both these points. *See Wannall*, 775 F.3d at 428; *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 268. Defendants also explained that Gebert failed to state an APA claim as to either the revocation of his clearance or the termination of his health insurance benefits. He does not engage with Defendants' reasoning on either of these points in his response, instead largely just reiterating the allegations in his complaint. Finally, Gebert appears to assert an unreasonable delay claim in his response, but did not raise any such claim in his pleadings, and so forfeits it.

**A.     Gebert Fails to State an APA Claim as to the Revocation of His Clearance**

As Defendants explained in moving to dismiss, Gebert's APA challenge to the suspension and/or revocation of his clearance fails because the "decision to revoke [a] security clearance [is] a decision committed to agency discretion by law." *Oryszak v. Sullivan*, 576 F.3d 522, 524 (D.C. Cir. 2009) (cleaned up); Defs.' Mem. at 37. While he argues that "the Court is in the best position to determine if the decision is being reached with the insert of arbitrary, capricious, abuse of discretion and/or otherwise in violation of the Constitution," he acknowledges that "the clearance revocation is committed to agency discretion by law" and insists that "the Court is not being asked to make a ruling on an agency's decision." Pl.'s Resp. 41. His reliance on *Gill*, 875 F.3d at 680, is puzzling, as *Gill* did not involve an APA claim—only an attempt to invoke the APA's waiver of sovereign immunity to raise a claim under a different statute, an argument the D.C. Circuit rejected because the plaintiff had not raised it below. Insofar as Gebert's APA claim rests on allegations of constitutional violations, it fails for the reasons explained above. *Supra* § III-IV. Finally, even if

this Court could review the clearance revocation, it was not arbitrary or capricious, as Defendants believed that Gebert had been uncandid during his interview. Defs.' Mem. at 37.

### B.     Gebert Fails to State an APA Claim as to His Health Insurance's Termination

As Defendants have explained, 5 C.F.R. § 890.502(b) did not prohibit the Department from terminating Gebert's health insurance. *See* Defs.' Mem. at 37-38. Even if that regulation required the Department to furnish Gebert certain information, any failure to do so was harmless, as Gebert identifies no harm he suffered as a result. *Id.* at 38. And while Gebert contends that the Department "retroactively cancel[led] coverage for periods over which he had already paid the premiums," Pl.'s Resp. at 43, he fails to explain how doing so was unlawful, *see* Defs.' Mem. at 37-38.

### C.     Gebert Did Not Raise an Unreasonable Delay Claim in His Pleadings

While Gebert appears to assert unreasonable delay under the APA in his response, he raised no such claim in his amended complaint, and so forfeits any such claim. *See Oryszak*, 576 F.3d at 524 n.1 (plaintiff "did not sufficiently raise that claim in her complaint or otherwise give the district court notice thereof"). At most, Gebert alluded to the duration of his proceedings in the context of a challenge to the revocation on the merits. *See* Am. Compl. ¶¶ 164-66. Such thin allusions to the basis of a possible claim do not suffice to raise an otherwise-absent claim. *See Oryszak*, 576 F.3d at 524 n.1 ("that allegation . . .[was] too obscure a hint to have put the court on notice of [the] claim"); *Lapera v. Fed. Nat'l Mortg. Ass'n*, 210 F. Supp. 3d 164, 175 (D.D.C. 2016) ("[m]ere reference" to basis of possible claim insufficient); *Council on Am.- Islamic Rels. Action Network, Inc. v. Gaubatz*, 31 F. Supp. 3d 237, 274 (D.D.C. 2014) ("This fleeting, ambiguous reference, in contrast to the specific, repeated allegations elsewhere in the Complaint, is insufficient").

