UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MATTHEW GEBERT,

    *Plaintiff*,

v.

U.S. DEPARTMENT OF STATE, *et al.*,

    *Defendants*.

No. 22-cv-2939 (DLF)

**MEMORANDUM OPINION**

Matthew Gebert, a foreign affairs officer and self-described "race realist," contends that the U.S. Department of State unlawfully revoked his security clearance. He sued the Department and some of its employees (collectively, "the Department") seeking damages, an injunction, and declaratory relief. Before the Court are the Department's Motion to Dismiss, Dkt. 38, and Gebert's motion for leave to file a sur-reply, Dkt. 44. For the reasons that follow, the Court will grant the Department's motion and deny Gebert's.

**I.    BACKGROUND**[1]

Gebert works for the State Department as a foreign affairs officer. First Am. Compl. ¶ 11, Dkt. 34. He serves the Department's Bureau of Energy Resources in the Middle East and Asia Division of its Office of Energy Diplomacy. *Id.* His position requires a Top Secret security clearance, which Gebert obtained in 2013. *Id.* ¶ 12.

---

[1] Consistent with the applicable legal standard, what follows assumes the truth of all material factual allegations in Gebert's Amended Complaint. *See Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

"As part of a routine periodic background reinvestigation," Gebert "was [re]interviewed" for his clearance "on January 28, 2019." *Id.* ¶ 13. "In this reinterview," the Department asked Gebert (1) "[w]hether he had any association with any person, group, or business venture that could be used, even unfairly, to criticize, impugn, or attack his character or qualifications for a government position"; (2) "[w]hether he was aware of any people or organizations that would criticize or oppose his employment in a government position"; and (3) whether "there was any information regarding members of his family that would be a possible source of embarrassment to the United States Department of State." *Id.* ¶ 14. Gebert answered each question "in the negative." *Id.* ¶ 15. The reinvestigation "concluded on May 9, 2019," and on June 7, 2019 the Department told Gebert that he would retain his security clearance. *Id.* ¶¶ 16–17.

In August 2019, the Southern Poverty Law Center published an article linking Gebert and his wife to white nationalism. *Id.* ¶ 18; *see* Michael Edison Hayden, *U.S. State Department Official Involved in White Nationalist Movement, Hatewatch Determines*, S. Poverty L. Ctr. Hatewatch (Aug. 7, 2019), https://perma.cc/UJ7Y-LJCL.[2] The article alleged that Gebert hosted white nationalist gatherings at his home, participated in white nationalist podcasts, and operated a popular white nationalist Twitter account. *See* Hayden, *supra*. His wife "wrote blog posts focused on dating tips for white nationalist women and parenting advice for white nationalist moms." *Id.* According to the article, Gebert also "expressed an understanding that his connections to white nationalism could end his career." *Id.* "There are bigger things than a career and a paycheck," it quoted Gebert as saying, and "I am prepared to lose mine." *Id.*

---

[2] Because Gebert's complaint references the Southern Poverty Law Center's article extensively and because the content of the article's allegations—as opposed to their truth—is not subject to reasonable dispute, the Court will take judicial notice of what the article alleged. *Kapersky Lab, Inc. v. U.S. Dep't of Homeland Sec.*, 909 F.3d 446, 464 (D.C. Cir. 2018).

The prediction came true. On August 16, 2019, the State Department suspended Gebert's security clearance, citing "concerns that [Gebert] concealed and omitted information" in his 2019 reinvestigation. Am. Compl. ¶¶ 28–29. Because Gebert's position required a Top Secret clearance, "this suspension of [Gebert's] security clearance resulted in a proposal to suspend" Gebert from his position "indefinitely without pay." *Id.* ¶ 37. After affording Gebert fifteen days' notice and after hearing his side of the story, the Department confirmed the proposal and placed Gebert on indefinite unpaid suspension. *Id.* ¶¶ 38–40. Gerbert "requested to use his annual leave . . . prior to the initiation of the [s]uspension without pay," but the Department refused his request. *Id.* ¶¶ 123–25.

