UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MATTHEW GEBERT,

　　　　　Plaintiff,

　　v.

DEPARTMENT OF STATE,

　　　　　Defendant.

Civil Action No. 22-2939 (DLF)

**RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION**
**<u>FOR LEAVE TO FILE SECOND AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

BACKGROUND .................................................................................................................... 1

LEGAL STANDARD............................................................................................................. 3

ARGUMENT .......................................................................................................................... 4

    I.     Gebert Failed to Meet and Confer Prior to Moving for Leave to Amend ............. 4

    II.    Gebert's Proposed Amended First Amendment Claims Are Futile....................... 5

    III.   Gebert Pleads No New Relevant Facts as to the Rest of His Previously-Raised Claims ............................................................................................................. 10

    IV.   Gebert's New Privacy Act Claims Are Futile....................................................... 13

         A.    Gebert's Proposed Claim That the Department Violated the Privacy Act's Notice Requirement is Futile........................................................... 15

         B.    Gebert's Proposed Claim That the Department Collected Information Not Contained in Its Systems Notice is Futile ........................................... 17

         C.    Gebert's Proposed Claim That the Department Unlawfully Collected Information About His First Amendment Activities Futile...................... 19

         D.    Gebert's Proposed Claim That the Department Violated the Privacy Act's Routine Use Provision is Futile........................................................ 20

    V.    This Court Should Deny Leave to Amend With Prejudice................................... 21

CONCLUSION...................................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Aguiar v. DEA*,
992 F.3d 1108 (D.C. Cir. 2021) ............................................................... 3

*Albright v. United States*,
732 F.2d 181 (D.C. Cir. 1984) ............................................................... 14

*Altemus v. Talmadge*,
58 F.2d 874 (D.C. Cir. 1932) ............................................................... 9

*Ames v. Dep't of Homeland Sec.*,
861 F.3d 238 (D.C. Cir. 2017) ............................................................... 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................... 4, 7-8, 15-17

*Atchinson v. District of Columbia*,
73 F.3d 418 (D.C. Cir. 1996) ............................................................... 23

*Barouch v. Dep't of Just.*,
962 F. Supp. 2d 30 (D.D.C. 2013) ............................................................... 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................... 20

*Brinker v. Axos Bank*,
Civ. A. No. 22-0386, 2022 WL 17724408 (S.D. Cal. Dec. 15, 2022) ...................................... 7

*Carr v. Sessions*,
Civ. A. No. 18-356 (RC), 2019 WL 917651 (D.D.C. Feb. 25, 2019) ........................................ 3

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*,
93 F. Supp. 2d 1 (D.D.C. 2000) ............................................................... 5, 6, 10, 11

*Davis v. Inmar, Inc.*,
Civ. A. No. 21-3779 SBA, 2022 WL 3722122 (N.D. Cal. Aug. 29, 2022) ................................... 7

*Dettmann v. Dep't of Just.*,
802 F.2d 1472 (D.C. Cir. 1986) ............................................................... 12

*Dickson v. Off. of Pers. Mgmt.*,
828 F.2d 32 (D.C. Cir. 1987) ............................................................... 12

**Cases (cont.)**

*Doe v. Lee*,
    Civ. A. No. 19-0085 (DLF), 2020 WL 759177 (D.D.C. Feb. 14, 2020) ................................... 8

*Doe v. Stephens*,
    851 F.2d 1457 (D.C. Cir. 1988) ......................................................................................... 14

*Donald J. Trump for President, Inc. v. Sec'y of Pa.*,
    830 F. App'x 377 (3d Cir. 2020) .......................................................................................... 8

*Driscoll v. George Wash. Univ.*,
    42 F. Supp. 3d 52 (D.D.C. 2012) ......................................................................................... 3

*English v. Wash. Metro. Area Transit Auth.*,
    323 F.R.D. 1 (D.D.C. 2017).................................................................................................. 5

*FAA v. Cooper*,
    566 U.S. 284 (2012) .......................................................................................................... 14

*Fischer v. Resol. Tr. Corp.*,
    59 F.3d 1344 (D.C. Cir. 1995) ............................................................................................. 9

*Foman v. Davis*,
    371 U.S. 178 (1962).................................................................................................... 21, 22

*Green Oceans v. Dep't of Interior*,
    Civ. A. No. 24-0141 (RCL), 2024 WL 1885543 (D.D.C. Apr. 30, 2024)............................ 5

*Haase v. Sessions*,
    893 F.2d 370 (D.C. Cir. 1990) ........................................................................................... 12

*Hubbard v. EPA Adm'r*,
    809 F.2d 1 (D.C. Cir. 1986) ............................................................................................... 14

*James Madison Proj. v. Dep't of Just.*,
    208 F. Supp. 3d 265 (D.D.C. 2016) .................................................................................... 23

*Jankovic v. Int'l Crisis Grp.*,
    494 F.3d 1080 (D.C. Cir. 2007) ........................................................................................... 9

*Kapersky Lab, Inc. v. Dep't of Homeland Sec.*,
    909 F.3d 446 (D.C. Cir. 2018) ............................................................................................. 2

*Kareem v. Haspel*,
    986 F.3d 859 (D.C. Cir. 2021) ............................................................................................. 8

**Cases (cont.)**

*Kearns v. FAA*,
312 F. Supp. 3d 97 (D.D.C. 2018) ................................................................ 13

*Keith v. Gov't Accountability Off.*,
Civ. A. No. 21-2010 (RC), 2022 WL 3715776 (D.D.C. Aug. 29, 2022) ................... 7

*Kleiman v. Dep't of Energy*,
956 F.2d 335 (D.C. Cir. 1992) .................................................................... 14

*Lewis v. Clarke*,
581 U.S. 155 (2017) ............................................................................. 1, 2

*Mack v. Aspen of D.C., Inc.*,
Civ. A. No. 15-1973 (RJL), 2018 WL 564558 (D.D.C. Jan. 24, 2018) ................... 5

*Makuch v. FBI*,
Civ. A. No. 99-1094, 2000 WL 915640 (D.D.C. Jan. 5, 2000) ........................... 13

*Morley v. CIA*,
508 F.3d 1108 (D.C. Cir. 2007) .................................................................. 19

*Mundo Verde Pub. Charter Sch. v. Sokolov*,
315 F. Supp. 3d 374 (D.D.C. 2018) ..................................................... 10, 11, 12

*Nagel v. Dep't of Health, Educ. & Welfare*,
725 F.2d 1438 (D.C. Cir. 1984) .................................................................. 14

*Nieves v. Bartlett*,
139 S. Ct. 1715 (2019) ............................................................................. 7

*Oglesby v. Dep't of Army*,
920 F.2d 57 (D.C. Cir. 1990) ................................................................ 12, 13

*Onyewuchi v. Gonzalez*,
267 F.R.D. 417 (D.D.C. 2010) ................................................................ 3, 23

*Piper v. Dep't of Just.*,
339 F. Supp. 2d 13 (D.D.C. 2004) ............................................................... 21

