## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MATTHEW GEBERT** | ) | |
| 270 Philadelphia Ave. | ) | |
| Purgitsville, WV 26852 | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| V. | ) | |
| | ) | |
| **DEPARTMENT OF STATE** | ) | **Civil Action No. 22-2939 (DLF)** |
| 2201 C St., NW | ) | |
| Washington, District of Columbia 20520 | ) | |
| _____ | ) | |

## REPLY TO OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

BACKGROUND .......................................................................................................... 2

FACTS ....................................................................................................................5

LEGAL STANDARD ...................................................................................................... 5

ARGUMENT ...............................................................................................................6

    **I.**    Plaintiff Had a Reasonable Belief that a Meet and Confer was Not Necessary Prior to Moving for Leave to Amend ...............................................................................7

    **II.**    Plaintiff's Proposed Amended First Amendment Claims Are Supported by the Facts and Are Not Futile.................................................................................................8

    **III.**    Plaintiff Pleads New Facts for Several Previously-Raised Claims ........................... 10

    **IV.**    Plaintiff's New Privacy Act Claims Are Not Futile .......................................13

        A. Gebert's New Privacy Act Claims Seeks Damages and an Injunction . ............

        B. Defendant Violated Plaintiff's Privacy Act Statement Requirements ............14

        C. The System of Notice Does Not Allow For the Collection of First Amendment Protected Information.................................................................... 17

        D. Defendant Unlawfully Collected Information About Plaintiff's First Amendment Activities .........................................................................19

        E. Defendant Violated Plaintiff's Routine Use ......................................23

    **V.**    This Court Should Grant Leave to Amend ..........................................23

# TABLE OF AUTHORITIES

## U. S. Supreme Court cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................. 14

*Foman v. Davis*, 371 U.S. 178 (1962) ............................................................................................ 10

## District Court

*Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207 (D.C. Cir. 1997) ........................... 12

*Callaway v. Hamilton Nat'l Bank*, 195 F.2d 556 (D.C. Cir. 1952) ................................................ 13

*Deters v. U.S. Parole Comm'n*, 85 F.3d 655 (D.C. Cir. 1996) ...................................................... 18

*Doe v. District of Columbia*, 815 F. Supp. 2d 208, n. 4 (D.D.C. 2011) ........................................ 28

*Firestone v. Firestone*, 76 F.3d 1205 (D.C. Cir. 1996) ................................................................. 10

*Haleem v. Dep't of Def.*, No. 23-1471, 2024 U.S. Dist. LEXIS 10429, at *39-42 (D.D.C. Jan. 22, 2024) .... 17

*Interbank Funding Corp. Securities Litigation*, 629 F.3d 213 (D.C. Cir. 2010) ........................... 10

*J.T.F. v. D.C.*, No. 21-cv-1453 (RC), 2023 U.S. Dist. LEXIS 150751, 2023 WL 5528037, at *5 (D.D.C. 2023) ............................................................................................................ 12

*James Madison Ltd. v. Ludwig*, 82 F.3d 1085 (D.C. Cir. 1996) .................................................... 10

*Lopes v. JetSet DC, LLC*, 994 F. Supp. 2d 126 (D.D.C. 2014) ..................................................... 12

*Niedermeier v. Off. of Baucus*, 153 F. Supp. 2d 23 (D.D.C. 2001) .............................................. 12

*Nwachukwu v. Karl*, 222 F.R.D. 208 (D.D.C. 2004) .................................................................... 10

*Oglesby v. United Stated Dep't of the Army*, 920 F.2d 56 (D.C. Cir. 1990) ................................. 16

*Sack v. Dep't of Def.*, 823 F.3d 687 (D.C. Cir. 2016) ................................................................... 26

*See Day v. Cornèr Bank (Overseas) Ltd.,* 789 F. Supp. 2d 136 (D.D.C. 2011) ............................ 12

*Smith v. Cafe Asia*, 598 F. Supp. 2d 45 (D.D.C. 2009) ............................................................... 11

Yeager v. DEA, 678 F.2d 315 (D.C. Cir. 1982) ............................................................................. 17

**Other**

S. Comm. on Gov't. Operations & H.R. Comm. on Gov't. Operations, 94th Cong., Legislative History of

the Privacy Act of 1974 S. 3418 (Public Law 93-579): Source Book on Privacy at 4 (Comm. Print 1976) 6

SEAD 1 ……………………………………………………………………………………………5

SEAD 4 ……………………………………………………………………………………………4

SEAD 5 ……………………………………………………………………………………………5

Local Civil Rule 7(m)………………………………………………………………………………8

**Regulations**

22 C.F.R. § 171.4(b) ................................................................................................................. 17

**Rules**

Fed. R. Civ. P. 15(a)(2)............................................................................................................. 10

 **Statutes**

5 U.S.C. §552a(e)(7)................................................................................................................. 7

5 U.S.C. § 552a(d)(1)………………………………………………………………………...18

5 U.S.C. § 552a(e)(7) ............................................................................................................... 18

5 U.S.C. § 552a(g)(1)(B) .......................................................................................................... 18

5 U.S.C. § 552a(g)(1)(D) .......................................................................................................... 19

5 U.S.C. § 552a(g)(3)(A) ........................................................................................................... 18

U.S.C. § 552a(e) ...................................................................................................................... 20

In reply to Defendants' Opposition to Plaintiff's Motion for Leave to File a Second Amended Complaint, Matthew Gebert ("Gebert" or "Plaintiff"), by the undersigned counsel, states as follows:

The Plaintiff submits this reply brief to highlight glaring inaccuracies in the Defendant's Opposition Motion; namely, Defendants attempt to rid themselves, albeit incorrectly, of Plaintiff's motion by a technicality based on the "meet and confer" rule, and they have used (misused) case law to misleadingly claim that the new Privacy Act claims lack merit and/or would be futile. Plaintiff does not intend to spend much space discussing the First Amendment claims since these issues were extensively briefed in previous motions, and the Plaintiff does not want to burden the Court with repetitive arguments.

