UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MATTHEW GEBERT,

          Plaintiff,

    v.

DEPARTMENT OF STATE,

          Defendant.

Civil Action No. 22-2939 (DLF)

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

BACKGROUND ................................................................................................................... 1

I.      Factual Background ................................................................................................. 1

II.     Procedural History .................................................................................................. 5

LEGAL STANDARD ........................................................................................................... 6

I.      Lack of Subject-Matter Jurisdiction....................................................................... 6

II.     Failure to State a Claim........................................................................................... 7

ARGUMENT ........................................................................................................................ 7

I.      This Court Lacks Subject-Matter Jurisdiction Over Gebert's Claims ................... 7

        A.      The Civil Service Reform Act of 1978 Divests This Court of Subject-Matter
                Jurisdiction Over Gebert's Remaining Claims ........................................... 7

        B.      Gebert's Claims Do Not Fit Within the Narrow Exception to the General Rule
                That Security Clearance Claims Raise Nonjusticiable Political Questions ......... 10

II.     Gebert Fails to State a Claim Upon Which Relief Can Be Granted ................................. 15

        A.      Gebert Fails to State a Void for Vagueness Claim ................................................ 16

                1.      The Law of the Case Doctrine Bars Gebert's Void for Vagueness
                        Claim................................................................................................. 17

                2.      Gebert Fails to Identify a Protected Interest ............................................. 17

                3.      The Challenged Questions Are Not Void for Vagueness ......................... 20

        B.      Gebert Fails to State an Overbreadth Claim ........................................................ 28

                1.      The Overbreadth Doctrine Does Not Apply to a Mere Question ............. 29

                2.      The Challenged Questions Are Not Overbroad ....................................... 29

CONCLUSION...................................................................................................................... 31

# TABLE OF AUTHORITIES

**Cases**

*Action All. of Senior Citizens of Greater Phila. v. Sullivan*,
   930 F.2d 77 (D.C. Cir. 1991) ................................................................................ 9

*Ali v. Fed. Bureau of Prisons*,
   552 U.S. 214 (2008) ........................................................................................... 23

*Am. Commc'ns Ass'n, v. Douds*,
   339 U.S. 382 (1950) ........................................................................................... 22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................... 7, 27

*Badwal v. Bd. of Trs. of Univ. of D.C.*,
   139 F. Supp. 3d 295 (D.D.C. 2015) .................................................................. 14

*Banneker Ventures, LLC v. Graham*,
   798 F.3d 1119 (D.C. Cir. 2015) ......................................................................... 6

*Bd. of Regents of State Colls. v. Roth*,
   408 U.S. 564 (1972) ........................................................................................... 18

*Bierly v. Dep't of Def.*,
   Civ. A. No. 23-2386 (RCL), 2024 WL 4227154 (D.D.C. Sept. 18, 2024) ......................... 13, 15

*Bryant v. Gates*,
   532 F.3d 888 (D.C. Cir. 2008) .......................................................................... 25

*Chesna v. Dep't of Def.*,
   850 F. Supp. 110 (D. Conn. 1994) .................................................................... 20

*Citizens United v. Fed. Election Comm'n*,
   558 U.S. 310 (2010) ........................................................................................... 24

*City of L.A. v. Lyons*,
   461 U.S. 95 (1983) ................................................................................. 13, 14, 15

*Cole v. Richardson*,
   405 U.S. 676 (1972) ........................................................................................... 21

*Conway v. King*,
   718 F. Supp. 1059 (D.N.H. 1989) ..................................................................... 19

**Cases (cont.)**

*Crawford v. Metro. Gov't of Nashville Cnty.*,
  555 U.S. 271 (2009) ................................................................................................ 24

*Dep't of Navy v. Egan*,
  484 U.S. 518 (1988) ........................................................................................... passim

*Deryck v. Dep't of Def.*,
  Civ. A. No. 22-3290 (TNM), 2023 WL 3303832 (D.D.C. May 8, 2023) ......................... 19, 20

*Diamond Resorts Int'l, Inc. v. Aaronson*,
  Civ. A. No. 17-1394, 2018 WL 8221037 (M.D. Fla. Sept. 28, 2018) ...................................... 24

*Doe v. Cheney*,
  885 F.2d 898 (D.C. Cir. 1989) ................................................................................ 19

*Dorfmont v. Brown*,
  913 F.2d 1399 (9th Cir. 1990) ................................................................................ 20

*Elgin v. Dep't of Treasury*,
  567 U.S. 1 (2012) ........................................................................................... 8, 9, 10

*Engquist v. Or. Dep't of Agric.*,
  553 U.S. 591 (2008) ..................................................................................... 15, 16, 28

*Fair Emp. Council of Greater Wash., Inc. v. BMC Mktg. Corp.*,
  28 F.3d 1268 (D.C. Cir. 1994) ............................................................................... 15

*Filebark v. Dep't of Transp.*,
  555 F.3d 1009 (D.C. Cir. 2009) ............................................................................... 9

*Fornaro v. James*,
  416 F.3d 63 (D.C. Cir. 2005) ................................................................................. 9

*Gebert v. Dep't of State*,
  Civ. A. No. 22-2939 (DLF), 2024 WL 1328439 (D.D.C. March 27, 2024) ............................ 1

*Gebert v. Dep't of State*,
  Civ. A. No. 22-2939 (DLF), 2025 WL 42703 (D.D.C. Jan. 6, 2025) ...................................... 1

*Gill v. Dep't of Just.*,
  Civ. A. No. 15-0824 (RMC), 2016 WL 3982450 (D.D.C. July 22, 2016) ............................ 20

*Graham v. Ashcroft*,
  358 F.3d 931 (D.C. Cir. 2004) ................................................................................. 8

**Cases (cont.)**

*Green v. Dep't of Just.*,
  111 F.4th 81 (D.C. Cir. 2024) ................................................................. 29

*Grosdidier v. Broad. Bd. of Govs.*,
  560 F.3d 495 (D.C. Cir. 2009) ................................................................ 8, 9

*Haase v. Sessions*,
  835 F.2d 902 (D.C. Cir. 1987) ................................................................. 14

*Haig v. Agee*,
  453 U.S. 280 (1981) ........................................................................... 16, 30

*Hodge v. Talkin*,
  799 F.3d 1145 (D.C. Cir. 2015) ............................................................... 17

*Holloway v. Arkansas*,
  435 U.S. 475 (1978) ............................................................................... 27

*Humane Soc'y of U.S. v. Perdue*,
  935 F.3d 598 (D.C. Cir. 2019) ................................................................. 13

*Hunt Valley Baptist Church, Inc. v. Baltimore Cnty.*,
  Civ. A. No. 17-0804, 2017 WL 4641987 (D. Md. Oct. 17, 2017) ............ 19

*Irwin v. Dep't of Veterans*,
  *Affs.*, 498 U.S. 89 (1990) ....................................................................... 27

*Kareem v. Haspel*,
  986 F.3d 859 (D.C. Cir. 2021) ................................................................. 13

*Kimberlin v. Quinlan*,
  199 F.3d 496 (D.C. Cir. 1999) ................................................................. 17

*Lamb v. Millennium Challenge Corp.*,
  498 F. Supp. 3d 104 (D.D.C. 2020) ......................................................... 20

*Lee v. Garland*,
  120 F.4th 880 (D.C. Cir. 2024) ........................................................... 11, 12

*M.B. ex rel. Brown v. McGee*,
  Civ. A. No. 16-0334, 2017 WL 1364214 (E.D. Va. Mar. 24, 2017) ......... 18

*Magassa v. Mayorkas*,
  52 F.4th 1156 (9th Cir. 2022) ................................................................. 19

**Cases (cont.)**

*Maroney v. Univ. Interscholastic League,*
    764 F.2d 403 (5th Cir. 1985) ................................................................ 18

*Mattiaccio v. DHA Grp., Inc.,*
    928 F. Supp. 2d 251 (D.D.C. 2013) ...................................................... 15

*McConnell v. FEC,*
    540 U.S. 93 (2003) ................................................................................. 24

*Nat'l Fed'n of Fed. Emps. v. Greenberg,*
    983 F.2d 286 (D.C. Cir. 1993) ............................................. 11, 12, 29, 30

*Nat'l Treasury Emps. Union v. Von Raab,*
    489 U.S. 656 (1989) ......................................................................... 16, 30

*Nurriddin v. Bolden,*
    818 F.3d 751 (D.C. Cir. 2016) .............................................................. 14

*Nyunt v. Broad. Bd. of Gov.,*
    589 F.3d 445 (D.C. Cir. 2009) ........................................................... 8, 10

*Palmieri v. United States,*
    72 F. Supp. 3d 191 (D.D.C. 2014) ........................................................ 20

*Payne v. Biden,*
    62 F.4th 598 (D.C. Cir. 2023) ................................................................. 9

*Payne v. Biden,*
    144 S. Ct. 480 (2023) ............................................................................... 9

*Rattigan v. Holder,*
    689 F.3d 764 (D.C. Cir. 2012) .............................................................. 30

*Reid v. Hurwitz,*
    920 F.3d 828 (D.C. Cir. 2019) ................................................................ 6

*Riddick v. Semple,*
    Civ. A. No. 18-0408, 2018 WL 3962935 (D. Conn. Aug. 18, 2018) ...................................... 18

