## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MATTHEW GEBERT,

> *Plaintiff*,

v.

DEPARTMENT OF STATE,

> *Defendant*.

Civil Action No. 22-2939 (DLF)

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT AND IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES                                                                              i

INTRODUCTION                                                                                      1

BACKGROUND                                                                                        1

    I.    Factual Background                                1
    II.   Procedural Background                                  1

LEGAL STANDARD                                                                                    2

    I.    Subject Matter Jurisdiction                       2
    II.   Federal Rule of Civil Procedure 12(b)(6)              2
    III.  Motion for Summary Judgment - Rule 56                     3

ARGUMENT                                                                                          4

    I.    Plaintiff is Not Challenging the Revocation of the Security Clearance. Rather,        4
        He Challenges the Processes Used by the Department of State in the Security
        Clearance Reinvestigation

    II.   The First Amendment Challenges to the Interview Questions are Properly        5
        Before the Court and Justiciable

        a.  Subject-Matter Jurisdiction                     5
        b.  Justiciability                                  7
        c.  Standing: Injunctive Relief                     10

    III.  Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) Should be Denied        12

        a.  Plaintiff's Count I (Overbreadth) States a Claim Upon Which Relief Can        14
            be Granted
        b.  Plaintiff's Count II (Vagueness) States a Claim Upon Which Relief Can be        15
            Granted

    IV.  Summary Judgment Should be Granted in Favor of Plaintiff        18

        a.  The Challenged Questions are Unconstitutionally Overbroad        19
        b.  The Challenged Questions are Unconstitutionally Vague        24

CONCLUSION                                                                                        31

## Table of Authorities

**Cases**

*Action All of Senior Citizens v. Sullivan*,
  289 U.S. App. D.C. 192, 930 F.2d 77, 83 (1991)                                          14

*Air Excursions LLC v. Yellen*,
  460 U.S. App. D.C. 447, 66 F.4th 272, 277 (2023)                                        3

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S. Ct. 2505, 91 L.Ed. 2d 202 (1986)                                   4
  477 U.S. 252                                                                            18

*Ashbourne v. Hansberry*,
  Civil Action No. 17-752 (LLA), 2024 U.S. Dist. LEXIS 125651 (D.D.C. July 17, 2024)      18

*Ashcroft v. Iqbal*,
  556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed 2d 868 (2009)                               3, 18

*Barros v. Gov't Emples. Ins. Co*.,
  79 F. Supp. 3d 32, 35 (D.D.C. 2015)                                                     3, 13

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544                                                                            3

*Big Mama Rag v. United States*,
  203 U.S. App. D.C. 448, 631 F.2d 1030, 1035 (1980)                                      27

*Bierly v. Department of Defense*,
  Civ. A. No. 23-2386 (RCL), 2024 WL 4227154 at *19 (D.D.C. Sept. 18, 2024)               12
  Civ. A. No. 23-2386 at *20                                                              12
  Civ. A. No. 23-2386 at *21                                                              10, 11, 12

*Bd. of Regents of State Colls v. Roth*,
  408 U.S. 564, 569 (1972)                                                                17

*Chandler v. Bernanke*,
  531 F. Supp. 2d 193, 197 (D.D.C. 2008)                                                  3,12, 13

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983)                                                                      10
  461 U.S. 95, 101-102                                                                    11, 12
  461 U.S. 95, 109                                                                        11, 12

**Cases (cont.)**

*Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*,
  413 U.S. 548, 576-79 (1973)                                    17

*Cohen v. San Bernardino Valley College*,
  92 F.3d 968, 970 (9th Cir. 1996)                               17

*Cont'l Transfer Technique, Ltd. v. Fed. Gov't of Nigeria*,
  603 F. App'x 1, 4-5 (D.C. Cir. 2015)                            9

*Dambrot v. Central Michigan University*,
  55 F.3d 1177, 1183-84 (6th Cir. 1995)                          17

*Dep't of the Navy v. Egan*,
  484 U.S. 518, 108 S. Ct. 818 (1988)                          5, 22
  484 U.S. 518, 824                                              22
  484 U.S. 518, 524                                              28

*Elgin v. Dep't of the Treasury*,
  567 U.S. 1, 132 S. Ct. 2126, 2130 (2012)                     5, 6

*Engquist v. Or. Dep't of Agric.*,
  553 U.S. 591, 598 (2008)                                       13

*Gaines v. District of Columbia*,
  961 F. Supp. 2d 218, 221 (D.D.C. 2013)                          2

*Gentile v. State Bar of Nevada*,
  501 U.S. 1030, 1048–51 (1991)                                  17

*Grayned v. City of Rockford*,
  408 U.S. 104, 92 S. Ct. 2294 (1972)                            25
  408 U.S. 108-109                                               26

*Haase v. Sessions*,
  835 F. 2d 902, 910 (D.C. Cir. 1987)                       10, 11, 12
  835 F. 2d 902, 911                                        10, 11, 12

*Hastings v. Judicial Conference of U.S.*,
  264 U.S. App. D.C. 306, 829 F.2d 91, 105 (1987)                19

*Hoffman Estates v. Flipside, Hoffman Estates*,
  455 U.S. 489, 494, 102 S. Ct. 1186 (1982)                      19

**Cases (cont.)**

*Lee v. Garland,*
  120 F.4th 880 (D.C. Cir. 2024)                                              6, 8, 9

*Johnson v. United States*,
  135 S. Ct. 2551, 2556, 192 L. Ed. 2d 569 (2015)                                 25

*Jones v. Air Line Pilots Ass'n, Int'l,*
  395 U.S. App. D.C. 279, 283, 642 F.3d 1100, 1104 (2011)                          13

*Joy Techs. v. Quigg*,
  732 F. Supp. 227, 229 (D.D.C. 1990)                                              4

*Kaplan v. Cent. Bank of the Islamic Republic of Iran,*
  437 U.S. App. D.C. 270, 896 F.3d 501, 510 (2018)                                 2

*Keyishian v. Bd of Regents*,
  385 U.S. 589, 603-04 (1967)                                                     25

*Kimberlin v. Quinlan*,
  199 F.3d 496, 500 (D.C. Cir. 1999)                                              15

*N.A.A.C.P. v. Button*,
  371 U.S. 415, 432-433                                                        25, 26

*Nat'l Fed'n of Fed. Emps. v. Greenberg (Greenburg I)*,
  789 F. Supp. 430 (D.D.C. 1992)                                               13, 14
  789 F. Supp. 430, 432                                                            19
  789 F. Supp. 430, 435                            14, 15, 19, 23, 24, 26, 30
  789 F. Supp. 430, 436                                14, 20, 21, 22, 23, 26
  789 F. Supp. 430, 437                                                            20

*Nat'l Fed'n of Fed. Emps. v. Greenberg (Greenberg II)*,
  983 F. 2d 286 (D.C. Cir. 1993)                                            1, 7, 8, 13
  983 F.2d 286, 287                                                                14
  983 F.2d 286, 288                                                                 8
  983 F.2d 286, 289                                                                 8
  983 F.2d 286, 290                                                                 8
  983 F.2d 286, 291                                                                 8
  983 F.2d 286, 293                                                                14
  983 F.2d 286, 294                                                                14
  983 F.2d 286, 295                                                                15

*NetworkIP, LLC v. FCC*,
  383 U.S. App. D.C. 310, 548 F.3d 116, 120 (2008)                              2, 7

**Cases (cont.)**

*New York Times Co. v. OMB*,
  531 F. Supp. 3d 118, 123 (D.D.C. 2021)                                3, 4

*Nyunt v. Chairman, Broad. Bd. of Governors*,
  389 U.S. App. D.C. 13, 589 F.3d 445 (2009)                            6
*Payne v. Biden*,
  460 U.S. App. D.C. 257, 62 F.4th 598 (2023)                          6

*Sandvig v. Sessions*,
  315 F. Supp. 3d 1, 32 (D.D.C. 2018)                                  25