## VI.    <u>Gebert Does Not State a FOIA or Privacy Act Claim</u>

In moving to dismiss, Defendants explained that Gebert's FOIA and Privacy Act claims fail because "he did not describe the records sought reasonably and in enough detail to permit their

identification." Defs.' Mem. at 42. His requests, phrased using the indeterminate terms "pertaining to" and "related to," as a matter of law did not reasonably describe the records sought. *See id.* at 41-43 (collecting cases). In response, Gebert disregards the sizable body of case law recognizing that such indeterminate language does not suffice to describe records reasonably, arguing only that because the Department produced some responsive records, he must have described the records sought reasonably and in enough detail. Pl.'s Resp. at 43-44. That does not follow, for two reasons.

First, the Department could have chosen to go above and beyond the minimal obligations FOIA and the Privacy Act imposed on it. *See Welsh v. Dep't of State*, Civ. A. No. 21-1380 (TJK), 2023 WL 2424606, at *4 (D.D.C. Mar. 8, 2023) ("The State Department's discretionary decision to go beyond its FOIA obligations . . . does not change" those obligations, so the fact "that the Department has shown that it can . . . provide [certain] information" does not mean that it "*should* provide such" information (internal quotation marks omitted)); *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 258 (D.C. Cir. 1977) ("an agency may impose upon itself a more liberal disclosure rule than that required by the FOIA"). And "[p]enalizing agencies by holding that they waive their [failure to describe] defense if they make a discretionary document release . . . would not advance the underlying purpose of the FOIA—the broadest possible responsible disclosure of government documents." *Greenberg v. Dep't of Treasury*, 10 F. Supp. 2d 3, 23 (D.D.C. 1998).

Second, the fact that the Department found some responsive records does not mean it could "determine precisely what records [were] requested," *Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982) (cleaned up). The problem with Gebert's requests is not that the impossibility of identifying any responsive records at all, but the significant zone of indeterminacy they create. Many records requests will suffice to enable an agency to locate at least a few pieces of low-hanging fruit. Were that enough to reasonably describe records sought, this requirement would be drained of substance.

**VII.   Gebert is Not Entitled to Damages**

Gebert is not entitled to damages against (1) the Department due to sovereign immunity or (2) the individual defendants because *Bivens* relief is unavailable and qualified immunity applies.

**A.      The Back Pay Act Does Not Waive the Department's Sovereign Immunity**

In moving to dismiss, Defendants explained that the Back Pay Act does not waive the Department's sovereign immunity. *See* Defs.' Mem. at 43. That statute applies only if there has been a favorable finding by an "appropriate authority," 5 U.S.C. § 5596(b)(1), a term that means "the agency itself, or the [Merit System Protection Board] or the [proper] Federal Circuit," *United States v. Fausto*, 484 U.S. 439, 454 (1988), and no such authority has found in Gebert's favor. *See Gilbert v. FDIC*, 950 F. Supp. 1194, 1198 (D.D.C. 1997) ("an independent determination has not been made by any authority (including this court) that [plaintiff] suffered an unwarranted or unjustified personnel action"). While Gebert declares that "[a]n indefinite suspension would meet the criteria of when" an "appropriate authority" has found in his favor under the statute, Pl.'s Resp. at 45, he fails to explain or cite any authority for this bald assertion, which contradicts *Fausto*.

**B.      Gebert is Not Entitled to *Bivens* Relief**

Gebert is not entitled to *Bivens* relief because his claims all arise in a new context, and both national security concerns and alternative remedial structures are special factors foreclosing relief.

**1.      Gebert's claims arise in a new context**

As Gebert "concedes," his First Amendment claims arise in "a new context." Pl.'s Resp. at 46. That is because *Egbert v. Boule*, 142 S. Ct. 1793, 1807 (2022), held that "there is no *Bivens* cause of action for [a] First Amendment retaliation claim." Gebert nonetheless argues that his due process claims "align closer" with *Davis v. Passman*, 442 U.S. 228 (1979). Pl.'s Resp. at 46. But *Davis*, which "permitted a congressional staffer to sue a congressman for sex discrimination under the Fifth Amendment," *Egbert*, 142 S. Ct. at 1808, is "meaningfully different" from this case—