In the investigation that followed, Gebert defended his political views to the Department. *Id.* ¶ 45. He argued that the Center's article "sensationalized and mischaracterized his activities," which in truth focused on "advocating . . . for white interests" and "against mass immigration." *Id.* ¶¶ 45–46; *see id.* ¶ 53 (Gebert "reiterated multiple times that he was a 'race realist' and 'pro-white'"). He conceded, however, that he "kn[ew] that his opinions [were] unpopular" and that "society [did] not accept them." *Id.* ¶ 54. Ultimately, Gebert affirmed that he "had a reasonable and good faith basis to answer the questions from his January 2019 interview in the manner in which he did." *Id.* ¶ 46.

The Department saw things differently. On July 1, 2020, it revoked Gebert's clearance for "refusal to provide full, frank, and truthful answers . . . in connection with a personnel security or trustworthiness determination" and for "personal conduct, or concealment of information about one's conduct that creates a vulnerability to exploitation, manipulation, or duress." *Id.* ¶ 59. Thereafter, it did not inform Gebert that he could continue his State Department health insurance and retroactively terminated his health benefits. *Id.* ¶¶ 169, 174.

Gebert replied with "a written rebuttal" to the revocation determination. *Id.* ¶ 66. He also lodged a Freedom of Information Act ("FOIA") request seeking "all records pertaining to" him "that [were] held by the U.S. Department of State." Dkt. 38-2 ex. B; *see* Pl.'s Mem. in Opp. to Defs.' Mot. to Dismiss at 44, Dkt. 41 (describing Gebert's FOIA request similarly).[3] Finally, when those strategies did not bear fruit, Gebert sued. His twenty-three count Amended Complaint seeks damages, a declaratory judgment, and injunctive relief against the Department and certain of its employees under the First Amendment, the Fifth Amendment, the Administrative Procedure Act, FOIA, and the federal Privacy Act.[4] Am. Compl. ¶¶ 94–277.

The Department moves to dismiss. Dkt. 38. Gebert cross-moves for leave to file a sur-reply discussing a letter the Department sent him regarding the termination of his health benefits. Dkt. 44.

## II.  LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a claim for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). A plaintiff bears "the burden of establishing a factual basis for the court's exercise of personal jurisdiction" over each defendant. *Williams v. Romarm, SA*, 756 F.3d 777, 785 (D.C. Cir. 2014).

---

[3] Although Gebert's Amended Complaint does not include the text of his FOIA request, the Department's Motion to Dismiss includes it full. Dkt. 38-2 ex. B. Because Gebert's FOIA claims "necessarily rel[y]" on that document and because the parties do not dispute what it says, the Court may consider it in adjudicating the Department's motion to dismiss. *See Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46–47 (D.D.C. 2009) (cleaned up).

[4] Gebert filed his first Complaint on September 28, 2022. Dkt. 1. The defendants filed a motion to dismiss, and Gebert sought leave to amend his complaint in response. Dkt. 32. The Court granted the motion, Min. Order of June 7, 2023, making the First Amended Complaint the operative complaint in this action.

Under Federal Rule of Civil Procedure 12(b)(5), a defendant may move to dismiss a complaint for "insufficient service of process." Fed. R. Civ. P. 12(b)(5). When a plaintiff fails to serve process properly, a court has discretion "to dismiss [his] action outright" or to "'direct that service be effected within a specified time.'" *Angelich v. MedTrust, LLC*, 910 F. Supp. 2d 128, 132 (D.D.C. 2012) (quoting *Wilson v. Prudential Fin.*, 332 F. Supp. 2d 83, 89 (D.D.C. 2004)).

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim "allows [a] court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.   MOTION TO DISMISS

Gebert sued the Department and several of its employees in their individual and official capacities. The Department moves to dismiss his claims against the employees in their individual capacities for lack of personal jurisdiction, his claims against certain employees in their official capacities for insufficient service of process, and his remaining claims for failure to state a claim. Dkt. 38. For the reasons that follow, the Court will grant the Department's motion and dismiss Gebert's complaint.

#### A.   Personal Jurisdiction

Lawsuits require personal jurisdiction. *See, e.g.*, *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 128–29 (2023). With exceptions and qualifications not relevant here, federal district courts have jurisdiction over persons "who [would be] subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). A state

court's jurisdiction turns on state law and the limits imposed by the Fourteenth Amendment's Due Process Clause. *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).