*Price v. Unite Here Loc. 25*,
883 F. Supp. 2d 146 (D.D.C. 2012) ............................................................. 24

*Rattigan v. Holder*,
689 F.3d 764 (D.C. Cir. 2012) ................................................................... 18

**Cases (cont.)**

*Robinson v. Detroit News, Inc.*,
   211 F. Supp. 2d 101 (D.D.C. 2002) ................................................................................. 3

*Sack v. Dep't of Def.*,
   823 F.3d 687 (D.C. Cir. 2016) ..................................................................................... 19

*Schubarth v. Fed. Rep. of Germany*,
   Civ. A. No. 14-2140 (CRC), 2020 WL 13065292 (D.D.C. Mar. 12, 2020) ........................... 23

*Sieverding v. Dep't of Just.*,
   910 F. Supp. 2d 149 (D.D.C. 2012) ................................................................................ 24

*Societe Liz, S.A. v. Charles of the Ritz Grp., Ltd.*,
   118 F.R.D. 2 (D.D.C. 1987) .......................................................................................... 23

*Sussman v. Marshals Serv.*,
   494 F.3d 1106 (D.C. Cir. 2007) ............................................................................... 14, 15

*Trent v. Dep't of Homeland Sec.*,
   Civ. A. No. 18-2591 (ABJ), 2020 WL 1429881 (D.D.C. Mar. 24, 2020) .............................. 13

*Trudel v. SunTrust Bank*,
   924 F.3d 1281 (D.C. Cir. 2019) ..................................................................................... 23

*United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*,
   235 F.R.D. 521 (D.D.C. 2006) ......................................................................................... 5

*Wheeler v. Georgetown Univ. Hosp.*,
   812 F.3d 1109 (D.C. Cir. 2016) ....................................................................................... 7

*Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*,
   810 F.2d 243 (D.C. Cir. 1987) ...................................................................................... 23

*Willouhby v. Potomac Elec. Power Co.*,
   100 F.3d 999 (D.C. Cir. 1996) ......................................................................................... 3

**Statutes**

5 U.S.C. § 552a(a)(7) ...................................................................................................... 20

5 U.S.C. § 552a(b) ......................................................................................................... 21

5 U.S.C. § 552a(b)(3) ..................................................................................................... 20

5 U.S.C. § 552a(e)(3) .............................................................................................. 15, 16, 17

**Statutes (cont.)**

5 U.S.C. § 552a(e)(4)(C)........................................................................................ 18

5 U.S.C. § 552a(e)(7).............................................................................................. 19

5 U.S.C. § 552a(g)(1)(D).................................................................................. 14, 16

5 U.S.C. § 552a(g)(2)-(3)......................................................................................... 14

5 U.S.C. § 552a(g)(4).............................................................................................. 14

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................................. 3

Fed. R. Civ. P. 15(a)(2)............................................................................................. 3

Fed. R. Evid. 201(b)................................................................................................. 2

Fed. R. Evid. 201(b)(2)............................................................................................. 9

**Other**

Exec. Order 12,968, § 3.1(b), 60 Fed. Reg. 40,245 (Aug. 2, 1995)........................... 18

*Security Records*, 83 Fed. Reg. 28,058 (June 15, 2018)..................................... 18, 21

Pursuant to Federal Rule of Civil Procedure ("Rule") 15(a)(2), Defendants Department of State ("Department"),[1] by and through counsel, respectfully oppose Plaintiff Matthew Gebert's motion for leave to file a second amended complaint, ECF No. 48. Gebert's proposed amended pleadings are futile—his new allegations cure none of the defects in his earlier claims, and his new claims fail to state a claim upon which relief can be granted. A proposed order is attached.

## BACKGROUND

Given this Court's familiarity with this case, the Department recites only those facts that are relevant to Gebert's motion to amend his pleadings. For convenience, the Department cites to this Court's prior Memorandum Opinion, as Gebert's proposed second amended complaint does not plead materially different facts. Gebert is a Foreign Affairs Officer at the Department, with a position requiring a security clearance. Mem. Op. at 1, ECF No. 47. During a routine background reinvestigation for his clearance, he sat for an interview, during which an official asked him "(1) whether he had any association with any person, group, or business venture that could be used, even unfairly, to criticize, impugn, or attack his character or qualifications for a government position; (2) whether he was aware of any people or organizations that would criticize or oppose his employment in a government position; and (3) whether there was any information regarding members of his family that would be a possible source of embarrassment to the United States

---

[1] The caption of Gebert's proposed second amended complaint identifies Antony J. Blinken, Secretary of State, as a defendant although his proposed amended pleadings fail to substantively mention him. *See* Proposed 2d Am. Compl. ¶¶ 4-5, ECF No. 49. Gebert has indicated that he is dismissing all *Bivens* claims and claims against individuals in their individual capacity. Thus, the second amended complaint can only be interpreted as a complaint against Mr. Blinken in his official capacity. Regardless, Gebert's proposed amended pleadings would be futile whether or not he sought to name the Secretary as a defendant in any capacity. *See Lewis v. Clarke*, 581 U.S. 155, 163 (2017) ("In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself.").

Department of State." *Id.* (cleaned up). Gebert answered each question in the negative. *Id.* at 2. The investigation concluded, and the Department told Gebert that he would retain a clearance. *Id.*

Soon after, the Southern Poverty Law Center published an article linking Gebert and his wife to white nationalism. Mem. Op. at 2. "The article alleged that Gebert hosted white nationalist gatherings at his home, participated in white nationalist podcasts, and operated a popular white nationalist Twitter account." *Id.* Gebert's "wife wrote blog posts focused on dating tips for white nationalist women and parenting advice for white nationalist moms." *Id.* (cleaned up). "According to the article, Gebert also expressed an understanding that his connections to white nationalism could end his career. 'There are bigger things than a career and a paycheck, and I don't want to lose mine,' it quoted Gebert as saying.   *Id.* The article also quoted Gebert as saying "I am prepared to lose mine." Michael Edison Hayden, *U.S. State Department Official Involved in White Nationalist Movement, Hatewatch Determines*, S. Poverty L. Ctr. Hatewatch (Aug. 7, 2019), https://perma.cc/UJ7Y-LJCL; *see also* Fed. R. Evid. 201(b) (judicial notice of facts not subject to reasonable dispute); *Kapersky Lab, Inc. v. Dep't of Homeland Sec.*, 909 F.3d 446, 464 (D.C. Cir. 2018) (court can notice an undisputedly existing document "not for its truth, but for its existence"). The Department suspended, then revoked, Gebert's clearance on the basis that he had concealed and omitted information during his interview. Mem. Op. at 3. Because his position required a clearance, the Department placed him on indefinite unpaid suspension. *Id.* It did not tell him "that he could continue his [ ] health insurance and retroactively terminated his health benefits." *Id.*

Gebert filed this suit, raising claims under the First and Fifth Amendments, Administrative Procedure Act ("APA"), Freedom of Information Act ("FOIA"), and Privacy Act. *Id.* at 4. The Department moved to dismiss, Gebert filed a response in opposition, and the Department filed a reply. ECF Nos. 10, 28, 31. Three days after the Department replied in support of its motion to

dismiss, Gebert moved for leave to amend his complaint, ECF No. 32, which this Court granted, *see* Min. Order (June 7, 2023). This Court later dismissed Gebert's first amended complaint, concluding that he failed to state a claim upon which relief can be granted. *See* Order, ECF No. 46; Mem. Op. The Court further ordered that Gebert "file any motion for leave to file a Second Amended Complaint within thirty (30) days of [its March 27, 2024] order." Order. On April 25, 2024, Gebert filed a motion for leave to file second amended complaint. *See* ECF No. 48.