The Defendant attempts to improperly use case law to advance their arguments opposing the Plaintiff's motion for an amended complaint.  For example, the Defendant argues that the Plaintiff had a duty to confer with the Defendant when in fact the Court's order to submit an amended complaint was in response to the Plaintiff's First Amended Complaint, and the Plaintiff conferred with the Defendant prior to filing the First Amended Complaint (ECF No. 34). Defendant attempts to dismiss the non-access Privacy Act claims without conducting any substantive research into the Directives that govern security clearances - Security Executive Agency Directives (SEAD) - which are binding on all executive branch agencies issuing security clearances.

Finally, Defendant conflates the government's ability to collect information about U.S. persons under the Privacy Act with their ability to collect said information under the security clearance investigations without providing any supporting evidence. The Privacy Act was enacted in response to the federal government collecting information on U.S. Persons and storing them in computer databases. Whereas, the ability to collect information about U.S. Persons in security

clearance investigations is controlled by the Privacy Act as well as Security Executive Agent Directives. Therefore, it is important to understand the authority that the President granted the Director of National Intelligence to set forth a framework for all security clearance investigations.

## BACKGROUND

The Privacy Act of 1974 was enacted into law on September 27, 1975.  The law was enacted in response to the Watergate and the Counterintelligence Program (COINTELPRO) scandals that involved the illegal collection of First Amendment protected information on U.S. Persons deemed to be "subversive", otherwise known as having unpopular beliefs.  The Privacy Act was an attempt by Congress to restore trust in government and to address what was believed to be at the time an existential threat to American Democracy.

In the words of the bill's principal sponsor, Judiciary Chairman Senator Sam Ervin, "[i]f we have learned anything in this last year of Watergate, it is that there must be limits upon what the Government can know about each of its citizens."  *See* S. Comm. on Gov't. Operations & H.R. Comm. on Gov't. Operations, 94th Cong., Legislative History of the Privacy Act of 1974 S. 3418 (Public Law 93-579): Source Book on Privacy at 4 (Comm. Print 1976) [hereinafter Source Book], https://www.justice.gov/opcl/paoverview_sourcebook.  This legal framework proves that the government, under no circumstances, is allowed to collect First Amendment protected information without explicit consent. This understanding is critical when assessing the language set forth in 5 U.S.C. §552a(e)(7).

The Defendant has deliberately attempted to paint Plaintiff's claims as if he is making the claim that neither law enforcement nor security clearance investigators could *ever* collect and consider First Amendment protected information.  That is simply wrong.  The Plaintiff is alleging that the law requires specific notice and *consent* to be able to collect, use, store, and disseminate the information, and the Defendant has failed in this regard.  The Defendant would then argue in

the alternative that *even if* Defendant did not comply with the statutory requirements that the result was harmless error and would not have changed the outcome for Gebert.  This is problematic as it would seem to imply the State Department does not need to follow the law and is quite the slippery slope, but it is also problematic because it reads an element of the requirement of *actual harm* which does not exist into non-access Privacy Act claims.

The Director of National Intelligence sets forth all rules governing security clearance investigations. Each federal agency has to follow the guidance provided by the President or his or her designee.

The most applicable and relevant Executive Order, and where this Court's analysis should begin, can be found in Executive Order 13467. Executive Order 13467 was one of many measures taken by the Bush administration post-9/11 aimed at aligning the nation's intelligence community. Executive Order 13467 is titled "Reforming Processes Related to Suitability for Government Employment, Fitness for Contractor Employees, and Eligibility for Access to Classified National Security Information," issued June 30, 2008.[1] Executive Order 13467 is the beginning of the statutory framework because: (1) it is the most recent Executive Order on the issue; (2) it appoints the Director of National Intelligence as the Security Executive Agent who promulgates all rules, policies, guidelines, and oversight for all security clearances issued under Executive Authority; and (3) it explicitly directs the application of Executive Order 12968 as the framework by which to determine eligibility for access to classified information.

Furthermore, Executive Order 13467, Section 2.3 specifically calls for:

(c) The Director of National Intelligence shall serve as the Security Executive Agent. The Security Executive Agent:

> (i) shall direct the oversight of investigations and determinations of eligibility for access to classified information or eligibility to hold a sensitive position made by any agency;

---

[1]    For reference, Executive Orders 10865 and 12968 were promulgated February 1960 and August 1995, respectively, and Directive 5220.6 was implemented January of 1992.

(ii) shall be responsible for developing uniform and consistent policies and procedures to ensure the effective, efficient, and timely completion of investigations and adjudications relating to determinations of eligibility for access to classified information or eligibility to hold a sensitive position;

(iii) may issue guidelines and instructions to the heads of agencies to ensure appropriate uniformity, centralization, efficiency, effectiveness, and timeliness in processes relating to determinations by agencies of eligibility for access to classified information or eligibility to hold a sensitive position;

(iv) shall serve as the final authority to designate an agency or agencies to conduct investigations of persons who are proposed for access to classified information to ascertain whether such persons satisfy the criteria for obtaining and retaining access to classified information or eligibility to hold a sensitive position;

(v) shall serve as the final authority to designate an agency or agencies to determine eligibility for access to classified information in accordance with Executive Order 12968 of August 2, 1995;

(vi) shall ensure reciprocal recognition of eligibility for access to classified information among the agencies, including acting as the final authority to arbitrate and resolve disputes among the agencies involving the reciprocity of investigations and determinations of eligibility for access to classified information or eligibility to hold a sensitive position; and

(vii) may assign, in whole or in part, to the head of any agency (solely or jointly) any of the functions detailed in (i) through (vi), above, with the agency's exercise of such assigned functions to be subject to the Security Executive Agent's oversight and with such terms and conditions (including approval by the Security Executive Agent) as the Security Executive Agent determines appropriate.

Therefore, Executive Order 13467 provides clear guidance for the Director of National Intelligence to control the security clearance process.