*Ryan v. Reno,*
    168 F.3d 520 (D.C. Cir. 1999) .............................................................. 11

*Snepp v. United States,*
    444 U.S. 507 (1980) ............................................................................... 28

**Cases (cont.)**

*Solidarity with the People of El Salvador v. Sessions*,
    705 F. Supp. 25 (D.D.C. 1989) ................................................................. 15

*Sparrow v. United Air Lines, Inc.*,
    216 F.3d 1111 (D.C. Cir. 2000) ................................................................. 14

*Statewide Bonding, Inc. v. Dep't of Homeland Sec.*,
    980 F.3d 109 (D.C. Cir. 2020) ................................................................. 18

*Stehney v. Perry*,
    101 F.3d 925 (3d Cir. 1996) ................................................................. 19

*Thompson v. Little Am. Hotel Co.*,
    No. 22-4006, 2022 WL 10832885 (10th Cir. Oct. 19, 2022) ................................................................. 24

*Thompson v. Sessions*,
    278 F. Supp. 3d 227 (D.D.C. 2017) ................................................................. 14, 15

*Thunder Basin Coal Co. v. Reich*,
    510 U.S. 200 (1994) ................................................................. 9

*Tomaszczuk v. Whitaker*,
    909 F.3d 159 (6th Cir. 2018) ................................................................. 18

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ................................................................. 13

*U.S. Info. Agency v. Krc*,
    905 F.2d 389 (D.C. Cir. 1990) ................................................................. 19

*United States v. Adewani*,
    467 F.3d 1340 (D.C. Cir. 2006) ................................................................. 9

*United States v. Ahmed*,
    472 F.3d 427 (6th Cir. 2006) ................................................................. 21

*United States v. Brooks*,
    681 F.3d 678 (5th Cir. 2012) ................................................................. 21

*United States v. Burnette*,
    65 F.4th 591 (11th Cir. 2023) ................................................................. 21

*United States v. Camper*,
    384 F.3d 1073 (9th Cir. 2004) ................................................................. 22, 26

**Cases (cont.)**

*United States v. Chapin*,
   515 F.2d 1274 (D.C. Cir. 1975) ................................................................ 21, 22, 23, 26

*United States v. Culliton*,
   328 F.3d 1074 (9th Cir. 2003) ...................................................................... 21, 22, 26

*United States v. Damrah*,
   412 F.3d 618 (6th Cir. 2005) ................................................................................. 22

*United States v. Davis*,
   588 U.S. 445 (2019) ............................................................................................. 18

*United States v. Delgado*,
   798 F. App'x 105 (9th Cir. 2020) .......................................................................... 25

*United States v. Doost*,
   3 F.4th 432 (D.C. Cir. 2021) ................................................................................. 20

*United States v. Farmer*,
   137 F.3d 1265 (10th Cir. 1998) ............................................................................ 21

*United States v. Fausto*,
   484 U.S. 439 (1988) ......................................................................................... 7, 8, 9

*United States v. Hansen*,
   599 U.S. 762 (2023) ........................................................................................ 29, 30

*United States v. Hird*,
   913 F.3d 332 (3d Cir. 2019) .................................................................................. 21

*United States v. Hsia*,
   176 F.3d 517 (D.C. Cir. 1999) ........................................................................ 22, 26

*United States v. Kerik*,
   615 F. Supp. 2d 256 (S.D.N.Y. 2009) ............................................................ 24, 25, 26

*United States v. Lattimore*,
   127 F. Supp. 405 (D.D.C) ............................................................................... 20, 24

*United States v. Lighte*,
   782 F.2d 367 (2d Cir. 1986) ............................................................................ 21, 22

*United States v. Naegele*,
   341 B.R. 349 (D.D.C. 2006) ........................................................................ 20, 21, 22

**Cases (cont.)**

*United States v. Nassif*,
    97 F.4th 968 (D.C. Cir. 2024) ............................................................................ 28, 29

*United States v. Parr*,
    516 F.2d 458 (5th Cir. 1975) ............................................................................ 23, 26

*United States v. Polos*,
    723 F. App'x 64 (2d Cir. 2018) .............................................................................. 23

*United States v. Reilly*,
    33 F.3d 1396 (3d Cir. 1994) ................................................................................... 21

*United States v. Richardson*,
    421 F.3d 17 (1st Cir. 2005) .................................................................................... 20

*United States v. Safavian*,
    451 F. Supp. 2d 232 (D.D.C. 2006) ..................................................................... 20

*United States v. Sampson*,
    898 F.3d 287 (2d Cir. 2018) ............................................................................ 22, 26

*United States v. Sarwari*,
    669 F.3d 401 (4th Cir. 2012) ........................................................................... 21, 25

*United States v. Strohm*,
    671 F.3d 1173 (10th Cir. 2011) ............................................................................. 21

*United States v. Swindall*,
    971 F.2d 1531 (11th Cir. 1992) ....................................................................... 22, 26

*United States v. Thomas*,
    864 F.2d 188 (D.C. Cir. 1988) .............................................................................. 26

*United States v. Turner*,
    500 F.3d 685 (8th Cir. 2007) ................................................................................. 21

*United States v. Williams*,
    552 F.2d 226 (8th Cir. 1977) ........................................................................... 22, 26

*United States v. Williams*,
    553 U.S. 285 (2008) ............................................................................................... 17

*Virginia v. Hicks*,
    539 U.S. 113 (2003) ................................................................................... 28, 29, 30

**Cases (cont.)**

*Wonders v. Dep't of the Army*,
    Civ. A. No. 23-2770 (TNM), 2024 WL 4144119 (D.D.C. Sept. 11, 2024)............................. 19

*Wye Oak Tech., Inc. v. Rep. of Iraq*,
    24 F.4th 686 (D.C. Cir. 2022) ...................................................................................... 17

*Wyo. Gun Owners v. Gray*,
    83 F.4th 1224 (10th Cir. 2023) ...................................................................................... 27

Statutes

5 U.S.C. § 7701(a) ................................................................................................................. 8

5 U.S.C. § 7702(a)(1)(B) ....................................................................................................... 8

5 U.S.C. § 7702(b)(2) ............................................................................................................ 8

28 U.S.C. § 1331 .................................................................................................................. 10

**Rules**

Fed. R. Civ. P. 12(b)(1).......................................................................................................... 6

Fed. R. Civ. P. 12(b)(6)........................................................................................................... 7

Fed. R. Evid. 201(b)................................................................................................................ 27

**Regulations**

5 C.F.R. § 732.203 ................................................................................................................ 14

**Other Authorities**

Exec. Order 12,968,
    60 Fed. Reg. 40,245 (Aug. 2, 1995)............................................................................... 30

Defendant Department of State (the "Department"), by and through undersigned counsel, respectfully files this memorandum of points and authorities in support of its motion to dismiss Plaintiff Matthew Gebert's second amended complaint, ECF No. 59.

## BACKGROUND

Given the Court's familiarity with this suit, *see* Mem. Op., ECF No. 47 (*Gebert v. Dep't of State*, Civ. A. No. 22-2939 (DLF), 2024 WL 1328439 (D.D.C. March 27, 2024)); Mem. Op. & Order, ECF No. 54 (*Gebert v. Dep't of State*, Civ. A. No. 22-2939 (DLF), 2025 WL 42703 (D.D.C. Jan. 6, 2025)), the Department recites only those facts that are relevant to the remaining claims.

## I.    <u>Factual Background</u>

Gebert is a foreign affairs officer at the Department. 2d Am. Compl. ¶ 10. Gebert's position requires that he maintain a Top Secret security clearance as a condition of employment. *Id.* ¶ 11. As part of a periodic reinvestigation to maintain his clearance, he sat for an interview on January 28, 2019. *Id.* ¶ 12. During this interview, the interviewers asked him the following three questions:

1. Whether he had any association with any person, group, or business venture that could be used, even unfairly, to criticize, impugn or attack his character or qualifications for a government position;

2. Whether he was aware of any people or organizations that would criticize or oppose his employment in a government position;

3. [I]f there was any information regarding members of his family that would be a possible source of embarrassment to the [ ] Department.

*Id.* ¶ 13. Gebert answered all three questions in the negative. *Id.* ¶ 14. Gebert's reinvestigation concluded on May 9, 2019. *Id.* ¶ 15. On June 7, the Department informed Gebert that it had decided to grant him continued eligibility for access to classified information. *Id.* ¶ 16.