*Scott v. Harris*,
  550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)          4

*Shelton* v. *Tucker*,
  364 U.S. 479, 485-88, 5 L. Ed. 2d 231, 81 S. Ct. 247 (1960)          19
  364 U.S. 479, 435-436                                                19

*Soundboard Ass'n v. FTC*,
  888 F.3d 1261, 1267, 435 U.S. App. D.C. 208 (D.C. Cir. 2018)         18

*Taylor v. FDIC*,
  328 U.S. App. DC 52, 132 F.3d 753, 761 (D.C. Cir. 1997)             3, 13

*Thompson v. Sessions*,
  278 F. Supp. 3d 227, 250 (D.D.C. 2017)                              11, 12
  278 F. Supp. 3d 227, 251                                            10, 11

*TransUnion LLC v. Ramirez*,
  594 U.S. 413, 435 (2021)                                            10

*United States v. Davis*,
  588 U.S. 445, 451 (2019)                                            17

*United States v. Delgado*,
  789 F. App'x 105, 106(9th Cir. 2020)                                29
  789 F. App'x 105, 107                                               29

*United States v. Kerik*,
  615 F. Supp. 2d 256 (S.D.N.Y. 2009)                                 27
  615 F. Supp. 2d 273                                                27, 28
  615 F. Supp. 2d 274                                                 27

**Cases (cont.)**

*United States v. Stevens*,
  559 U.S. 460, 130 S. Ct. 1577 (2010)                                      22
  559 U.S. 460, 1588-1589                                              22, 23
  559 U.S. 460, 1590-1592                                                  23

*Weber v. United States*,
  341 U.S. App. D.C. 128, 209 F.3d 756, 759 (2000)                          5

*Wilson v. Gov't of the Dist. of Columbia*,
  269 F.R.D. 8, 12 (D.D.C 2010)                                          3, 13

*Wye Oak Tech., Inc. v. Rep. of Iraq,*
  24 F.4th 686, 697 (D.C. Cir. 2022)                                       16

**Statutes**
5 U.S.C. §7512                                                            5, 6

**Rules**
Federal Rules for Civil Procedure
  Rule 8(a)(2)                                                              3
  Rule 12(b)(6)                                                 1, 2, 3, 12, 15, 18
  Rule 12(h)(3)                                                             2
  Rule 54(c)                                                                9
  Rule 56                                                                   3

## INTRODUCTION

Defendant's Motion to Dismiss seeks to have Plaintiff's claims dismissed. Defendant's motion is based on the Federal Rules of Civil Procedure, Rule 12(b)(6), failure to state a claim upon which relief can be granted. However, Defendant's motion is without merit as both Counts I and II clearly state claims upon which relief can be granted. Therefore, Plaintiff respectfully requests that the Court deny Defendant's motion. Furthermore, as there are no genuine issues of material fact and dispute and Plaintiff is entitled to judgment as a matter of law, Plaintiff respectfully requests that the Court grant summary judgment in favor of the Plaintiff.

## BACKGROUND

### I.  Factual Background

Plaintiff directs the Court to his Statement of Material Facts Not in Dispute in Support of his Opposition to Defendant's Motion to Dismiss and in Support of Cross Motion for Summary Judgment.

### II.  Procedural Background

At the outset, it should be noted that, in the Motion to Dismiss, in retelling the procedural history, the Defendant exclusively focuses on history that is no longer relevant after this Court issued its January 6, 2025 Memorandum Opinion and Order. ECF No. 54. Given the Court's familiarity with the case, Plaintiff will not belabor the history or rehash issues that are no longer relevant. Plaintiff does note, however, that Defendant conveniently omits, that in the Memorandum Opinion, the Court made very clear that *Nat'l Fed'n of Fed. Emps. v. Greenberg*, 983 F.2d 286 (D.C. Cir. 1993) "directly controls here." ECF No. 54 at 5. As Plaintiff explained in the May 12, 2025 Motion for Temporary Restraining Order and Preliminary Injunction and will

explain further below, the Court was exactly right, and for this reason, the Court should deny Defendant's Motion to Dismiss and grant Plaintiff's Motion for Summary Judgment.

## LEGAL STANDARD

### I.    Subject Matter Jurisdiction

It is well settled that subject matter jurisdiction cannot be waived and that where there is question regarding a court's ability to hear a case, courts must raise it *sua sponte*. *See NetworkIP, LLC v. FCC*, 383 U.S. App. D.C. 310, 548 F.3d 116, 120 (2008); *Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 437 U.S. App. D.C. 270, 896 F.3d 501, 510 (2018). This is "because while arguments in favor of subject matter jurisdiction can be waived by inattention or deliberate choice," a federal court is "forbidden--as a court of limited jurisdiction-from acting beyond [its] authority, and no action of the parties can confer subject-matter jurisdiction upon a federal court." *Id*. (internal quotation marks and citation omitted). As such, even if parties fail to raise subject matter jurisdiction, federal courts are obligated to independently ensure that they have subject matter jurisdiction before proceeding to the merits of the case. *Id*. Furthermore, pursuant to Federal Rule of Civil Procedure 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

### II.    Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss tests the legal sufficiency of a complaint. *Gaines v. District of Columbia*, 961 F. Supp. 2d 218, 221 (D.D.C. 2013). The primary question is whether the complaint states a claim upon which relief can be granted. Fed. R. Civ. P 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief" as

required by Federal Rule of Civil Procedure 8(a)(2). *Wilson v. Gov't of the Dist. of Columbia*, 269 F.R.D. 8, 12 (D.D.C 2010) (internal citations omitted).

The D.C. Circuit has consistently held that a Rule 12(b)(6) motion requires the court to "accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Chandler v. Bernanke*, 531 F. Supp. 2d 193, 197 (D.D.C. 2008); *Taylor v. FDIC*, 328 U.S. App. DC. 52, 132 F.3d 753, 761 (D.C. Cir. 1997). If the allegations plausibly suggest that the plaintiff may be entitled to relief, dismissal is inappropriate. *See Barros v. Gov't Emples. Ins. Co.*, 79 F. Supp. 3d 32, 35 (D.D.C. 2015). This standard was articulated in the landmark cases of *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*, which established that a complaint must contain sufficient factual matter to state a claim that is plausible on its face. *Id.*

Therefore, to withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed 2d 868 (2009). The court accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff, but it need not accept legal conclusions or conclusory statements without factual support. *Air Excursions LLC v. Yellen*, 460 U.S. App. D.C. 447, 66 F.4th 272, 277 (2023).

### III.    Motion for Summary Judgment - Rule 56

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." USCS Fed Rules Civ Proc R 56. A fact is only considered "material" if it has the capability of affecting the outcome of litigation, and a dispute is "'genuine' only if a reasonable fact-finder could find for the non-moving party[.]" *New York*

*Times Co. v. OMB*, 531 F. Supp. 3d 118, 123 (D.D.C. 2021). The Supreme Court has found that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L.Ed. 2d 202 (1986). In opposing the motion, the "nonmoving party must do more than merely raise some doubt as to the existence of a fact; the nonmoving party must present evidence sufficient to require submission of the issue to the trier of fact." *Joy Techs. v. Quigg*, 732 F. Supp. 227, 229 (D.D.C. 1990). In assessing whether to grant the motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal citation and alterations omitted).

## ARGUMENT

I.    **Plaintiff is Not Challenging the Revocation of the Security Clearance. Rather, He Challenges the Processes Used by the Department of State in the Security Clearance Reinvestigation**

At the outset, Plaintiff wishes to note that throughout Defendant's Motion to Dismiss the Second Amended Complaint ("Motion to Dismiss"), Defendant unnecessarily complicates the issues before this Court by including arguments grounded in caselaw addressing adverse personnel actions for federal employees and by arguing that this Court has already addressed the claims at issue. Unfortunately, Defendant has conflated two separate and distinct arguments of which Plaintiff solely argues the latter: (1) a challenge of the security clearance revocation, and (2) a challenge of the processes utilized by the Defendant in reinvestigating his clearance. Due to the unnecessary confusion created by the conflation of these two issues, Plaintiff reaffirms that

the sole claims he makes by the Plaintiff in this case are that the processes utilized by the Defendant during his security clearance reinvestigation were unconstitutional. *See* ECF No. 59.