Gebert is not a congressional staffer, does not sue a congressman, does not allege any sex discrimination, and sues individuals involved in adjudicating clearances, who are "a new category of defendants." *Id.* at 1803 (cleaned up). "The only similarity between his case and *Davis* is that both invoke the Fifth Amendment." *Deryck v. Dep't of Def.*, Civ. A. No. 22-3290 (TNM), 2023 WL 3303832, at *7 (D.D.C. May 8, 2023). And "[e]ven assuming the factual parallels are as close as [he] claims, [*Davis*] carries little weight because it predates [the] current approach to implied causes of action and diverges from [it]." *Egbert*, 142 S. Ct. at 1808.

2.    Special factors foreclose *Bivens* relief

Two special factors foreclose *Bivens* relief. First, *Bivens* relief "may not lie where, as here, national security is at issue." *Egbert*, 142 S. Ct. at 1805. Granting Gebert *Bivens* relief would pose a "risk of undermining" adjudications of security clearances. *Id.* at 1804 (internal quotation marks omitted). While Gebert tries to "distinguish[ ]" D.C. Circuit cases disallowing *Bivens* relief in the national security context in a "fact-specific" manner, Pl.'s Resp. at 47, *Egbert* itself disallows such claims categorically. *Id.* at 1804. Regardless, special factor analysis does not turn on "the balance of circumstances in the particular case," because "such a narrow level of generality" will "impair governmental interests" and "frustrate Congress' policymaking role." *Id.* at 1805 (cleaned up). And notably, Gebert fails to address *Buchanan v. Barr*, 71 F.4th 1003, 1008 (D.C. Cir. 2023), decided a month and a half before he filed his response, which "h[e]ld" point blank that "national security is a special factor counselling hesitation against extending *Bivens* to [a new] context."

Second, alternative remedial structures—namely, the CSRA and Department's clearance adjudication process—preclude *Bivens* relief. *See* Defs.' Mem. at 48-49; *Egbert*, 142 S. Ct. at 1804 ("a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure" (internal quotation marks omitted)). While Gebert asserts that the Department "blatantly ignores and/or refuses to actually go through the

process," Pl.'s Resp. at 48, that cannot be true as to the CSRA process, which he has never pursued. And it would be immaterial even were it true (it is not), because what matters is whether "Congress or the Executive has created a remedial process that *it* finds sufficient," not whether that remedy "is adequate" or leaves a wrong "unredressed," *Egbert*, 142 S. Ct. at 1804, 1807 (emphasis added).

### C. The Individual Defendants are Entitled to Qualified Immunity

In moving to dismiss, Defendants explained that the individual defendants are entitled to qualified immunity. Defs.' Mem. at 49-50. Gebert does not dispute, and so concedes, that they are entitled to qualified immunity as to his due process claims. *See Wannall*, 775 F.3d at 428; *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 268. As to his First Amendment claims, he cites no authority that puts the "question beyond debate . . . in light of the specific context of the case"—a clearance adjudication—not merely "as a broad general proposition." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (internal quotation marks omitted); Pl.'s Resp. at 50. To the contrary, the question is not clearly established—the D.C. Circuit expressly has left open whether "clearance decisions" can "deprive[ ] an individual of their constitutional rights." *Gill*, 875 F.3d at 682; *see also Palmieri*, 896 F.3d at 590 (Katsas, J., concurring) ("At some point, we will likely need to decide it"). As such, any violation of Gebert's constitutional rights would not have been clearly established.

*  *  *

## CONCLUSION

This Court should dismiss Gebert's amended complaint.

Dated: August 28, 2023

Respectfully submitted,

MATTHEW M. GRAVES
D.C. Bar No. 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: /s/
_____
   BRADLEY G. SILVERMAN
   D.C. Bar No. 1531664
   Assistant United States Attorney
   601 D Street NW
   Washington, DC 20530
   (202) 252-2575
   bradley.silverman@usdoj.gov

*Attorneys for the United States of America*

25