"A District of Columbia court may exercise personal jurisdiction over a person domiciled in . . . the District of Columbia as to any claim for relief." D.C. Code § 13-422. In addition, courts in the District "may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—(1) transacting any business in the District of Columbia," (2) "causing tortious injury in the District of Columbia by an act or omission in the District of Columbia," or (3) "causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." *Id.* § 13-423(a). When a plaintiff sues an official in his personal capacity and seeks to establish jurisdiction under § 13-423, the acts supporting personal jurisdiction must be acts the official performed in his personal capacity. *Ali v. District of Columbia*, 278 F.3d 1, 7 (D.C. Cir. 2002); *Palmieri v. United States*, 896 F.3d 579, 589–90 (D.C. Cir. 2018).

Gebert has not met his burden to demonstrate personal jurisdiction over any of the Department's employees in their individual capacity under D.C. law. He does not allege that any of the employees he sued is a D.C. domiciliary. *Cf.* D.C. Code § 13-422. Nor does he plead that his claims for relief arise from individual-capacity acts by such employees within the District. *Cf. id.* § 13-423(a); *Palmieri*, 896 F.3d at 589–90. Indeed, Gebert does not plead facts suggesting that his claims for relief arise from the employees' acts within the District *at all*. The Department says that its security-clearance apparatus operates from Arlington, Virginia. *See* Decl. of Elizabeth

6

Twerdahl Stankus ¶ 2, Dkt. 43-1.  Gebert does not contend otherwise or plead that any events giving rise to his claims occurred in the District.  As a result, he has not "establish[ed] a factual basis for the court's exercise of personal jurisdiction" over any of the Department's employees in their individual capacities.  *Williams*, 756 F.3d at 785.

In an attempt to avoid dismissal of his individual-capacity claims, Gebert seeks jurisdictional discovery to determine whether any of the employees lives in the District.  But he offers nothing besides conjecture to support his hypothesis that one or more employees resides in D.C., and "a request for jurisdictional discovery cannot be based on mere conjecture or speculation."  *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1094 (D.C. Cir. 2008), *overruled on other grounds*, *Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 892 (D.C. Cir. 2021).  In any event, jurisdictional discovery would be futile, as the Court will independently dismiss Gebert's complaint for failure to state a claim under Rule 12(b)(6).

Gebert also argues that the employees "'were physically within the District when they took the alleged actions' giving rise to [his] constitutional claims."  Pl.'s Mem. in Opp. to Defs.' Mot. to Dismiss at 2 (quoting *Wormley v. United States*, 601 F. Supp. 2d 27, 33 (D.D.C. 2009)).  Gebert does not substantiate this assertion, however, and the record before the Court belies it at this stage.  The Department's clearance office sits in Virginia, and Gebert's complaint does not plead factual matter suggesting that any of the State Department's employees acted in the District.  Plus, even if the defendants did act against Gebert in the District, they did so in their official rather than their individual capacities.  *Cf. Ali*, 278 F.3d at 7; *Palmieri*, 896 F.3d at 589–90.  Although Gebert would limit *Ali* and *Palmieri* to circumstances in which a defendant does not work in or have other unofficial ties to the District, it is not obvious that either decision can be read so narrowly.  *But cf. Wormley*, 601 F. Supp. 2d at 33 (adopting this position).

For these reasons, the Court will dismiss the claims against the Department's employees in their individual capacities for want of personal jurisdiction.

**B.     Service of Process**

Lawsuits also require service of process.  Fed. R. Civ. P. 4(m); *Wilson*, 332 F. Supp. 2d at 87.  To serve a government official in his official capacity, a plaintiff must (1) send the official "a copy of [his] summons and . . . complaint by registered or certified mail," (2) "delivery a copy of the summons and of the complaint to the United States attorney for the district where the action is brought," and (3) "send a copy of each by registered or certified mail to the Attorney General of the United States."  Fed. R. Civ. P. 4(i).