## LEGAL STANDARD

Unless a party is entitled to amend its pleadings as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* "The district court properly denies a motion to amend a complaint "as futile if the proposed claim would not survive a motion to dismiss." *Aguiar v. DEA*, 992 F.3d 1108, 1113-14 (D.C. Cir. 2021). A court denies leave to amend based on futility if a proposed amended pleading "merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory or could not withstand a motion to dismiss." *Onyewuchi v. Gonzalez*, 267 F.R.D. 417, 420 (D.D.C. 2010) (citing *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 114 (D.D.C. 2002)); *see also Willouhby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996) (affirming denial of leave to amend given "little chance" that claim would succeed).

A court's "review for futility 'is, for practical purposes, identical to review of a Rule 12(b)(6)' motion to dismiss." *Carr v. Sessions,* Civ. A. No. 18-356 (RC), 2019 WL 917651, at *8 (D.D.C. Feb. 25, 2019) (quoting *Driscoll v. George Wash. Univ.*, 42 F. Supp. 3d 52, 57 (D.D.C. 2012)), *aff'd* No. 19-5077, 2019 WL 5394634 (D.C. Cir. Oct. 3, 2019). Dismissal is proper for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). This pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## ARGUMENT

This Court should deny Gebert leave to amend his complaint as futile because none of his proposed claims would survive a motion to dismiss for failure to state claim. At the threshold, Gebert did not meet and confer with the Department before filing his motion. Regardless, the only additional allegations that he pleads in support of the First Amendment claims that this Court previously rejected concern ostensible comparators, but these comparator allegations are wholly conclusory. He does not plausibly allege that either of these individuals intentionally lied during their clearance investigations—or even failed to disclose the information that Gebert contends is important—or that the Department treated them better than him. As to the rest of his previously-raised claims, he pleads essentially no new facts at all, instead repeating the very allegations that this Court already determined were insufficient. While he also seeks to raise four new Privacy Act claims, he fails to state a claim as to any of these claims, and indeed, they are borderline frivolous. Finally, because Gebert fails to plead any plausible claim even on his third attempt and his repeated attempts have burdened the limited resources of both this Court and the Department, this Court should deny him leave to amend with prejudice. If Gebert is dissatisfied with the dismissal of his claims, the proper action is an appeal to the D.C. Circuit, not repeated efforts to get additional bites at the apple by re-pleading essentially the same claims over and over again.

## I.    Gebert Failed to Meet and Confer Prior to Moving for Leave to Amend

As an initial matter, although this Court ordered Gebert to "file any motion for leave to file a Second Amended Complaint within thirty (30) days of this order," it did not purport to relieve

him from Local Civil Rule 7(m)'s meet and conferral requirement. *See* Order. "Before filing any

nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing

counsel in a good-faith effort to determine whether there is any opposition to the relief sought and,

if there is, to narrow the areas of disagreement." LCvR 7(m). "A party shall include in its motion

a statement that the required discussion occurred, and a statement as to whether the motion is

opposed." *Id.* This Court's Standard Order imposes the same requirements. *See* ECF No. 5 ¶ 5(a).

But Gebert "did not comply with Local Civil Rule 7(m)'s meet and confer requirement"

before moving for leave to amend or include the required statement in his motion—"a failure that

warrants denial of [his] motion." *Mack v. Aspen of D.C., Inc.*, Civ. A. No. 15-1973 (RJL), 2018

WL 564558, at *7 n.10 (D.D.C. Jan. 24, 2018); *see also Green Oceans v. Dep't of Interior*, Civ.

A. No. 24-0141 (RCL), 2024 WL 1885543, at *1 (D.D.C. Apr. 30, 2024) ("plaintiffs' motion fails

for a simple reason: plaintiffs did not bother to meet and confer with their opponents before filing

this nondispositive motion, as required"); *English v. Wash. Metro. Area Transit Auth.*, 323 F.R.D.

1, 25 (D.D.C. 2017) ("This Court routinely denies non-dispositive motions for failure to comply

with Rule 7(m)."); *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 235 F.R.D.

521, 529 (D.D.C. 2006) (parties' "motion to compel must be denied because they failed to confer

with opposing counsel in an attempt to resolve the dispute before filing a non-dispositive motion");

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 93 F. Supp. 2d 1, 12 (D.D.C. 2000)

("One additional ground exists for denying Plaintiff's motion. Plaintiff failed to comply with Local

Rule 7.1(m) (duty to confer with opposing counsel on non-dispositive motions . . . .").

## II.   Gebert's Proposed Amended First Amendment Claims Are Futile

In dismissing Gebert's First Amendment claims, this Court explained that "Gebert does

not come close to stating a claim under the First Amendment." Mem. Op. at 11. Although Gebert

claims that the Department suspended and then revoked his clearance due to his protected beliefs,

his own pleadings established that the Department acted because he told "obvious lies" during his background reinvestigation interview. *Id.* Specifically, Gebert stated "that he had no association with anyone that could be used, even unfairly, to attack his character," and "that nothing about his family would be a possible source of embarrassment to the United States Department of State." *Id.* (cleaned up). He also stated that he was unaware of any people or organizations that would criticize or oppose his employment in a government position." *Id.* at 2 (cleaned up). In reality, Gebert "and his wife associated with white nationalists, and Gebert knows that many Americans treat those individuals as holding beliefs that are beyond the pale." *Id.* (cleaned up). As this Court explained, these facts "do not suggest unlawful retaliation," and indeed "virtually compelled the Department's finding that Gebert had not provided full, frank, and truthful answers." *Id.* (cleaned up).

Gebert's proposed second amended complaint does not cure these glaring deficiencies in his allegations. By and large, he merely regurgitates the same facts that he previously pleaded, which the Court already concluded are insufficient to state a plausible First Amendment claim. His only relevant new allegations concern two ostensible comparators—employees whom he alleges had security clearances and support "Black Lives Matter," did not reveal that fact during their clearance investigations, and retained their clearances. First, a Deputy Assistant Secretary of State for African Affairs allegedly "outwardly supported [Black Lives Matter] at a townhall for the Young African Leaders Initiative." Proposed 2d Am. Compl. ¶ 168. Second, a Foreign Affairs Officer allegedly said "Today, we raise this flag to reiterate the importance of black lives around the world" during a ceremony. *Id.* ¶ 171. This Court previously concluded that "Gebert presents nothing more than conclusory allegations that the Department treated him differently than supporters of the Black Lives Matter movement." Mem. Op. at 12. His comparator allegations do

6

not alter that conclusion, as they are entirely conclusory, and thus do not "nudge his claims . . . across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 683 (cleaned up).