In June 2017, the Director of National Intelligence issued SEAD 4. Section "A" provides the authority for the issuance of the directive and provides the necessary roadmap to understanding this issue. SEAD 4 (A) states in pertinent part:

The National Security Act of 1947, as amended; Intelligence Reform and Terrorism Prevention Act of 2004 (IRTPA), as amended; Executive Order (EO) 10450, Security Requirements for Government Employment, as amended; EO 12968, Access to Classified Information as amended; EO 13467, Reforming Processes Related to Suitability for Government Employment, Fitness for Contractor Employees, and

Eligibility for Access to Classified National Security Information; EO 13549, Classified National Security Information Program for State, Local, Tribal and Private Sector Entities; Performance Accountability Council memorandum, Assignment of Functions Relating to Coverage of Contractor Employee Fitness in the Federal Investigative Standards, 6 December 2012; and other applicable provisions of law.

It is important to note that SEAD 4 is listing the derivative authorities that provide ODNI with the responsibility of establishing the processes and procedures for security clearances. However, the section should technically start at Article II, Section 2 of the U.S. Constitution which makes the President, the Commander-in-Chief, and historically the Executive Branch's national security authority is derivative of - to include security clearances.

SEAD 4 also makes it abundantly clear to whom this guidance applies, where paragraph "C" (Applicability) unequivocally states, "This Directive applies to any executive branch agency authorized or designated to conduct adjudications of covered individuals to determine eligibility for initial or continued access to classified national security information or eligibility to hold a sensitive position." Therefore, SEAD 1 and SEAD 5 are controlling on the State Department and should be considered when assessing the merit of the non-access claims raised by the Plaintiff in the Second Amended Complaint (ECF No. 49)

### FACTS

The Plaintiff adopts their facts section listed in the Second Amended Complaint (ECF No. 49)

### LEGAL STANDARD

Leave to amend a pleading "should [be] freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). In deciding whether to grant leave to file an amended complaint, courts may consider "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178,

182 (1962).  In this Circuit, "it is an abuse of discretion to deny leave to amend unless there is

sufficient reason."  *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).

Furthermore, under Rule 15, "the non-movant generally carries the burden in persuading

the court to deny leave to amend."  *Nwachukwu v. Karl*, 222 F.R.D. 208, 211 (D.D.C. 2004).

However, if the new causes of action would still be deficient notwithstanding the proposed

amendment, courts need not grant leave.  See *In re Interbank Funding Corp. Securities Litigation*,

629 F.3d 213, 218 (D.C. Cir. 2010) ("[A] district court may properly deny a motion to amend if

the amended pleading would not survive a motion to dismiss.") (citing *Foman*, 371 U.S. at 182,

for proposition that "'futility of amendment is permissible justification' for denying Rule 15(a)

motion"); *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996) ("Courts may deny

a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to

dismiss.") (citations omitted).

## ARGUMENT

Plaintiff has removed claims, added new facts relevant to the FOIA and Privacy Act claims

as well as raising four new non-access Privacy Act claims. The harm caused by these violations has

been well-pled throughout the Complaint. The illegal collection of First Amendment protected

activities resulted in the denial of the Plaintiff's security clearance. However, the Plaintiff is not

asking for the court to review the actual revocation of the security, instead, the Plaintiff is asking the

court to review the information relied upon to determine if the Agency had the authority to collect

said information in the first place.  This distinction is critical because the Plaintiff is not asking for

the court to assess the merits of the national security determination, instead, the Plaintiff is asking

the court to review authority the Agency had to collect said information, which falls squarely within

the Court's purview and merits granting the Plaintiff's motion for a Second Amended complaint.

Additionally, the Plaintiff has always alleged a Privacy Act violation, the Second Amended

complaint provides further specificity to what has already been alleged.

I.     **Plaintiff Had a Reasonable Belief that a Meet and Confer was Not Necessary Prior to Moving for Leave to Amend**

The Plaintiff did not attempt to "meet and confer" with Defendant's counsel prior to filing his motion for leave to amend because Plaintiff believed in good faith that Local Civil Rule 7(m) did not apply in this specific instance.  The Court has discretion in whether to grant a motion to amend or not, and we ask the Court to find that Plaintiff's explanation is reasonable, made in good faith, and that leave to amend should be granted in this case.  *Smith v. Cafe Asia*, 598 F. Supp. 2d 45, 49 (D.D.C. 2009) (noting that the court acts in its discretion in granting a motion to amend).

First, this Court's Order specifically instructed "that the plaintiff shall file any motion for leave to file a Second Amended Complaint within thirty (30) days of this order.  Otherwise, the Court will dismiss this action."  ECF No. 46.  Because the Order does not state "in accordance with" or "notwithstanding" local rules, Plaintiff reasonably believed he could file his motion for leave without conferring with counsel.

Second, while motions to amend pleadings are typically considered "non-dispositive" motions that would otherwise be subject to the Meet and Confer requirement, the circumstances in this case warrant different handling.  A dispositive motion in the Circuit is defined as a "motion that, if granted, would result in the determination of a particular claim on the merits or elimination of such a claim from the case."  *Lopes v. JetSet DC, LLC*, 994 F. Supp. 2d 126, 135 (D.D.C. 2014) *citing Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1215 (D.C. Cir. 1997).  As the Court's Order clearly states, the failure of Plaintiff to file this motion for leave to amend his pleading would result in the dismissal of this action, which would obviously result in the "elimination of such a claim from the case."  It is important to note that a dispositive motion is not focused on whether it is titled a Motion for Summary Judgment or a Motion to Dismiss; instead the definition focuses on the impact that the motion would have on the case.  *See Lopes,* 994 F.

Supp. 2d at 135.  When a plaintiff is confronted with "file this motion or the entire case will be dismissed," it is hard to see Plaintiff's motion for leave to amend as anything but dispositive.