On August 7, 2019, the Southern Poverty Law Center *Hatewatch*'s blog published an investigative report on Gebert titled "U.S. State Department Official Involved in White Nationalist Movement, Hatewatch Determines." 2d Am. Compl. ¶ 17. The article stated that Gebert "oversaw

the Washington, D.C.-area chapter of a white nationalist organization, hosted white nationalists at his home and published white nationalist propaganda online." Michael Edison Hayden, *U.S. State Department Official Involved in White Nationalist Movement, Hatewatch Determines* ("*Hatewatch Article*"), S. Poverty L. Ctr. (Aug. 7, 2019), https://www.splcenter.org/gebert. According to the article, during a May 2018 episode of the podcast *The Fatherland*, Gebert had opined—under the pseudonym "Coach Finstock"—that white people "'need a country of our own with nukes, and we will retake this thing lickety split.'" *Id.* "'That's all that we need,'" he said. "'We need a country founded for white people with a nuclear deterrent. And you watch how the world trembles.'" *Id.*

The *Hatewatch* article reported that Gebert's white nationalist "radicalization started in 2015." *Hatewatch* Article, *supra*. Posting under the pseudonym "'Finstock' on a white nationalism focused forum called *The Right Stuff*, Gebert wrote, "'I got into this [movement] and off the conservative reservation in 2015.'" *Id.* In another appearance on *The Fatherland*, Gebert expressed awareness that public revelation of his white nationalist activities and associations could be detrimental to his career. *Id.* "'There are bigger things than a career and a paycheck,'" Gebert said, "and I don't want to lose mine." *Id.* But "'I am prepared to lose mine,'" he continued, "'[b]ecause this is the most important thing to me in my life . . . in tandem with my family, of course.'" *Id.*

According to the *Hatewatch* article, Gebert engaged in extensive white nationalist activities and associations under pseudonym. Under the moniker "Coach Finstock," for example, Gebert "helped lead a Washington, D.C., and Northern Virginia-based organizing chapter of" the "Right Stuff network called 'D.C. Helicopter Pilots'"—an apparent reference "to a meme on the far right inspired by late Chilean dictator Augusto Pinochet," on whose orders "loyalists to his regime threw political opponents out of helicopters as a form of extrajudicial killing." *Hatewatch* Article, *supra*. Gebert held gatherings at his home, which "typically included people associated with the white

nationalist movement," like *The Right Stuff*'s leader Michael Peinovich and the "Fash the Nation" podcast's pseudonymous co-host "Marcus Halberstram." *Id.* Gebert also attended an event linked to a think tank run by Richard Spencer, whom *Hatewatch* called "arguably America's most famous white nationalist," where, the *Hatewatch* article reported, attendees "gave Hitler-salutes." *Id.*

Speaking as "Coach Finstock," Gebert acknowledged wearing a disguise to the Unite the Right rally. *Hatewatch* Article, *supra*. He alluded to an incident in which a man marching with a neo-Nazi group drove his car into a crowd, killing a woman: "'Dude, we smacked the hornet's nest with a big f*****g stick. . . . And the only question is whether this is valuable accelerationism or whether we just provoked the red guards, like, a year before we had enough time to spare.'" *Id.*

During another episode of *The Fatherland*, Gebert, as "Coach Finstock," shared his views on black people. "'Well, think about it, we're suckers for . . . court jesters . . . are in our DNA,'" he said. *Hatewatch* Article, *supra*. "'We like to have a charismatic joker," he continued, "at least, around us sometimes.'" *Id.* Gebert continued, "'I think it reflects the better angels of our white nature that we—despite all of the evidence we have from the criminality to whatnot that we still have a soft spot in our heart for Red Foxx and 'Sandford and Son' . . . or Chris Rock,'" he said, referring to two black comedians and a popular sitcom. *Id.* "'Against our better judgment, we still give them the benefit of the doubt,'" he said. *Id.* But Gebert himself felt quite differently—black people, he said, "'do not belong around us for an ocean at least.'" *Id.*

Gebert has made antisemitic comments as well. On January 18, 2019, for example, Twitter user "Coach Finstock" posted a picture of the hooded specter of death greeting Justice Ruth Bader Ginsburg. *Id.* In a follow-up post, he made an entreaty to his followers: "'when the decrepit old witch finally bites the dust, please one of you make a vid with our crabbies [saying] "The Supreme Court is now officially 11% less Jewish" as [a] caption.'" *Id.*

Finally, the *Hatewatch* article reported that Gebert's wife, Anna Vuckovic, is "a blogger and Twitter personality who also is connected to the white nationalist movement." *Hatewatch* Article, *supra*. Posting under the pseudonymous handle "Wolfie James," Vuckovic "wrote blog posts focused on dating tips for white nationalist women and parenting advice for white nationalist moms" for *The Right Stuff* and other white nationalist publications. *Id.* In one column, she opined that "[i]n an open-borders America [women] should fear the s***s, too—they love their people-smuggling, gangbanging, and drunk driving more than most." *Id.* She also offered white nationalist media criticism, deriding The Man In The Yellow Hat—the friendly human guardian of cartoon monkey Curious George—as "the typical klutzy, r******d white man always being peddled on the Jewtube.'" *Id.* Gebert and Vuckovic also attended white nationalist events together. *Id.*

On August 16, 2019, the Department suspended Gebert's security clearance pending the outcome of an investigation. 2d Am. Compl. ¶ 25. Because maintaining a Top Secret security clearance is a condition of his employment, the Department suspended Gebert indefinitely without pay. *Id.* ¶¶ 33-36. On September 27, 2019, Gebert sat for an interview with investigators from the Office of Special Investigations within the Department's Bureau of Diplomatic Security. *Id.* ¶ 39. During that interview, Gebert acknowledged that he "knows that his opinions are unpopular and that some people may be offended;" "he knew that his opinions were controversial;" and he knew that his "beliefs and values . . . in this day and age are judged to be beyond the pale." *Id.* ¶¶ 54-56.

On July 1, 2020, the Department sent Gebert a letter notifying him that it had revoked his security clearance due to personal conduct concerns. 2d Am. Compl. ¶ 58. The Department cited three specific security clearance adjudicative guidelines that it concluded that Gebert had violated:

1.    refusal to provide, full, frank, and truthful answers to lawful questions of investigators, security officials, or other official representatives in connection with a personnel security or trustworthiness determination;

2.      deliberately providing false or misleading information; or concealing or omitting information concerning relevant facts to an employer, investigator, security official, competent medical or mental health professional involved in making a recommendation relevant to a national security eligibility determination, or other official government representative;

3.      personal conduct, or concealment of information about one's conduct that creates a vulnerability to exploitation, manipulation, or duress by a foreign intelligence entity or other individual or group. Such conduct includes: [ ] Engaging in activities which, if known, could affect the person's personal, professional, or community standing.

*Id.* ¶ 59.

## II.   <u>Procedural History</u>

Gebert filed this case on September 28, 2022. Compl., ECF No. 1. His amended complaint raised a variety of claims under the First and Fifth Amendments, Administrative Procedure Act ("APA"), Freedom of Information Act ("FOIA"), and Privacy Act. Am. Compl., ECF No. 34. On March 27, 2024, this Court dismissed Gebert's complaint in full. Order, ECF No. 46. The Court concluded that "Gebert does not come close to stating a claim under the First Amendment," as his pleadings made clear that the Department revoked his security clearance due to his "dishonesty rather than his protected speech." Mem. Op. at 11. The Court explained that Gebert's responses to the questions posed to him during his background reinvestigation interview "were obvious lies" that, viewed in tandem with his acknowledgment "that many Americans treat [white nationalists] as holding beliefs that are beyond the pale . . . . virtually compelled the Department's finding that [he] had not provided full, frank, and truthful answers to its questions in 2019." *Id.* (cleaned up).

The Court likewise dismissed Gebert's due process claims. It rejected his procedural due process claim on the basis that he had received "all the process he was due." Mem. Op. at 13. It rejected his substantive due process claim on the basis that under any theory of substantive due process, the Department was entitled "to take adverse personnel actions against an employee it believed to be a liar." *Id.* at 14. It rejected his equal protection claim on the basis that his "lies gave

the Department a rational basis for revoking his security clearance, and liars are not a protected class entitled to additional judicial protection." *Id.* at 15. And it rejected his vagueness claim on the basis that "any person of ordinary intelligence would know that Gebert's associations with white nationalists" required him to answer the reinvestigation questions in the affirmative, so "[b]y answering 'no' when candor required him to answer 'yes,' [he] did not run afoul of an unlawfully vague or even particularly confusing Departmental rule." *Id.* at 15-16 (quotation marks omitted).

Finally, the Court dismissed Gebert's remaining claims. The Court concluded that under the APA, the revocation of Gebert's security clearance was committed to agency discretion, and the remaining challenged actions were either not arbitrary or capricious or else amounted at worst to harmless errors. Mem. Op. at 16-17. The Court concluded that his FOIA and Privacy Act claims failed because his records request did not reasonable describe the records sought. *Id.* at 17-19.

Gebert moved to amend his complaint a second time. *See* Mot. Amend., ECF No. 48. The Court denied the motion as to his Fifth Amendment, APA, FOIA, and Privacy Act claims and most of his First Amendment claims. but granted it as to Gebert's claims that the questions posed to him during his background reinvestigation interview were vague and overbroad. *See* Mem. Op. & Order. Gebert filed a second amended complaint raising only those two claims. *See* 2d Am. Compl.

## LEGAL STANDARD

### I.    Lack of Subject-Matter Jurisdiction

A claim warrants dismissal for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Generally, "a district court considering a motion to dismiss for lack of subject matter jurisdiction accepts the allegations of the complaint as true." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015). A plaintiff "must allege well-pleaded facts that support a plausible inference" of subject-matter jurisdiction. *Reid v. Hurwitz*, 920 F.3d 828, 837 (D.C. Cir. 2019).

## II.    <u>Failure to State a Claim</u>

Dismissal is proper for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). This pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## ARGUMENT

The only claims that remain at issue in this action are Gebert's claims that the questions posed to him during his reinvestigation interview were vague and overbroad. *See* 2d Am. Compl.; Mem. Op. & Order. But this Court lacks jurisdiction over these claims, and regardless, Gebert fails to state either claim. Accordingly, this Court should dismiss Gebert's second amended complaint.