## II.    The First Amendment Challenges to the Interview Questions are Properly Before the Court and Justiciable

### a.    Subject-Matter Jurisdiction

Defendant first argues that the Civil Service Reform Act of 1978 ("CSRA") divests subject matter jurisdiction from this Court as to Plaintiff's First Amendment claims as they "both challenge federal personnel actions." Def. MTD (ECF No. 62-1 at 7). This is the first instance where Defendant confuses the issues before the Court. It should first be noted that, under the CRSA, a "covered action" is a removal, suspension for more than 14 days, revocation in grade or pay, or furlough for 30 days or less. 5 U.S.C. § 7512; *see Elgin v. Dep't of the Treasury*, 567 U.S. 1, 132 S. Ct. 2126, 2130 (2012) (noting that under the CRSA, "reviewable agency actions are removal, suspension for more that 14 days, reduction in grade or pay, or furlough for 30 days.").

Despite Defendant's assertion here, Plaintiff does not challenge *any* federal personnel action. As reaffirmed above, and as this Court has previously recognized, Plaintiff is not challenging the revocation of his security clearance, ECF No. 54 at 3-4; *see* ECF No. 59, which *Dep't of the Navy v. Egan*, 484 U.S. 518, 108 S. Ct. 818 (1988) made clear is precluded from review under the CRSA. *See Weber v. United States*, 341 U.S. App. D.C. 128, 209 F.3d 756, 759 (2000) (noting that *Egan* "concluded that the revocation of a security clearance is not an 'adverse action' that can be reviewed by the MSPB" under the CRSA.). Furthermore, Plaintiff is not challenging his indefinite suspension from the Department of State or any other personnel action listed within section 7512 of the CSRA. S*ee* ECF No. 59.

Defendant fails to identify what it believes Plaintiff's supposed challenged "personnel actions" are. *See* ECF No. 61-1 at 7-10. But to the extent that Defendant is arguing that

5

Plaintiff's assertion that Defendant engaged in unconstitutional information gathering processes during the security clearance investigation is a "'federal employment and personnel complaint' for which the CSRA 'constitutes *the* remedial regime for federal employment and personnel complaints[,]'" Defendant's argument falls short. Defendant provides no caselaw to support this theory. In fact, the three cases upon which Defendant relies are in no way analogous to the present case as each involve an identifiable personnel *action*. *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 132 S. Ct. 2126 (2012) involved a removal from federal service. *See* 5 U.S.C. §7512 (listing "removal" as a 'covered action). *Payne v. Biden*, 460 U.S. App. D.C. 257, 62 F.4th 598 (2023), involved a mandate – an action – to submit to a COVID-19 vaccination. *Id.* at 605. Finally, in *Nyunt v. Chairman, Broad. Bd. of Governors*, 389 U.S. App. D.C. 13, 589 F.3d 445 (2009), an agency promoted – engaged in a personnel action – a non-U.S.-citizen over the plaintiff. Unlike *Elgin*, *Payne*, and *Nyunt*, here, there is no *action* at issue in this case. This issue, rather, is the Defendant's *process* of collecting evidence.

Why then Defendant believes that the mere *processes* used to make a security clearance determination would be a covered personnel action is inexplicable, especially considering the United States Court of Appeals for the District of Columbia's analysis in *Lee v. Garland*, 120 F.4th 880 (D.C. Cir. 2024). There, the court questioned whether, in a suit brought under Title VII, a polygraph examination performed for the purposes of holding a security clearance was "an adverse 'personnel action.'" *Id.* at 887. The plaintiff argued that the polygraph examination – the process used in the security clearance eligibility determination – was an adverse personnel action. *Id.* The court noted that "disconnected from any change in the terms and condition of [the plaintiff's] federal employment[,]" it could not determine that a failing score on a polygraph examination constituted an adverse personnel action. *Id.* This is the same circumstance present in

the case before this Court. Plaintiff is not challenging a change in the terms and conditions of his federal employment, and as such, no determination can be made that the security clearance reinvestigation, on its own, constituted a personnel action for the purposes of the CRSA.

Finally, Defendant fails to address how or why this Court has adjudicated the very issue of the constitutionality of security clearance investigation processes if the court has no subject matter jurisdiction. Specifically, as this Court has already noted in its January 6, 2025 Memorandum Opinion and Order, there is preexisting caselaw, *Nat'l Fed'n of Fed. Emps. v. Greenberg*, 983 F.2d 286 (D.C. Cir. 1993), that adjudicated the very issue of the constitutionality questions used during a security clearance investigation. ECF No. 54 at 5.

A federal court is required to determine whether it has subject matter jurisdiction *prior* to proceeding to the merits of the case and may raise the issue *sua sponte*. *See NetworkIP*, 548 F.3d 116 at 120. At no time did the *Greenberg* court dismiss the case for lack of subject-matter jurisdiction as they would have been required to do had they exceeded their jurisdiction on the issue. *See Greenberg*, 983 F.2d 286. Thus, as shown by the prior adjudication of the question surrounding the constitutionality of the processes used in security clearance investigations, it is clear that this Court properly has subject-matter jurisdiction over the present case.

**b.  Justiciability**

Defendant further argues, as to Plaintiff's claims, that "security clearance decisions raise nonjusticiable political questions." ECF No. 62-1 at 7. Again, Plaintiff is *not* challenging the security clearance decision as this Court already recognized in this January 2025 Memorandum Opinion and Order. *See* ECF No. 54 at 3-4. Defendant's argument once again unnecessarily complicates a very straightforward issue. Here, Plaintiff is solely challenging the processes used during the security clearance reinvestigation, a challenge that this Court has already determined

to be justiciable and supported by precedent. *See id*. at 4-5 (noting that "[t]he Circuit has repeatedly affirmed that challenges to the process that only tangentially relate to the ultimate grant or denial of a clearance are justiciable.").

As this Court has already recognized, Plaintiff's case is directly on point with *Nat'l Fed'n of Fed. Emps. v. Greenberg*, 983 F.2d 286 (D.C.Cir. 1993); *see* ECF No. 54 at 4-5. Here, directly analogous to *Greenberg*, Plaintiff contests the constitutionality of three questions used to gather information during the security clearance reinvestigation interview process. *See Greenberg* at 288-291; ECF No. 59 at ¶¶13, 85, 92. Specifically, as this Court already stated, Plaintiff challenges the interview questions as "overbroad, vague, and facially unconstitutional." ECF No. 59 at ¶84; ECF No. 54 at 5. Furthermore, like in *Greenberg*, because Plaintiff is not asking the Court to reach a judgment regarding the ends - the security clearance revocation - but merely the means used to reach the end, Plaintiff's claims are justiciable. *See Greenberg* at 290 (finding that a challenge to the questions used in the security clearance determination process was justiciable because even though the end, or ultimate grant or denial of the security clearance was nonjusticiable, "the judiciary still may properly scrutinize the manner in which the objective is to be achieved.").

Defendant attempts to distinguish *Greenberg* by attacking the Plaintiff's requested relief, relying on *Lee*, 120 F. 4th 880. In *Lee*, the court determined that the plaintiff's claims "rest[ed] square on harms from the revocation decision itself, and they squarely challenge the substantive basis for that decision." *Id*. at 894. Furthermore, the court found that the plaintiff "did not seek relief against an agency decision discrete from the revocation decision" as he sought "reinstatement, backpay, and compensatory damages from his termination – a decision that all agree flowed inexorably from the revocation decision." *Id*. (emphasis added).