The Department contends that Gebert did not serve one named employee, Douglas Quiram, and ten unidentified "John Doe" defendants.[5]  Reply in Support of Defs.' Mot. to Dismiss at 2, Dkt. 43.  The Court agrees.  Gebert has not shown that he "sen[t] a copy" of his complaint "by registered or certified mail to the Attorney General of the United States."  Fed. R. Civ. P. 4(i).  And while Gebert and the Department seem to agree that the Department waived this requirement with respect to Gebert's claims against the Department itself, the Department's counsel represents (and Gebert does not contest) that the Department did not waive a similar requirement with respect to Gebert's claims against Quiram or the John Does.  *Compare* Pl.'s Mem. in Opp. to Defs.' Mot. to Dismiss at 3, *with* Defs.' Reply in Support of Mot. to Dismiss at 2.  Accordingly, Gebert has not demonstrated service in conformity with Rule 4.

---

[5] Gebert also sued two special agents who investigated him, whom he identifies as John Doe #1 and John Doe #2.  Am. Compl. at 2.  The Department does not seem to contest that these agents were properly served.

Gebert seeks leave to proceed without service on the John Doe defendants for now, arguing that their identities will become clear after discovery. *See Newdow v. Roberts*, 603 F.3d 1002, 1010 (D.C. Cir. 2010). This exception to Rule 4's service requirements, however, only applies when a plaintiff's complaint lodges "specific allegations of wrongdoing" against unidentified parties. *See, e.g.*, *Kurtz v. United States*, 798 F. Supp. 2d 285, 292 (D.D.C. 2011) (quoting *Landwehr v. Fed. Deposit Ins. Corp.*, 282 F.R.D. 1, 5 (D.D.C. 2010)). Here, Gebert's complaint says nothing at all about how the ten John Does injured him besides a generalized contention that they aided the Department's misconduct. That is not enough. *See id*.

For these reasons, the Court finds that Gebert has not properly served Quiram or the John Doe defendants. Because Gebert's claims fail on the merits as well—as the rest of the Court's opinion explains—the Court will dismiss Gebert's claims against those defendants for insufficient service of process rather than allow Gebert additional time for service.

### C. Failure to State a Claim

Finally, Gebert lodges claims against the Department under the First Amendment, the Fifth Amendment's Due Process Clause, the Administrative Procedure Act, FOIA, and the Privacy Act. For the reasons that follow, the Court will dismiss each of these claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

#### 1. First Amendment

"[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). It also protects employees' rights to assemble and associate. *See, e.g.*, *Connick v. Myers*, 461 U.S. 138, 144–45 (1983).

But the First Amendment does not protect an employee's right to a security clearance. *Dep't of Navy v. Egan*, 484 U.S. 518, 528 (1988) ("[N]o one has a 'right' to a security clearance."). "For 'reasons . . . too obvious to call for enlarged discussion,'" this Court affords "broad discretion" to the Executive Branch's clearance determinations. *Id.* at 529 (quoting *CIA v. Sims*, 471 U.S. 159, 170 (1985)). Although claims alleging constitutional violations during the clearance-revocation process are not categorically unreviewable, *Webster v. Doe*, 486 U.S. 592, 603 (1988), the Court gives the Executive Branch "considerable leeway" when it revokes a clearance, *see Nat'l Fed'n of Fed. Employees v. Greenberg*, 983 F.2d 286, 290 (D.C. Cir. 1993).

Nor does the First Amendment protect an employee's right to obtain a security clearance on false pretenses. "[I]t is well settled that the First Amendment does not protect fraud." *United States v. Philip Morris USA, Inc.*, 566 F.3d 1095, 1123 (D.C. Cir. 2009) (per curiam); *see, e.g.*, 18 U.S.C. §§ 1001, 1346 (defrauding the federal government and honest services fraud). And it does not forbid the federal government from insisting that its employees speak to it honestly and transparently either, particularly when national security is at stake. As Justice Holmes noted long ago, "men must turn square corners when they deal with the Government." *Rock Island A. & L. R.R. Co. v. United States*, 254 U.S. 141, 143 (1920).

So too, the First Amendment does not insulate politically active employees from ordinary discipline by their employers. Instead, "[a] public employee claiming retaliation for exercising [his] First Amendment rights must show" a causal connection between his speech and any "retaliatory or punitive act." *Breiterman v. U.S. Capitol Police*, 15 F.4th 1166, 1176 (D.C. Cir. 2021) (cleaned up); *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). "Specifically," the employee must show "but-for" causation—*e.g.*, "that the adverse action against the [employee] would not have been taken absent the retaliatory motive." *Nieves*, 139 S. Ct. at 1722.