To state on a First Amendment retaliation claim, a plaintiff must plausibly allege "a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quotation marks omitted). This means "the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* As this Court explained, the Department's reason for suspending and revoking Gebert's clearance "rests on [his] dishonesty rather than his protected speech," and he "does not plausibly plead that the Department's reasoning conceals retaliatory motives." Mem. Op. at 11 (cleaned up).

"A frequent means of pleading factual allegations sufficient to raise an inference of [retaliation] . . . is by showing that the plaintiff was treated differently from similarly situated employees who [did] not" engage in the protected activity at issue. *Keith v. Gov't Accountability Off.*, Civ. A. No. 21-2010 (RC), 2022 WL 3715776, at *3 (D.D.C. Aug. 29, 2022). "But to plausibly plead the causation element in this way, [a plaintiff] must allege some facts to ground a reasonable inference that [he] was in fact similarly situated to comparator employees." *Id.* After all, a bare "assertion that [a plaintiff] is similarly situated to others is just a legal conclusion—and a legal conclusion is never enough to state a claim." *Id.* (quotation marks omitted); *see also Brinker v. Axos Bank*, Civ. A. No. 22-0386, 2022 WL 17724408, at *11 (S.D. Cal. Dec. 15, 2022) (assertion "[t]hat an unidentified comparator performs 'substantially similar work' is a legal conclusion," not a plausible factual allegation (quoting *Davis v. Inmar, Inc.*, Civ. A. No. 21-3779 SBA, 2022 WL 3722122, at *5 (N.D. Cal. Aug. 29, 2022))). To plead causation by relying on a comparator, then, a plaintiff must plausibly allege that the putative comparator is "similarly situated" to him, yet "received more favorable treatment." *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1115-

16 (D.C. Cir. 2016). Yet Gebert pleads no facts to support a plausible inference that the putative comparators are similarly situated to him—that they told "obvious lies" overtly or via omission, during their investigations—or even that the Department treated them differently than him.

First, Gebert pleads no facts to support a plausible inference that the putative comparators lied, either overtly or through omission, during their alleged investigations. At the threshold, his allegation that they did not disclose their support for Black Lives Matter during their investigations is conclusory, consisting solely of "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (cleaned up). While he claims that they did not disclose this fact, this claim rests solely "[u]pon information and belief." Proposed 2d Am. Compl. ¶¶ 169, 172. But "[i]t is well-settled that such conclusory allegations supported by information and belief are insufficient to survive a motion to dismiss." *Doe v. Lee*, Civ. A. No. 19-0085 (DLF), 2020 WL 759177, at *6 (D.D.C. Feb. 14, 2020) (quotation marks omitted). As the Third Circuit put it, "'[u]pon information and belief' is a lawyerly way of saying that [someone] does not know that something is a fact but just suspects it or has heard it." *Donald J. Trump for President, Inc. v. Sec'y of Pa.*, 830 F. App'x 377, 387 (3d Cir. 2020). At a minimum, "allegations based on information and belief [must] be accompanied by a statement of the facts upon which the allegations are based," *Kareem v. Haspel*, 986 F.3d 859, 866 (D.C. Cir. 2021) (cleaned up), but Gebert offers no facts to support his "bald allegations," *Iqbal*, 556 U.S. at 681, that the putative comparators did not disclose support for Black Lives Matter during their investigations. In sum, he pleads no facts to support a plausible inference that they did not disclose this fact. That alone makes them improper comparators.

Regardless, even assuming that the putative comparators were investigated and did not mention their support for Black Lives Matter during their investigations, Gebert pleads no facts to support a plausible inference that they intentionally made false statements, like he did. "Gebert

and his wife associated with white nationalists, and Gebert knows that many Americans treat those individuals as holding beliefs that are beyond the pale." Mem. Op. at 11 (cleaned up); *compare* Proposed 2d Am. Compl. ¶ 56 (same). That fact "virtually compelled" a conclusion that Gebert intentionally made false statements during his interview. Mem. Op. at 11. Further, he attempted to disguise his identity while attending the Unite the Right Rally in Charlottesville, Virginia "by wearing a hat and sunglasses;" used "pseudonyms" to conceal his identity when engaging in white nationalist activities online and on podcasts; and stated, "There are bigger things than a career and a paycheck, and I don't want to lose mine." Am. Compl. ¶ 26, ECF No. 34. Gebert pleads no similar facts as to the putative comparators—nothing to indicate that any failure to mention support for Black Lives Matter during their alleged investigations was like his intentional false statements.

Perhaps attempting to prevent this Court from considering some of these facts, Gebert has deleted them from his proposed amended complaint. He also edited his allegation that he "knows that his opinions are unpopular and that many people would be offended" to say that "some people may be offended," and deleted his allegation that "[h]e knows that society does not accept them" (i.e., his white nationalism). *Compare* Am. Compl. ¶ 54 *with* Proposed 2d Am. Compl. ¶ 54. This Court may consider all the allegations in Gebert's prior pleadings, however, even the ones that he deleted or edited, as he "cannot reasonably . . . question[,]" Fed. R. Evid. 201(b)(2), the accuracy of factual allegations that he himself previously made in pleadings filed in this Court. *See Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1088 (D.C. Cir. 2007) ("what [plaintiff] himself filed in court . . . may properly be considered on a motion to dismiss"); *Fischer v. Resol. Tr. Corp.*, 59 F.3d 1344, 1350 (D.C. Cir. 1995) ("It is hardly open to [a party] to ignore its own allegations"); *Altemus v. Talmadge*, 58 F.2d 874, 877 (D.C. Cir. 1932) ("To permit a party to plead a certain definite state of facts and then afterwards to deny them to the injury of the party relying on them is contrary to

settled principles of law"); *Mundo Verde Pub. Charter Sch. v. Sokolov*, 315 F. Supp. 3d 374, 382 n.3 (D.D.C. 2018) ("The court may take judicial notice of [plaintiff's] representations").

Second, even assuming for argument's sake that the putative comparators intentionally made false statements during their clearance investigations, Gebert pleads no facts to support a plausible inference that the Department did not also suspend or revoke the comparators clearances as a result. His allegations that the Department did not suspend or revoke their clearances are based entirely "[u]pon information and belief," Proposed 2d Am. Compl. ¶ 169, 172, and so insufficient to support a plausible inference to that effect for the reasons explained previously. To be clear, the Department does not suggest that it suspended or revoked the putative comparators clearances— only that Gebert pleads no facts to support a plausible inference that the Department did not do so.

III.     **Gebert Pleads No New Relevant Facts as to the Rest of His Previously-Raised Claims**

As to the rest of Gebert's previously raised claims, he pleads no new relevant facts, instead parroting the same allegations this Court already rejected as inadequate. Because his amendments to these claims do not cure the defects that this Court identified, these claims are futile as well.