If the Court determines that Plaintiff's motion was a non-dispositive motion, the Court has wide discretion whether to grant or deny Plaintiff's motion.  Plaintiff assumed that the Court's order was a direct invitation to amend the complaint by a specified date or risk having the entire case dismissed.  In light of these facts, Plaintiff asks that the Court choose to resolve the motion on the merits.  *Niedermeier v. Off. of Baucus*, 153 F. Supp. 2d 23, 27 (D.D.C. 2001) (noting "the general judicial preference for resolving motions on their merits rather than dismissing them on technicalities");  *J.T.F. v. D.C.*, No. 21-cv-1453 (RC), 2023 U.S. Dist. LEXIS 150751, 2023 WL 5528037, at *5 (D.D.C. 2023) ("Here, Plaintiffs did not attempt to confer with the District and therefore could not certify that the required discussion occurred… Nevertheless, in the interest of resolving this dispute, this Court will consider Plaintiffs' motion on its merits.") (internal citations omitted). Therefore, when a party has failed to respect the requirements of Local Rule 7(m), the Court will exercise its discretion in selecting the remedy, bearing in mind the purposes of the rule. *See Day v. Cornèr Bank (Overseas) Ltd.,* 789 F. Supp. 2d 136, 144 (D.D.C. 2011) ("The decision to grant or deny a motion to strike is vested in the Court's discretion.").

Therefore, we ask the Court to find that Plaintiff was not required to comply with Local Civil Rule 7(m) in this instance because it did not apply.  In the alternative, in the event the Court finds that the rule did/does apply, we ask the Court to use its discretion to determine Plaintiff's motion should not be denied on this basis.  Plaintiff's decision to forgo the Meet and Confer was reasonable and made in good faith and that such requirement in these circumstances would have been entirely futile.

## II.  Plaintiff's Proposed Amended First Amendment Claims Are Supported by the Facts and Are Not Futile

As Plaintiff mentioned in the onset, he will not spend a considerable amount of time discussing the First Amendment claims, as they have been thoroughly briefed to this point. The Plaintiff will highlight two specific points, however.

First, as Defendant identifies accurately, Plaintiff has claimed several additional facts to support that similarly situated comparators were treated more favorably to Gebert. ECF No. 51, 4, 6-10. These additional facts allow Plaintiff to sufficiently state a claim regarding many of his First Amendment counts, and the Plaintiff should be able to move forward in this litigation with these newly pleaded facts to support his claims.

Second, the Plaintiff also is not spending considerable time re-arguing many of his points on his First Amendment claims because he is in the unenviable position to argue to this Court that he believes the incorrect standard for its ruling was applied to these claims. Plaintiff believes that Gebert's responses were not "obvious lies" and that Plaintiff's allegations should be taken as true "and all reasonable favorable inferences arising therefrom are to be indulged." *Callaway v. Hamilton Nat'l Bank*, 195 F.2d 556 (D.C. Cir. 1952). The court in *Callaway* goes on to explain the analysis:

> Further, regardless of what label may be attached to this proceeding at this stage, we think we must dispose of it on the following basis: First, as indicated above, we must take plaintiff's assertions of fact as true- they are not disputed, nor are they patently false. Second, we must not attempt to resolve any conflict in the inferences to which they give rise, for to do so would go beyond the proper scope of either a motion to dismiss or one for summary judgment. Third, we must determine whether, if all conflicting inferences were to be resolved in plaintiff's favor at a trial, he would nevertheless not be legally entitled to a recovery.

*Calloway*, 195 F.2d at 559. (Internal Citations Omitted)

The Defendant's allege that Gebert lied, and that is the reason for revoking his security clearance. The Plaintiff, on the other hand, argues Gebert was not dishonest, and that it is actually the Defendant who has been dishonest with their reasoning for revoking his security clearance. The Plaintiff has argued that the "dishonesty" alleged by Defendants is a pretext for the real reason

for revoking his security clearance, which is because of the ties and beliefs that are categorized as "pro-white." The latter being an inappropriate and unlawful reason to revoke one's clearance; hence, this is the Defendant's motive to fabricate the reason for the revocation. Making a credibility determination is not even on the map at the motion to dismiss stage, as it is not even appropriate for the court to do so at the motion for summary judgment phase. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.")

Therefore, with all reasonable inferences being weighed in Plaintiff's favor, especially with the addition of the supporting facts provided in the proposed Second Amended Complaint, Plaintiff's First Amendment claims should remain, should not be found to be futile, and this Court should deny Defendant's motion.

III.    **Plaintiff Pleads New Facts for Several Previously-Raised Claims**

The Plaintiff points the Defendant and this Court to the redlined version of the Second Amended Complaint and the errata. ECF Nos. 48-49. Several new facts that were only previously argued in motions have been inserted to boost remaining First Amendment and APA claims. Additionally, Plaintiff has added a "Selective Enforcement" claim and completely revamped his "Equal Protection" claim. Further, Plaintiff has updated and provided additional facts to support the APA claim related to Defendant's violation of the controlling health insurance regulations and policies.

More significantly, and obvious to the reader, is that Plaintiff has inserted several more facts and allegations regarding the FOIA and Privacy Act claims. Plaintiff provides and incorporates the FOIA and Privacy Act requests into the Second Amendment Complaint to illustrate how the Plaintiff's requests were unmistakably clear. Furthermore, the Plaintiff

highlights how the Defendant's abuse of the FOIA and Privacy process resulted in the Plaintiff being unable to appeal the disclosures because the Defendant did not release the documents that they mentioned in the letter, nor did they provide justification for the documents being withheld. Plaintiff makes this claim that the Defendant's response was so deficient as to make it unclear how or to whom an appeal would even go.  ECF No. 49 ¶¶ 90-99.  Defendant attempts to argue that the failure to identify their withholding authority is a basis enough to appeal, but put a different way, they are justifying their failure to follow the federal statute and arguing that the Plaintiff should exercise considerable time and resources appealing a FOIA response that does not provide the justifications for their withholding. ECF No. 51, 2. Therefore, it begs the question, what was Plaintiff supposed to appeal under those circumstances? And, it is impossible to appeal a decision when you do not know what you are appealing because the decision did not provide the recipient their reasoning.

For example, Defendant alleges that one responsive record originated with another agency and that Defendant was going to refer that part of the request.  *Id*. at ¶ 96.  But they did not indicate to whom that referral was made, when it was made, or the name of the other agency for Plaintiff to be able to directly make that request.  *Id*. at ¶¶ 97-98.