## I.    <u>This Court Lacks Subject-Matter Jurisdiction Over Gebert's Claims</u>

The Civil Service Reform Act of 1978 ("CSRA") establishes an exclusive review scheme for federal personnel claims with only limited exceptions that do not apply here. It thus divests this Court of subject-matter jurisdiction over Gebert's claims, which both challenge federal personnel actions. Further, challenges to security clearance decisions raise nonjusticiable political questions. Although there is a narrow exception to this rule for claims that challenge only the method used to gather information for a clearance decision rather than a clearance decision itself, Gebert's claims do not fit within this narrow exception. As such, this Court lacks jurisdiction over Gebert's claims.

### A.    **The Civil Service Reform Act of 1978 Divests This Court of Subject-Matter Jurisdiction Over Gebert's Remaining Claims**

The CSRA "established a comprehensive system for reviewing personnel action taken against federal employees." *United States v. Fausto*, 484 U.S. 439, 455 (1988). It is "an integrated

scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Id.* at 445. A "structural element" of "the framework of the CSRA" is "the primacy of the" Merit System Protection Board ("MSPB") "for administrative resolution of disputes over adverse personnel action, and the primacy of the United States Court of Appeals for the Federal Circuit for judicial review." *Fausto*, 484 U.S. at 449. Under this system, an employee challenging an adverse personnel action generally must file an administrative appeal with the MSPB. 5 U.S.C. § 7701(a). The employee may seek judicial review of a final MSPB order or decision in the U.S. Court of Appeals for the Federal Circuit, with limited exceptions not relevant here. *Id.* § 7703(a), (b)(1)(A).

The CSRA's review scheme is both "comprehensive and exclusive." *Grosdidier v. Broad. Bd. of Govs.*, 560 F.3d 495, 497 (D.C. Cir. 2009). It is "comprehensive" in that "[i]t "regulates virtually every aspect of federal employment and prescribes in great detail the protections and remedies applicable to adverse personnel actions, including the availability of administrative and judicial review." *Nyunt v. Broad. Bd. of Gov.*, 589 F.3d 445, 448 (D.C. Cir. 2009) (cleaned up). It is "exclusive," meanwhile, in that "[i]t constitutes *the* remedial regime for federal employment and personnel complaints." *Id.* "When Congress wants to preserve remedies outside the CSRA, it does so expressly; for example, the CSRA maintains federal employees' rights to bring suit under Title VII and other anti-discrimination laws." *Id.*; *see also* 5 U.S.C. §§ 7702(a)(1)(B), 7703(b)(2). With limited exceptions not relevant here, then, "the CSRA review scheme . . . preclude[s] district court jurisdiction over [federal personnel] claims." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 23 (2012).

The CSRA's review scheme is exclusive even when "the CSRA provides no relief," and in fact, "precludes other avenues of relief." *Graham v. Ashcroft*, 358 F.3d 931, 935 (D.C. Cir. 2004). In other words, "the CSRA is the exclusive avenue for suit even if the plaintiff cannot prevail in a

claim under the CSRA." *Grosdidier*, 560 F.3d at 497. "Congress designed the CSRA's remedial scheme with care, 'intentionally providing—and intentionally not providing—particular forums and procedures for particular kinds of claims.'" *Id.* (quoting *Filebark v. Dep't of Transp.*, 555 F.3d 1009, 1010 (D.C. Cir. 2009)); *see also Fausto*, 484 U.S. at 448-49 ("the absence of provision for these employees to obtain judicial review is not an uninformative consequence of the limited scope of the statute, but rather manifestation of a considered congressional judgment that they should not have statutory entitlement to review for adverse action of [this] type"). Simply put, "what you get under the CSRA is what you get." *Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005).

The CSRA precludes district court jurisdiction even when a plaintiff raises constitutional claims. *See, e.g.*, *Elgin*, 567 U.S. at 12 ("constitutional claims, such as claims that an agency took adverse employment action in violation of an employee's [constitutional] rights, . . . must be brought within the CSRA scheme"). Although the D.C. Circuit once recognized narrow exceptions to the CSRA's exclusivity for constitutional claims, it has since recognized that "such exceptions cannot survive the Supreme Court's subsequent decisions in *Thunder Basin* and *Elgin*—clarifying that a statutory scheme may exclusively preclude jurisdiction when Congress's intent to do so is 'fairly discernible.'" *Payne v. Biden*, 62 F.4th 598, 606 (D.C. Cir. 2023) (citing *Elgin*, 567 U.S. at 12, and *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994)).[1] Accordingly, the CSRA precludes district court jurisdiction even if a plaintiff raises "constitutional challenges." *Id.* at 603.

---

[1]     While the Supreme Court subsequently granted certiorari and vacated *Payne*'s judgment on mootness grounds, *see Payne v. Biden*, 144 S. Ct. 480 (2023) (Mem.), *Payne*'s holding remains binding precedent. "When the Supreme Court vacates a judgment of [the D.C. Circuit] without addressing the merits of a particular holding in the panel opinion, that holding continues to have precedential weight, and in the absence of contrary authority, [the D.C. Circuit] do[es] not disturb it." *United States v. Adewani*, 467 F.3d 1340, 1342 (D.C. Cir. 2006) (cleaned up); *accord Action All. of Senior Citizens of Greater Phila. v. Sullivan*, 930 F.2d 77, 83 (D.C. Cir. 1991) (same).

The CSRA's exclusive review scheme divests this Court of jurisdiction over Gebert's claims. Gebert invokes 28 U.S.C. § 1331, the general federal question jurisdiction statute, *see* 2d Am. Compl. ¶ 6, but the CSRA precludes jurisdiction under Section 1331 as to claims within its scope. *See Elgin*, 567 U.S. at 8-9. Gebert's claims each raise "federal employment and personnel complaints," for which the CSRA "constitutes *the* remedial regime for federal employment and personnel complaints." *Nyunt*, 589 F.3d at 448. Because the CSRA's review scheme divests district courts of jurisdiction over such personnel claims, the Court lacks jurisdiction over Gebert's claims.

### B.    Gebert's Claims Do Not Fit Within the Narrow Exception to the General Rule That Security Clearance Claims Raise Nonjusticiable Political Questions

In *Department of Navy v. Egan*, 484 U.S. 518, 520 (1988), the Supreme Court held that the MSPB lacks the authority "to review the substance of an underlying decision to deny or revoke a security clearance in the course of reviewing an adverse action." Citing Article II, section 2 of the Constitution, which makes the President the "Commander in Chief of the Army and Navy of the United States," the Court explained that the President's "authority to classify and control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to occupy a position in the Executive Branch that will give that person access to such information flows primarily from this constitutional investment of power in the President and exists quite apart from any explicit congressional grant." *Id.* at 527. "It should be obvious," the Court continued, "that no one has a 'right' to a security clearance." *Id.* at 528. The Court concluded that "the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it." *Id.* at 529. The Court reasoned that "it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been

able to make the necessary affirmative prediction with confidence. Nor can such a body determine what constitutes an acceptable margin of error in assessing the potential risk." *Id.*

In subsequent cases, the D.C. Circuit further delineated the *Egan* doctrine's contours. In *National Federation of Federal Employees v. Greenberg*, 983 F.2d 286, 290 (D.C. Cir. 1993), the Court characterized *Egan* as involving "discretionary judgments regarding a particular employee's security clearance," and held that *Egan* does not preclude a challenge to "the constitutionality of the methods used to gather information on which such judgments presumably will be based." *Id.*

*Ryan v. Reno*, 168 F.3d 520, 523 (D.C. Cir. 1999), then read *Egan* to "preclude a nonexpert body—whether administrative or judicial—from resolving a discrimination claim based on an adverse employment action resulting from an agency security clearance decision." *Ryan* explained that a court cannot "proceed with [a] discrimination action" based on a security clearance decision "without reviewing the merits of [a] decision not to grant a clearance," i.e., "without running smack up against *Egan*," and thus is "foreclosed from proceeding at all." *Id.* at 524.

Finally, in *Lee v. Garland*, 120 F.4th 880, 888 (D.C. Cir. 2024), the D.C. Circuit held that the *Egan* doctrine "bars judicial review of constitutional claims" challenging the revocation of a security clearance. The D.C. Circuit explained that "the reasoning of *Egan* triggers application of the political question doctrine, which forecloses review of constitutional claims." *Id.* Recognizing that "[t]he political question doctrine applies perhaps most vigorously to issues bearing on national security," the D.C. Circuit explained that "[a]s *Egan* makes clear, an Executive Branch decision to deny or revoke a security clearance is just such a judgment." *Id.* at 889, 891. That is so, the Court concluded, for two reasons. First, "the Constitution commits that decision to the Executive." *Id.* at 891. Second, "at least absent congressional action to restrict executive discretion in this area, there are no manageable standards to support judicial review of clearance decisions." *Id.*

*Lee*, 120 F.4th at 892, left intact *Greenberg*'s holding that "constitutional challenges to the 'methods used to gather information' for clearance decisions" are justiciable. (quoting *Greenberg*, 983 F.2d at 290). The D.C. Circuit emphasized, however, that the *Greenberg* exception to the *Egan* bar does not apply unless a plaintiff "seek[s] relief against an agency decision discrete from the revocation decision." *Id.* at 894. As such, *Lee* explained, *Greenberg* does not apply—and thus, the *Egan* bar does apply—if a plaintiff "seeks reinstatement, backpay, and compensatory damages," as each of these is a form of relief that "flow[s] inexorably from the revocation decision." *Id.*

Gebert's remaining claims do not fit within *Greenberg*'s narrow exception to the *Egan* bar. Gebert seeks reinstatement, backpay for both compensation and benefits, front pay, future benefits, and an end to his suspension without leave. *See* 2d Am. Compl. ¶¶ 102, 104-06. These are exactly the types of relief that the D.C. Circuit squarely held fall outside *Greenberg*'s scope, and thus, that the *Egan* doctrine precludes a court from adjudicating. *See Lee*, 120 F.4th at 894. Each of these forms of relief, *Lee* explained, "flow[s] inexorably from the revocation decision," rather than from "an agency decision discrete from the revocation decision." *Id.* As such, these forms of relief do not fit within *Greenberg*'s narrow exception to the *Egan* bar, meaning that they are nonjusticiable.