8

Defendant appears to interpret *Lee* to hold that if a plaintiff seeks reinstatement, backpay, and compensatory damages after losing his clearance, the court must consequently determine that there is a nonjusticiable political question before it. *See* ECF No. 62-1 at 12. That, however, is much too narrow an interpretation. A more accurate interpretation is that the court is precluded from granting relief when that relief stems directly from the security clearance revocation. That is not the situation in the case before this Court, and *Lee* is distinguishable in two key facts. In Plaintiff's case, as Defendant fails to recognize, Mr. Gebert security clearance revocation has not been finalized,[1] nor has he been removed from government service. As such, unlike in *Lee* none of Plaintiff's requested relief can stem from the final revocation of his security clearance.

Here, because the Defendant has not yet made a final determination as to the Plaintiff's security clearance, the requested relief flows not from the revocation itself, but from the processes, which Plaintiff alleges to be unconstitutional, the Department utilized to gather evidence and information. Thus, the Court has significant leeway in determining the relief it can award. Although Plaintiff has requested both declaratory and injunctive relief, including reinstatement and back pay, the Plaintiff also requested "such other relief as the Court deems just and proper," and the Court is not limited to the expressly requested relief. *See* Fed. R. Civ. P. 54(c) (noting that the court should "grant the relief to which each party is entitled, even if the party has not demanded the relief in its pleadings"); *Cont'l Transfert Technique, Ltd. v. Fed. Gov't of Nigeria,* 603 F. App'x 1, 4-5 (D.C. Cir. 2015) (explaining that Rule 54(c) "has been liberally construed, particularly when, as here, the complaint contains a general request for 'such other and further relief as [the court] deems just, proper, and equitable[.]'"). As such, the Court is

---

[1] As explained in the Motion for TRO and PI, on June 27, 2025, the Plaintiff is scheduled to appear before a Security Appeal Panel (SAP) to appeal the revocation of his security clearance. ECF No. 64 at ¶¶ 3, 9. The SAP will issue a final determination as to his security clearance. *Id*. at ¶10.

free to declare Defendant's security clearance reinvestigation process unconstitutional and order it to, for example: (1) reinstate Defendant to a pre-reinvestigation status; (2) conduct a new reinvestigation excluding the unconstitutionally gathered material; (3) enjoin Defendant from using the unconstitutional processes in future investigations.

### c. Standing: Injunctive Relief

Defendant alleges that Plaintiff lacks standing to pursue injunctive relief "as he does not plausibly allege a greater-than-speculative possibility that the Department will ask him any of the challenged questions during a security clearance background investigation again in the reasonably near future." ECF No. 62-1 at 12. Defendant relies upon *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021), *City of L.A. v. Lyons*, 461 U.S. 95 (1983), *Bierly v. Dep't of Def.*, Civ. A. No. 23-2386 (RCL), 2024 WL 4227154 at *21 (D.D.C. Sept. 18, 2024 (noting that the plaintiff "lack[ed] standing to seek an order requiring the defendants to refrain from using the challenged criteria to adjudicate a future clearance application . . . because [he] has not concretely alleged that he will ever again be subject to a security clearance screening by any of the defendants); *Thompson v. Sessions*, 278 F. Supp. 3d 227, 251 (D.D.C. 2017 (finding that the plaintiff lacked standing to challenge a former employer's investigative procedures because he failed to demonstrate "that he will ever be subject to the [agency's] investigation . . . procedures again."); and *Haase v. Sessions*, 835 F. 2d 902, 911 (D.C. Cir. 1987) (noting that a plaintiff must show that he is "likely to be subjected to the policy again" to establish standing). ECF No. 62-1 at 13-15.

Defendant's argument, however, is unpersuasive. These cases consistently reaffirm the Supreme Court's determination in *Lyons* that the plaintiff's burden is demonstrating that "that he . . . 'is immediately in danger of sustaining some direct injury' as the result of the challenged

10

official conduct" and that he establishes standing if he shows that he is "realistically threatened by a repetition of his experience." *Lyons*, 461 U.S. 95 at 101-102, 109; *see Thompson*, 278 F. Supp. 3d 227 at 250; *Haase*, 835 F. 2d 902 at 910-911; *Bierly v. Dep't of Def.*, Civ. A. No. 23-2386 at *21.

Once more Defendant fails to take into account that Plaintiff's security clearance has not yet been subject to a final adjudication. As explained in the Memorandum of Law in Support of the Request for Temporary Restraining Order (TRO) and Preliminary Injunction, Plaintiff will be subject to the Security Appeals Panel (SAP) proceeding, and he will be questioned regarding his responses to the three questions at issue in this litigation. ECF No. 64 at 16-17. His responses to these questions served as the basis for the revocation of his clearance pursuant to Adjudicative Guideline E, and in the SAP proceeding, the panel will question him regarding the security concerns presented in the Statement of Reason (SOR) – namely his answers to the questions posed in the January 28, 2019 reinvestigation interview. ECF No. 48-4 at p. 105 (Exhibit H); *see* Declaration of Katie Quintana at ¶8. Given that Mr. Gebert will have to present his case to the SAP on June 27, 2025 regarding his answers to this unconstitutional line of questioning, he can establish that he is "realistically threatened by a repetition of his experience" in the January 28, 2019 reinvestigation interview. *Lyons*, 461 U.S. 95 at 109; *see Haase*, 835 F. 2d 902 at 910-911.

Furthermore, if Plaintiff is successful in obtaining a declaration that Defendant violated the First Amendment in its security clearance reinvestigation process, entitling him to a new investigation, Plaintiff will most certainly be subject to a new security clearance background investigation, and then subject to another every five years, which Plaintiff acknowledges. *See* 5 C.F.R. §732.203; 12 FAM 232.1(b); ECF No. 62-1 at 14. As such, the risk of harm that Defendant will pose these same questions, or questions targeting information about his political

11

or cultural beliefs or organizational affiliations in a subsequent investigation process, establishes that he is "realistically threatened by a repetition of his experience" in the January 28, 2019 reinvestigation interview. *Lyons*, 461 U.S. 95 at 109; *see Haase*, 835 F. 2d 902 at 910-911.

Furthermore, Plaintiff can show that he "is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct." *Lyons*, 461 U.S. 95 at 101-102; *see* 278 F. Supp. 3d 227 at 250. If the Court orders a new investigation, but does not enjoin the Defendant from asking overbroad and vague questions, Plaintiff will find himself in the same situation he was prior to the filing of this case, facing the loss of his career and livelihood.

Finally, as Plaintiff explained in its Memorandum of Law in Support of the Request for TRO and Preliminary Injunction, (ECF No. 64 at 17), it should be noted that this case is distinguishable from *Bierly*, Civ. A. No. 23-2386, another case where injunctive relief was requested in the context of a security clearance revocation. In *Bierly*, the plaintiff's security clearance had only been suspended, and the agency had not yet made a final determination regarding revocation because, before it could do so, the plaintiff resigned from his position. *Id.* at *19-20. As such, the agency lost jurisdiction over the clearance process upon the plaintiff's separation, precluding the court from issuing any order in this regard. *Id*. at *20; *see* Declaration of Katie Quintana at ¶6. These are not the circumstances before this Court. As the SAP proceeding has not yet occurred and a final determination has yet to be made, Defendant fully retains jurisdiction over Mr. Gebert's security clearance. As such, unlike the situation in *Bierly*, the Court can issue injunctive relief.

### III.    Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) Should be Denied

A Rule 12(b)(6) motion requires the court to "accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Chandler v.*

*Bernanke*, 531 F. Supp. 2d 193, 197 (D.D.C. 2008); *Taylor v. FDIC*, 328 U.S. App. DC. 52, 132 F.3d 753, 761 (D.C. Cir. 1997). If the allegations plausibly suggest that the plaintiff may be entitled to relief, dismissal is inappropriate. *See Barros,* 79 F. Supp. 3d 32, 35 (D.D.C. 2015). "Allegations are plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (internal citation omitted). This Court has previously recognized that making such a determination requires the Court to use judicial experience as well as common sense. *Id*.