10

In view of these principles, Gebert does not come close to stating a claim under the First Amendment. The Department says that it revoked Gebert's clearance due to "concerns that [he] concealed and omitted information" during his 2019 reinterview. Am. Compl. ¶ 29. On its face, that justification rests on Gebert's dishonesty rather than his protected speech. And Gebert does not plausibly plead that the Department's reasoning conceals "retaliatory motive[s]" either. *Nieves*, 139 S. Ct. at 1722. Indeed, his complaint all but admits otherwise. In 2019, Gebert told the Department that he had no "association" with anyone "that could be used, even unfairly," to "attack his character." *Id.* ¶ 14. He added that nothing about his family "would be a possible source of embarrassment to the United States Department of State." *Id.* Those were obvious lies: Gebert and his wife associated with white nationalists, and Gebert knows that many Americans "treat" those individuals as holding "beliefs" that are "beyond [the] pale." *Id.* ¶ 56; *see id.* ¶ 54 (admitting that Gebert knew his beliefs were "unpopular"). These facts virtually compelled the Department's finding that Gebert had not "provid[ed] full, frank, and truthful answers" to its questions in 2019. *Id.* ¶ 59. They do not suggest unlawful retaliation.

Gebert's contrary arguments blink reality. He emphasizes that "security clearance guidelines do not screen for white nationalist and/or pro-white ideologies," Pl.'s Mem. in Opp. to Defs.' Mot. to Dismiss at 4, but that is irrelevant—they *do* screen for dishonesty, a screen through which Gebert did not pass. He adds that the Department knew or should have known about his white nationalism before 2019, but that is also irrelevant; even if the Department dragged its feet in investigating Gebert, that would not make its investigation retaliatory. Finally, it does not matter what shade of white nationalist Gebert is, whether Gebert was proud of his white nationalist beliefs, or whether Gebert's white nationalist beliefs made him susceptible to blackmail. The Department's decision to revoke Gebert's clearance did not turn on any of these points. It turned

11

on whether Gebert lied when he failed to disclose his white nationalist affiliations. And the Department's determination that Gebert did lie and must have lied—that any person of "ordinary intelligence" would know that associating with white nationalists can fuel attacks on a person's character—does not evince retaliatory intent. *Bryant v. Gates*, 532 F.3d 888, 893 (D.C. Cir. 2008).

Similarly, the reality that the Department's investigation incorporated media coverage of Gebert's white nationalism does not make it plausible that the Department retaliated against him. Coverage of the breadth and depth of Gebert's white nationalist affiliations bore obvious relevance in an investigation of whether Gebert lied to the Department about those affiliations. It is still less helpful for Gebert that Department officials responded slowly to Gebert's FOIA request for those articles or that they proclaimed their commitment to an "inclusive" workplace environment. Am. Compl. ¶ 24. Neither fact suggests that the Department's decision to revoke Gebert's security clearance was retaliatory. Further, Gebert presents nothing more than conclusory allegations that the Department treated him differently than supporters of the Black Lives Matter movement or caved to public pressure. *Id.* ¶¶ 23, 60.

Finally, Gebert complains that the questions investigators asked him were overbroad, invited viewpoint discrimination, and were unduly vague in violation of the First Amendment. Right or wrong, however, that did not give Gebert a license to lie. *Bryson v. United States*, 396 U.S. 64, 72 (1969) ("Our legal system provides methods for challenging the Government's right to ask questions—lying is not one of them. A citizen may decline to answer the question, or answer it honestly, but he cannot with impunity knowingly and willfully answer with a falsehood."). If Gebert thought that the First Amendment forbade the government from asking him about his white nationalist affiliations or about anything else, he could have refused to answer the questions and sought relief from an appropriate court. That is not what he did.