This Court has already concluded that Gebert's Fifth Amendment claims, based on more or less the same facts in his proposed second amended complaint, failed to state a claim. As to his procedural due process claims, this Court explained that the Department gave him "all the process he was due." Mem. Op. at 13. As to Gebert's substantive due process claims, this Court determined that "the Department's decision to take adverse personnel actions against an employee it believed to be a liar was not arbitrary or demonstrably irrelevant to a policy it was free to adopt;" that it did not "transgress fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and traditions;" and that Gebert did not plausibly plead that its decisions "involved egregious, conscience-shocking misconduct in some other way." *Id.* at 14 (cleaned up). And as to his equal protection claims, this Court concluded that the Department's decisions are subject to

rational-basis review because its "application of security-clearance procedures" did not infringe upon "any constitutionally protected interest or rel[y] upon a suspect classification;" that "Gebert's lies gave the Department a rational basis for revoking his security clearance;" and that "liars are not a protected class entitled to additional judicial protection." *Id.* In his proposed second amended complaint, Gebert pleads no new relevant facts to alter any of these conclusions.

This Court likewise has concluded that Gebert's APA claims, which also rested on virtually the same facts pleaded in his proposed second amended complaint, did not pass muster. This Court explained that "APA review is not available" for any challenge to the suspension and/or revocation of his clearance because such decisions are "committed to agency discretion by law." Mem. Op. at 16. This Court also concluded that he did not plausibly allege that the Department either revoked his clearance due to his protected speech or lied about its reason for doing so. *Id.* It concluded that Gebert neither raised a claim nor plausibly alleged that "the Department has dragged its feet in adjudicating his challenge to its revocation decision." *Id.* at 16-17. And it concluded that any error in failing to notify him of his health insurance options was harmless, as he did not plausibly allege prospective injury and money damages are unavailable. *Id.* at 17. In his proposed second amended complaint, Gebert once again pleads no new relevant facts to alter any of these conclusions.

Next, this Court concluded that Gebert's FOIA and Privacy Act access claims, which rest on essentially the same facts that he pleads in his proposed second amended complaint, failed because Gebert's records request did not describe the records sought reasonably and with sufficient detail to permit their identification. Mem. Op. at 17-19. Gebert pleads no new relevant facts in his proposed second amended complaint to alter this conclusion. Nor could he possibly do so, as he cannot go back in time and change the wording of the records requests he previously submitted. Rather, Gebert acknowledges that he phrased his FOIA request in precisely the manner that this

Court already concluded does not reasonably describe the records sought. *See* Proposed 2d Am. Compl. ¶ 84 (describing the phrasing of Gebert's FOIA request). Although Gebert now pleads that his "request specifically stated that it was regarding the Security Clearance Revocation dated July 1, 2020, of Matthew Q. Gebert," this mischaracterizes the request, which by its plain and seemingly undisputed terms was not limited to records about his clearance revocation, but sought virtually any and all Department records concerning Gebert. *Id.*; *see also* Pl.'s Mot. Ex. F, Records Request, ECF No. 48-2 (requesting "all records pertaining to Mr. Gebert that are held by the US Department of State," including "[a]ll interagency and intra-agency correspondence pertaining to the above," "[a]ll interagency and intra-agency records related to the individual," "[a]ll interagency and intra-agency correspondence pertaining to the Security Clearance Revocation," and "[a]ll investigation and standard forms pertaining to the above"); *accord* Proposed 2d Am. Compl. ¶ 84 (same).

Last, Gebert affirmatively pleads that he did not administratively appeal the Department's responses to his records requests, as both FOIA and the Privacy Act require, which independently forecloses his access claims. *See* Proposed 2d Am. Compl. ¶¶ 99-100; *see also Oglesby v. Dep't of Army*, 920 F.2d 57, 62-63 (D.C. Cir. 1990) ("FOIA requires exhaustion of [the] appeal process before an individual may seek relief in the courts."); *Dettmann v. Dep't of Just.*, 802 F.2d 1472, 1476 (D.C. Cir. 1986) ("It goes without saying that exhaustion of remedies is required in FOIA cases"); *Haase v. Sessions*, 893 F.2d 370, 373 (D.C. Cir. 1990) (Privacy Act's cause of action "for access to records incorporate[s] exhaustion requirements"); *Dickson v. Off. of Pers. Mgmt.*, 828 F.2d 32, 41 (D.C. Cir. 1987) (under the Privacy Act, a requester who "failed to exhaust administrative remedies" is "barred from seeking injunctive relief").

While the Department did not respond to Gebert's records request within FOIA's required period, it ultimately if belatedly responded before Gebert filed suit. *See* 2d Proposed Am. Compl.

¶¶ 86-96. Under FOIA, "an administrative appeal is mandatory if the agency cures its failure to respond within the statutory period by responding to the FOIA request before suit is filed." *Oglesby v. Dep't of Army*, 920 F.2d 57, 63 (D.C. Cir. 1990). And "the Privacy Act contains no equivalent to FOIA's constructive-exhaustion provision" in any event. *Barouch v. Dep't of Just.*, 962 F. Supp. 2d 30, 68 (D.D.C. 2013); *see also Trent v. Dep't of Homeland Sec.*, Civ. A. No. 18-2591 (ABJ), 2020 WL 1429881, at *4 n.2 (D.D.C. Mar. 24, 2020) ("There is no similar concept of constructive exhaustion in the Privacy Act because administrative exhaustion in that law is jurisdictional"); *Kearns v. FAA*, 312 F. Supp. 3d 97, 107 (D.D.C. 2018) ("the law is clear that [constructive] exhaustion is not available under the [Privacy Act]"); *Makuch v. FBI*, Civ. A. No. 99-1094, 2000 WL 915640, at *4 (D.D.C. Jan. 5, 2000) ("The Privacy Act contains no equivalent to FOIA's constructive-exhaustion provision."). As such, Gebert needed to, but did not, exhaust his remedies.

Gebert's argument that he "was unable to appeal the releases" and "did not have the opportunity to administratively appeal the adverse determinations" because the Department "did not release the documents," "provide justifications for the documents being withheld," or identify "the referring agency" or "statutory basis for the withholdings[s]," Proposed 2d Am. Compl. ¶¶ 99-100, is borderline frivolous. These are precisely the arguments that he could and should have raised in administrative appeals of the Department's response to his requests. Gebert essentially argues that he was unable to file an administrative appeal because the Department's responses to his records requests were deficient. But the entire point of an administrative appeal is to challenge alleged deficiencies in an agency's response to a records request. To accept such excuses for failing to file an administrative appeal effectively would nullify the administrative appeal requirements.