Further, many of the additional facts regarding the Defendant's FOIA response raise the issue that Defendant's response was actually deficient; a deficient FOIA response is no response at all.  If Defendant provided "no response at all," then Plaintiff constructively exhausted his FOIA request, and he was entitled to bring this claim before the Court.

> [a] response is sufficient for purposes of requiring an administrative appeal if it includes: the agency's determination of whether or not to comply with the request; the reasons for its decision; and notice of the right of the requester to appeal to the head of the agency if the initial agency decision is adverse. Assuming an agency's initial response complies with these requirements, the FOIA requester must appeal to the head of the agency.

*Oglesby v. United Stated Dep't of the Army*, 920 F.2d 56, 65 (D.C. Cir. 1990) (internal citations omitted).

There were multiple discrepancies with the number of pages identified as responsive and the number of pages produced. See ECF No. 49 ¶¶ 87-89, 93-95. The Defendant did not address "whether or not to comply with the request," nor did they provide the "reasons for its decision" to withhold them in the manner and extent they did. Thus, the Defendant never provided a response in accordance with the statute, which means Plaintiff constructively exhausted all avenues prior to filing his lawsuit.

Considering these facts support constructive exhaustion, the only other remaining "hurdle" to futility is regarding the Defendant's argument that Plaintiff's requests were not specific enough because they contained the language "pertaining to" and "relating to." Although we acknowledge the Court agreed with the Defendant's position, the Defendant failed to cite to the governing regulation controlling the State Department's release of information despite it being entirely on point and dispositive on the issue of whether there was any actual confusion or lack of clarity.

Had the agency truly struggled with understanding what Plaintiff was requesting in his FOIA and Privacy Act requests, they had an obligation to clarify these requests with Plaintiff:

> ***Description of records sought.*** Although no particular format is required, a request must reasonably describe the Department record(s) that the requester seeks. Requesters must describe the records sought in sufficient detail to enable agency personnel to locate them with a reasonable amount of effort. To the extent possible, requesters should include specific information that may assist the Department in identifying the requested record(s), such as the date, title or name, author, recipient, subject matter, case number, file designation reference number, or timeframe. **If after receiving a request the Department determines that the request does not reasonably describe the records sought, the Department will inform the requester that the request is insufficient and shall inform the requester what additional information is needed or why the request is otherwise insufficient.** If a request does not reasonably describe the records sought, the agency's response to the request may be delayed. Any records provided in response to a request will be provided in the form or format requested if a releasable form of the records is readily reproducible in that form or format. Requesters must provide contact information, such as their phone number, email address, and/or mailing address, to assist the Department in communicating with them and providing released records

22 C.F.R. § 171.4(b) (**Emphasis added**)

   This request for clarification did not occur.  This is simply a concocted excuse by Defendant's counsel after-the-fact matching language of a request to case law where the context simply does not support a one-to-one comparison.  Either the agency believed the request to be clear and particular enough, or it violated a lawful regulation.  They cannot have it both ways.

   Further, the actions by the agency are not insignificant nor should the Court ignore them.  There is no evidence to support that the Defendant actually *did* misunderstand the request.  In determining whether a request reasonably describes the records sought, "[t]he linchpin inquiry is whether the agency is able to determine precisely what records are being requested." *See Haleem v. Dep't of Def.*, No. 23-1471, 2024 U.S. Dist. LEXIS 10429, at *39-42 (D.D.C. Jan. 22, 2024) *citing* Yeager v. DEA, 678 F.2d 315, 326 (D.C. Cir. 1982) (cleaned up).  In *Haleem*, based on almost the exact same language within the request (*Haleem* at *4) (as Plaintiff would know as the undersigned counsel represented the plaintiff in that case), the court determined, "Here, the Court is not convinced that a reasonable agency would — or that any of the agencies at issue did — have any trouble determining which records [plaintiff] was requesting."  *Id* at *23.

   This type of defense by Defendant would only even potentially be reasonable if supported by affidavit or declaration, which obviously was not provided.  The Defendant's proffer and citation to wholly inapplicable case law is not evidence and falls woefully short of trying to claim Plaintiff's FOIA and Privacy Act claims are futile.  This is not supported by the facts, the record, the case law, or, most importantly, the legal standard is not on their side.

**IV.**  <u>**Plaintiff's New Privacy Act Claims Are Not Futile**</u>

   **A.**  **Gebert's New Privacy Act Claims Seeks Damages and an Injunction**

   Defendant's claim that Plaintiff's non-access Privacy Act claims are meritless is confusing at best.  In fact, Defendant's misstatement of the federal statute casts serious doubt onto the

legitimacy of the rest of its arguments.  Defendant wants the Court to believe that damages are the only remedy available, while ignoring that the Defendant's failure to provide Gebert's records under the Privacy Act entitles him to injunctive relief.  More specifically, 5 U.S.C. § 552a(d)(1) specifically states upon request by "any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him…to have a copy made of all or any portion thereof…"  Since, Defendant has not provided Gebert with his record, as evidenced by the request and the Defendant's withholding of records without justification, 5 U.S.C. § 552a(g)(1)(B) states that whenever an agency "refused to comply with an individual request under subsection (d)(1)..." that "the court may enjoin the agency…" 5 U.S.C. § 552a(g)(3)(A).

Continuing the constant theme of misstating, mischaracterizing, or just being utterly confused by the case law, Defendant attempts to argue that Plaintiff did not establish that the Defendant acted intentionally or willfully despite the Defendant even acknowledging in their own Motions to Dismiss that they asked three questions at the end of the subject interview that were specific to the U.S. Department of State.  ECF No. 38-1, 4-5.  In fact, the definition of "intentional or willful manner is described" as when an agency "commit[s] the act without grounds for believing it to be lawful, or by flagrantly disregarding other's rights under the Act." *Deters v. U.S. Parole Comm'n*, 85 F.3d 655, 660 (D.C. Cir. 1996) (quoting *Albright v. United States*, 732 F.2d 181, 189 (D.C. Cir. 1984)).  The Privacy Act is clear regarding the collection of First Amendment protected activities, 5 U.S.C. § 552a(e)(7), and worse yet the SecEA specifically provides for the consistency and fairness of the adjudication process. The Defendant's ignorance of the governing laws is not a justification for violating Gebert's rights. Additionally, the Defendant's arguments that Plaintiff does not provide sufficient facts of how the Defendant violated his rights and harmed him is outright preposterous because the facts alone support such claims.  ECF No. 49.