The only form of relief that *Egan* does not preclude would be an injunction prohibiting the Department from asking the challenged questions in the future during a background investigation for a security clearance—the very relief the plaintiff sought in *Greenberg* itself. *See Greenberg*, 983 F.2d at 288-89. But Gebert lacks standing to seek such an injunction, as he does not plausibly allege a greater-than-speculative possibility that the Department will ask him any of the challenged questions during a security clearance background investigation again in the reasonably near future. "The test for standing is settled: a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

favorable judicial decision." *Humane Soc'y of U.S. v. Perdue*, 935 F.3d 598, 602 (D.C. Cir. 2019) (quotation marks omitted). And "at the pleading stage, the complaint must state a plausible claim that each element of standing is satisfied." *Id.* (quotation marks omitted). Accordingly, "threadbare recitals of the elements of standing, supported by mere conclusory statements, do not suffice." *Kareem v. Haspel*, 986 F.3d 859, 865-66 (D.C. Cir. 2021) (quotation marks omitted).

A plaintiff "may pursue forward-looking, injunctive relief to prevent [an asserted] harm from occurring" only if he shows that "the risk of harm is sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021). Accordingly, the plaintiff's "standing to seek the injunction requested depended on whether he [is] likely to suffer future injury from the" challenged action. *City of L.A. v. Lyons*, 461 U.S. 95, 105 (1983). If a plaintiff makes "no showing that he is realistically threatened by a repetition of" the challenged action "in the reasonably near future, . . . . then he has not met the requirements for seeking an injunction." *Id.* at 108-09.

Gebert does not plausibly allege an imminent risk that the Department will subject him to the challenged questions during a security clearance background investigation "in the reasonably near future." *Lyons*, 461 U.S. at 108. The Department revoked Gebert's security clearance on the basis that he "failed to disclose, misled, and/or omitted information" that could be "relevant to a national security eligibility determination," "creates a vulnerability to exploitation, manipulation, or duress," and concerns "activities, which, if known, could affect [his] personal, professional, or community standing." 2d Am. Compl. ¶ 74. Given that fact, Gebert does not plausibly allege that the Department will investigate him for a security clearance once again in the reasonably near future. *See Bierly v. Dep't of Def.*, Civ. A. No. 23-2386 (RCL), 2024 WL 4227154, at *7 (D.D.C. Sept. 18, 2024) (plaintiff "lacks standing to seek an order requiring the defendants to refrain from using the challenged criteria to adjudicate a future clearance application . . . because [he] has not

concretely alleged that he will ever again be subject to a security clearance screening by any of the defendants" (citing *Lyons*, 461 U.S. at 109)); *Thompson v. Sessions*, 278 F. Supp. 3d 227, 251 (D.D.C. 2017) (plaintiff lacked standing to challenge former employer's investigative procedures because he failed to demonstrate "that he will ever be subject to the [agency's] investigation . . . procedures again"); *Haase v. Sessions*, 835 F.2d 902, 911 (D.C. Cir. 1987) (plaintiff must show that he is "likely to be subjected to the [challenged] policy again" to have standing to enjoin it).

Gebert does not plausibly allege that he will undergo a periodic background reinvestigation again because he no longer has a security clearance that requires one. Indeed, his own allegations undermine the plausibility of any inference that the Department will subject him to a background reinvestigation. According to Gebert, the "Department conducts security screenings upon hiring and again after an employee has worked there for five years." 2d Am. Compl. ¶ 18 n.1; *see also* 5 C.F.R. § 732.203 (periodic reinvestigation every five years). And he alleges that his reinvestigation interview occurred about five years and nine months after he initially had received his security clearance. *See* 2d Am. Compl. ¶¶ 11-12. As of the date of this filing, however, it has been over five years and nine months since Gebert's last periodic reinvestigation concluded, *id.* ¶ 16, yet the Department has not initiated another periodic reinvestigation—for the obvious reason that he no longer has a security clearance requiring a reinvestigation. His own pleadings thus underscore that any risk that the Department will subject him to the challenged questions in the reasonably near future is speculative. *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1116 (D.C. Cir. 2000) ("it is possible for a plaintiff to plead too much: that is, to plead himself out of court by alleging facts that render success on the merits impossible."); *Nurriddin v. Bolden*, 818 F.3d 751, 757 (D.C. Cir. 2016) (same); *Badwal v. Bd. of Trs. of Univ. of D.C.*, 139 F. Supp. 3d 295, 311 (D.D.C. 2015)

("[S]ome factual allegations will render certain inferences unreasonable. Even if the allegation hurts [the] plaintiff's case, the Court must consider the allegation as part of the record for review.").

Nor does Gebert allege that he will undergo a background investigation, or even apply, for another position at the Department requiring a security clearance "in the reasonably near future." *Lyons*, 461 U.S. at 108; *see also Bierly*, 2024 WL 4227154, at *7 (plaintiff lacked standing where he did not "claim that [he] has applied or will soon apply for another security clearance from the same—indeed, any—agency"); *Fair Emp. Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1272, 1274 (D.C. Cir. 1994) (no standing for injunction against unlawful employment practice as it was "highly implausible that [the plaintiffs] would ever return [to defendant] as bona fide job seekers" and thus "have not made sufficient allegations that they are threatened with any future illegality"); *Thompson*, 278 F. Supp. 3d at 251 (no standing for injunction where plaintiff did "not identif[y] any evidence in the record suggesting that he has sought reemployment with the Department" or "has any intention to do so in the future"); *cf. Mattiaccio v. DHA Grp., Inc.*, 928 F. Supp. 2d 251, 257 (D.D.C. 2013) (irreparable harm unlikely as "Plaintiff fail[ed] to allege that he is applying for employment, seeking a security clearance, or engaged in any other conduct that would" trigger the challenged harm); *Comm. in Solidarity with the People of El Salvador v. Sessions*, 705 F. Supp. 25, 27 (D.D.C. 1989) (irreparable harm was unlikely "since no plaintiff has averred that he is presently seeking employment in the Federal service, nor has any plaintiff come forward who has future or contingent plans to that effect," as would trigger challenged harm).

## II.    __Gebert Fails to State a Claim Upon Which Relief Can Be Granted__

Preliminarily, Gebert's claims must be viewed in light of the rule that "the government as employer [ ] has far broader powers than does the government as sovereign." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 598 (2008). The Supreme Court has "often recognized that government has significantly greater leeway in its dealings with citizen employees than it does when it brings

its sovereign power to bear on citizens at large." *Id.* at 599. Accordingly, "absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id.*

In this case, the Department's interest is far greater than merely "promoting the efficiency of the public services it performs through its employees." *Engquist*, 553 U.S. at 599. Rather, the Department "has a compelling interest in protecting truly sensitive information from those who, under compulsion of circumstances or for other reasons, might compromise such information." *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 677 (1989) (cleaned up); *see also Egan*, 484 U.S. at 527 ("This Court has recognized the Government's compelling interest in withholding national security information from unauthorized persons in the course of executive business" (quotation marks omitted)); *Haig v. Agee*, 453 U.S. 280, 307 (1981) ("It is obvious and unarguable that no governmental interest is more compelling than the security of the Nation" (quotation marks omitted)). The Department's compelling interest in protecting the national security gives it even "greater leeway" than normal "in its dealings with [its] employees." *Engquist*, 553 U.S. at 599.

Especially given the Department's status as Gebert's employer and compelling interest in protecting national security—but also even without accounting for either of these considerations —Gebert's vagueness and overbreadth challenges to the questions asked during his interview fail.

### A.    Gebert Fails to State a Void for Vagueness Claim

Gebert's void for vagueness claim fails for three reasons. First, the law of the case doctrine bars the claim, as this Court already has rejected it. Second, Gebert fails to identify any protected interest, which is a threshold requirement for any claim that sounds in due process. Third, on the merits, none of the challenged questions are vague, let alone so vague as to violate the Constitution.

1.    The Law of the Case Doctrine Bars Gebert's Void for Vagueness Claim

"The law-of-the-case doctrine rests on a simple premise: the same issue presented a second time in the same case in the same court should lead to the same result." *Kimberlin v. Quinlan*, 199 F.3d 496, 500 (D.C. Cir. 1999) (cleaned up). Accordingly, "a court involved in later phases of a lawsuit should not re-open questions decided by that court . . . in earlier phases." *Wye Oak Tech., Inc. v. Rep. of Iraq*, 24 F.4th 686, 697 (D.C. Cir. 2022). This Court already considered and rejected Gebert's void for vagueness claim, so the law of the case doctrine bars him from raising it again.