A plaintiff does not need "plead every fact necessary to establish a prima facie case to survive a motion to dismiss." *Jones v. Air Line Pilots Ass'n, Int'l*, 395 U.S. App. D.C. 279, 283, 642 F.3d 1100, 1104 (2011). All that is required of the Plaintiff is that he provide a "short and plain statement of the claim showing that the pleader is entitled to relief." *Wilson*, 269 F.R.D. 8, 12 (D.D.C 2010) (internal citations omitted).

In beginning its argument, Defendant asserts that the Federal government, when acting as an employer, has greater leeway, and therefore, "absent the most usual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." ECF No. 62-1 at 15-16 (citing *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 598 (2008). Again, Defendant fails to recognize that the issue before this Court is not a "personnel decision." And despite Defendant's argument that it has a "compelling interest in protecting national security" to engage in unconstitutional practices, the court in *Nat'l Fed'n of Fed. Emps. v. Greenberg (Greenberg I)*, 789 F. Supp. 430 (D.D.C. 1992), vacated on other grounds by *Nat'l Fed'n of Fed. Emps. v. Greenberg (Greenberg II)*, 983 F.2d 286 (D.C. Cir. 1993), explicitly noted that a "national security" defense does not, "under the American system or ordered liberty, ipso facto override all constitutional

13

and privacy considerations. The purpose of national security is to protect American citizens, not overwhelm their rights." *Id.* at 436. As such, Defendant's argument in this regard is not compelling.

### a. Plaintiff's Count I (Overbreadth) States a Claim Upon Which Relief Can be Granted

#### i. Questions Posed as Part of a Security Clearance Investigation are Appropriately Reviewed under the Overbreadth Doctrine

Defendant first argues that Plaintiff failed to state a claim upon which relief can be granted as the "overbreadth doctrine simply does not apply to a mere question."[2] ECF No. 62-1 at 29. In arguing that the overbreadth doctrine does not apply to Defendant's investigatory processes as it "applies only if a law 'punishes' . . . or 'prohibits' speech[,]" *id.*, Defendant takes an improperly narrow view which is not supported in caselaw. Both this court and the United States Court of Appeals for the District of Columbia Circuit have both already appropriately considered the issue of whether questions posed in a security clearance investigation process can be unconstitutionally overbroad.[3] *See Greenberg I*, 789 F. Supp. 430. Nowhere in either court's analysis is there any indication that because the topic at issue was a "mere question" in a security clearance investigation process, did the overbreadth doctrine not apply. *See id.* In fact, in

---

[2] Defendant relies upon *Greenberg II* in support of its argument that the overbreadth doctrine does not apply to questions as "questions do not invade privacy, answers do[,]" ECF No. 62-1 at 29 (citing 983 F.2d at 294). However, in *Greenberg II*, the plaintiff was asserting that the questions at issue violated his right to privacy. *See* 983 F.2d at 293. *Greenberg II* is not applicable in this regard as Plaintiff is not arguing that Defendant invaded his privacy, but rather that it infringed upon his First Amendment right of association as discussed in *Greenberg I*. *See* 789 F. Supp. 430 at 435-436.

[3] While Plaintiff acknowledges that *Greenberg I* was later vacated by the Federal Appeals Court, it must be noted that the First Amendment issue regarding the organizational affiliation question was not considered as the parties had reached a settlement as to that particular question. *See Greenberg II*, 983 F.29 286 at 287. As such, the court's findings as to the First Amendment issue are still "good law." *See Action All. of Senior Citizens v. Sullivan*, 289 U.S. App. D.C. 192, 930 F.2d 77, 83 (1991) (noting that although a decision is vacated, the case remains persuasive precedent so long as the vacating court expressed no opinion on the merits of the holdings upon which one seeks to rely).

14

*Greenberg II,* the court specifically addresses that the concern underlying the overbreadth doctrine is the chilling of free speech activities. *See Greenberg II*, 983 F.2d 286, 295. Furthermore, in *Greenberg I*, the court expressly found that a question asking about a security clearance applicant's organizational affiliations was "[a]t a minimum . . . overbroad." *Greenberg I*, 789 F. Supp 430, 435. As such, it is clear that the overbreadth doctrine does apply to "mere questions."

### ii.  Defendant Does Not Allege that Plaintiff Failed to State a Claim

It should be noted that in moving to dismiss the overbreadth claim pursuant to Rule 12(b)(6), Defendant makes no argument that Plaintiff failed to state a claim upon which relief can be granted. *See* ECF No. 62-1 at 29-30. In fact, Defendant makes no reference to the Second Amended Complaint or the alleged insufficiency of any facts pled by Plaintiff at all. *Id*. Rather, Defendant appears to be making a legal argument that, on the facts before this Court, the challenged questions do not violate the First Amendment's overbreadth doctrine, an argument more appropriately made in opposition to the motion to amend the first amended complaint or at the summary judgment stage. To this end, Plaintiff will address the merits of this argument below in support of summary judgment.

### b.  Plaintiff's Count II (Vagueness) States a Claim Upon Which Relief Can be Granted
#### i.  Law of the Case Doctrine

Defendant erroneously argues that the law-of-the-case doctrine bars the claim for vagueness as this Court has already rejected the claim. ECF No. 62-1 at 27. It relies upon *Kimberlin v. Quinlan*, 199 F.3d 496, 500 (D.C. Cir. 1999) for the proposition that "[t]he law-of-the-case doctrine rests on a simple premise: the same issue presented a second time in the same case in the same court should lead to the same result." (internal quotation omitted).

Defendant additionally cites *Wye Oak Tech., Inc. v. Rep. of Ira*q, 24 F.4th 686, 697 (D.C. Cir. 2022) for the proposition that "a court involved in later phases of a lawsuit should not re-open questions decided by that court . . . in earlier phases."

Defendant argues that this Court previously considered and rejected Plaintiff's vagueness claim raised in the First Amended Complaint in its March 27, 2024, Memorandum Opinion. ECF No. 62-1 at 17. However, Defendant erroneously conflates two separate arguments: (1) those addressing the clearance revocation and (2) those addressing the constitutionality of the reinvestigation process itself. A careful read of this Court's March 27, 2024, Opinion shows that a finding was never made regarding the Plaintiff's allegations that the interview question posed to him as part of the security clearance reinvestigation process was unconstitutionally vague. *See* ECF No. 47. Rather, the Court solely addressed Mr. Gebert's answers to the questions with consideration to the security clearance revocation itself. *Id*. at 12. Specifically, this Court stated, "Finally, Gebert complains that the questions investigators asked him were overbroad, invited viewpoint discrimination, and were unduly vague in violation of the First Amendment. Right or wrong, however, that did not give Gebert a license to lie." *Id*. This later sentence and the decision to decline to consider whether the question was "right or wrong" clearly demonstrates that the Court did not make a determination as to the constitutionality of the question in the context of the processes used in the security clearance investigation as Plaintiff now asks it to do.

Furthermore, the Court made clear in its January 6, 2025, Memorandum Opinion and Order that Counts VII and VIII, those currently before the Court, "are justiciable because they do not challenge the revocation of Gebert's security clearance, but rather the process itself." ECF No. 54 at 3-4. It is illogical for Defendant to think that the Court would allow the vagueness claim to proceed if a determination had already been made.  As such, Count II of the Second

Amended Complaint states a claim upon which relief can be granted that has not been previously adjudicated by this Court.

ii. **Plaintiff's Vagueness Claims are Properly Raised Pursuant to the First Amendment**

Next, Defendant erroneously argues that the vagueness claim can only be analyzed through a due process construct, and because Plaintiff has not established a protected interest, he fails to state a claim upon which relief can be granted. ECF No. 62-1 at 17-20. This argument, however, ignores established Supreme Court caselaw. Defendant relies on *United States v. Davis*, 588 U.S. 445, 451 (2019) for the proposition that the vagueness doctrine is rooted in the construct that "[v]ague laws contravene the first essential of due process law that statutes must give people of common intelligence fair notice of what the law demands of them[.]" ECF No. 62-1 at 17-18. However, the holding in *Davis* does not contradict the ample cases analyzing vagueness under the First Amendment and *not* the Fifth Amendment.[4] Thus, because Plaintiff raises his challenge pursuant to the First Amendment, and not the Fifth Amendment, he need not establish a protected interest. *See Bd. of Regents of State Colls v. Roth*, 408 U.S. 564, 569 (1972) (noting that "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.") Consequently, Plaintiff does not fail to state a claim on this ground.