For these reasons, the Court will dismiss Gebert's claims under the First Amendment for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

### 2. Fifth Amendment

Gebert's Fifth Amendment claims fail for similar reasons. Under the Fifth Amendment, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. To violate the Amendment, the federal government must "deprive[]" a "person" of "life, liberty, or property." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70 (1972). In addition, it must do so without affording the person adequate process—a "procedural" due process violation—or in a way that is arbitrary, violates fundamental rights, or "shocks the conscience"—a "substantive" due process claim. *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998); *see DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). Independently, the Amendment applies principles of equal protection to the federal government. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).

Gebert's complaint does not plausibly allege procedural due process, substantive due process, or equal protection violations. As for procedural due process, assuming without deciding that the Department deprived Gebert of liberty or property, it only did so after giving him all the process he was due. After revoking his clearance temporarily but before suspending him from his position, the Department afforded Gebert fifteen days' notice and an opportunity to tell his side of the story. Am. Compl. ¶¶ 28–29, 38–40. Later, before revoking Gebert's clearance for good, the Department interviewed Gebert again and accepted submissions from his attorney. *Id.* ¶¶ 39–44, 56–57, 66–67, 90–91. Further, to the extent that he wishes to exercise them, Gebert remains entitled to the "extensive procedural protections provided" by the Civil Service Reform Act. *Harrison v. Bowen*, 815 F.2d 1505, 1519 (D.C. Cir. 1987). "Thus," Gebert "had a meaningful

opportunity to contest any allegation that his [behavior] presented a security risk." *Doe v. Cheney*, 885 F.2d 898, 910 (D.C. Cir. 1989) (cleaned up).  He had equal opportunity to seek use of his paid leave in lieu of suspension without pay and to seek to retain his health insurance.  "[T]he Constitution does not require more."  *Id.*

As for substantive due process, the Department's decision to take adverse personnel actions against an employee it believed to be a liar was not "arbitrary . . . or demonstrably irrelevant to [a] policy [it was] free to adopt."  *Nebbia v. New York*, 291 U.S. 502, 517 (1934).  Nor did it transgress "fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and traditions."  *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (cleaned up).  Nor has Gebert plausibly pled that it involved "egregious," conscience-shocking "misconduct" in some other way.  *George Washington Univ. v. District of Columbia*, 318 F.3d 203, 209 (D.C. Cir. 2003).  Gebert's sole claim of misconduct is that the Department violated his First Amendment rights, but that contention is not plausible (for the reasons given above) and would not shock the conscience in any event.  Indeed, the Circuit has previously "caution[ed]" this Court "against the use of substantive due process to address constitutional challenges directly governed by an explicit constitutional provision," a description that fits Gebert's substantive-due-process claim to a "T." *Id.*; *see Tri Cnty. Indust. v. District of Columbia*, 104 F.3d 455, 459 (D.C. Cir. 1997).

Finally, Gebert has not plausibly alleged an equal protection violation.  Gebert fails to demonstrate that the Department's application of security-clearance procedures infringed any constitutionally protected interest or relied upon a suspect classification, so the Department's conduct is subject to rational-basis review.  *See Mark v. Republic of Sudan*, 77 F.4th 892, 897 (D.C. Cir. 2023).  Gebert's lies gave the Department a rational basis for revoking his security clearance, and liars are not a protected class entitled to additional judicial protection.

Once again, Gebert's counterarguments fall flat. Although Gebert says that the Department relied on "extensively and materially false" information in its proceedings against him, he does not explain how, and in any case "mere error in resolving a question of fact" does not "indicate a want of due process of law." *Townsend v. Burke*, 334 U.S. 736, 741 (1948). So too, Gebert cites no authority suggesting that delays in the Department's clearance-revocation process could violate his due process rights. *Cf. Telecom. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984). Last but not least, even if the Department failed to follow its own rules in handling Gebert's clearance decision, an agency's failure to follow its own rules does not violate anyone's due process or equal protection rights without more. *Vanover v. Hantman*, 77 F. Supp. 2d 91, 103 (D.D.C. 1999).[6]

Gebert also appears to argue that he lacked "fair notice" that his answers to the Department's 2019 questions could expose him to discipline. Pl.'s Mem. in Opp. to Defs.' Mot. to Dismiss at 33–34. To the extent that this argument sounds in the Fifth Amendment's Due Process clause rather than First Amendment overbreadth, it fails. Once again, the Department asked Gebert "[w]hether he had any association with any person, group, or business venture that could be used, even unfairly, to criticize, impugn, or attack his character or qualifications for a government position" and whether "there was any information regarding members of his family that would be a possible source of embarrassment to the United States Department of State." *Id.* ¶ 14. As noted, any person of "ordinary intelligence" would know that Gebert's associations with