## IV.   Gebert's New Privacy Act Claims Are Futile

Gebert's new Privacy Act claims do not pass muster, either. Gebert proposes to raise four new, non-access claims under the Privacy Act—namely, claims that the Department (1) violated

the Privacy Act's notice requirement, (2) collected information not contained in a Systems of Records Notice ("Systems Notice"), (3) unlawfully collected information on his First Amendment activities, and (4) violated the Privacy Act's routine use provision. At the threshold, using a Privacy Act claim to launch "a collateral attack on the original personnel decision" is "impermissible," so to the extent that Gebert seeks some sort of personnel benefit, his proposed Privacy Act claims are non-cognizable. *Kleiman v. Dep't of Energy*, 956 F.2d 335, 338 (D.C. Cir. 1992); *see also Albright v. United States*, 732 F.2d 181, 190 (D.C. Cir. 1984) ("the Privacy Act was not intended to shield these employees from the vicissitudes of federal personnel management decisions").

Rather, the only relief available through these proposed claims is damages. *See* 5 U.S.C. § 552a(g)(1)(D), (4)(A); *see also FAA v. Cooper*, 566 U.S. 284, 303 n.1 (2012) (noting "the absence of equitable relief in suits under [5 U.S.C. §] 552a(g)(1)(D)"); *Sussman v. Marshals Serv.*, 494 F.3d 1106, 1122 (D.C. Cir. 2007) ("only monetary damages, not declaratory or injunctive relief, are available to § 552a(g)(1)(D) plaintiffs"); *Doe v. Stephens*, 851 F.2d 1457, 1463 (D.C. Cir. 1988) (Privacy Act's "subsection on civil remedies authorizes entry of injunctive relief in only two specific situations" and "precludes other forms of declaratory and injunctive relief"); 5 U.S.C. § 552a(g)(2)-(3) (authorizing injunctive relief only for access and amendment claims, not claims based on other provisions). And regardless, all four of Gebert's proposed non-access Privacy Act claims are futile, as he fails to state a claim upon which relief can be granted as to any of them.[2]

Initially, Gebert can recover damages as to the proposed claims only if a "court determines that the agency acted in a manner which was intentional or willful." 5 U.S.C. § 552a(g)(4). "Thus,

---

[2]     Unlike with Gebert's proposed access claims, his proposed non-access Privacy Act claims are not subject to an exhaustion of administrative remedies requirement. *See Hubbard v. EPA Adm'r*, 809 F.2d 1, 4 (D.C. Cir. 1986) ("exhaustion of administrative remedies is not required where an individual seeks damages pursuant to" the Privacy Act. (quoting *Nagel v. Dep't of Health, Educ. & Welfare*, 725 F.2d 1438, 1441 n.2 (D.C. Cir. 1984)).

proof of intent or willfulness is a necessary element of [the] claims." *Sussman*, 494 F.3d at 1122. But Gebert pleads no facts to support a plausible inference that any ostensible violation was either intentional or willful. To the extent that he offers any allegations to that effect, they consist entirely of "naked assertions devoid of further factual enhancement," which cannot state a plausible claim to relief. *Iqbal*, 556 U.S. at 678 (cleaned up). Because any allegation of intent or willfulness is an "unadorned, the-defendant-unlawfully-harmed-me accusation," amounting to nothing but "labels and conclusions," *id.*, Gebert does not plausibly allege this essential element of his proposed non-access Privacy Act claims. Moreover, as explained further below, each of Gebert's proposed non-access Privacy Act claims also fails for additional reasons specific to that proposed claim.

> **A.    Gebert's Proposed Claim That the Department Violated the Privacy Act's Notice Requirement is Futile**

Gebert's proposed Count XI, labeled "Defendant's Failure to Obtain a Signed Privacy Act Statement," is futile because the Privacy Act contains no such requirement. Under the Privacy Act, "[e]ach agency that maintains a system of records shall . . . inform each individual whom it asks to supply information, on the form which it uses to collect the information or on a separate form that can be retained by the individual," of certain facts—specifically, (1) the authority under which the information at issue is solicited and whether disclosure is mandatory or voluntary, (2) the principle purpose for which the information solicited is intended to be used, (3) routine uses that may be made of the information, and (4) the effects, if any, of not providing the information at issue. 5 U.S.C. § 552a(e)(3). This provision does not itself waive the United States' sovereign immunity or create a cause of action. Rather, a plaintiff seeking to enforce the notice requirement must avail himself of the Privacy Act's catch-all civil remedies provision, which provides a cause of action only, as relevant here, where an agency "fails to comply with any other provision of this section . . . in such a way as to have an adverse effect on an individual." *Id.* § 552a(g)(1)(D).

15

Gebert does not plausibly allege that any failure to provide him the required notice had "an adverse effect" on him, 5 U.S.C. § 552a(g)(1)(D), because he pleads no facts to support a plausible inference that anything would have turned out any differently for him had he received the notice. Gebert does not, for example, assert that he would have provided different answers to the interview questions had he received notice under 5 U.S.C. § 552a(e)(3). Indeed, it is difficult to fathom how receiving such notice would have caused him to change any of his answers to any of the interview questions, and Gebert pleads no facts to make such an allegation plausible. It is especially unlikely that receiving the notice would have caused him to change his answers, as he claims, he sincerely believed his answers to be truthful. Gebert likewise does not plausibly allege that receiving the notice would have caused him to provide more information, *i.e.*, the information that he omitted.

Nor does Gebert claim that he would have declined the interview had Defendants provided him notice under 5 U.S.C. § 552a(e)(3), or plead any facts to make such an allegation plausible. Further, even assuming that he would have declined the interview had he received the notice, he does not plausibly allege that he would still possess his clearance and/or be in paid status had he done so. Indeed, "experience and common sense," *Iqbal*, 556 U.S. at 678, make clear that it is virtually unfathomable that he would have retained his clearance (and thus his paid status) had he refused to sit for a background reinvestigation interview. *See* Off. of Dir. Of Nat'l Intel., *Security Executive Agent Directive 4, National Security Adjudicative Guidelines* ¶ 15(a) (June 8, 2017) ("The following will normally result in an unfavorable national security eligibility determination, security clearance action, or cancellation of further proceedings for national security eligibility: [ ] refusal, or failure without reasonable cause, to undergo or cooperate with security processing, including but not limited to meeting with a security investigator for subject interview.").

Gebert's allegation that "the information collected subsequently to the Defendant's failure to provide the Privacy Notice was and continues to be used against" him, Proposed 2d Am. Compl. ¶ 233, does not support his Privacy Act claim, either. As explained, the consequences that Gebert experienced due to his answers to the interview questions are not attributable to any failure to provide him notice, because he does not plausibly allege that anything would have turned out any differently had Defendant given the required notice. Rather, such consequences are attributable solely to his own choice to answer the interview questions with "obvious lies." Mem. Op. at 11.

Lastly, Gebert's argument that 5 U.S.C. § 552a(e)(3) requires an agency "to have [a] signed Privacy Act Statement" from "all persons asked to provide personal information about themselves, which will go into a system of records," Proposed 2d Am. Compl. ¶ 231, is demonstrably incorrect. 5 U.S.C. § 552a(e)(3) plainly says no such thing—Gebert simply makes this so-called requirement up. Even if the Department "did not collect nor ask [him] to sign a Privacy Act Statement before the subject interview where the investigators asked him questions," Proposed 2d Am. Compl. ¶ 230, Gebert does not plausibly allege or provide legal authority for the notion that this would somehow violate the Privacy Act.[3] For all these reasons, Gebert's proposed Count XI fails.