**B.**     **Defendant Violated Plaintiff's Privacy Act Statement Requirements**

The Defendant's arguments about the requirements to issue a Privacy Act Statement prior to collecting personal information can best be described as confused.  Defendant argues in the same breath that the provision does not waive the United States' sovereign immunity but that the Plaintiff must show that the failure "to comply with any other provision of this section…in such a way as to have an adverse effect on an individual."  5 U.S.C. § 552a(g)(1)(D). (ECF No. 51 at 15). The entire fact section of the complaint describes how the Defendant asked questions that were outside the scope of the Standard SF86 questionnaire. Furthermore, the Plaintiff specifically alleges how those questions and the Plaintiff's subsequent answers formed the basis for the "untruthfulness" allegations that led to the revocation of the Plaintiff's security clearance. ECF No. 49 ¶¶ 25, 58)

The Defendant misses the entire point of the Privacy Act Statement - despite identifying it in the title of the section of their brief - notice.  Plaintiff never had the opportunity to decide whether he would allow for the Defendant to ask and collect such information. Instead, the Defendant prefers to rely upon hypotheticals about what the Plaintiff would have done had the Defendants followed the law.  ECF No. 51 at 16.  Unfortunately, the law does not concern itself with hypotheticals, instead the fact is that the Defendant failed to issue a Privacy Act Statement covering the three questions asked at the end of the subject interview.  ECF No. 34 at 14.

Instead, the Defendant seeks to read additional requirements into the federal statute, such as having to state that Plaintiff would have declined the interview.  ECF No. 51 at 16.  Even more perplexing is the commentary that had the Defendant followed the law and the Plaintiff declined the interview, that the Plaintiff would have been denied a security clearance.  ECF No. 51 at 17. It is a perplexing line of logic that is not supported in the facts of the case. The only reason the Plaintiff's security clearance was revoked was because the Defendant determined that he answered those three questions untruthfully, so if he never answered those questions, the only other basis for the revocation of Plaintiff's security clearance would be that the Defendant revoked his clearance

based upon his First Amendment protected speech, association, and activities.  Ironically, the exact

pretextual arguments that the Plaintiff is raising in this case.

Again, Defendant's arguments that the Privacy Act Statement is not a requirement is either

an example of confusion or obfuscation because the statute could not be clearer.  The statute, 5

U.S.C. § 552a(e), specifically states the following:

**(e)AGENCY REQUIREMENTS.—**Each agency that maintains a system of rec-ords
shall—

**(1)** maintain in its records only such information about an individual as is relevant
and necessary to accomplish a purpose of the agency required to be accomplished
by statute or by executive order of the President;

**(2)** collect information to the greatest extent practicable directly from the subject
individual when the information may result in adverse determinations about an
individual's rights, benefits, and privileges under Federal programs;

**(3) inform each individual whom it asks to supply information, on the form
which it uses to collect the information or on a separate form that can be
retained by the individual—**

> **(A)the authority (whether granted by statute, or by executive order of
> the President) which authorizes the solicitation of the information and
> whether disclosure of such information is mandatory or voluntary;**

> **(B)the principal purpose or purposes for which the information is
> intended to be used;**

> **(C)the routine uses which may be made of the information, as
> published pursuant to paragraph (4)(D) of this subsection; and**

> **(D)the effects on him, if any, of not providing all or any part of the
> requested information;** [Emphasis added]

In short, the Defendant's requirements could not be clearer. The Defendant was required to provide

the Plaintiff with a Privacy Act Statement addressing (A)-(D) above and failed to do so. Worse

yet, Defendant alleges that they provided Plaintiff with a Privacy Act Statement, but they neither

provided proof of it in their response nor did they provide a copy of it in their FOIA and Privacy

Act response to the Plaintiff.  ECF No. 34 at 68**.** Therefore, the Court should disregard their

assertions that they provided Plaintiff with the required notice; however, this is further evidence

that the Court should grant the Plaintiff's motion for leave of court to amend their complaint and allow the Defendant an opportunity to provide this critical, missing document.

It is not insignificant that Defendant attempts to tactically argue in a proffered footnote that, no, they in fact did provide the required notice. ECF No. 51 at 17, n.3. If that were true, it is a record that would have been stored in a database subject to the Privacy Act, and considering Gebert was asking for records about himself, should have been disclosed in response to his Privacy Act request. So, yet again, which is it, State Department? Either the record was created and exists or it does not. In the former case, it should have been disclosed in response to Plaintiff's Privacy Act request, and the lack thereof shows either an inadequate search or a failure to keep and maintain records in accordance with the Privacy Act: a clear access violation under the Privacy Act. If it is the latter, and the record does not exist, then it obviously proves Plaintiff's argument that the notice was not given/collected, the Defendant committed a non-access Privacy Act violation. These violations support the Court granting the Plaintiff's motion to amend his complaint.

**C.     The System of Notice Does Not Allow For the Collection of First Amendment Protected Information**

The Defendant's citation of the relevant Systems Notice, *Security Records*, 83 Fed. Reg. 28,058, 28,059 (June 15, 2018) only further proves the Plaintiff's point that the system of records notice does not allow for the State Department to collect First Amendment protected activities. In fact, the reference to collection of "social media account communications and/or findings for individual undergoing background or security investigations; publicly available social media communications of third parties with individuals undergoing background investigations…" is a direct reference to SEAD 5 and the Privacy Act Statement that each Applicant must sign as part of every security clearance investigation.[2]

_____

[2]     *Id. 28,060, SF 86 Privacy Act Statement, and SEAD 5*

The Privacy Act Statement that every security clearance applicant signs expressly states the following:

> I Understand that, for these purposes, publicly available social media information includes any electronic social media information that has been published or broadcast for public consumption, is available on request to the public, is accessible on-line to the public, is available to the public by subscription or purchase, or is otherwise lawfully accessible to the public. I further understand that this authorization does not require me to provide passwords; log into a private account; or take any action that would disclose non-publicly available social media information.