Gebert previously raised a void for vagueness claim in his first amended complaint. *See* 1st Am. Compl. ¶¶ 249-57. This Court rejected that claim, explaining that "any person of ordinary intelligence would know that Gebert's associations with white nationalists" required him to answer the challenged questions in the affirmative, so that "[b]y answering 'no' when candor required him to answer 'yes,' Gebert did not run afoul of an unlawfully vague or even particularly confusing Departmental rule." Mem. Op. at 15-16. Gebert's void for vagueness claim in his second amended complaint is substantively identical, and indeed phrased near-identically, to the void for vagueness claim in his first amended complaint. *Compare* 1st Am. Compl. ¶¶ 89-100 *with* 2d Am. Compl. ¶¶ 89-100. Accordingly, the law of the case doctrine precludes Gebert from relitigating this claim. *See Wye Oak Tech.*, 24 F.4th at 697; *Kimberlin*, 199 F.3d at 500. If Gebert is dissatisfied with this Court's resolution of his void for vagueness claim, the proper remedy is to file an appeal to the D.C. Circuit, not plead the same claim again in hope of securing a different result from this Court.

2.    Gebert Fails to Identify a Protected Interest

While Gebert styles his vagueness claim as arising under the First Amendment, *see* 2d Am. Compl. ¶¶ 82-99, the "[v]agueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment." *Hodge v. Talkin*, 799 F.3d 1145, 1171 (D.C. Cir. 2015) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). That is because the void

for vagueness doctrine is rooted in the idea that "[v]ague laws contravene the first essential of due process of law that statutes must give people of common intelligence fair notice of what the law demands of them." *United States v. Davis*, 588 U.S. 445, 451 (2019) (quotation marks omitted).

The idea that void for vagueness claims sound in due process, not the First Amendment, is not just a matter of form, but has substantive implications. The Due Process Clause provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the [Due Process Clause's] protection of liberty and property." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). A threshold element of any due process claim thus is that a party was "deprived of a protected interest." *Statewide Bonding, Inc. v. Dep't of Homeland Sec.*, 980 F.3d 109, 118 (D.C. Cir. 2020). Absent a protected interest, a plaintiff cannot show that the government has "deprived" him of anything that due process protects. U.S. Const. amend. V.

A plaintiff thus cannot state a void for vagueness claim unless he first identifies a protected interest of which the government allegedly deprived him based on vague criteria. *See Tomaszczuk v. Whitaker*, 909 F.3d 159, 164 (6th Cir. 2018) (a plaintiff "may not bring [a] void-for-vagueness challenge" unless "she has been deprived of a life, liberty, or property interest sufficient to trigger the protection of the due process clause"); *Maroney v. Univ. Interscholastic League*, 764 F.2d 403, 406 n.6 (5th Cir. 1985) ("the vagueness doctrine may not be applied unless the challenged rule affects interests protected by the due process clause"); *Riddick v. Semple*, Civ. A. No. 18-0408, 2018 WL 3962935, at *2 (D. Conn. Aug. 18, 2018) ("because a vagueness challenge is essentially a due process challenge, a [plaintiff] making such a challenge must establish that he was deprived of a liberty or property interest protected by the Constitution or federal statute"); *M.B. ex rel. Brown v. McGee*, Civ. A. No. 16-0334, 2017 WL 1364214, at *7 (E.D. Va. Mar. 24, 2017) ("a

court may not reach the merits of a plaintiff's void for vagueness claim unless the plaintiff first shows that state action deprived him or her of a constitutionally protected liberty or property interest" (quotation marks omitted)); *Hunt Valley Baptist Church, Inc. v. Baltimore Cnty.*, Civ. A. No. 17-0804, 2017 WL 4641987, at *37 (D. Md. Oct. 17, 2017) (same); *Conway v. King*, 718 F. Supp. 1059, 1060 (D.N.H. 1989) ("The vagueness doctrine only applies when the challenged statute affects interests protected by the due process clause"). If the government did not deprive a plaintiff of a protected interest based on vague criteria, then there is no void for vagueness claim.

But Gebert fails to identify any protected interest of which the Department deprived him. He lacked a protected interest in his security clearance, as it is "obvious that no one has a 'right' to a security clearance." *Egan*, 484 U.S. at 528; *see also Doe v. Cheney*, 885 F.2d 898, 909 (D.C. Cir. 1989) (plaintiff "had no entitlement to access to [classified information]. He cannot argue that [agency] has deprived him of a property interest."); *U.S. Info. Agency v. Krc*, 905 F.2d 389, 399 (D.C. Cir. 1990) ("no independent property right attaches to the security clearance"). Accordingly, "the revocation of his clearance cannot serve as a predicate liberty or property interest," *Wonders v. Dep't of the Army*, Civ. A. No. 23-2770 (TNM), 2024 WL 4144119, at *8 (D.D.C. Sept. 11, 2024) (quotation marks omitted); *accord Deryck v. Dep't of Def.*, Civ. A. No. 22-3290 (TNM), 2023 WL 3303832, at *3 (D.D.C. May 8, 2023) (same), for purposes of a void for vagueness claim.

Nor did Gebert have a protected interest in his job, as there is no right to a job that requires a clearance. *See Krc*, 905 F.2d at 397 (no protected interest in a job "when the loss of employment flows directly from the modification of a security clearance"); *Magassa v. Mayorkas*, 52 F.4th 1156, 1169 (9th Cir. 2022) (there is "no liberty interest in maintaining employment that requires a security clearance"); *Stehney v. Perry*, 101 F.3d 925, 936 (3d Cir. 1996) (an employee "has no constitutionally protected liberty or property interest in . . . a job requiring a security clearance");

*Dorfmont v. Brown*, 913 F.2d 1399, 1403 (9th Cir. 1990) ("If there is no protected interest in a security clearance, there is no liberty interest in employment requiring such clearance"); *Deryck*, 2023 WL 3303832, at *3 ("While some federal employees may have property interests in their jobs, those who must hold security clearances do not."); *Gill v. Dep't of Just.*, Civ. A. No. 15-0824 (RMC), 2016 WL 3982450, at *6 (D.D.C. July 22, 2016) ("the right 'to earn a living' does not extend to jobs requiring a security clearance"); *Palmieri v. United States*, 72 F. Supp. 3d 191, 207 (D.D.C. 2014) (same); *Chesna v. Dep't of Def.*, 850 F. Supp. 110, 119 (D. Conn. 1994) (same). Any other result "would swallow the rule that an employee cannot hold a property interest in a security clearance," because "for jobs that require a clearance," the job and clearance "form one indivisible whole." *Lamb v. Millennium Challenge Corp.*, 498 F. Supp. 3d 104, 111 (D.D.C. 2020).

Because Gebert lacks a protected interest, his void for vagueness claim fails at the outset.

3.    The Challenged Questions Are Not Void for Vagueness

In the criminal context, "if a question is excessively vague or fundamentally ambiguous, the answer to the question may not, as a matter of law, form the basis of a prosecution for perjury or false statement." *United States v. Doost*, 3 F.4th 432, 443 (D.C. Cir. 2021) (cleaned up). Judges in this District have concluded that a question fails this test if it lacks "a meaning about which men of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony." *United States v. Lattimore*, 127 F. Supp. 405, 410 (D.D.C), *aff'd*, 232 F.2d 334 (D.C. Cir. 1955); *accord United States v. Safavian*, 451 F. Supp. 2d 232, 248 (D.D.C. 2006), *aff'd in relevant part*, 528 F.3d 957, 965 n.9 (D.C. Cir. 2008) (same); *United States v. Naegele*, 341 B.R. 349, 355 (D.D.C. 2006) (same). Although the D.C. Circuit has not yet weighed in on this issue, as best the Department can tell, every Circuit to address it—all but the D.C., Seventh, and Federal Circuits— has adopted the same standard as the judges of this District. *See United States v. Richardson*, 421

F.3d 17, 34 (1st Cir. 2005); *United States v. Lighte*, 782 F.2d 367, 375 (2d Cir. 1986); *United States v. Reilly*, 33 F.3d 1396, 1416 (3d Cir. 1994); *United States v. Sarwari*, 669 F.3d 401, 407 (4th Cir. 2012); *United States v. Brooks*, 681 F.3d 678, 706 (5th Cir. 2012); *United States v. Ahmed*, 472 F.3d 427, 433 (6th Cir. 2006); *United States v. Turner*, 500 F.3d 685, 689 (8th Cir. 2007); *United States v. Culliton*, 328 F.3d 1074, 1078 (9th Cir. 2003); *United States v. Farmer*, 137 F.3d 1265, 1269 (10th Cir. 1998); *United States v. Burnette*, 65 F.4th 591, 610 (11th Cir. 2023).