---

[4] *See, e.g., Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1048–51 (1991) (holding that attorney disciplinary rule was unconstitutionally vague as applied); *Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 576-79 (1973) (considering void-for-vagueness challenge to restriction on government employee speech, though concluding that rule was not impermissibly vague); *Cohen v. San Bernardino Valley Coll.*, 92 F.3d 968, 970 (9th Cir. 1996) (holding college sexual harassment policy was unconstitutionally vague as applied to professor with provocative teaching style); *Dambrot v. Cent. Mich. Univ.*, 55 F.3d 1177, 1183-84 (6th Cir. 1995) (finding public university's discriminatory harassment policy void for vagueness).

### iii. Defendant Does Not Allege that Plaintiff Failed to State a Claim

Again, as with the overbreadth claim, Defendant overlooks the Rule 12(b)(6) standard. Defendant does not assert that Plaintiff's complaint failed to include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed 2d 868 (2009). *See* ECF No. 62-1 at 20-28.  As with its overbreadth argument, Defendant makes no reference to the Second Amended Complaint or the alleged insufficiency of any facts pled by Plaintiff at all. *Id.* Instead, Defendant again presents a legal argument that, on the facts before this Court, the challenged questions do not violate the First Amendment's vagueness doctrine, an argument more appropriately made in opposition to the motion to amend the first amended complaint or at the summary judgment stage. To this end, Plaintiff will address the merits of this argument below in support of summary judgment.

### IV.    Summary Judgment Should be Granted in Favor of Plaintiff

Plaintiff is entitled to summary judgment if he can show there is "no genuine issue of material fact and judgment in the [Plaintiff's] favor is proper as a matter of law." *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267, 435 U.S. App. D.C. 208 (D.C. Cir. 2018) (internal quotations omitted). The Plaintiff here "bears the burden of demonstrating the 'absence of a genuine issue of material fact' in dispute, while the [Defendants] must present specific facts supported by materials in the record that would be admissible at trial and that could enable a reasonable jury to find in its favor." (internal citations and quotations omitted). *Ashbourne v. Hansberry*, Civil Action No. 17-752 (LLA), 2024 U.S. Dist. LEXIS 125651 (D.D.C. July 17, 2024). In order for a factual dispute to be "genuine," there must be more than "[t]he mere existence of a scintilla of evidence in support of" the position. *Liberty Lobby*, 477 U.S. at 252.

### a.  The Challenged Questions are Unconstitutionally Overbroad

"In a facial challenge to the overbreadth  . . . ,  a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 494, 102 S. Ct. 1186 (1982). Facial overbreadth challenges have been examined in cases where rights of association have been threatened. *See Hastings v. Judicial Conference of U.S.*, 264 U.S. App. D.C. 306, 829 F.2d 91, 105 (1987). In *Greenberg I*, the plaintiffs asserted that a question on a security clearance form asking about their "organizational affiliations" violated their rights under the First Amendment. *Id*. at 432. The question specifically asked applicants to "list 'all organizations except labor unions, political or religious organizations' to which [the applicant] had belonged since the age of sixteen." *Id*. at 435. This Court noted:

> It is well established that disclosure of organizational affiliations may infringe on the First Amendment right of association. For there is a long-recognized and vital relationship between freedom to associate and privacy in one's associations[] . . .[.] Whether the beliefs to be advanced by association be advanced be political, economic, religious, or cultural, they form an indispensable part of freedom of speech. Information of this type may be required to be revealed only if there is a "relevant correlation" or a "substantial relation" between the government interest and the information sought.

*Id*. at 435 (internal quotation marks and citations omitted).

The district court in *Greenberg I* found that "[a]t a minimum, . . . the question [wa]s overbroad[,]" and "constitutionally impermissible." *Id*. In reaching this finding, the court cited *Shelton* v. *Tucker*, 364 U.S. 479, 485-88, 5 L. Ed. 2d 231, 81 S. Ct. 247 (1960), noting that in *Shelton*, where the government required a group of teachers "to list, without number, every conceivable kind of associational tie -- social, professional, political, avocational, or religious[,]" this could have "no possible bearing upon the teacher's occupational competence or fitness." *Id*. at 435-436.

19

The *Greenberg I* court noted that "there is a wide span of organizational activity that is protected under the First Amendment but that would likely fall within the parameters of [the question at issue] or with respect to which the issue is wide open." *Id*. at 436. For example, the court noted that it was unclear whether membership with Planned Parenthood, the National Rifle Association, or the National Association for the Advancement of Colored People, citing a few of the more obvious examples, would be excluded from affiliation with a political organization. *Id*. Furthermore, it noted that it was unclear whether groups that were nominally focused on non-partisan issues, but often have political agendas, would be included. *Id*. Consequently, the court found that "the breadth and ambiguity of the question may encompass a substantial amount of constitutionally protected organizational activity, and the question at a minimum has a chilling effect on such activity." *Id*.

Perhaps most importantly, the court recognized that although the government cited "national security" as the defense to this question, "security concerns do not, under the American system or ordered liberty, ipso facto override all constitutional and privacy considerations. The purpose of national security is to protect American citizens, not overwhelm their rights." *Id*. The *Greenberg I* court determined that the analysis of the merits suggested that the questionnaire at issue was "not likely to survive challenge[,]" and it ultimately granted the plaintiffs an injunction. *Id*. at 437.

Here, there are only two facts that are material to this claim. First, that Defendant expressly asked Plaintiff about:

> (a) Whether he had any association with *any* person, group, or business venture that could be used, even unfairly, to criticize, impugn, or attack his character or qualifications for a government position (emphasis added);
>
> (b) Whether he was aware of *any* people or organizations that would criticize or oppose his employment in a government position (emphasis added); and

(c) Whether he was aware of *any* information regarding members of his family that would be a possible source of embarrassment to the United States Department of State

(emphasis added.). Second, that Plaintiff answered all questions in the negative. Neither of these facts are in dispute as both parties agree that Defendant posed those specific questions to the Plaintiff during his January 28, 2019 security clearance reinvestigation interview. ECF No. 59 at ¶¶13-14; ECF No. 62-1 at 1.

As there are no genuine issues of material fact as to this claim, Plaintiff will next demonstrate that he is entitled to judgment as a matter of law. Plaintiff's case is directly analogous to the First Amendment issue in *Greenberg I* where the court found the security clearance question at issue to be unconstitutionally overbroad. Like the court's observation in *Greenberg I*, the Department's use of the word "any" in its questions "[a]t a minimum, . . . is overbroad." *Greenberg I*, 789 F. Supp. 430, at 436 (finding that the question was overbroad where the plaintiffs were asked to list "all organizations except labor unions, political or religious organizations"). Even more compelling, unlike in *Greenberg I*, where the question at issue was limited by including exceptions for what should be omitted from the list, here there were no exclusions about what Mr. Gebert should be free to withhold. Mr. Gebert was provided with no guidance as to what information these questions might be targeting.