---

[6] In particular, to the extent that Gebert contends that he should have been able to take accrued leave during his suspension under the Department's regulations, he does not allege that the Department applied those regulations to him without affording him notice or an opportunity to be heard or in a particularly egregious way. Accordingly, Gebert has not pled that the agency's decision with respect to his leave violated his Due Process rights, even assuming (without deciding) that he had a property interest in his accrued leave.

15

white nationalists fit the bill.  *Bryant*, 532 F.3d at 893.  By answering "no" when candor required him to answer "yes," Gebert did not run afoul of an unlawfully vague or even particularly confusing Departmental rule.

For all these reasons, the Court will dismiss Gebert's Fifth Amendment claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

### 3. Administrative Procedure Act

Gebert also contends that the Department violated the Administrative Procedure Act ("APA") by revoking his security clearance, disregarding its clearance-revocation regulations, terminating his health insurance, and failing to inform him that he could retain his health insurance by paying his own premiums.  None of these allegations states a claim.

To the extent that Gebert challenges the substance of the Department's revocation decision, his claim fails out of the gate.  APA review is not available for decisions that are "committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  That category includes "decision[s] to revoke [a] security clearance."  *Oryszak v. Sullivan*, 576 F.3d 522, 524 (D.C. Cir. 2009); *see Egan*, 484 U.S. at 527.  As a result, the Court cannot review Gebert's claims that the Department revoked his security clearance for bad reasons under the APA.

Gebert proceeds no further with his claim that the Department failed to follow its own rules during the revocation process, assuming without deciding that such claims are reviewable at all. *See Morton v. Ruiz*, 415 U.S. 199, 235 (1974).  To the extent that he claims that the Department's rules forbade it from revoking his security clearance based on his constitutionally protected speech, *see, e.g.*, Am. Compl. ¶ 163, he has not pled a plausible case that the Department *did* revoke his clearance on those grounds.  His contention that the Department lied about its reasons for revoking his clearance meets the same fate for the same reason.  Finally, although Gebert alleges that the

16

Department has dragged its feet in adjudicating his challenge to its revocation decision, he did not present that theory as a claim for relief in his Amended Complaint. In any event, the Department's regulations do not require it to adjudicate clearance issues within a set time, and Gebert pleads no facts suggesting that the Department's resolution of his complaints has been unduly delayed under the APA's own standards. 12 F.A.M. §§ 234.1, 234.3; *Telecom. Rsch.*, 750 F.2d at 79–80; *see* 5 U.S.C. § 706(1).

Finally, Gebert's health insurance claims also fail. Gebert identifies no law requiring the Department to retain Gebert's health insurance besides 5 C.F.R. § 890.502(b), which provides that an agency "must tell [an] employee" about his health insurance options in writing "as soon as it becomes aware that an employee's premium benefits cannot be made because he or she will be or is already in a leave without pay . . . status." Section 890.502(b) does not create a condition precedent for the removal of employee health insurance, however, meaning that it did not make the Department's decision to terminate Gebert's health insurance "not in accordance with law." 5 U.S.C. § 706(2)(A). Meanwhile, to the extent that the Department failed to provide Gebert with the required written notice, any error was harmless. *Id.* ("In making" a determination under § 706(2)(A), "due account shall be taken of the rule of prejudicial error."). Gebert does not contend that the Department's failures have caused him any prospective injury, and damages for his past injuries would not be available under the APA. *Id.* § 702.

For these reasons, the Court will dismiss Gebert's APA claims under Federal Rule of Civil Procedure 12(b)(6).

    4. <u>FOIA and Privacy Act</u>

Finally, Gebert's FOIA and Privacy Act claims fail. FOIA requires agencies to produce certain records to the public upon receipt of a request that, among other things, "reasonably

17

describes" the records sought. 5 U.S.C. § 552(a)(3)(A). Under the Privacy Act and Department regulations promulgated thereunder, individuals may similarly request records containing their personal information if they "describe the requested record(s) in sufficient detail to permit [their] identification." 22 C.F.R. § 171.22(b); *see* 5 U.S.C. § 552a.