### B.    Gebert's Proposed Claim That the Department Collected Information Not Contained in Its Systems Notice is Futile

Gebert's proposed Count XII, labeled "Collecting Information that is not contained in the State Department's System of Records Notice," fails because all the information about him that the Department collected fell within the relevant Systems Notice. An agency must "publish in the Federal Register upon establishment or revision a notice of the existence and character of the system of records, which "shall include," *e.g.*, "the categories of records maintained in the system."

---

[3]    Defendants proffer that they did in fact provide Gebert the required notice, but for purposes of this motion only take as true Gebert's allegation to the contrary. *See Iqbal*, 556 U.S. at 678.

5 U.S.C. § 552a(e)(4)(C). The relevant Systems Notice, *Security Records*, 83 Fed. Reg. 28,058, 28,059 (June 15, 2018), states: "The information maintained in Security Records may be used" to determine "national security eligibility" and "security clearance" eligibility. It permits Defendants to collect "[i]ncident and investigative material," including "security evaluations and clearances, national security eligibility determinations;" "evidence collected during investigations;" "social media account communications and/or findings for individuals undergoing background or security investigations; publicly available social media communications of third parties with individuals undergoing background investigations;" and "security violation files." *Id.* at 28,060.

These categories of information plainly are expansive enough to encompass Gebert's answers to the interview questions—whether (1) "he had any association with any person, group, or business venture that could be used, even unfairly, to criticize, impugn or attack his character or qualifications for a government position," (2) "he was aware of any people or organizations that would criticize or oppose his employment in a government position," and (3) "there was any information regarding members of his family that would be a possible source of embarrassment to the United States Department of State." Proposed 2d Am. Compl. ¶ 13. All three of these questions seek to elicit investigative material with self-evident relevance to whether "access to classified information is clearly consistent with the national security interests of the United States" Exec. Order 12,968, § 3.1(b), 60 Fed. Reg. 40,245, 40,250 (Aug. 2, 1995). Agencies, after all, "need all the evidence they can get to control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to have access to such information." *Rattigan v. Holder*, 689 F.3d 764, 769 (D.C. Cir. 2012) (cleaned up). And the Systems Notice categories are broad enough to include evidence tending to show that Gebert provided untruthful answers to the questions posed to him during his interview. The fact that the Systems Notice "does

not reference First Amendment activities" specifically, as Gebert argues, Proposed 2d Am. Compl. ¶ 237, is irrelevant because the Systems Notice's enumerated categories of information encompass Gebert's answers to the specific questions posed during his interview and other evidence that he gave untruthful answers to those questions. For these reasons, Gebert's proposed Count XII fails.

### C. Gebert's Proposed Claim That the Department Unlawfully Collected Information About His First Amendment Activities Futile

Gebert's proposed Count XIII, labeled "Collecting First Amendment Information Without Proper Authority," is futile because any collection of information about Gebert's First Amendment activities fell within the scope of an authorized law enforcement investigation. "Each agency that maintains a system of records shall . . . maintain no record describing how any individual exercises rights guaranteed by the First Amendment unless," as relevant here, "pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a(e)(7). But "[b]ackground investigations conducted to assess an applicant's qualification, such as clearance and investigatory processes, inherently relate to law enforcement." *Sack v. Dep't of Def.*, 823 F.3d 687, 694 (D.C. Cir. 2016) (quoting *Morley v. CIA*, 508 F.3d 1108, 1128-29 (D.C. Cir. 2007)). To the extent that any information on Gebert that the Department collected can be characterized as First Amendment information, it was pertinent to and within the scope of Gebert's security clearance background reinvestigation, which is an authorized law enforcement activity. *See Sack*, 823 F.3d at 694; *Morley*, 508 F.3d at 1128-29. Gebert's assertion that "[t]he security clearance interview was not part of a law enforcement activity," Proposed 2d Am. Compl. ¶ 248, is simply incorrect as a matter of law. In support of this claim, Gebert also repeats his assertion that Defendants' "own [Systems Notice] does not allow for the collection of this [i]nformation," *id.* ¶ 250, which is incorrect for the reasons explained, *see supra* § III.B. For these reasons, Gebert's proposed Count XIII fails.

19

**D.      Gebert's Proposed Claim That the Department Violated the Privacy Act's Routine Use Provision is Futile**

Last, Gebert's proposed Count XIV, labeled "Improper Sharing of Information Under the Routine Use Provision," is futile, as Gebert does not plausibly allege that the Department disclosed any records at all, or that such disclosure was for any but a routine use. "No agency shall disclose any record which is contained in a system of records . . . unless disclosure of the record would be," as relevant here, "for a routine use." 5 U.S.C. § 552a(b)(3). Gebert does not plausibly allege that the Department "disclose[d]," *id.*, any records to anyone, however, and indeed, it is not even clear to whom he thinks such disclosure occurred. "Defendant employees," Proposed 2d Am. Compl. ¶ 12, i.e., Department employees, interviewed Gebert, and the Department used the information obtained during this interview in making its decisions to suspend and then revoke his clearance. Gebert's failure to identify any actual disclosure dooms his proposed Count XIV at the threshold.

Regardless, Gebert does not plausibly allege that any disclosure was for any but a routine use. A routine use under the Privacy Act is a "use of such record for a purpose which is compatible with the purpose for which it was collected." 5 U.S.C. § 552a(a)(7). An agency's Systems Notice must include "each routine use of the records contained in the system, including the categories of users and the purpose of such use." *Id.* § 552a(e)(3)(C). Thus, "[t]o fit within the confines of the routine use exception to the Privacy Act, an agency's disclosure of a record must be both (i) for a purpose which is compatible with the purpose for which it was collected and (ii) within the scope of a routine use notice published by the agency." *Ames v. Dep't of Homeland Sec.*, 861 F.3d 238, 240 (D.C. Cir. 2017) (quotation marks omitted). Here, any disclosure of records naturally would have been in the course of Gebert's clearance investigation or adjudication, which plainly is "compatible with the purpose for which [such information] was collected," 5 U.S.C. § 552a(b)(3), and Gebert pleads no facts to raise any notion to the contrary "above the speculative level," *Bell*

20

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And the relevant Systems Notice includes as a routine use "Department of State officials in the administration of their responsibilities," *Security Records*, 83 Fed. Reg. at 28,060, which naturally covers clearance investigations or adjudications.