At no point did the Applicant, Gebert, consent to the federal government requiring him to take ***any*** "action" that would disclose non-publicly available social media information. *SF86 Privacy Act Consent Form*.  An "action" is defined as "behavior or conduct" which would include discussing, disclosing, or otherwise using words to talk about his social media presence under pseudonyms.[3] In fact, the Agency's questioning regarding his non-publicly available social media information was a direct violation of the Privacy Act Statement that he signed. Furthermore, any questioning about his associations violated the Privacy Act Statement that he signed. Since the Defendant's did not have the proper authority to ask and collect the First Amendment protected activity because the Systems Notice, *Security Records*, 83 Fed. Reg. 28,058, 28,059 (June 15, 2018) does not allow for the collection of said information.

Defendant argues that the SORN is expansive enough to include answers to the following interview questions without actually addressing the legal authority they have to collect that information under the Privacy Act. ECF No. 49, ¶¶ 118-120. Those three questions are as follows: whether (1) "he had any association with any person, group, or business venture that could be used, even unfairly, to criticize, impugn or attack his character or qualifications for a government position," (2) " he was aware of any people or organizations that would criticize or oppose his employment in a government position," and (3) "there was any information regarding members of

---

[3]        https://www.merriam-webster.com/dictionary/action

his family that would be a possible source of embarrassment to the United States Department of State." These questions specifically ask about Gebert's protected First Amendment activities without a correlating question on the SF86.  Standard Form (SF) - (86), vers. November 2016. Therefore, these questions are outside the scope of the SF86 and the standard security clearance investigation and must be addressed in the SORN.

Put another way, the information elicited by those questions does not fall into "incident and investigative material," "security evaluations and clearances, national security eligibility determinations," "evidence collected during investigations," "social media account communications and/or findings for individuals undergoing background or security investigations; publicly available social media communications of third parties with individuals undergoing background investigations," or "security violation files." 83 Fed. Reg. 28,060.  Because the SF86 does not elicit the information that is intended from the three questions listed above, then the Defendant's SORN should specifically allow for it - just like the SORN addresses publicly available information which is found in the Privacy Act Statement that is part of the SF86.

Defendant attempts to argue that the Systems Notice is broad enough to allow them to ask, collect, and store protected First Amendment activities of the Gebert.  Rather than addressing the actual violations by the Agency, Defendant argues that the SORN is broad enough to include information that he was untruthful in his subject interview.  ECF No. 49 ¶¶ 118-120. However, this is another attempt to argue the constitutionality of the questions instead of actually addressing whether the Agency had the authority to ask, collect, and store information about the Gebert's protected First Amendment activities and associations.  In short, this is illustrative of the Defendant's arguments regarding the non-access Privacy Act claims.

The irony of the Defendant's arguments is that if you accept that their SORN covers the three questions mentioned above then they have to specifically address those three questions in a Privacy Act Statement, which the Defendant's argue is not a requirement.    ECF No. 51 at 24.

**D.    Defendant Unlawfully Collected Information About Plaintiff's First Amendment Activities**

Defendant attempts to argue Plaintiff's non-access Privacy Act claims are meritless because the Defendant had the authority to ask the questions that they asked without providing any supporting evidence that the Defendant had the authority to ask those questions.  Instead, the Court should consider SEAD 1 and SEAD 5 in assessing the merit of the Plaintiff's claims.

More specifically, SEAD 1 provides the roles and responsibilities of the SecEA and the executive branch agencies that must follow SecEA's policies and guidance. There are two major takeaways from SEAD 1: (1) it is setting forth a common set of guidelines and policies for which all security clearance adjudications must comply with by:

> h. developing requirements and procedures, to include but not limited to, the implementation of standardized:
>
>> (1) **security questionnaires**;
>> (2) financial disclosure forms;
>> (3) polygraph policies and procedures;
>> (4) foreign travel reporting requirements; and
>> (5) foreign contact reporting requirements;
>
> i. **developing and overseeing policies and procedures governing uniform investigator and adjudicator training, and promulgating implementing guidance for the same**;
>
> j. **approving** agency requests to establish additional investigative or adjudicative requirements (other than requirements for the conduct of a polygraph examination) that ***exceed the requirements*** for eligibility to hold a sensitive position or access to classified information… [emphasis added]

In other words, if the Defendant wants to ask these additional questions, they would have had to receive SecEA approval since SecEA sets forth the requirements for eligibility to hold a sensitive position or access to classified information. So, not only did the Defendant not have the authority under the Privacy Act to ask the additional questions, the Defendant did not have the authority from the SecEA to ask those questions. SEAD 1 (F)(h-i).

Again, since the Defendant's failed to cite to any policies or regulations governing the

authority to ask the questions that they did, it is important to highlight the focus of SEAD 1 and creating uniformity throughout the security clearance process. More specifically, SEAD 1 states that, "SecEA…is responsible for…improving the performance of security clearance processing including…(2) evaluating the use of available information technology and databases to expedite investigative and adjudicative processes for all and to verify standard information submitted as part of an application for a security clearance…" SEAD 1(F)(k)(2).  Additionally, SecEA has the authority to designate "investigative agencies" and "adjudicative agencies."   This authority is important because although the Agency can share their information with law enforcement, SecEA is not granting the "investigative agency" or the "adjudicative agency" with law enforcement authority like the Defendant's brief would like you to believe. (ECF No. 51 at 19). SecEA's authority is otherwise described in the following paragraph:

> The SecEA, with respect to investigations and determinations made by any agency for eligibility for access to classified information and eligibility to hold a sensitive position, is responsible for: …
>
> c. serving as the final authority to designate a department, agency, or agencies to:
>
> (1) conduct investigations of persons who are proposed for eligibility for access to classified information or eligibility to hold a sensitive position to ascertain whether such persons satisfy the criteria for obtaining and retaining eligibility; and
>
> (2) determine eligibility for access to classified information in accordance with EO 12968. SEAD 1(F)(c)

Defendant attempts to distract the Court from the lack of authority to ask those three questions under the security clearance frame and worse yet, they are violating the Plaintiff's rights by eliciting, collecting, and storing said information is a system of record.