This test is a "high bar." *United States v. Hird*, 913 F.3d 332, 347 n.22 (3d Cir. 2019). "A question is fundamentally ambiguous in narrow circumstances." *United States v. Strohm*, 671 F.3d 1173, 1179 (10th Cir. 2011). "Almost any question or answer can be interpreted in several ways when subjected to ingenious scrutiny after the fact," after all, so "mere vagueness or ambiguity in the questions is not enough to establish a defense." *United States v. Chapin*, 515 F.2d 1274, 1279 (D.C. Cir. 1975); *see also Cole v. Richardson*, 405 U.S. 676, 683-84 (1972) ("Almost any word or phrase may be rendered vague and ambiguous by dissection with a semantic scalpel. But such an approach amounts to little more than verbal calisthenics." (cleaned up)). A challenged question "is not fundamentally ambiguous simply because the questioner and respondent might have different interpretations." *Culliton*, 328 F.3d at 1079. "Even if a question is open to multiple interpretations, if it is not *fundamentally* ambiguous the question of what a defendant meant when he made his representation will normally be one for the jury." *Naegele*, 341 B.R. at 355 (emphasis in original, cleaned up); *accord United States v. Farmer*, 137 F.3d 1265, 1269 (10th Cir. 1998) (if a "question is only 'arguably ambiguous,' a defendant's understanding of [it] is for the jury to resolve"). Nor is a question fundamentally ambiguous just because it is broad. *See Ahmed*, 472 F.3d at 433 ("Although the questions at issue here may indeed be broad, there is no basis to conclude that they

display the kind of fundamental ambiguity that would invalidate the indictment"); *United States v. Damrah*, 412 F.3d 618, 627 (6th Cir. 2005) ("The [ ] question is broad but not ambiguous").

Whether a question is excessively vague or fundamentally ambiguous depends not on its wording in isolation from context. Rather, a court must look at "the context of both the purpose of the [ ] investigation . . . and the series of questions actually asked." *Chapin*, 515 F.2d at 1280; *see also Am. Commc'ns Ass'n, v. Douds*, 339 U.S. 382, 412 (1950) ("The particular context is all important" for vagueness claims); *United States v. Hsia*, 176 F.3d 517, 525 n.4 (D.C. Cir. 1999) (no fundamental ambiguity when question was "[r]ead in context"); *Culliton*, 328 F.3d at 1079 ("we must consider the context of the question and [the] answers, as well as other extrinsic evidence relevant to his understanding of the questions posed"); *Lighte*, 782 F.2d at 375 ("When ambiguity in questioning is raised, the defense may not be established by isolating a statement from context, giving it in this manner a meaning entirely different from that which it has when the testimony is considered as a whole" (cleaned up)); *Naegele*, 341 B.R. at 356 ("In determining whether a question is so vague as to be fundamentally ambiguous, the Court may not consider the question in isolation, but must look to the context of the question and the answer" (cleaned up)).

Finally, a question is not excessively vague or fundamentally ambiguous "if the response given was false as the defendant understood the question." *United States v. Sampson*, 898 F.3d 287, 307 (2d Cir. 2018) (cleaned up); *see also Culliton*, 328 F.3d at 1079 ("If [the] responses were false as he understood the questions, his conviction is not invalidated by the fact that his answer to the questions might generate a number of different interpretations" (cleaned up)); *United States v. Swindall*, 971 F.2d 1531, 1553 (11th Cir. 1992) (same); *United States v. Williams*, 552 F.2d 226, 229 (8th Cir. 1977) (same); *United States v. Camper*, 384 F.3d 1073, 1078 (9th Cir. 2004) ("even when a question has two plausible meanings, where the evidence proves that the defendant

22

understood one such meaning and answered falsely to it, a jury can convict for false statement"); *Chapin*, 515 F.2d at 1280 ("the possibility that a question or an answer may have a number of interpretations does not invalidate either an indictment or a conviction after a jury charge which, as here, requires the jury to determine that the question as the defendant understood it was falsely answered in order to convict"); *United States v. Parr*, 516 F.2d 458, 470 (5th Cir. 1975) (question was not fundamentally ambiguous because it was "clear" defendant "understood the question").

None of the challenged questions are excessively vague or fundamentally ambiguous. The first asked "[w]hether [Gebert] had any association with any person, group, or business venture that could be used, even unfairly, to criticize, impugn or attack his character or qualifications for a government position." 2d Am. Compl. ¶ 13.i. While the question is broad, it is not fundamentally ambiguous. By using the phrases "could be used" and "even unfairly," the question made clear that it elicited not just associations that Gebert subjectively believed reflect adversely on his fitness for public service, but all association that anyone may use to disparage him, fairly or not. By using the word "any," which "has an expansive meaning," the question made clear that it elicited all associations, "indiscriminately of whatever kind," that one might use to disparage him. *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) (quotation marks omitted); *compare United States v. Polos*, 723 F. App'x 64, 65-66 (2d Cir. 2018) ("The broad language of the question is not fundamentally ambiguous; it is instead designed to capture all [ ] activities in an applicant's recent history. . . . The language of the question at issue here . . . is similarly not imprecise—let alone 'fundamentally ambiguous'—simply because it is expansive in its meaning."). Last, by limiting itself to associations reflecting adversely on Gebert's "character or qualifications for a government position," the question made clear that it excludes minor bases for disparagement that cannot reasonably be thought to preclude public service, such as parking tickets or overdue library books.

The second question, meanwhile, asked "[w]hether [Gebert] was aware of any people or organizations that would criticize or oppose his employment in a government position." 2d Am. Compl. ¶ 13.ii. This question, too, is broad, but is not fundamentally ambiguous either. Persons "of ordinary intellect," *Lattimore*, 127 F. Supp. at 410, would construe the term "criticize" to mean "find fault with" or "point out the faults of," *Thompson v. Little Am. Hotel Co.*, No. 22-4006, 2022 WL 10832885, at *7 n.3 (10th Cir. Oct. 19, 2022) (quoting *Merriam-Webster Online Dictionary*), and the term "oppose" to mean "to resist or antagonize, to contend against," or "to confront," "resist," or "withstand," *Crawford v. Metro. Gov't of Nashville Cnty.*, 555 U.S. 271, 276 (2009) (cleaned up, quoting *Webster's New International Dictionary*). Indeed, courts have held both these terms to be not unreasonably vague. *See McConnell v. FEC*, 540 U.S. 93, 170 n.64 (2003) (term "'oppose' . . . clearly set[s] forth the confines within which [one] must act," "provide[s] explicit standards . . . and give the person of ordinary intelligence a reasonable opportunity to know what is prohibited" (quotation marks omitted));[2] *Diamond Resorts Int'l, Inc. v. Aaronson*, Civ. A. No. 17-1394, 2018 WL 8221037, at *2 (M.D. Fla. Sept. 28, 2018) ("The Court is not persuaded that the term 'criticism' is vague"). And as with the first question, the question's limit to criticism of or opposition to Gebert's "employment in a government position" makes clear that it excludes any minor or trivial grievances that cannot reasonably be expected to preclude government service.

Finally, the third question asked whether "there was any information regarding members of [Gebert's] family that would be a possible source of embarrassment to the [ ] Department." 2d Am. Compl. ¶ 13.iii. But "the term 'embarrassing' is not fundamentally ambiguous *per se*." *United States v. Kerik*, 615 F. Supp. 2d 256, 273 (S.D.N.Y. 2009). The word "embarrassing" does not

---

[2]    The Supreme Court overruled certain aspects of *McConnell* in *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), but did not disturb the aspect of *McConnell* at issue.

render a question fundamentally ambiguous so long as the question "explicitly limit[s] the context to 'associations' or specific affiliations." *Id.* at 274. "For example, a question about 'embarrassing educational history' or 'embarrassing business dealings' would not be fundamentally ambiguous because it provides the answerer with clarity about the specific information sought by [the] examiner." *Id.* at 273. Here, the question "explicitly limit[s] the context to 'associations' or specific affiliations,'" and so "provides . . . clarity about the specific information sought by [the] examiner," *id.* at 273-74, as it is limited to "information regarding members of [Gebert's] family," 2d Am. Compl. ¶ 13.iii. The question's use of the term "possible," in turn, makes clear that it is not limited only to what Gebert knows or thinks would embarrass the Department, but covers anything that may embarrass it. Although term "possible" may well make the question broad, it simultaneously diminishes the question's ambiguity. And much like the first two questions, the question's limit to sources of embarrassment to the Department specifically, not embarrassment in general, makes clear that it excludes minors matters that cannot reasonably be expected to preclude public service.

Further, the context in which the three questions arose—a background reinvestigation for a security clearance—made clear that Gebert was to construe them broadly and err on the side of disclosure. *See United States v. Delgado*, 798 F. App'x 105, 107 (9th Cir. 2020) (security clearance background reinvestigation question not fundamentally ambiguous "particularly when considering the context of the inquiry"); Off. of Pers. Mgmt., Standard Form 86 at 1 (rev. 2016) ("All questions on this form must be answered completely and truthfully in order that the Government may make the determinations described below on a complete record" (emphasis omitted)); *United States v. Sarwari*, 669 F.3d 401, 408 (4th Cir. 2012) (no fundamental ambiguity as "[t]he context here—an application for a United States passport—is a formal one"); *cf. Bryant v. Gates*, 532 F.3d 888, 893 (D.C. Cir. 2008) (term "political" not vague as "context in which that term appears . . . makes clear

that it relates specifically to elections and policy matters of concern to public officials"); *Kerik*, 615 F. Supp. 2d at 273 ("in the context in which questions were asked of [defendant]—the vetting process for a high-level executive position—the participants shared a mutual understanding that the questioner sought general information that might be publicly and politically damaging to the nominee or the President"); *contrast United States v. Thomas*, 864 F.2d 188, 197 (D.C. Cir. 1988) ("The lack of a 'core concept' is the hallmark of a prohibition that is unconstitutionally vague."). The context of a background reinvestigation interview for a security clearance further reduces any ambiguity in the questions. *See Hsia*, 176 F.3d at 525 n.4; *Chapin*, 515 F.2d at 1280.