Like in *Greenberg I*, in posing these particular questions, "there is a wide span of organizational activity that is protected under the First Amendment but that would likely fall within the parameters of [the questions] or with respect to which the issue is wide open." *Greenberg I*, 789 F. Supp. 430, at 436. And although, it was unclear on January 28, 2019, what information the Department was targeting, it is clear that the Department was not asking these questions to inquire into Mr. Gebert's potential involvement in any terrorist groups, groups

designed to overthrow the government, or groups associated with acts of violence as these questions are covered on the Standard Form 86/Questionnaire for National Security Positions which Mr. Gebert was required to complete as part of his reinvestigation. Mr. Gebert did not disclose any such connections, and there have never been any allegations that he has been involved with such groups. Exhibit A (SF-86 at section 29).

It is also clear, based upon the Department's use of Mr. Gebert answers to revoke his security clearance, that these questions targeted information about Mr. Gebert's and his wife's "organizational affiliations," which like in the Supreme Court found in *Shelton* "could have no possible bearing upon" Mr. Gebert's ability to protect sensitive information.[5] *See Dep't of the Navy v. Egan*, 484 U.S. 518, 108 S. Ct. 818, 824, (1988) (noting that a "clearance does not equate with passing judgment upon an individual's character. Instead, it is only an attempt to predict his possible future behavior and to assess whether . . . he might compromise sensitive information.")

In *United States v. Stevens*, 559 U.S. 460, 130 S. Ct. 1577 (2010), the Supreme Court considered whether language was overbroad under the First Amendment. The Court noted that "the text [at issue] applie[d] to '*any* depiction'" and applied to "*any* magazine or video." *Id*. at 1588-1589 (emphasis added). The Court additionally noted that the language "dr[e]w no distinction" for anyone reading it between what conduct was included and what could be permissible excluded. Further, similar to the discussion in *Greenberg I* about differing opinions of various groups like Planned Parenthood or the NRA, the Court touched on the fact that "views" about the subject matter "vary widely from place to place." *Stevens*, 559 U.S. 460 at

---

[5] It should also be noted that the Department later used against Mr. Gebert that fact that he did not disclose his and his wife's (who it should be noted is not an applicant for a security clearance or even a government or contractor employee) affiliation, association, and activities with an organization/movement based solely on beliefs surrounding race and culture, which the Department found to be embarrassing and distasteful.

1589; *see Greenberg I*, 789 F. Supp. 430 at 436. And even though the language at issue provided for an exception, the Court nonetheless found the language to be "substantially overbroad, and therefore invalid under the First Amendment." *Stevens*, 559 U.S. 460 at 1590-1592.

Similarly to both *Greenberg I* and *Stevens*, the Department posed questions to Mr. Gebert using such broad language that it was unclear what information should be included or excluded. Its use of the word "any" and its failure to provide exceptions or exclusions provided no guidance as to what information Mr. Gebert was required to provide or should be free to omit. As such, these questions could be, and in fact were, used to inappropriately and unconstitutionally target information about his First Amendment protected activities, specifically his organizational affiliations, which the Department impermissibly used to attack his character and had no bearing on his ability to protect national security. As the questions posed to Mr. Gebert by the Department contained no exception and were even more overbroad than those which this Court already found to be unconstitutional in *Stevens* or *Greenberg I*, Mr. Gebert is entitled to judgment as a matter of law as to the unconstitutional overbreadth of these questions.

### i. Defendant's Vagueness Argument as to Questions 1 and 2 Effectively Proves the Overbreath of the Questions at Issue

Specifically regarding the first question, Defendant attempts to argue that the use of the word "any" made the question "broad but not fundamentally ambiguous." ECF No. 62-1 at 23. Defendant claims that the word "any, . . . made clear that [the question] elicited all associations, 'indiscriminately of whatever kind' that one might use to disparage" Mr. Gebert. *Id*. Interestingly enough, however, the basis of Defendant's argument smacks clean against all of the court's concerns regarding the word "any" in *Greenberg I* and *Stevens*. This is precisely the language and widespread request that the courts in *Greenberg I* and *Stevens* found to be problematic. *See* 789 F. Supp. 430 at 435; 559 U.S. 460 at 1588-1589. Therefore, while the

Defendant may be attempting to argue that the questions were not vague on one hand, on the other hand, Defendant is, in essence, backing itself into a corner, acknowledging the unconstitutional overbreath of the questions.

Further, regarding both questions 1 and 2, Defendant attempts to frame the questions posed by the Department as "exclud[ing] minor bases for disparagement that cannot reasonably be thought to preclude public service." ECF No. 62-1 at 23; *see id*. at 24. But again, the Court in *Greenberg I* disagrees. The court expressly found "constitutionally impermissible" a question seeking any and all affiliations even subject to certain limitations. *Greenberg I,* 789 F. Supp. 430 at 435. Furthermore, the court's concern about these types of questions was whether individuals are required to disclose their associations with potentially controversial organizations, such as the NAACP, Planned Parenthood, or the NRA. *See* 789 F. Supp. 430 at 435. As such, the court easily forecloses Defendant's argument that where a question "makes clear that it excludes any minor or trivial grievance that cannot reasonably be expected to preclude government service[,]" it is constitutionally permissible. ECF No. 62-1 at 24. As such, based on Defendant's own vagueness argument, Mr. Gebert is entitled to judgment as a matter of law as to the unconstitutional overbreadth of these questions.

### b. The Challenged Questions are Unconstitutionally Vague

As with the overbreadth claim, there are only two facts that are material to this claim: the three questions posed to Mr. Gebert by the Department and the fact that he answered them in the negative, neither of which are in dispute. ECF No. 59 at ¶¶13-14; ECF No. 62-1 at 1. As there are no genuine issues of material fact as to this claim, Plaintiff next will next demonstrate that he is entitled to judgment as a matter of law.

Vagueness is present where: (1) ordinary people do not have fair notice of the conduct to be punished, or (2) where there are no standards such that arbitrary enforcement is invited. *Johnson v. United States*, 135 S. Ct. 2551, 2556, 192 L. Ed. 2d 569 (2015). "Because of potential chilling effects, a more stringent vagueness test applies when a law interferes with the right of free speech. *Sandvig v. Sessions,* 315 F. Supp. 3d 1, 32 (D.D.C. 2018) (internal quotation marks omitted).

> When one must guess what conduct or utterance may lose him his position, one necessarily will steer far wider of the unlawful zone for the threat of sanctions may deter almost as potently as the actual application of sanctions. The danger of that chilling effect upon the exercise of vital First Amendment rights must be guarded against by sensitive tools which clearly inform [employees] what is being proscribed.

*Keyishian v. Bd. of Regents*, 385 U.S. 589, 603-04 (1967) (holding that a restriction on government employee speech was unconstitutionally vague) (internal quotation marks omitted). Further, "standards of permissible statutory vagueness are strict in the area of free expression because First Amendment freedoms need breathing space to survive," and the "government may regulate in the area only with narrow specificity." *N.A.A.C.P. v. Button*, 371 U.S. 415, 432-433 (internal quotation marks omitted).

*Grayned v. City of Rockford,* 408 U.S. 104, 92 S. Ct. 2294 (1972), elaborates on several applicable points that are key in this case:

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute abut[s] upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of [those] freedoms. Uncertain meanings

25

inevitably lead citizens to steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked.

*Grayned*, 408 U.S. at 108-109 (1972) (cleaned up).

First, Mr. Gebert was not engaging in unlawful or prohibited conduct in his organizational associations, and as the Court pointed out in *Greenberg I*, "[i]t is well established that disclosure of organizational affiliation may infringe on the First Amendment right of association." 789 F. Supp. 430, 435. Thus, the form of Defendant's questions and the resulting effect trapped a law abiding man, freely exercising his freedom of association without fair warning. Secondly, the "arbitrary and discriminatory application" is exactly what Plaintiff has alleged occurred by the Department; the interpretation, application of the questions, and underlying goal of the questions undoubtedly would change from investigator to investigator and certainly from one administration to the next depending on the political party in power.