A request that seeks all documents "regarding," "relating to," or "pertaining to" a particular topic is too broad to "reasonably describe[]" the records requested. *See, e.g.*, *Am. Ctr. for L. & Just. v. U.S. Dep't of Homeland Sec.*, 573 F. Supp. 3d 78, 85 (D.D.C. 2021); *Shapiro v. CIA*, 170 F. Supp. 3d 147, 155 (D.D.C. 2016). After all, "as many a curbstone philosopher has observed, everything is related to everything else." *Maracich v. Spears*, 570 U.S. 48, 60 (2013) (quoting *Cal. Div. of Lab. Stds. Enf't v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 335 (1997)). Neither FOIA nor the Privacy Act requires agencies to hunt and peck for records that might be tangentially relevant to a request.

Against this backdrop, Gebert's records request falls short. Gebert requested "all records pertaining to" him "that [were] held by the U.S. Department of State." Dkt. 38-2 ex. B. "Pertaining to," however, is language that "leaves the [Department] to guess" at the records that might fall within a particular request's sweep. *Sack v. CIA*, 53 F. Supp. 3d 154, 164 (D.D.C. 2014); *accord Shapiro*, 573 F. Supp. 3d at 85. Accordingly, because Gebert did not submit a request that complied with FOIA or the Privacy Act's threshold requirements, he fails to state a claim under either statute.

Although Gebert emphasizes that the Department "provided part of the investigation" in response to his FOIA request, its willingness to accommodate part of a deficient request did not oblige it to respond to that request in full. For similar reasons, it does not matter whether the Department in fact "understood the request" at least in part. Pl.'s Mem. in Opp. to Defs.' Mot. to

18

Dismiss at 44. And although Gebert "submitted a subsequent request" in December, he does not provide the text of that request or otherwise contend that the request was clearer than his first attempt—indeed, he describes it as once again using unacceptably broad "pertaining to" language, suggesting that it too was deficient. *Id.*

For these reasons, the Court will dismiss Gebert's FOIA and Privacy Act claims. With no claims remaining, it follows that Gebert's complaint merits dismissal.[7] Because the Court rejects all of Gebert's counts on the merits and will dismiss his claims against the Department's employees in their individual capacity for lack of personal jurisdiction, it need not consider the Department's arguments that relief is unavailable for Gebert under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), or that the its employees are entitled to qualified immunity.

## IV.   CROSS-MOTION

Gebert also seeks leave to file a sur-reply with additional detail pertaining to the removal of his health insurance. Dkt. 44. "The court may grant leave to file a surreply at its discretion." *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 113 (D.D.C. 2002) (cleaned up). Here, any sur-reply by Gebert would not change the outcome of this case: the sur-reply purports to present new facts to the Court relating to the removal of Gebert's health insurance, but those facts are not relevant on a motion to dismiss under Rule 12(b)(6). *See Hughes v. Abell*, 794 F. Supp. 2d 1, 10 (D.D.C. 2010) ("The scope of a court's review on a motion to dismiss is limited to the allegations of the complaint.").

---

[7] As mentioned previously, Gebert's complaint contains 23 counts, many of which rest on overlapping facts or legal theories. Gebert's briefing does not defend each count individually or emphasize distinctions between the counts. To the extent that Gebert contends that some or all of these counts survive for reasons not discussed in this opinion, the Court deems those contentions forfeited as insufficiently presented in Gebert's complaint and briefing. *See Jones v. Kirchner*, 835 F.3d 74, 83 (D.C. Cir. 2016) ("[J]udges are not like pigs, hunting for truffles buried in briefs or the record.") (cleaned up).

## CONCLUSION

For these reasons, the Court will dismiss Gebert's claims against the Department's employees in their individual capacities for lack of personal jurisdiction, his claims against Quiram and the ten John Doe defendants in their official capacities for improper service, and his remaining claims for failure to state a claim. A separate order accompanies this opinion.

March 27, 2024

DABNEY L. FRIEDRICH
United States District Judge