Gebert's argument that "[s]ince [he] did not sign a Privacy Act Statement for the subject interview nor did he sign a Privacy Act Statement specific to the collection of his First Amendment activity, Defendant[ ] violated the routine use of the information collected by storing it in their system of records," Proposed 2d Am. Compl. ¶ 128, is an incoherent non-sequitur. Even if the Privacy Act required the Department to have Gebert sign a statement or consent to collection of any First Amendment-related records, *but see supra* §§ III.A, C, whether or not the Department did so has nothing to do with whether it made non-routine use of the information collected—that makes no sense and does not follow. Gebert's allegation that the Department "violated the routine use of the information collected by storing it in their system of records," Proposed 2d Am. Compl. ¶ 128, meanwhile, is a contradiction in terms. The Department cannot possibly have "disclose[d]," 5 U.S.C. § 552a(b), records merely by storing them in its own internal system of records. That is just not what the word "disclose" means. *Cf. Piper v. Dep't of Just.*, 339 F. Supp. 2d 13, 22 (D.D.C. 2004) (dissemination would be unlikely if plaintiff had "just planned to store [certain] documents in a room somewhere"). For all these reasons, Gebert's proposed Count XIV fails.

## V.    This Court Should Deny Leave to Amend With Prejudice

Leave to amend properly is denied for, as relevant, (1) "repeated failure to cure deficiencies by amendments previously allowed," (2) "undue delay," and (3) "undue prejudice to the opposing party." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Affording Gebert yet another opportunity to attempt to amend his pleadings would implicate all three of these rationales. As such, this Court should not only deny Gebert leave to amend his pleadings, but furthermore, do so with prejudice.

First, Gebert repeatedly has failed to cure the deficiencies in his pleadings. This is Gebert's third attempt to plead valid claims. After briefing on the Department's motion to dismiss Gebert's original complaint completed, he moved for leave to amend his complaint, arguing that amendment was necessary to plead "information that was previously known to him." ECF No. 32 at 2. This Court granted leave to amend. Min. Order (June 7, 2023). Gebert then filed an amended complaint, ECF No. 34, which this Court dismissed for failure to state a claim, *see* Order; Mem. Op. Gebert's proposed second amended complaint thus is his third unsuccessful effort to plead sufficient claims. Having "repeated[ly] fail[ed] to cure [the] deficiencies" in his pleadings, *Foman*, 371 U.S. at 182, Gebert is not entitled to yet another bite of the apple. Gebert could not drag his claims across the line of plausibility after three tries, and there is no reason to assume that he could do given a fourth.

That is especially so in light of the fact that the great bulk of Gebert's proposed claims are virtually indistinguishable from the claims this Court previously rejected as insufficient. Many of Gebert's proposed claims contain essentially no new facts, and certainly no new relevant facts. *See supra* § II. The only new factual allegations that he pleads to support his previously-raised claims are comparator allegations that are altogether conclusory. *See supra* § I. This Court has too many pressing matters on its docket to waste its limited and valuable time addressing claims that it has already adjudicated, but which Gebert insists on raising yet again despite adding no new relevant facts. If he is unhappy with this Court's dismissal of his claims, the proper path forward is to appeal this Court's ruling to the D.C. Circuit—not to simply raise the same claims again and again with no meaningful changes, as if to wear down by attrition the Court's resistance to the defects in them.

Second, to the extent that Gebert may seek to raise new claims or plead new facts in support of his previously raised claims, there is no reason why he could not have done so in any of his first three pleadings or proposed pleadings. He should not be permitted to prolong this case's resolution

by repeatedly pleading new claims and/or facts that he could have raised earlier, and this Court should not reward such dilatory behavior. *See Atchinson v. District of Columbia*, 73 F.3d 418, 426 (D.C. Cir. 1996) ("undue delay is a sufficient reason for denying leave to amend"); *see also Trudel v. SunTrust Bank*, 924 F.3d 1281, 1288 (D.C. Cir. 2019) (leave properly denied where "plaintiffs offered no good reason for failing" to act timely); *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 247 (D.C. Cir. 1987) (leave properly denied where plaintiff "offered no explanation for its tardiness"); *Schubarth v. Fed. Rep. of Germany*, Civ. A. No. 14-2140 (CRC), 2020 WL 13065292, at *12 (D.D.C. Mar. 12, 2020) (plaintiffs cannot "amend long after pleading deficiencies have been first brought to their attention"); *James Madison Proj. v. Dep't of Just.*, 208 F. Supp. 3d 265, 277 (D.D.C. 2016) ("Whether there has been an unexplained delay in pleading previously-known allegations is [an] important consideration" in whether to grant leave (quotation marks omitted); *Societe Liz, S.A. v. Charles of the Ritz Grp., Ltd.*, 118 F.R.D. 2, 4 (D.D.C. 1987) (same); *Onyewuchi v. Gonzalez*, 267 F.R.D. 417, 421 (D.D.C. 2010) (leave properly denied "if a party had sufficient opportunity to state the amended claims and failed to do so" (cleaned up)).

Third, allowing Gebert to continually file new motions to amend his pleadings would cause the Department undue prejudice given the time and resources that it already has spent responding to Gebert's pleadings and proposed pleadings to date. The Department already fully briefed two separate motions to dismiss Gebert's pleadings, and now files a lengthy response in opposition to his motion for leave to amend that in substance is equivalent to a third motion to dismiss. Like this Court, the Department has many competing priorities and only limited resources to devote to them. The U.S. Attorney's Office, which defends the Department, likewise is responsible for handling numerous cases against federal agencies and officials. To the extent that Gebert may seek to raise claims equivalent to those that this Court already dismissed, the Department and U.S. Attorney's

Office should not repeatedly be required to divert resources from other matters to address claims that this Court already rejected. And to the extent that Gebert would seek to raise new claims, he already "had numerous opportunities to raise these claims in prior litigation, but failed to do so." *Sieverding v. Dep't of Just.*, 910 F. Supp. 2d 149, 158 (D.D.C. 2012), *aff'd*, No. 13-5060, 2013 WL 6801184 (D.C. Cir. Dec. 11, 2013). "Although leave to amend should be freely given when justice so requires, [Gebert] cannot keep this case alive indefinitely by shifting his legal theories at the last minute." *Price v. Unite Here Loc. 25*, 883 F. Supp. 2d 146, 154 (D.D.C. 2012), *aff'd*, No. 12-7089, 2013 WL 1267137 (D.C. Cir. Mar. 22, 2013).

## CONCLUSION

This Court should deny Gebert's motion for leave to amend with prejudice.

Dated: May 24, 2024
Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: _____*Bradley G. Silverman*_____
BRADLEY G. SILVERMAN
D.C. Bar #1531664
Assistant United States Attorney
601 D Street NW
Washington, DC 20530
(202) 252-2575
bradley.silverman@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MATTHEW GEBERT,

        Plaintiff,

    v.                                                    Civil Action No. 22-2939 (DLF)

DEPARTMENT OF STATE,

        Defendant.

## [PROPOSED] ORDER

UPON CONSIDERATION of Plaintiff's motion for leave to amend his pleadings, and the entire record herein, it is hereby

ORDERED that Plaintiff's motion is DENIED;

ORDERED that this action is DISMISSED WITH PREJUDICE.

SO ORDERED.


_____                         _____
Dated                                     DABNEY L. FRIEDRICH
                                          United States District Court Judge