SEAD 5 illustrates the great lengths that the Defendants must go through if they want to collect information that is outside the "routine" or "standardized" SF86, otherwise identified in SEAD 1. Furthermore, SEAD 5 demonstrates that the SecEA's authority does not supersede

Congress and that if the Defendants are collecting additional information, then they have to follow the proper process of accounting for it in a SORN and in a Privacy Act Statement.

More specifically SEAD 5 illustrates how improper the Defendants questions are because SEAD 5 specifically states the following about "covered individuals[4] shall not be requested or required to: "a. provide passwords; b. log into a private account; or c. take any action that would disclose non-publicly available social media information." SEAD 5(E)(5). Therefore, the mere "act" of asking Plaintiff those three questions is impermissible under SEAD 5 because it is meant to reasonably elicit the type of information that the "investigation agency" (Defendant) was prohibited from asking.

SEAD 5 goes on to describe what constitutes an "investigative record" which cross-references the 2012 Federal Investigative Standards, which lists all authorized forms, processes, questionnaires, database checks, etc for security clearances. Nonetheless, an "investigative record" for security clearance purposes is defined as "the official record of all data obtained on the covered individual from Trust Information Providers, suitability and security applications and questionnaires, and any investigative activity conducted under the Federal Investigative Standards or as approved by the executive agent." SEAD 5(D)(6). Again, it becomes glaringly obvious that the Defendants violated the Plaintiff's Privacy Act rights and they violated the security clearance investigative and adjudicative process.

The Defendant misstated case law in trying to justify the Defendant's authority to collect First Amendment protected activities.  In fact, the only logical conclusion that can be based upon their use of *Sack v. Dep't of Def.*, 823 F.3d 687 (D.C. Cir. 2016) is that the Defendant would like

---

[4]     "Covered Individual: (a) a person who performs work for or on the behalf of the executive branch or who seeks to perform work for or on behalf of the executive branch, but does not include President or (except to the extent otherwise directed by the President) employees of the President under 3 U.S.C. § 105 or 107, the Vice President or (except to the extent otherwise directed by the Vice President) employees of the Vice President under 3 U.S.C. §106 or annual legislative branch appropriations acts…" SEAD 5(D)(5).

the Court to believe that the Defendants collected the First Amendment protected activities under a law enforcement exemption. ECF No. 51 at 19).   There are several problems with their arguments: (1) first the case they cited involved the use of an exemption, (b)(7)(E), regarding the disclosure all of the polygraph records associated with a security clearance investigation wherein the Agency asserted (b)(7)(E); (2) if you were to accept the Defendant's argument that the security clearance process was a law enforcement activity then the disclosure of the "investigative record" would be impermissible because all of that information would be exempt under (b)(7)(E); (3) SEAD 1 and SEAD 5 specifically identify and define "investigative agency" and "adjudicative agency" as well as SecEA's authority to standardize, approve, and authorize agencies as well as activities when related to security clearances.  At no point are the words "law enforcement" used nor does SecEA have the authority to grant law enforcement authority.

Additionally, the use of a (b)(7)(E) exemption in the case that Defendants cite makes sense because polygraphs are use in for law enforcement activities and the disclosure of that information through a FOIA/PA request for a security clearance adjudication could conceivably jeopardize a law enforcement investigation. *Sack*, 823 F.3d at 694.

### E.   Defendant Violated Plaintiff's Routine Use

Defendant violated the routine use provision set forth in the Privacy Act Statement that Plaintiff signed as part of the SF86. Defendant continues to incorrectly assert that Defendant was not required to have Plaintiff sign a Privacy Act Statement consenting to the collection of protected First Amendment activities.  Since this information was improperly collected, every time it was used or referenced is improper.

## V.   <u>This Court Should Grant Leave to Amend</u>

The Plaintiff has not demonstrated bad faith, nor has the Defendant alleged it.  As for delay, Plaintiff has removed a number of claims to avoid re-litigating similar issues, and he has made significant efforts to revise and fine-tune remaining claims to promote clarity.  Denying Plaintiff's

motion and dismissing all claims would only result in significantly more delay.  There would be no undue prejudice to this or any Defendant, as they have been on notice and defending similar claims from the very beginning of this suit and Plaintiff has *removed* Defendants since the initial filing and has added none.  The only "undue prejudice" argument Defendant attempted to raise focuses almost exclusively on the burden of having to continue to defend (i.e. do the job they are paid to do) against the claims.  However, inconvenience and additional cost to a defendant is not undue prejudice.  *Gilliard v. Gruenberg*, 302 F. Supp. 3d 257, 273-274 (D.D.C. 2018). The case law does not suggest that the mere altering of a defendant's legal defenses, which must occur whenever a new claim is added, constitutes undue prejudice.

Further, this Plaintiff has only amended his pleading *once (i.e. First Amended Complaint)* to date, so it appears Defendant's math is simply not "mathing" as they allege Plaintiff as already had "three tries."  ECF No. 51 at 22.  The court in *Foman* clearly contemplated "repeated failure to cure deficiencies by amendments previously allowed"; the key being "amendments" in the plural.  Plaintiff has amended once, and the work to date by both parties and this Court has already significantly narrowed the remaining issues and resulted in the dropping of several defendants and counts.  Thus, the process is working, and this Court should use its discretion to grant Plaintiff leave to amend to continue progressing this case forward.

Dated:  May 31, 2024

Respectfully submitted,

By: /s/ *Brett J. O'Brien*
BRETT O'BRIEN, ESQ
Bar License #: 1753983
NATIONAL SECURITY LAW FIRM, LLC
1250 Connecticut Avenue
NW Suite 700
Washington, DC 20036
Phone: (202) 600-4996
Fax:     (202) 545-6318