Finally, Gebert's own pleadings undermine his contention that he subjectively found the questions to be ambiguous. Gebert acknowledges that he "knows that his opinions are unpopular and that some people may be offended;" that "he knew that his opinions were controversial;" and that he knew that his "beliefs and values . . . in this day and age are judged to be beyond the pale." 2d Am. Compl. ¶¶ 54-56. Just as "[t]hese facts virtually compelled the Department's finding that Gebert had not provided full, frank, and truthful answers to [the first two] questions in 2019," Mem. Op. at 11 (cleaned up), they likewise demonstrate that Gebert knew that his white nationalist associations "could be used . . . to criticize, impugn or attack his character or qualifications for a government position" and that there were "people or organizations that would criticize or oppose his employment in a government position." 2d Am. Compl. ¶ 13.i-ii. That fact fatally undermines Gebert's contention that he personally considered the first and second questions to be ambiguous, which in turn undermines his argument that these questions are fundamentally ambiguous. *See Sampson*, 898 F.3d at 307; *Culliton*, 328 F.3d at 1079; *Swindall*, 971 F.2d at 1553; *Williams*, 552 F.2d at 229; *Camper*, 384 F.3d at 1078; *Chapin*, 515 F.2d at 1280; *Parr*, 516 F.2d at 470.

26

There likewise is no dispute that Gebert's "wife associated with white nationalists." Mem. Op. at 11; *see also* Pl.'s Mot. Leave Amend, Ex. D, Ltr. from Pl.'s Counsel to Dep't at 11 (Feb. 4, 2021), ECF No. 48-2; Pl.'s Resp. Mot. at 26, ECF No. 26; Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *Holloway v. Arkansas*, 435 U.S. 475, 486 (1978) ("attorneys are officers of the court, and when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath" (cleaned up)); *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 92 (1990) (a "party is deemed bound by the acts of his lawyer-agent"). Just as the fact of his wife's associations with white nationalist "virtually compelled the Department's finding that Gebert had not provided [a] full, frank, and truthful answer[ ] to [the third] question[ ] in 2019." Mem. Op. at 11 (cleaned up), that fact likewise demonstrates that Gebert knew there was "information regarding members of his family that would be a possible source of embarrassment to the [ ] Department." 2d Am. Compl. ¶ 13.iii. That, in turn, undermines Gebert's contention that he personally found the third question to be ambiguous.

Gebert offers no persuasive response. He offers no explanation of how or why the first two questions ostensibly were vague, instead focusing solely on the word "embarrassment" in the third question. *See* 2d Am. Compl. ¶¶ 93-95. Gebert thus does not plausibly allege that either of the first two questions were fundamentally ambiguous. *See Iqbal*, 556 U.S. at 678; *Wyo. Gun Owners v. Gray*, 83 F.4th 1224, 1241 (10th Cir. 2023) ("Pleading an adequate void-for-vagueness challenge requires something beyond merely claiming that a word is vague."). And as explained, the term "embarrassment" did not render the third question fundamentally ambiguous. Gebert's assertion that "[t]here was no qualifier, clarification, or context to the word 'embarrassing' during Gebert's

interview," 2d Am. Compl. ¶ 95,[3] simply is incorrect. As explained above, the question qualified, clarified, and contextualized the word "embarrassment" in three separate ways—it (1) was limited to information about Gebert's family members, (2) elicited information about "possible" sources of embarrassment, not whatever Gebert personally knew or believed would cause embarrassment, and (3) was limited to sources of embarrassment to the "Department," therefore precluding trivial embarrassments that could not reasonably be expected to preclude government service. *Id.* ¶ 13.

For these reasons, none of the challenged questions are excessively vague or fundamentally ambiguous.

### B.      Gebert Fails to State an Overbreadth Claim

When "analyzing a claim that a public employee was deprived of First Amendment rights by her employer," a court "must seek a balance between the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Engquist*, 553 U.S. at 599 (cleaned up). Further, agencies can act "to protect substantial government interests" in national security "by imposing reasonable restrictions on employee activities that in other contexts might be protected by the First Amendment." *Snepp v. United States*, 444 U.S. 507, 510 n.3 (1980).

A law is overbroad if it "punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep." *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003) (quotation marks omitted); *accord United States v. Nassif*, 97 F.4th 968, 974 (D.C. Cir. 2024) (law is overbroad only "if it prohibits a substantial amount of protected speech"). "The unconstitutional applications must be realistic, not fanciful, and substantially disproportionate to the statute's lawful

---

[3]      According to Gebert's pleadings, the third question used the word "embarrassment," not the word "embarrassing." 2d Am. Compl. ¶ 13.iii.

applications." *Green v. Dep't of Just.*, 111 F.4th 81, 95 (D.C. Cir. 2024) (quotation marks omitted). "Facial invalidation of a statute for overbreadth is disfavored. It is strong medicine that is not to be casually employed." *Id.* (quotation marks omitted). "Accordingly, facial overbreadth challenges are by design hard to win." *Id.* at 96 (quotation marks omitted); *accord United States v. Hansen*, 599 U.S. 762, 770 (2023) (overbreadth challenge fails "[i]n the absence of a lopsided ratio").

Gebert's overbreadth claim fails for two reasons. First, the overbreadth doctrine does not apply to a background reinvestigation question because a mere question does not punish or prohibit speech. Second, and regardless, the challenged questions are not overbroad.

### 1.    The Overbreadth Doctrine Does Not Apply to a Mere Question

Initially, the overbreadth doctrine simply does not apply to mere question. The overbreadth doctrine applies only if a law "punishes," *Hicks*, 539 U.S. at 118, or "prohibits," *Nassif*, 97 F.4th at 974, speech. Simply asking a question does not punish or prohibit speech. *Cf. Greenberg*, 983 F.2d at 294 ("questions do not invade privacy, answers do"). Perhaps what Gebert means is that the Department will revoke a security clearance if the respondent gives the wrong answer, but even that is not reasonably characterized as a "punishment" of or "prohibition" on speech given "that no one has a 'right' to a security clearance," a "clearance does not equate with passing judgment upon an individual's character," and the "denial of a security clearance is not [considered] an 'adverse action.'" *Egan*, 484 U.S. at 528-29. In light of all this, one cannot reasonably characterize a security clearance revocation as a kind of "punishment" of or "prohibition" on speech.

### 2.    The Challenged Questions Are Not Overbroad

Even if overbreadth principles apply here, the challenged questions do not violate them. In *Greenberg*, 983 F.2d at 295, a plaintiff challenged as overbroad questions "about arrests, finances, mental health difficulties, and drug and alcohol use" asked as part of a background investigation for a security clearance. The D.C. Circuit concluded that the questions were not overbroad because

"[t]hese are not activities within the freedom of speech and, in any event, disclosing information about these subjects could not conceivably deter plaintiffs or their members from engaging in any protected speech." *Id.* Nothing about the challenged questions warrants a different conclusion here.

The overbreadth inquiry, after all, is whether "the ratio of unlawful-to-lawful applications" is substantially "lopsided." *Hansen*, 599 U.S. at 784. The challenged questions' "plainly legitimate sweep," *Hicks*, 539 U.S. at 118-19, is very broad. As explained, the Department has a compelling interest in protecting classified information from those who may disclose it without authorization. *See Von Raab*, 489 U.S. at 677; *Egan*, 484 U.S. at 527; *Haig*, 453 U.S. at 307. An individual is eligible for a security clearance "only where facts and circumstances indicate access to classified information is clearly consistent with the national security interests of the United States." Exec. Order 12,968 § 3.1(b), 60 Fed. Reg. 40,245, 40,250 (Aug. 2, 1995). And federal agencies "need all the evidence they can get to control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to have access to such information." *Rattigan v. Holder*, 689 F.3d 764, 769 (D.C. Cir. 2012) (cleaned up). Questions about associations that could be used to disparage a person, whether anyone would criticize or oppose his government employment, and whether any information about his family potentially would embarrass the Department plainly are relevant to whether granting him access to classified information clearly is consistent with the United States' national security interests. Finally, as this Court has explained, if a person believes "that the First Amendment forb[ids] the government from asking him" any of the challenged questions, then he can "refuse[ ] to answer the questions and [seek] relief from an appropriate court." Mem. Op. at 12. Given all this, Gebert offers no reason to conclude that the challenged questions reasonably are likely to chill "a substantial amount of protected free speech, and certainly not judged in relation to [their] plainly legitimate sweep," *Hicks*, 539 U.S. at 118-19.

**CONCLUSION**

This Court should dismiss Gebert's second amended complaint.

Dated: April 12, 2025
      Washington, DC

Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney

By: _____*Bradley G. Silverman*_____
     BRADLEY G. SILVERMAN, D.C. Bar #1531664
     Assistant United States Attorney
     601 D Street NW
     Washington, DC 20530
     (202) 252-2575
     bradley.silverman@usdoj.gov

*Attorneys for the United States of America*