The Department's questions, as posed to Mr. Gebert, as the court pointed out in *Greenberg I*, make it "unclear" as to what is to be included.[6] *Id*. at 436. The court expresses concern about whether those answering such questions should disclose associations with Planned Parenthood or the NRA, organizational affiliations that may certainly be frowned upon depending on the political party in power. *Id*. And the court specifically expresses concern about a lack of clarity when it comes to disclosing associations with racially oriented groups. *Id*. In *Greenberg I*, the court used the example of the NAACP. *Id*. Here, however, the only difference is the race at issue.

Finally, just as the *Grayned* court expressed concern about the impact that a vague statute has on inhibiting the exercise of First Amendment freedoms, that is precisely what occurred here.

---

[6] Although Plaintiff recognizes that the court in *Greenberg I* was specifically addressing "overbreath" in the context of the First Amendment, much of its reasoning is insightful and informative in addressing "vagueness" in the context of the First Amendment as well.

Mr. Gebert interpreted the questions posed to him to exclude the requirement to disclose his legal and First Amendment protected organizational associations, as these are not required under the SF-86, and the effect was the loss of his security clearance. Conversely, the Department interpreted the question as a requirement to disclose his First Amendment protected beliefs and associations. Thus, the Department's interpretation is, in effect, forcing Mr. Gebert, along with anyone else to whom these questions are posed, to choose between disclosing their constitutionally protected beliefs, or declining to include them, which will lead to the loss of a clearance and ultimately a job and livelihood. *See Big Mama Rag v. United States,* 203 U.S. App. D.C. 448, 631 F.2d 1030, 1035 (1980) (recognizing that, in the vagueness context, uncertain meaning may chill first amendment rights).

Citing *United States v. Kerik*, 615 F. Supp. 2d 256, 273 (S.D.N.Y. 2009), Defendant argues that as to the second question posed to Mr. Gebert by the Department, "the term 'embarrassing' is not fundamentally ambiguous per se." ECF No. 62-1 at 24. The court in *Kerik* described appropriate questions using the word "embarrassing," all of which "provide[] the answerer with clarity about the specific information sought by his examiner." *Kerik*, 615 F. Supp. 2d 256, 273. For example, the court notes that questions about an "embarrassing educational history" or "embarrassing business dealings" are not fundamentally ambiguous. *Id*.

The Department did not present Mr. Gebert with questions that gave him "clarity about the specific information sought by his examiner." *Id*. To the contrary, he was asked, with regards to members of his family, whether there was "*any* information" that could embarrass the Department. This is precisely the type of question that *Kerik* found to be "fundamentally ambiguous." *Id*. at 273-274 (finding that where the plaintiff was asked "whether there was *anything* embarrassing that he would not want the public to know about[,]" the question rose to a

level of abstraction that rendered the term "embarassing" to be fundamentally ambiguous. (emphasis added)).

Moreover, the *Kerik* court noted that in the case of the plaintiff there, given the context in which the questions were asked – the vetting process for a high-level executive position – the plaintiff and questioner "shared a mutual understanding that the questioner sought general information that might be publicly and politically damaging to the nominee or the President." *Id*. at 273. The court noted that "as a question becomes more abstract, such mutual understanding becomes more tenuous and ambiguity swells." *Id*. Not only was Mr. Gebert presented with an overly ambiguous question, as explained above, but he did not even have the luxury of that generalized mutual understanding. In his situation, the mutual understanding was limited to a very specific context – a security clearance reinvestigation based upon the questions posed in the SF-86 and conducted solely for the purpose of determining "whether, under compulsion of circumstances or for other reasons, he might compromise sensitive information." *Egan*, 484 U.S. 518 at 524. As such, given this specific context of the reinvestigation, the level of abstraction becomes quite obvious, demonstrating that this question can be nothing but fundamentally ambiguous.

On the topic of context, Defendant argues that Mr. Gebert should have construed the questions so "broadly and err[ed] on the side of disclosure." ECF No. 62-1 at 25. This argument is problematic as it appears that Defendant is confused about the issue before the Court here. The issue before the Court is not whether Mr. Gebert's answers to the question were appropriate. Instead, the issue before the Court is whether the questions posed to Mr. Gebert by the Department were unconstitutionally vague as asked, before an answer was given. Because

Plaintiff is not challenging the revocation of the clearance, but rather the interview process itself, whether Mr. Gebert's answers to the questions were correct is irrelevant at this stage.

Furthermore, in expanding upon this argument, Defendant's cited caselaw supports Plaintiff's argument that the Department overreached in asking questions outside the confines of the SF-86. For example, Defendant cites to *United States v. Delgado*, 789 F. App'x 105, 107 (9th Cir. 2020), for the finding that a "security clearance background reinvestigation question [was] not fundamentally ambiguous 'particularly when considering the context of the inquiry.'" ECF 62-1 at 25. What Defendant overlooks, however, is that the question posed in *Delgado* – "have you had 'close and/or continuing contact with a foreign national within the last seven (7) years with whom you, or your spouse, or cohabitant are bound by affection, influence, common interests, and/or obligation" – is a question presented in Section 19 of the SF-86. *Delgado*, 789 F. App'x 105 at 106; *see* Off. of Pers. Mgmt., Standard Form 86 at 60 (rev. 2016). Again, the questions presented to Mr. Gebert by the Department are not contained within the SF-86. *See* Declaration of Katie Quintana at ¶9

Finally, Defendant argues that Mr. Gebert's acknowledgments that he understands his views to be unpopular, offensive, controversial, or "beyond the pale," "undermine his contention that he subjectively found the questions to be ambiguous." ECF 62-1 at 26. Defendant further argues that Plaintiff's knowledge of his wife's associations demonstrate that he knew "there was information regarding members of his family that would be a possible source of embarrassment to the [] Department." *Id*. at 27. Defendant asserts that these acknowledgments "demonstrate that Gebert knew that his . . . associations   'could be used . . . to criticize, impugn or attack his character or qualifications for a government position' and that there were 'people or

organizations that would criticize or oppose his employment in a government position'" and that his wife's associations could be embarrassing to the Department. *Id*. at 26-27.

Again, Defendant confuses the issues that are before this court. Mr. Gebert's answers to the questions, and whether or not he should have disclosed his or his wife's associations, are not at issue because Mr. Gebert is not challenging the revocation of the clearance. Moreover, the fact that Mr. Gebert understands that his views are outside the mainstream does not alter the underlying ambiguity of the questions posed. Someone may know that his association with a particular religious group or sect is outside the mainstream or understand that his association with groups that defy traditional monogamous views are outside the mainstream. This acknowledgment, however, does not translate into an understanding that this information is what an investigator is targeting when asking about "any" groups, people, or organizations or "any information" that would be embarrassing to the Department.

Even assuming arguendo that Mr. Gebert knew he should disclose the information, this does not mean that the question posed by the Department was constitutional because as the *Greenberg I* court noted, "[i]t is well established that disclosure of organizational affiliations may infringe on the First Amendment right of association[,]" and "[i]nformation of this type may be required to be revealed only if there is a 'relevant correlation' or a 'substantial relation' between the government interest and the information sought." *Greenberg I*, 789 F. Supp. 430, 435. As explained above, that does not exist in this case.

For the foregoing reasons, the questions posed to Mr. Gebert were unconstitutionally vague, and Plaintiff is entitled to judgment as a matter law.

**CONCLUSION**

By posing the three challenged questions to Plaintiff during the security clearance reinvestigation, Defendant violated the First Amendment. Plaintiff respectfully asks that the Court: (1) deny Defendant's Motion to Dismiss in its entirety, (2) grant Plaintiff's Motion for Summary Judgment, and (3) grant any other relief that the Court deems just and proper.


Dated: May 18, 2025                    Respectfully submitted,

                                       By: */s/ Brett O'Brien*
                                       BRETT O'BRIEN, ESQ
                                       DC Bar License #: 1753983
                                       NATIONAL SECURITY LAW FIRM, LLC
                                       1250 Connecticut Avenue NW
                                       Washington, DC 20036
                                       Phone: (202) 600-4996
                                       Fax:    (202) 545-6318