UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MATTHEW GEBERT,

                Plaintiff,

        v.                                          Civil Action No. 22-2939 (DLF)

DEPARTMENT OF STATE,

                Defendant.

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS AND
OPPOSITION TO PLAINTIFF'S MOTIONS FOR TEMPORARY RESTRAINING
<u>ORDER, PRELIMINARY INJUNCTION, AND SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iv

BACKGROUND ........................................................................................... 1

LEGAL STANDARDS .................................................................................... 4

I.      Temporary Restraining Order ............................................................. 4

II.     Preliminary Injunction .................................................................... 4

ARGUMENT ............................................................................................... 5

I.      Gebert is Not Entitled to a Temporary Restraining Order or Preliminary Injunction ........ 5

        A.      Gebert Fails to Establish Likely Success on the Merits ......................... 5

                1.      Gebert's Second Amended Complaint Does Not Raise a Privacy Act Claim ...... 6

                2.      This Court Lacks Subject-Matter Jurisdiction Over Gebert's Claims ........ 8

                        a.      The CSRA Divests This Court of Jurisdiction Over Gebert's Claims ....... 8

                        b.      Gebert's Claims Do Not Fit Within the Narrow Exception to the General Rule That Security Clearance Claims Are Nonjusticiable ..................... 12

                3.      Gebert Fails to State a Claim Upon Which Relief Can Be Granted .......... 16

                        a.      Gebert Fails to State a Void for Vagueness Claim ..................... 16

                                i.      The Law of the Case Doctrine Bars the Vagueness Claim ............. 16

                                ii.     Gebert Fails to Identify a Protected Interest .................... 17

                                iii.    The Challenged Questions Are Not Void for Vagueness .. 18

                        b.      Gebert Fails to State an Overbreadth Claim ......................... 21

                                i.      The Overbreadth Doctrine Does Not Apply to a Question .......... 21

                                ii.     The Challenged Questions Are Not Overbroad ............... 22

        B.      Gebert Fails to Establish Irreparable Harm ................................. 24

        1.    Loss of a Job and Its Downstream Consequences Is Not Irreparable Harm ..................................................................................................... 24

        2.    Gebert's Asserted Harm is Self-Inflicted ................................................. 29

    C.    Gebert Fails to Show that the Equities or Public Interest Favor Relief ................ 31

II.    This Court Should Dismiss This Case ............................................................. 32

III.    Gebert is Not Entitled to Summary Judgment ................................................. 33

CONCLUSION ................................................................................................... 36

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. District of Columbia,*
   Civ. A. No. 20-1189 (RC), 2020 WL 2934820 (D.D.C. June 3, 2020) ...................................25

*Ali v. Fed. Bureau of Prisons,*
   552 U.S. 214 (2008) .......................................................................................................................19

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) .......................................................................................................................34

*Ariz. Christian Sch. Tuition Org. v. Winn,*
   563 U.S. 125 (2011) .......................................................................................................................12

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...............................................................................................................32, 35

*Bd. of Regents of State Colls. v. Roth,*
   408 U.S. 564 (1972) .......................................................................................................................17

*Bembenista v. United States,*
   866 F.2d 493 (D.C. Cir. 1989) ......................................................................................................13

*Benisek v. Lamone,*
   585 U.S. 155 (2018) .......................................................................................................................30

*Bird v. Barr,*
   Civ. A. No. 19-1581 (KBJ), 2020 WL 4219784 (D.D.C. July 23, 2020) ...................................7

*Bismullah v. Gates,*
   551 F.3d 1068 (D.C. Cir. 2009) ..............................................................................................11, 22

*Brennan v. FSD Pharma Inc.,*
   Civ. A. No. 21-3771, 2021 WL 5882115 (E.D. Pa. Dec. 13, 2021) .........................................13

*Brodie v. Dep't of Health & Hum. Servs.,*
   715 F. Supp. 2d 74 (D.D.C. 2010) ...............................................................................................28

*Brown v. Davenport,*
   596 U.S. 118 (2022) ..............................................................................................................11, 22

*Brown v. Immigr. & Naturalization Serv.,*
   775 F.2d 383 (D.C. Cir. 1985) ......................................................................................................26

**Cases (cont.)**

*Browning v. Clinton*,
   292 F.3d 235 (D.C. Cir. 2002) ............................................................................ 33

*Brumley v. Dep't of Lab.*,
   Civ. A. No. 87-2220, 1990 WL 640002 (D.D.C. Dec. 5, 1990) ................................ 7

*Bullock v. Hana Sec. Servs.*,
   Civ. A. No. 22-2608 (DLF), 2022 WL 17976507 (D.D.C. Oct. 15, 2022) .............. 29

*Campbell v. Schmidt*,
   Civ. A. No. 20-1785 (CRC), 2020 WL 6445874 (D.D.C. Nov. 3, 2020) ......... 26, 27, 28

*Canady v. Erbe Elektromedizin GmbH*,
   307 F. Supp. 2d 2 (D.D.C. 2004) ........................................................................ 35

*Cardinal Health, Inc. v. Holder*,
   846 F. Supp. 2d 203 (D.D.C. 2012) .................................................................... 31

*Cayuga Nation v. Zinke*,
   302 F. Supp. 3d 362 (D.D.C. 2018) .................................................................... 30

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .......................................................................................... 34

*Chaplaincy of Full Gospel Churches v. England*,
   454 F.3d 290 (D.C. Cir. 2006) .......................................................................... 24

*Chavarriaga v. N.J. Dep't of Corrs.*,
   806 F.3d 210 (3d Cir. 2015) .............................................................................. 33

*Chesna v. Dep't of Def.*,
   850 F. Supp. 110 (D. Conn. 1994) ..................................................................... 26

*Ciralsky v. CIA*,
   689 F. Supp. 2d 141 (D.D.C. 2010) ................................................................... 27

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ...................................................................................... 14, 15

*Colley v. James*,
   254 F. Supp. 3d 45 (D.D.C. 2017) ..................................................................... 25

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
   543 U.S. 157 (2004) .................................................................................... 11, 22

**Cases (cont.)**

*Cuomo v. Nuclear Regul. Comm'n*,
  772 F.2d 972 (D.C. Cir. 1985) ........................................................................................ 16

*Davis v. Monroe Cnty. Bd. of Educ.*,
  526 U.S. 629 (1999) ........................................................................................................ 33

*De Beers Consol. Mines v. United States*,
  325 U.S. 212 (1945) .......................................................................................................... 7

*Dep't of Educ. v. California*,
  145 S. Ct. 966 (2025) ........................................................................................................ 8

*Dep't of the Navy v. Egan*,
  484 U.S. 518 (1988) ................................................................................................. 22, 31

*Deryck v. Dep't of Def.*,
  Civ. A. No. 22-3290 (TNM), 2023 WL 3303832 (D.D.C. May 8, 2023) .......................... 25

*Document Techs., LLC v. Hess*,
  Civ. A. No. 19-3257 (RCL), 2019 WL 6910137 (D.D.C. Dec. 19, 2019) .......................... 27

*Dorfmont v. Brown*,
  913 F.2d 1399 (9th Cir. 1990) ........................................................................................ 25

*El Paso Nat. Gas Co. v. United States*,
  750 F.3d 863 (D.C. Cir. 2014) ........................................................................................ 27

*Elgin v. Dep't of Treasury*,
  567 U.S. 1 (2012) .............................................................................................................. 9

*Filebark v. Dep't of Transp.*,
  555 F.3d 1009 (D.C. Cir. 2009) ...................................................................................... 10

*Fornaro v. James*,
  416 F.3d 63 (D.C. Cir. 2005) .......................................................................................... 10

*Fort Myer Constr. Corp. v. Shrensky*,
  Civ. A. No. 23-2275 (CJN), 2024 WL 181075 (D.D.C. Jan. 17, 2024) ...................... 25, 28

*Frank R. Jelleff, Inc. v. Braden*,
  233 F.2d 671 (D.C. Cir. 1956) ........................................................................................ 27

*FTC v. EDebitPay, LLC*,
  695 F.3d 938 (9th Cir. 2012) .......................................................................................... 20

**Cases (cont.)**

*FTC v. Staples, Inc.*,
　190 F. Supp. 3d 100 (D.D.C. 2016) .................................................................31

*Gabriel v. Corr. Corp. of Am.*,
　211 F. Supp. 2d 132 (D.D.C. 2002) ..................................................................33

*Gill v. Dep't of Just.*,
　Civ. A. No. 15-0824 (RMC), 2016 WL 3982450 (D.D.C. July 22, 2016)............26

*Gilliard v. McWilliams*,
　315 F. Supp. 3d 402 (D.D.C. 2018) ..................................................................25

*Graham v. Ashcroft*,
　358 F.3d 931 (D.C. Cir. 2004) ..........................................................................10

*Grayned v. City of Rockford*,
　408 U.S. 104 (1972) ..........................................................................................21

*Grosdidier v. Broad. Bd. of Govs.*,
　560 F.3d 495 (D.C. Cir. 2009) ................................................................8, 9, 10

*Haig v. Agee*,
　453 U.S. 280 (1981) ..........................................................................................31

*Haneke v. Sec'y of Health, Ed. & Welfare*,
　535 F.2d 1291 (D.C. Cir. 1976) ........................................................................33

*Hanson v. District of Columbia*,
　120 F.4th 223 (D.C. Cir. 2024) ...................................................................30, 31

*Harrington v. Purdue Pharma L.P.*,
　603 U.S. 204 (2024) ............................................................................................3

*Harris v. Dep't of Veterans Affs.*,
　776 F.3d 907 (D.C. Cir. 2015) ..........................................................................33

*Herron v. Fannie Mae*,
　861 F.3d 160 (D.C. Cir. 2017) ..........................................................................33

*Hodge v. Talkin*,
　799 F.3d 1145 (D.C. Cir. 2015) ........................................................................18

*Holder v. Humanitarian L. Proj.*,
　561 U.S. 1 (2010) ..............................................................................................20

**Cases (cont.)**

*Holly Sugar Corp. v. Conner,*
   No. 06-5323, 2007 WL 2935624 (D.C. Cir. Oct. 4, 2007)......................................................33

*Honeywell Int'l Inc. v. EPA.,*
   374 F.3d 1363 (D.C. Cir. 2004)...........................................................................................22

*In re Application for Ord. Authorizing Installation & Use of Pen Reg. & Trap & Trace
   Device on E-Mail Acct,*
   416 F. Supp. 2d 13 (D.D.C. 2006)........................................................................................10

*Info-Hold, Inc. v. Sound Merch., Inc.,*
   538 F.3d 448 (6th Cir. 2008)...............................................................................................19

*Irwin v. Dep't of Veterans Affs.,*
   498 U.S. 89 (1990)..............................................................................................................30

*JEM Broad. Co. v. FCC,*
   22 F.3d 320 (D.C. Cir. 1994)...............................................................................................31

*Johnson v. Sullivan,*
   748 F. Supp. 2d 1 (D.D.C. 2010).....................................................................................13, 17

*Jones v. District of Columbia,*
   177 F. Supp. 3d 542 (D.D.C. 2016).......................................................................................25

*Kentron Hawaii, Ltd. v. Warner,*
   480 F.2d 1166 (D.C. Cir. 1973)............................................................................................31

*Kimberlin v. Quinlan,*
   199 F.3d 496 (D.C. Cir. 1999)..............................................................................................16

*Konah v. District of Columbia,*
   971 F. Supp. 2d 74 (D.D.C. 2013).........................................................................................34

*Lamb v. Millennium Challenge Corp.,*
   498 F. Supp. 3d 104 (D.D.C. 2020).......................................................................................26

*Law v. Siegel,*
   571 U.S. 415 (2014)..............................................................................................................3

*Lawyers Guild v. Exec. Off. Of Immigr. Rev.,*
   456 F. Supp. 3d 16 (D.D.C. 2020)..........................................................................................4

**Cases (cont.)**

*Lee v. Garland*,
120 F.4th 880 (D.C. Cir. 2024)...........................................................................11, 12, 13, 14

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992).................................................................................................33, 35

*Magassa v. Mayorkas*,
52 F.4th 1156 (9th Cir. 2022) ........................................................................................25

*Metroil, Inc. v. Exxonmobil Oil Corp.*,
672 F.3d 1108 (D.C. Cir. 2012)......................................................................................32

*Miller v. MSPB*,
Civ. A. No. 23-0015 (CJN), 2023 WL 2239354 (D.D.C. Feb. 27, 2023)...............................27

*Milner v. Dep't of Navy*,
562 U.S. 562 (2011) .......................................................................................................9

*Morrison v. Dep't of Navy*,
No. PH-0752-14-0669-I-1, 2015 WL 738110 (M.S.P.B. Feb. 23, 2015) ..............................27

*N.Y. Times Co. v. Def. Health Agency*,
Civ. A. No. 21-0566 (BAH), 2021 WL 1614817 (D.D.C. Apr. 25, 2021)................................6

*Nat'l Comm. to Pres. Soc. Sec. v. Bowen*,
735 F. Supp. 1069 (D.D.C. 1990) .....................................................................................7

*Nat'l Fair Hous. All. v. Travelers Indem. Co.*,
261 F. Supp. 3d 20 (D.D.C. 2017) ..................................................................................15

*Nat'l Family Planning & Repro. Health Ass'n v. Gonzales*,
468 F.3d 826 (D.C. Cir. 2006).......................................................................................29

*Nat'l Fed'n of Fed. Emps. v. Greenberg*,
983 F.2d 286 (D.C. Cir. 1993) ............................................................................11, 13, 22, 23

*Nat'l Fed'n of Fed. Emps. v. Greenberg*,
789 F. Supp. 430 (D.D.C. 1992) ...........................................................................20, 22, 23

*Nat'l Treasury Emps. Union v. Von Raab*,
489 U.S. 656 (1989) .....................................................................................................31

*Navy SEAL 1 v. Austin*,
600 F. Supp. 3d 1 (D.D.C. 2022) ............................................................................25, 29, 30

**Cases (cont.)**

*Newton v. Architect of the Capitol*,
  840 F. Supp. 2d 384 (D.D.C. 2012) ...................................................................34

*Nyunt v. Broad. Bd. of Gov.*,
  589 F.3d 445 (D.C. Cir. 2009) ....................................................................9, 11

*O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*,
  389 F.3d 973 (10th Cir. 2004) ......................................................................30

*Olu-Cole v. E.L. Haynes Pub. Charter Sch.*,
  930 F.3d 519 (D.C. Cir. 2019) ......................................................................24

*Open Top Sightseeing USA v. Mr. Sightseeing, LLC*,
  48 F. Supp. 3d 87 (D.D.C. 2014) ...................................................................31

*Palmieri v. United States*,
  72 F. Supp. 3d 191 (D.D.C. 2014) ................................................................26

*Price v. Socialist People's Libyan Arab Jamahiriya*,
  294 F.3d 82 (D.C. Cir. 2002) ........................................................................32

*Quigley v. Giblin*,
  569 F.3d 449 (D.C. Cir. 2009) ......................................................................19

*Rattigan v. Holder*,
  689 F.3d 764 (D.C. Cir. 2012) ......................................................................23

*Romero v. RBS Constr. Corp.*,
  Civ. A. No. 18-0179 (EGS), 2022 WL 522989 (D.D.C. Feb. 22, 2022) ...............................35

*Rtskhiladze v. Mueller*,
  110 F.4th 273 (D.C. Cir. 2024) .......................................................................7

*Saeedifar v. Blinken*,
  Civ. A. No. 22-2266 (DLF), 2022 WL 4545231 (D.D.C. Sept. 29, 2022)...............................6

*Safari Club Int'l v. Jewell*,
  47 F. Supp. 3d 29 (D.D.C. 2014) ...................................................................29

*Salt Lake Tribune Publ'g Co., LLC v. AT&T Corp.*,
  320 F.3d 1081 (10th Cir. 2003) ....................................................................29

*Sampson v. Murray*,
  415 U.S. 61 (1974) ................................................................................24, 25

**Cases (cont.)**

*Second City Music, Inc. v. City of Chi.*,
  333 F.3d 846 (7th Cir. 2003) ........................................................................29

*Shaw v. Austin*,
  539 F. Supp. 3d 169 (D.D.C. 2021) ..............................................................31

*Sickle v. Torres Advanced Enter. Sols., LLC*,
  884 F.3d 338 (D.C. Cir. 2018) ......................................................................33

*Sierra Club v. EPA*,
  292 F.3d 895 (D.C. Cir. 2002) ......................................................................26

*Singh v. Berger*,
  56 F.4th 88 (D.C. Cir. 2022) ..............................................................4, 6, 31

*Smith v. United States*,
  237 F. Supp. 3d 8 (D.D.C. 2017) ..................................................................32

*Statewide Bonding, Inc. v. Dep't of Homeland Sec.*,
  980 F.3d 109 (D.C. Cir. 2020) ......................................................................17

*Steele v. Dep't of Def.*,
  Civ. A. No. 22-3604 (CJN), 2022 WL 22329872 (D.D.C. Dec. 8, 2022).............29

*Steele v. United States*,
  Civ. A. No. 14-1523 (RCL), 2020 WL 7123100 (D.D.C. Dec. 4, 2020).................6

*Stehney v. Perry*,
  101 F.3d 925 (3d Cir. 1996) ..........................................................................25

*TiVo Inc. v. EchoStar Corp.*,
  646 F.3d 869 (Fed. Cir. 2011) ......................................................................19

*U.S. Info. Agency v. Krc*,
  905 F.2d 389 (D.C. Cir. 1990) ......................................................................25

*United States v. Campbell*,
  813 F.3d 1016 (7th Cir. 2016) ......................................................................19

*United States v. Delgado*,
  798 F. App'x 105 (9th Cir. 2020) ..................................................................21

*United States v. Facebook, Inc.*,
  Civ. A. No. 19-2184 (TJK), 2023 WL 8190858 (D.D.C. Nov. 27, 2023) ................8

**Cases (cont.)**

*United States v. Fausto*,
    484 U.S. 439 (1988) .................................................................................8, 10

*United States v. Flaharty*,
    295 F.3d 182 (2d Cir. 2002) ...............................................................19

*United States v. Hansen*,
    599 U.S. 762 (2023) ............................................................................23

*United States v. L. A. Tucker Truck Lines, Inc.*,
    344 U.S. 33 (1952) ..............................................................................12

*United States v. Lattimore*,
    127 F. Supp. 405 (D.D.C) ...................................................................18

*United States v. Nassif*,
    97 F.4th 968 (D.C. Cir. 2024) .............................................................21

*United States v. Polos*,
    723 F. App'x 64 (2d Cir. 2018) ..........................................................20

*United States v. Sampson*,
    898 F.3d 287 (2d Cir. 2018) ...............................................................21

*United States v. Stevens*,
    559 U.S. 460 (2010) .....................................................................20, 24

*Virginia v. Hicks*,
    539 U.S. 113 (2003) ...............................................................21, 22, 23

*Webster v. Fall*,
    266 U.S. 507 (1925) .....................................................................11, 22

*Weissman v. Nat'l R.R. Passenger Corp.*,
    21 F.4th 854 (D.C. Cir. 2021) .............................................................28

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ............................................................................15

*United States v. Williams*,
    553 U.S. 285 (2008) ............................................................................18

*Wye Oak Tech. v. Rep. of Iraq*,
    24 F.4th 686 (D.C. Cir. 2022) .............................................................16

**Cases (cont.)**

*Zummer v. Sallet*,
    37 F.4th 996 (5th Cir. 2022) ..................................................................................9

*Zwickler v. Koota*,
    389 U.S. 241  (1967) ..........................................................................................20

**Statutes**

5 U.S.C. § 552a(g)(1) .......................................................................................................7

5 U.S.C. § 552a(g)(4) .......................................................................................................7

5 U.S.C. § 7512 ..............................................................................................................10

5 U.S.C. § 8312 ..............................................................................................................27

5 U.S.C. § 8313 ..............................................................................................................27

5 U.S.C. § 8314 ..............................................................................................................27

5 U.S.C. § 8315 ..............................................................................................................27

11 U.S.C. § 105(a) ............................................................................................................3

42 U.S.C. § 2000e-16(a) ................................................................................................11

**Rules**

Fed. R. Civ. P. 8(b)(1)(B) ...............................................................................................35

Fed. R. Civ. P. 12(a)(4) ..................................................................................................35

Fed. R. Civ. P. 56(c)(1) .............................................................................................33, 34

Fed. R. Civ. P. 65 .............................................................................................................3

Defendant Department of State (the "Department"), by and through undersigned counsel, respectfully replies in support of its motion to dismiss Plaintiff Matthew Gebert's second amended complaint, ECF No. 62, and opposes his motions for a temporary restraining order, preliminary injunction, and summary judgment, ECF Nos. 64, 69. A proposed order is attached.

## BACKGROUND

The Department set out relevant background information in moving to dismiss Gebert's complaint, *see* Def.'s Mem. at 1-6, ECF No. 62-2, and now adds only such additional information as is relevant to Gebert's motions for a temporary restraining order and preliminary injunction.

When the Department revokes an employee's security clearance, the employee is entitled to pursue an administrative appeal of the decision before the Department's Security Appeals Panel (the "Panel"). *See* 12 Foreign Affairs Manual § 234.3(a). "The individual will have an opportunity to appear before the [Panel] in person, or virtually, if requested, although the individual's optional appearance is at the individual's discretion." *Id.* § 234.3(f). "The personal appearance will not be adversarial in nature." *Id.* "The individual may not produce or request witnesses at this appearance; any witness statements that the individual wishes to introduce must be submitted in writing and no later than two weeks before the scheduled appearance." *Id.* The employee must "specify whether [he] wishes to make a personal appearance before the [Panel]." *Id.* § 234.3(a). The Panel "will endeavor to schedule a meeting to hear the appeal promptly." *Id.* The Panel's chair "will schedule and notify the [other Panel] members of the date on which the [Panel] will begin deliberations of the individual's appeal and the time for a personal appearance." *Id.* § 234.3(d). The Department "will ensure that the individual and/or [his] representative . . . are notified of the date." *Id.*

Although Gebert requested a Panel hearing, the Department repeatedly has continued the hearing date at Gebert's request. On February 12, 2024, Gebert, through his counsel, requested a Panel hearing, but simultaneously requested that the Department continue the hearing date "due to

ongoing litigation." Ex. A, Emails at 4. In response to Gebert's request, the Department continued the hearing from February 2024 until August 27, 2024. *Id.* at 1. The Department ultimately set the hearing for February 28, 2025. Ex. B, Emails at 10. Gebert, through his counsel, requested that the Department continue the hearing until March 2025 in hope that this Court by then would have resolved his then-pending motion for leave to amend his complaint. *Id.* at 8-9. The Department advised Gebert, through his counsel, that the next available hearing date was April 25, 2025, and asked whether that date would work. *Id.* at 6-7. Gebert, through counsel, responded, "That sounds great. Thank you!" *Id.* at 6. The Department later told Gebert, through his counsel, that it would need to reschedule the hearing date to May 2, 2025. *Id.* at 5. Gebert, through his counsel, informed the Department that he would be unavailable on May 2, and asked whether the Panel was available instead on May 9. *Id.* at 4. The Department informed Gebert, through his counsel, that the next available hearing date was May 23, 2025, and asked whether this date would work. *Id.*

On March 19, 2025, Gebert, through his counsel, asked the Department whether it "wants to proceed with this case even though the courts are allowing us to litigate the constitutionality of the questions that were asked that led to the decision to revoke in the first place?" Ex. B, Emails at 3. In response, the Department said, "Please let us know if you are now requesting a further delay of the hearing beyond May 2025. If so, please specify the length of the delay you are seeking, and we will transmit your request to the [ ] Panel for consideration." *Id.* Gebert did not respond to this inquiry. *Id.* at 2-3. One week later, the Department informed Gebert, through his counsel, that the hearing was set for May 23, 2025, from 2 PM to 4 PM, and asked him to "[p]lease acknowledge this date and time." *Id.* at 2. Gebert's counsel responded: "We acknowledge the May 23rd time block. I will be present that day representing Mr. Gebert. Thank you for your assistance." *Id.* at 1.

On April 30, 2025, the Department informed Gebert and his counsel that the Panel had requested to reschedule the hearing to June 27, 2025, at 2 PM, and asked whether the two of them were available on that date at that time. Ex. C, Emails at 2. Gebert, through counsel, responded, "We can make June 27th work." *Id.* at 1. The Department responded, "We will notify the [Panel] that you have accepted the hearing date on June 27, 2025." *Id.*

Twelve days later, on May 12, 2025, and without first making any attempt to request from the Department a further continuance of the hearing date, Gebert filed an "emergency motion for preliminary injunctive relief." Pl.'s Mot. Temp. Restraining Order & Prelim. Inj. ("Pl.'s Mot.").[1] Gebert requested that this Court enjoin the Department from "[h]olding a [ ] Panel adjudicating the revocation of [his] security clearance, scheduled for June 27, 2025, until a decision is rendered in the present litigation." *Id.* Gebert further requested that this Court enjoin the Department from "[t]erminating [him] as an employee of the Department [ ] until a decision is rendered regarding the constitutionality of [the Department's] conduct in [his] security clearance reinvestigation." *Id.*[2]

That evening, counsel for the Department emailed Gebert's counsel to ask whether Gebert would be willing to withdraw his motion if the Department agreed to continue the Panel hearing pending this Court's resolution of the parties' dispositive motions. Ex. D, Emails. Gebert's counsel

---

[1]     All references to "Pl.'s Mot." are to Gebert's motion for a temporary restraining order or preliminary injunction, not to his motion for summary judgment. The motion itself does not on its face seek a temporary restraining order, ECF No. 64, but the memorandum in support, which the motion incorporates, *id.*, purports to seek a preliminary injunction, *see generally* ECF No. 64-1.

[2]     Gebert purported to file his motion under Federal Rule of Civil Procedure 65 and 11 U.S.C. § 105(a), the latter of which governs the authority of bankruptcy courts, and thus appears to lack applicability here. *See* Pl.'s Mem. at 1; *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 216 n.2 (2024) ("That provision allows a bankruptcy court to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of' the bankruptcy code." (quoting 11 U.S.C. § 605(a))); *Law v. Siegel*, 571 U.S. 415, 420 (2014) (11 U.S.C. § 105(a) endows "[a] bankruptcy court [with the] statutory authority to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of' the Bankruptcy Code." (quoting 11 U.S.C. § 105(a))).

declined this offer, stating that Gebert would proceed with his motion regardless. *Id.* Two days later, counsel for the Department reiterated the offer to continue the Panel hearing pending this case's resolution. Ex. E, Emails at 4. Gebert, though counsel, once again declined this offer. *Id.* at 1. This Court consolidated briefing on the Department's motion to dismiss and Gebert's motions for emergency relief and summary judgment, and scheduled a motions hearing for June 3, 2025. Min. Order (May 16, 2025). On May 18, Gebert moved for summary judgment. ECF No. 69.

## LEGAL STANDARDS

The Department set out the legal standards governing dismissal for lack of subject-matter jurisdiction and for failure to state a claim in moving to dismiss. *See* Def.'s Mem. at 6-7.

### I.    Temporary Restraining Order

"A temporary restraining order is an extraordinary remedy, one that should be granted only when the moving party, by a clear showing, carries the burden of persuasion." *Nat'l Lawyers Guild v. Exec. Off. Of Immigr. Rev.*, 456 F. Supp. 3d 16, 25 (D.D.C. 2020) (cleaned up). To obtain such an order, a plaintiff must show (1) "that it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that the proposed relief is in the public interest." *Id.*

### II.    Preliminary Injunction

The standard to obtain a preliminary injunction is virtually identical to the standard to obtain a temporary restraining order. "A preliminary injunction is an extraordinary remedy that requires a moving party to make a clear showing that (1) it has a likelihood of success on the merits, (2) the balance of equities favors preliminary relief, (3) an injunction is in the public interest, and (4) it will likely suffer irreparable harm before the district court can resolve the merits of the case." *Singh v. Berger*, 56 F.4th 88, 95 (D.C. Cir. 2022) (quotation marks omitted).

## ARGUMENT

Gebert is not entitled to either a temporary restraining order or a preliminary injunction, as he satisfies none of the conditions to obtain such emergency relief. His claims warrant dismissal for both lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. And he is not entitled to summary judgment for the same reasons that dismissal is proper, as well as for an additional reason: he adduces no evidence that supports either of his claims.

## I.    <u>Gebert is Not Entitled to a Temporary Restraining Order or Preliminary Injunction</u>

Gebert satisfies none of the four conditions to obtain either a temporary restraining order or preliminary injunction. He fails to establish that he is likely to succeed on the merits because he did not raise in his second amended complaint the Privacy Act claim that he now presses in seeking emergency relief; this Court lacks subject-matter jurisdiction over the claims that he did plead; and he fails to state a claim upon which relief can be granted. Gebert fails to show that he is likely to experience irreparable injury because the loss of his job is not irreparable injury as a matter of law, and regardless, is a self-inflicted injury given his affirmative consent to the Panel hearing date and failure to avail himself of the Department's repeated offers to continue the hearing date. And the balance of equities and public interest both disfavor the relief Gebert seeks, given the Department's strong interest in completing the administrative process of Gebert's security clearance adjudication and Gebert's comparatively modest countervailing interests in delaying that process even further.

### A.    **Gebert Fails to Establish Likely Success on the Merits**

The only claims that remain at issue are Gebert's claims that three questions posed to him during his reinvestigation interview were vague and overbroad. *See* 2d Am. Compl., ECF No. 59; Mem. Op. & Order. While Gebert now seeks emergency relief based on certain Privacy Act claims, he did not raise such claims in his pleadings, so they cannot support emergency relief. This Court lacks jurisdiction over the two claims he did raise, and regardless, he fails to state either claim.

1.    <u>Gebert's Second Amended Complaint Does Not Raise a Privacy Act Claim</u>

Gebert's first argument for emergency relief—that the Department lacked authority to ask him the challenged questions, which appears to sound in the Privacy Act, *see* Pl.'s Mot. at 18-20— fails for a simple reason: he raised no such claim in his pleadings. His operative pleadings raise two, and just two, claims: a void for vagueness claim and an overbreadth claim. *See* 2d Am. Compl. ¶¶ 82-100. He does not raise a claim that the Department lacked authority to ask him the challenged questions, in violation of the Privacy Act (or any other statute). *See generally id.* This was no mere oversight—Gebert had in fact moved for leave to amend his complaint to raise those claims. *See* Mot. Leave at 3-5, ECF No. 48; Proposed 2d Am. Compl. ¶¶ 229-55, ECF No. 49. But this Court denied him leave to file these claims. *See* Mem. Op. & Order at 9-10, ECF No. 54. Accordingly, Gebert did not plead any claims challenging the Department's authority to ask him the challenged questions, in violation of the Privacy Act (or any other statute). *See generally* 2d Am. Compl.

A plaintiff cannot obtain a temporary restraining order or preliminary injunction as to a claim that he did not raise in his pleadings. *See Saeedifar v. Blinken*, Civ. A. No. 22-2266 (DLF), 2022 WL 4545231, at *1 (D.D.C. Sept. 29, 2022) (plaintiffs "did not raise [a certain] claim in their complaints," and thus "have failed to show a likelihood of success on the merits" of that claim); *N.Y. Times Co. v. Def. Health Agency*, Civ. A. No. 21-0566 (BAH), 2021 WL 1614817, at *4 n.6 (D.D.C. Apr. 25, 2021) (plaintiff's claim was "not raised in the Complaint and thus may not be the subject of preliminary injunctive relief since plaintiff can show no likelihood of success on a claim that is not even asserted"); *Steele v. United States*, Civ. A. No. 14-1523 (RCL), 2020 WL 7123100, at *7 (D.D.C. Dec. 4, 2020) ("But because the Court will deny plaintiffs' request to add allegations challenging [a certain action] to a second amended complaint, plaintiffs' preliminary injunction motion seeks to preliminarily enjoin a practice that is not challenged in the operative complaint. Accordingly, the Court must deny plaintiffs' preliminary injunction motion because it cannot grant

preliminary relief on claims not pleaded in the complaint. . . . if a preliminary injunction motion seeks temporary relief on claims not pleaded in the complaint, the court will have no occasion to finally adjudicate those claims on the merits." (cleaned up)); *Bird v. Barr*, Civ. A. No. 19-1581 (KBJ), 2020 WL 4219784, at \*2 (D.D.C. July 23, 2020) ("this Court only possesses the power to afford preliminary injunctive relief that is related to the claims at issue in the litigation, and to get such extraordinary relief, a plaintiff has to . . . demonstrat[e] that they are likely to succeed on the merits of the underlying legal claims"); *see also De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) ("A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally," and thus cannot address a claim that "in no circumstances can be dealt with in any final injunction that may be entered"). By seeking relief on claims he did not plead in his complaint, Gebert's motion is "premised on a fundamental misunderstanding of how preliminary injunctions function." *Bird*, 2020 WL 4219784, at \*2.[3]

---

[3]     Even setting this fatal defect aside, Gebert's Privacy Act arguments also would fail for two additional reasons. First, the Privacy Act allows courts to grant injunctive relief only to remedy an agency's failure to either amend or release an individual's records at his request, not to remedy the specific types of harms Gebert asserts. *See* 5 U.S.C. § 552a(g)(1)-(4); *Nat'l Comm. to Pres. Soc. Sec. v. Bowen*, 735 F. Supp. 1069, 1078 n.13 (D.D.C. 1990) ("The Privacy Act . . . authorizes the court to issue injunctions in only two instances: to amend an individual's record and to order an agency to produce agency records that were improperly withheld from an individual."); *Brumley v. Dep't of Lab.*, Civ. A. No. 87-2220, 1990 WL 640002, at \*1 (D.D.C. Dec. 5, 1990) (same).

Second, to obtain relief, Gebert must show that any violation "was intentional or willful," 5 U.S.C. § 552a(g)(4), which means that "[t]he conduct must be so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful," *Rtskhiladze v. Mueller*, 110 F.4th 273, 278-79 (D.C. Cir. 2024). That is a high bar, one that this Court already concluded Gebert fails to clear. In denying Gebert leave to amend his complaint to raise Privacy Act claims, the Court concluded that "Gebert has not provided any facts sufficient to support [an] inference" that any ostensible Privacy Act violation was intentional or willful. *See* Mem. Op. & Order at 9. The Court's conclusion on this issue is law of the case, *see supra* Def.'s Mem. at 17 (law of the case doctrine), and even setting this aside, Gebert offers no basis for the Court to reach a different conclusion now.

Last, it is worth noting that Gebert's Privacy Act arguments are replete with unsupported, dubious, and incorrect legal and factual assertions. To provide just a single example, Gebert cites paragraphs (F)(h)-(i) of *Security Executive Agent Directive 1* ("*SEAD 1*") for the assertion that the

2.    <u>This Court Lacks Subject-Matter Jurisdiction Over Gebert's Claims</u>

The Civil Service Reform Act of 1978 ("CSRA") divests this Court of jurisdiction over Gebert's claims, which arise from his employment and raise employment or personnel complaints. Further, decisions relating to security clearances are nonjusticiable as a general rule, and Gebert's claims do not fit within the narrow exception to this rule. For both these reasons, this Court lacks subject-matter jurisdiction over his claims. And for that reason alone, it can deny Gebert's motion for emergency relief without addressing any other issue. *See United States v. Facebook, Inc.*, Civ. A. No. 19-2184 (TJK), 2023 WL 8190858, at *7 (D.D.C. Nov. 27, 2023) ("where a preliminary injunction motion seeks temporary relief . . . on claims outside the jurisdiction [of] the Court . . . the court will have no occasion to finally adjudicate those claims on the merits" (quotation marks omitted)); *see also Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (staying a temporary restraining order, which the Court construed as a preliminary injunction, because "the Government [was] likely to succeed in showing the District Court lacked jurisdiction" over the claim at issue).

a.    *The CSRA Divests This Court of Jurisdiction Over Gebert's Claims*

In moving to dismiss, the Department explained that the CSRA, which "established a comprehensive system for reviewing personnel action taken against federal employees," *United States v. Fausto*, 484 U.S. 439, 455 (1988), divests this Court of jurisdiction over Gebert's claims. As the Department explained, the CSRA's review scheme is both "comprehensive and exclusive." *Grosdidier v. Broad. Bd. of Govs.*, 560 F.3d 495, 497 (D.C. Cir. 2009). It is "comprehensive" in

---

Department needed to "request and receive the authority to ask about and collect information about [his] First Amendment protected activity." Pl.'s Mot. at 18. That document says nothing remotely like that at all. *See SEAD 1* ¶¶ (F)(h)-(i), https://www.dni.gov/files/NCSC/documents/Regulations /SEAD_1.pdf. Thus, this Court should approach the factual and legal assertions that Gebert makes in setting out this argument, his description of the security clearance adjudication process, and his motion more generally with a healthy dose of skepticism and not assume them to be accurate.

that "[i]t "regulates virtually every aspect of federal employment and prescribes in great detail the protections and remedies applicable to adverse personnel actions, including the availability of administrative and judicial review." *Nyunt v. Broad. Bd. of Gov.*, 589 F.3d 445, 448 (D.C. Cir. 2009) (cleaned up). It is "exclusive," meanwhile, in that "[i]t constitutes *the* remedial regime for federal employment and personnel complaints." *Id.* Accordingly, with only limited exceptions that are not relevant here, "the CSRA review scheme . . . preclude[s] district court jurisdiction over [federal personnel] claims." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 23 (2012).

Gebert challenges three questions posed to him as part of a background investigation for a security clearance that his job requires him to maintain as a condition of employment. *See* 2d Am. Compl. ¶¶ 11-12. Accordingly, Gebert's claims arise out of his "federal employment" and raise "federal employment and personnel complaints." *Nyunt*, 589 F.3d at 448; *see also Milner v. Dep't of Navy*, 562 U.S. 562, 569 (2011) ("When used as an adjective," the term "personnel" "refers to human resources matters. 'Personnel,' in this common parlance, means 'the selection, placement, and training of employees and . . . the formulation of policies, procedures, and relations with [or involving] employees or their representatives.'" (alterations in original, quoting *Webster's Third New International Dictionary* ("*Webster's Third*") 1687 (1966))). The CSRA thus divests this Court of jurisdiction over his claims. *See Nyunt*, 589 F.3d at 448; *Grosdidier*, 560 F.3d at 497.

*Zummer v. Sallet*, 37 F.4th 996 (5th Cir. 2022), is instructive. There, the Fifth Circuit held that the CSRA divested the district court of jurisdiction over a former federal employee's challenge to the revocation of his security clearance even though the CSRA provides no remedy for a security clearance revocation. *Id.* at 1008. While Gebert frames his claims as challenging the process by which the Department collected information that it used in revoking his clearance, rather than to

the revocation itself, *Zummer*'s reasoning still applies here: the CSRA divests this Court of subject-matter jurisdiction even though it provides no relief for the specific claims that Gebert raises.

Gebert's response—that the challenged questions are not covered actions under the CSRA, *see* 5 U.S.C. § 7512—misses the point. As the Department has explained, and Gebert ignores, the CSRA's review scheme is exclusive even if "the CSRA provides no relief," and indeed "precludes other avenues of relief." *Graham v. Ashcroft*, 358 F.3d 931, 935 (D.C. Cir. 2004). In other words, "the CSRA is the exclusive avenue for suit even if the plaintiff cannot prevail in a claim under the CSRA." *Grosdidier*, 560 F.3d at 497. "Congress designed the CSRA's remedial scheme with care, 'intentionally providing—and intentionally not providing—particular forums and procedures for particular kinds of claims.'" *Id.* (quoting *Filebark v. Dep't of Transp.*, 555 F.3d 1009, 1010 (D.C. Cir. 2009)); *see also Fausto*, 484 U.S. at 448-49 ("the absence of provision for these employees to obtain judicial review is not an uninformative consequence of the limited scope of the statute, but rather manifestation of a considered congressional judgment that they should not have statutory entitlement to review for adverse action of [this] type"). Accordingly, the fact that the CSRA offers no relief for, and indeed does not expressly acknowledge, the kind of claims that Gebert raises here does not alter the conclusion that it divests this Court of jurisdiction. Simply put, "what you get under the CSRA is what you get." *Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005).

Gebert's efforts to draw a distinction between a personnel "action," which he concedes fall within the scope of the CSRA's exclusive review scheme, and the information-gathering "process" that he insists he is challenging here, is incoherent. The information-gathering "process" consists of various discrete "actions," including, here, asking Gebert the challenged questions. *See* 2d Am. Compl. ¶¶ 11-12; *In re Application for Ord. Authorizing Installation & Use of Pen Reg. & Trap & Trace Device on E-Mail Acct,*, 416 F. Supp. 2d 13, 16 (D.D.C. 2006) ("The term 'process' is

generally understood to mean 'a series of actions or operations conducing to an end.'" (quoting *Merriam-Webster's Collegiate Dictionary* 929 (10th ed.1999))); *Webster's Third* 1808 (1981) (a "process" is "an artificial or voluntary progressively continuing operation that consists of a series of controlled actions or movements systematically directed toward a particular result or end").

Gebert's reliance on *Lee v. Garland*, 120 F.4th 880, 887 (D.C. Cir. 2024), is misplaced. There, the D.C. Circuit concluded that "it is unclear whether a failing grade on [a polygraph exam], disconnected from any change in the terms and conditions of [an employee's] federal employment, would constitute an adverse 'personnel action' covered by Title VII." The issue here, however, is not whether the challenged questions are "personnel action[s]" within Title VII's meaning, *see* 42 U.S.C. § 2000e-16(a), but rather, whether the challenged questions arise out of Gebert's "federal employment" and raise "federal employment and personnel complaints," and thus fall within the scope of the CSRA's exclusive review scheme whether or not that scheme furnishes him a remedy, *Nyunt*, 589 F.3d at 448. Whether or not Gebert could challenge the questions at issue under Title VII, they fall within the CSRA's exclusive review scheme, thus divesting this Court of jurisdiction.

It is irrelevant that, as Gebert emphasizes, the D.C. Circuit considered claims similar to his in *National Federation of Federal Employees v. Greenberg*, 983 F.2d 286, 290 (D.C. Cir. 1993), without holding that the CSRA divested the district court of jurisdiction. *Greenberg* simply did not address the issue of whether the CSRA precluded jurisdiction, and thus cannot be taken to have established precedent on this issue either way. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925)); *see also Brown v. Davenport*, 596 U.S. 118, 141 (2022) ("respect for past judgments also means respecting their limits."); *Bismullah*

*v. Gates*, 551 F.3d 1068, 1071 (D.C. Cir. 2009) ("The question . . . was not presented, granted, or briefed and the Court had no occasion to decide it"). That is especially so here given that the issue of CSRA preclusion is jurisdictional in nature. *See Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011) ("When a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed."); *United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) ("this Court is not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed sub silentio").

> b.    *Gebert's Claims Do Not Fit Within the Narrow Exception to the General Rule That Security Clearance Claims Are Nonjusticiable*

In moving to dismiss, the Department explained that Gebert's claims do not fall within *Greenberg*'s narrow exception the *Egan* bar. To the extent Gebert "seeks reinstatement, backpay, and compensatory damages," such relief "flow[s] inexorably from the revocation decision," and thus collides with the *Egan* bar. *Lee*, 120 F.4th at 894. And to the extent that he seeks an injunction prohibiting the Department from "ask[ing] those questions in future clearance adjudications," *id.* at 892, he lacks standing because he fails to show a greater than speculative possibility that the Department ever will subject him to the questions again. None of his counterarguments have merit.

First, Gebert argues that *Lee* did not really hold that the *Egan* bar precludes "reinstatement, backpay, and compensatory damages," characterizing this as "much too narrow an interpretation," Pl.'s Resp. at 9, ECF No. 68, but that is exactly what *Lee* held. *Lee*, 120 F.4th at 894, speaks for itself: a plaintiff sought "reinstatement, backpay, and compensatory damages from his termination —a decision that all agree[d] flowed inexorably from the revocation decision." But "[b]ecause [his] claims squarely target the revocation decision itself, they [were] textually committed to the Executive Branch." *Id.* Here too, any "reinstatement, backpay, and compensatory damages" would "flow[ ] inexorably from the revocation decision," and thus cannot overcome the *Egan* bar. *Id.*

Gebert tries to get around *Lee* with wordplay, insisting that "the requested relief flows not from the revocation itself, but from the processes, which [he] alleges to be unconstitutional, the Department utilized to gather evidence and information." Pl.'s Resp. at 9. He cannot circumvent *Lee*, 120 F.4th at 894, so easily—it squarely held that the relief he seeks "flow[s] inexorably from the revocation decision." Gebert uses a different label to avoid the *Egan* bar, but his insistence that the information-gathering process, not "the revocation itself," *id.*, caused his harm is inconsistent with *Lee* and wholly conclusory—just the sort of "labels and conclusions" that do not "sufficiently allege[ ] subject matter jurisdiction." *Johnson v. Sullivan*, 748 F. Supp. 2d 1, 8 (D.D.C. 2010). Simply put, "federal court jurisdiction [cannot] be manipulated by artful pleading," *Bembenista v. United States*, 866 F.2d 493, 497 (D.C. Cir. 1989) (quotation marks omitted), and Gebert cannot rely on such "artful pleading [to] undermine controlling precedent from appellate courts," *Brennan v. FSD Pharma Inc.*, Civ. A. No. 21-3771, 2021 WL 5882115, at *4 (E.D. Pa. Dec. 13, 2021).

Nor does Gebert establish a greater than speculative chance that the Department ever will ask him the challenged questions again, as needed to obtain an injunction barring it from "ask[ing] those questions in future clearance adjudications." *Lee* 120 F.4th at 892. Gebert's assertion that "he will be questioned regarding his responses to the three questions at issue in this litigation" during the Panel hearing, Pl.'s Mot. at 16, reflects a profound misunderstanding of the relevant issue and only confirms that the *Egan* bar precludes his remaining claims. Under *Greenberg*'s narrow exception to the *Egan* bar, a plaintiff can move for "prospective relief barring the use of the [challenged] questions" during future investigations for security clearances, *Lee*, 120 F.4th at 892-93 (citing *Greenberg*, 983 F.3d at 287-88), but cannot enjoin "the revocation decision itself" or "harms from the revocation decision itself," *id.* at 894. This rule creates a clear dichotomy: a plaintiff can sue to block an agency from asking him the challenged questions again in the future,

but cannot sue to block the agency from using the information it already elicited from him via those questions to revoke his security clearance. The Department is not going to ask Gebert the challenged questions again during the Panel hearing. That would be pointless. Instead, it may ask Gebert about the answers that he gave to the challenged questions during his reinvestigation interview back in 2019. *See* Pl.'s Mot. at 16 ("he will be questioned regarding his responses to the three questions at issue"). It then will make a decision, based on Gebert's answers to the questions in 2019, any information he provides during the Panel hearing, and the entire record, about whether to sustain or overturn "the revocation decision" that it has made with regard to Gebert's clearance. *Lee*, 120 F.4th at 894. That is *exactly* what the *Egan* bar precludes a plaintiff from challenging. *Id.*

Indeed, Gebert's own description of the harm that he faces only confirms that the *Egan* bar precludes his claims. Gebert warns that if this Court does not grant him the emergency relief that he seeks, he "will lose his livelihood and the means to support his family" and faces "permanent loss of his job and career." Pl.'s Mot. at 35. He further warns that he "will lose his potential for earning a high income and his ability to take care of his family," "will lose his health insurance," "will lose his pension," faces "loss of his reputation," and "will lose any other fringe-benefits." *Id.* But every single one of these asserted harms "flow[s] inexorably from the revocation decision." *Lee*, 120 F.4th at 894. For that reason, the *Egan* bar precludes any claim based on these harms. *Id.*

In a last-ditch attempt, Gebert quotes *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 109 (1983), *see* Pl.'s Mot. at 16-17, but *Lyons* undermines, not supports, his standing argument. Gebert asserts "that he . . . 'is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct," Pl.'s Mot. at 16-17 (quoting *Lyons*, 461 U.S. at 102), but the injury that he is in danger of sustaining is due to the Department's past action, not a future action. Gebert faces the prospect that the Department will sustain the revocation of his security clearance based

14

on the answers he gave to the challenged questions back in 2019, not that the Department will ask him the questions again. Under *Lyons*, this is not enough. A plaintiff cannot obtain an injunction based on a future consequence of a past wrong—he must show "that he is realistically threatened by a repetition of his experience." *Lyons*, 461 U.S. at 109; *accord id.* at 106 n.7, 111 (to obtain injunction, a plaintiff "would have to credibly allege that he faced a realistic threat from the future application of the" challenged action," i.e., "that he will again be wronged in a similar way").

Even were Gebert certain to suffer new harm in the future based on information elicited from him through the challenged questions in 2019, that still would be insufficient to obtain an injunction absent a realistic threat that the Department will ask him the questions in the future. While he insists that he indeed is "realistically threatened by a repetition of his experience," Pl.'s Mot. at 16-17 (quoting *Lyons*, 461 U.S. at 109), he is referring here to the idea that the Panel may ask him about the answers that he gave to the challenged questions in 2019, which, as explained, is not the same as asking him the questions again, and thus is insufficient to obtain an injunction.

Finally, Gebert's argument that the Department will ask him the challenged questions again "if he is successful in obtaining a declaration that [it] violated" his rights, "entitling him to a new investigation," Pl.'s Resp. at 11, only illustrates that any risk of future harm is fatally speculative. Gebert's "argument puts the cart before the horse: [Gebert's] standing does not depend on whether [he] prevails on the merits." *Nat'l Fair Hous. All. v. Travelers Indem. Co.*, 261 F. Supp. 3d 20, 27 (D.D.C. 2017). "Rather, at the motion to dismiss stage, the Court accepts the plaintiff's allegations as true," *id.*, and asks whether the allegations suffice to establish "that he is realistically threatened by a repetition of" the challenged action "in the reasonably near future," *Lyons*, 461 U.S. at 109; *see also Whitmore v. Arkansas*, 495 U.S. 149, 159-60 (1990) ("It is just not possible for a litigant to prove in advance that the judicial system will lead to any particular result in his case," so an

"asserted future injury" that is contingent on the plaintiff prevailing is not "real and immediate" enough to establish standing); *cf. Cuomo v. Nuclear Regul. Comm'n*, 772 F.2d 972, 976 (D.C. Cir. 1985) ("the outcome of litigation . . . is particularly speculative"). Any argument that Gebert will suffer future harm that depends on this Court granting the relief he seeks thus is unduly speculative.

3.    Gebert Fails to State a Claim Upon Which Relief Can Be Granted

Even if jurisdiction exists, Gebert fails to state a void for vagueness or overbreadth claim.

*a.    Gebert Fails to State a Void for Vagueness Claim*

Gebert fails to state a void for vagueness claim for three reasons: (1) the law of the case doctrine bars his claim, (2) he lacks a protected interest, and (3) the three questions are not vague.

i.    The Law of the Case Doctrine Bars the Vagueness Claim

In moving to dismiss, the Department explained that the law of the case doctrine precludes Gebert's void for vagueness claim. Gebert raised a void for vagueness claim in his first amended complaint. *See* 1st Am. Compl. ¶¶ 249-57. This Court dismissed his void for vagueness claim, explaining that "any person of ordinary intelligence would know that Gebert's associations with white nationalists" required him to answer the challenged questions in the affirmative, such that "[b]y answering 'no' when candor required him to answer 'yes,' Gebert did not run afoul of an unlawfully vague or even particularly confusing Departmental rule." Mem. Op. at 15-16, ECF No. 47. The void for vagueness claim in his second amended complaint is substantively identical, and indeed phrased near-identically, to the vagueness claim in his first amended complaint. *Compare* 1st Am. Compl. ¶¶ 89-100 *with* 2d Am. Compl. ¶¶ 89-100. The law of the case doctrine thus bars relitigating the conclusion that the questions are not vague. *See Wye Oak Tech. v. Rep. of Iraq*, 24 F.4th 686, 697 (D.C. Cir. 2022); *Kimberlin v. Quinlan*, 199 F.3d 496, 500 (D.C. Cir. 1999).

Gebert's primary answer to this point is to emphasize a separate part of this Court's opinion that did not address his void for vagueness claim, while ignoring the portion of this Court's opinion

that did resolve this claim. Gebert cites the following sentences from this Court's opinion: "Finally, Gebert complains that the questions investigators asked him were overbroad, invited viewpoint discrimination, and were unduly vague in violation of the First Amendment. Right or wrong, however, that did not give Gebert a license to lie." Mem. Op. at 12. But although this portion of the opinion may not have resolved Gebert's void for vagueness claim, a separate part of the opinion did: "By answering 'no' when candor required him to answer 'yes,' Gebert did not run afoul of an unlawfully vague or even particularly confusing Departmental rule." *Id.* at 16. This portion of the opinion squarely held that the challenged questions were not vague. Tellingly, Gebert ignores it.

The fact that this Court allowed Gebert to amend his complaint to raise a vagueness claim does not alter this conclusion. According to Gebert, "[i]t is illogical . . . to think that the Court would allow the vagueness claim to proceed if a determination had already been made." Pl.'s Mem. at 26. But when the Department opposed Gebert's motion for leave to amend his pleadings, it did not address his proposed void for vagueness claim, *see* Def.'s Opp'n Mot. Leave Amend., ECF No. 51, and thus, as this Court put it, "offer[ed] no other basis for the Court to find that amendment would be futile," Mem. Op. & Order at 5-6 (Jan. 6, 2025). That does not change the fact that this Court held the challenged questions to be not "unlawfully vague." Mem. Op. at 16 (Mar. 27, 2024).

ii.    Gebert Fails to Identify a Protected Interest

In moving to dismiss, the Department explained that Gebert's void for vagueness claim fails because he lacks a protected interest under the Due Process Clause. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the [Due Process Clause's] protection of liberty and property." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). As such, a threshold element of a due process claim is that the plaintiff was "deprived of a protected interest." *Statewide Bonding, Inc. v. Dep't of Homeland Sec.*, 980 F.3d 109, 118 (D.C. Cir. 2020). Because Gebert lacks a protected interest, his void for vagueness claim fails.

17

In his response, Gebert does not even dispute that he lacks a protected interest. He argues only that "he need not establish a protected interest" because his void for vagueness claim sounds in the First Amendment, rather than the Due Process Clause. Pl.'s Resp. at 17. The Supreme Court and D.C. Circuit squarely held otherwise: "Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment." *United States v. Williams*, 553 U.S. 285, 304 (2008); *Hodge v. Talkin*, 799 F.3d 1145, 1171 (D.C. Cir. 2015). Gebert responds by cases that analyzed vagueness claims under the First Amendment rather than the Due Process Clause, but tellingly, every single case he cites predates *Williams*. *See* Pl.'s Mot. at 27 & n.4 (citing cases from 1972 through 1996). To the extent that there once was disagreement about whether void for vagueness claims sound in the Due Process Clause or First Amendment, *Williams* settled that dispute conclusively in favor of the Due Process Clause, which requires a protected interest.

That is fatal to Gebert's void for vagueness claim. A void for vagueness claim arises only under the Due Process Clause, not the First Amendment. A due process claim requires a protected interest. Gebert lacks a protected interest. Accordingly, Gebert's void for vagueness claim fails.

        iii.    The Challenged Questions Are Not Void for Vagueness

In moving to dismiss, the Department explained that none of the challenged questions were "unlawfully vague or even particularly confusing." Mem. Op. at 16 (Mar. 27, 2024). Each question is semantically cabined with limiting and qualifying phrases, so persons "of ordinary intellect could agree" on its "meaning." *United States v. Lattimore*, 127 F. Supp. 405, 410 (D.D.C), *aff'd*, 232 F.2d 334 (D.C. Cir. 1955). Further, the context of a background reinvestigation for a security clearance reinvestigation gave Gebert notice that he should construe the questions broadly and to elicit information seen as stigmatizing or embarrassing, which a bad actor could use to coerce or blackmail one into revealing classified information—even if Gebert asserts that he personally does not find his white nationalist activities or associations embarrassing and so could never be coerced

or blackmailed on this basis—and err on the side of disclosure. Last, his acknowledgment that he knows that his white nationalist activities and associations are controversial, unpopular, and seen as offensive undercuts his claim that he subjectively thought the challenged questions were vague.

Further undermining Gebert's void for vagueness claim fails is his failure to allege that he ever sought clarification of the questions. If he truly felt that the questions were vague, he could have asked for clarification, yet he does not allege that he did so. That alone defeats his vagueness claim. *See Quigley v. Giblin*, 569 F.3d 449, 458 (D.C. Cir. 2009) (plaintiff's "vagueness challenge fails" because "in a close case," the plaintiff "may seek clarification" on what term means); *United States v. Campbell*, 813 F.3d 1016, 1018 (7th Cir. 2016) (rejecting vagueness argument because party had "opportunities to seek clarification"); *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 886 (Fed. Cir. 2011) (if "the injunction were in fact facially vague and susceptible of two alternative readings, the burden was clearly on [a party] to seek clarification . . . from the district court"); a *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 457 (6th Cir. 2008) ("a party who reasonably perceives a discovery request from the opposing party as too broad or too vague to comply with may object to the request and seek clarification from the opposing party and the district court"); *United States v. Flaharty*, 295 F.3d 182, 200 (2d Cir. 2002) (rejecting argument that admission of testimony concerning an unspecified "them" was prejudicial where party "sought no clarification of that reference"). Gebert's failure to seek clarification further undermines his vagueness claim.

Gebert's responses are meritless. He stresses that each question used the word "any," but as the Department explained, they also contained numerous semantic qualifiers that limited their reach. Regardless, the term "any" is not vague—indeed, its breadth makes the questions less vague, not more. *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) ("Read naturally, the word 'any' has an expansive meaning, that is, one or some indiscriminately of whatever kind." (cleaned

up)); *United States v. Polos*, 723 F. App'x 64, 65-66 (2d Cir. 2018) ("The broad language of the question is not fundamentally ambiguous; it is instead designed to capture all [ ] activities in an applicant's recent history" and "is similarly not imprecise—let alone 'fundamentally ambiguous' —simply because it is expansive in its meaning."); *FTC v. EDebitPay, LLC*, 695 F.3d 938, 944 (9th Cir. 2012) (party's "argument proves only that the [language at issue] is broad, not vague").

Tellingly, the two cases addressing the word "any" that Gebert cites both involved only overbreadth claims, not vagueness claims. *See United States v. Stevens*, 559 U.S. 460, 474 (2010); *Nat'l Fed'n of Fed. Emps. v. Greenberg*, 789 F. Supp. 430, 435 (D.D.C. 1992), *vacated*, 983 F.2d 286 (D.C. Cir. 1993). These cases thus shed no light on whether or not the challenged questions are vague. Gebert insists that even though these cases were "specifically addressing 'overbreadth' . . . much of [their] reasoning is insightful and informative in addressing 'vagueness'" . . . as well." Pl.'s Mem. at 28 n.5. But he offers no explanation or authority for this conclusory assertion. And to the contrary, vagueness and overbreadth claims raise "different constitutional considerations," such that cases about one issue say little about the other. *Zwickler v. Koota*, 389 U.S. 241 n.13 (1967); *see also Holder v. Humanitarian L. Proj.*, 561 U.S. 1, 20 (2010) ("a plaintiff may have a valid overbreadth claim under the First Amendment, but our precedents make clear that a Fifth Amendment vagueness challenge does not turn on whether a law applies to a substantial amount of protected expression. Otherwise the doctrines would be substantially redundant." (citations omitted)). Finally, *Stevens*, 559 U.S. at 474, is especially irrelevant here, as the challenged statute's use of the term "any" did not factor into the Court's analysis of the (overbreadth) issue at all.

Moving on, Gebert acknowledges that the "very specific context" of "a security clearance reinvestigation" gave rise to a "mutual understanding" of the information that the questions sought to elicit, but insists it did so only at a high "level of abstraction." Pl.'s Mem. at 30. Respectfully,

the Department disagrees. As the Ninth Circuit recognized in rejecting a vagueness challenge to a question posed during a background reinvestigation for a security clearance, the "context of [such an] inquiry" diminishes any ambiguity in a question. *United States v. Delgado*, 798 F. App'x 105, 107 (9th Cir. 2020). Gebert tries to distinguish *Delgado* by arguing that the question at issue there, unlike the three challenged questions here, is included in Standard Form 86, but that has nothing at all to do with how ambiguous or not a question is—this observation is a complete non-sequitur.

Gebert's assertion that the three challenged questions are vague "[e]ven assuming arguendo that [he] knew he should disclose the information," Pl.'s Mot. at 30, simply is incorrect. A question is not unduly vague "if the response given was false as the [respondent] understood the question." *United States v. Sampson*, 898 F.3d 287, 307 (2d Cir. 2018) (cleaned up). That is the case here.

Finally, Gebert's remaining verbiage consists mostly of conclusory assertions that parrot phrases plucked from case law, without meaningfully addressing the questions' actual language or the Department's explanation of why this language is not vague. *Compare, e.g.*, *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) ("Vague laws may trap the innocent by not providing fair warning"), *with* Pl.'s Mem. at 27 ("Thus, the form of Defendant's questions and the resulting effect trapped a law abiding man, freely exercising his freedom of association without fair warning.").

### b.    Gebert Fails to State an Overbreadth Claim

The overbreadth doctrine does not apply to questions, and the questions are not overbroad.

### i.    The Overbreadth Doctrine Does Not Apply to a Question

In moving to dismiss, the Department explained that the overbreadth doctrine simply does not apply to questions. That is because it applies only if a law "punishes" speech, *Virginia v. Hicks*, 539 U.S. 113, 118 (2003), or "prohibits" speech, *United States v. Nassif*, 97 F.4th 968, 974 (D.C. Cir. 2024), and a mere question does not punish or prohibit anything. Even construing Gebert charitably to be arguing that revoking a clearance is a "punishment," revoking a clearance is not a

"punishment" given "that no one has a 'right' to a security clearance," a "clearance does not equate with passing judgment upon an individual's character," and a "denial of a security clearance is not [ ] an 'adverse action.'" *Dep't of the Navy v. Egan*, 484 U.S. 518, 528-29 (1988). Gebert thus cannot reasonably call a clearance revocation a "punishment" of or "prohibition" on speech.

Tellingly, Gebert offers no meaningful response to these points. He argues that *Greenberg*, unlike this case, involved an alleged violation privacy right, *see* Pl.'s Mem. at 23 n.3, without ever engaging with the Department's fundamental point—i.e., that a mere question "punishes" nothing, and thus cannot be overbroad, *Hicks*, 539 U.S. at 118. He also argues that *Greenberg*, 983 F.2d at 295, addressed an overbreadth challenge to security clearance investigation questions without ever opining that the overbreadth doctrine does not apply to a mere question, but the D.C. Circuit simply did not address the issue either way. Rather, *Greenberg* rejected the overbreadth argument on other grounds: i.e., that even if the doctrine applies to questions, the challenged questions simply were not overbroad. *Id.* The fact that *Greenberg* did not address the issue of whether the overbreadth doctrine applies to a mere question does not mean that *Greenberg* in fact answered this question in the affirmative. *See Honeywell Int'l Inc. v. EPA*. 374 F.3d 1363, 1374 (D.C. Cir. 2004) ("cases derive their binding force from the necessity to avoid revisiting arguments and issues litigated before and decided by those courts, not from the deductive implications of their holdings"); *see also Cooper Indus.*, 543 U.S. at 170; *Brown*, 596 U.S. at 141; *Webster*, 266 U.S. at 511; *Bismullah*, 551 F.3d at 1071. And for the same reasons, the *Greenberg*, 789 F. Supp. at 435, district court's conclusion that a challenged question was overbroad does not suggest that the overbreadth doctrine applies to a question, as the district court, like the D.C. Circuit, simply did not address this issue.

   ii.  The Challenged Questions Are Not Overbroad

In moving to dismiss, the Department explained that the three challenged questions are not overbroad. Just as "disclosing information about" subjects such as "arrests, finances, mental health

difficulties, and drug and alcohol use . . . could not conceivably deter plaintiffs or their members from engaging in any protected speech," *Greenberg*, 983 F.2d at 295, answering the challenged questions cannot reasonably be expected to deter Gebert from engaging in protected speech. The overbreadth inquiry is whether or not "the ratio of unlawful-to-lawful applications" is substantially "lopsided." *United States v. Hansen*, 599 U.S. 762, 784 (2023). The challenged questions' "plainly legitimate sweep," *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003), is very broad. Agencies "need all the evidence they can get to control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to have access to such information." *Rattigan v. Holder*, 689 F.3d 764, 769 (D.C. Cir. 2012) (cleaned up). Questions about associations that could be used to disparage a person, whether anyone would criticize or oppose his government employment, and whether information on his family potentially would embarrass the Department plainly are relevant to whether granting him access to classified information clearly is consistent with the United States' national security interests. And if Gebert thought that the questions were unconstitutionally overbroad, "he could have refused to answer the questions and sought relief from an appropriate court. That is not what he did." Mem. Op. at 12. Gebert thus offers no reason to conclude that the questions are likely to chill "a substantial amount of protected free speech, and certainly not judged in relation to [their] plainly legitimate sweep," *Hicks*, 539 U.S. at 118-19.

Gebert's near-exclusive reliance on *Greenberg*, 789 F. Supp. at 435, is misplaced. There, the court held overbroad a question that asked a respondent "to list 'all organizations except labor unions, political or religious organizations' to which he had belonged since the age of sixteen." *Id.* The challenged questions here do not sweep nearly as broadly as the question in *Greenberg*, 789 F. Supp. at 435. Rather, they are cabined in various ways to elicit information of relevance to an investigation of eligibility for access to classified information. *See supra* § I.A.3.a.iii (describing

the textual and contextual limits on the questions' scope). Gebert argues "that the Department was not asking these questions to inquire into [his] potential involvement in any terrorist groups, groups designed to overthrow the government, or groups associated with acts of violence," Pl.'s Mem. at 23, but there is no rule that a security clearance investigation question is overbroad unless it seeks to elicit only these specific categories of information. That is an artificial, contrived limitation that has no support in First Amendment jurisprudence, and Gebert tellingly cites no authority for it. *Stevens*, 559 U.S. at 474, is even less helpful to Gebert, as there, the challenged statute's use of the word "any" simply played no role in the Court's analysis of the overbreadth issue whatsoever.

### B.    Gebert Fails to Establish Irreparable Harm

A "failure to show any irreparable harm is [ ] grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). "[T]he degree of proof required for irreparable harm is high." *Olu-Cole v. E.L. Haynes Pub. Charter Sch.*, 930 F.3d 519, 529 (D.C. Cir. 2019) (quotation marks omitted). Gebert fails to establish irreparable harm for two separate and independent reasons. First, the harm that he fears—the loss of his job and its attendant consequences—does not constitute irreparable harm as a matter of law. Second, Gebert's harm is wholly self-inflicted because he affirmatively consented to the Panel hearing date, rejected the Department's multiple offers to delay the Panel hearing until after this Court resolves his claims, and delayed moving for emergency relief for nearly two weeks after he learned of the hearing date.

### 1.    Loss of a Job and Its Downstream Consequences Is Not Irreparable Harm

The Supreme Court has held that "an insufficiency of savings or difficulties in immediately obtaining other employment—external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself—will not support a finding of irreparable injury, however severely they may affect a particular individual." *Sampson v. Murray*,

415 U.S. 61, 92 n.68 (1974). Loss of employment thus is not irreparable harm. *See id.*; *Fort Myer Constr. Corp. v. Shrensky*, Civ. A. No. 23-2275 (CJN), 2024 WL 181075, at *3 (D.D.C. Jan. 17, 2024) ("[Plaintiff] contends that his loss of employment is special. The Court is not convinced."); *Navy SEAL 1 v. Austin*, 600 F. Supp. 3d 1, 21 (D.D.C. 2022) ("loss of pay and benefits is not, as a matter of law, irreparable harm"); *Acosta v. District of Columbia*, Civ. A. No. 20-1189 (RC), 2020 WL 2934820, at *4 (D.D.C. June 3, 2020) ("The normal difficulties faced by loss of employment simply do not constitute irreparable harm, however substantial they may be," even in "an extremely sympathetic case"); *Gilliard v. McWilliams*, 315 F. Supp. 3d 402, 417 (D.D.C. 2018) ("loss of employment is not legally irreparable"); *Colley v. James*, 254 F. Supp. 3d 45, 69 (D.D.C. 2017) ("the loss of employment income does not necessarily establish irreparable harm—even when the loss is unrecoverable"); *Jones v. District of Columbia*, 177 F. Supp. 3d 542, 547 (D.D.C. 2016) ("cases are legion holding that loss of employment does not constitute irreparable injury").

The fact that Gebert would lose his job due to his failure to maintain a security clearance, *see* Pl.'s Mem. at 34, further undermines his argument, as he has no right to a job that requires a clearance. *See U.S. Info. Agency v. Krc*, 905 F.2d 389, 397 (D.C. Cir. 1990) (no protected interest in job "when the loss of employment flows directly from the modification of a security clearance"); *Magassa v. Mayorkas*, 52 F.4th 1156, 1169 (9th Cir. 2022) (employee has "no liberty interest in maintaining employment that requires a security clearance"); *Stehney v. Perry*, 101 F.3d 925, 936 (3d Cir. 1996) (an employee "has no constitutionally protected liberty or property interest in . . . a job requiring a security clearance"); *Dorfmont v. Brown*, 913 F.2d 1399, 1403 (9th Cir. 1990) ("If there is no protected interest in a security clearance, there is no liberty interest in employment requiring such clearance"); *Deryck v. Dep't of Def.*, Civ. A. No. 22-3290 (TNM), 2023 WL 3303832, at *3 (D.D.C. May 8, 2023) ("While some federal employees may have property interests

in their jobs, those who must hold security clearances do not."); *Gill v. Dep't of Just.*, Civ. A. No. 15-0824 (RMC), 2016 WL 3982450, at *6 (D.D.C. July 22, 2016) ("the right 'to earn a living' does not extend to jobs requiring a security clearance"); *Palmieri v. United States*, 72 F. Supp. 3d 191, 207 (D.D.C. 2014) (same); *Chesna v. Dep't of Def.*, 850 F. Supp. 110, 119 (D. Conn. 1994) (same). Any other rule "would swallow the rule that an employee cannot hold a property interest in a security clearance," as "for jobs that require a clearance," the job and the clearance "form one indivisible whole." *Lamb v. Millennium Challenge Corp.*, 498 F. Supp. 3d 104, 111 (D.D.C. 2020).

Tellingly, Gebert does not argue that he would be unable to find any job if the Department fires him. Rather, he appears to have marketable experiences and a good educational background that would enable to find employment elsewhere. He offers no evidence, moreover, that he would be unable to find a job where he would have "potential for earning a high income," Pl.'s Mem. at 35—only "assertions of counsel," which are "not evidence." *Brown v. Immigr. & Naturalization Serv.*, 775 F.2d 383, 388 (D.C. Cir. 1985); *accord Sierra Club v. EPA*, 292 F.3d 895, 901 (D.C. Cir. 2002) ("mere allegations in [a] brief . . . are not evidence" (quotation marks omitted)). If anything, Gebert may be able to earn more in the private sector than as a Department employee. Further diminishing any economic harm to Gebert is the fact that he has been on unpaid leave since 2019, i.e., for nearly six years. *See* 2d Am. Compl. ¶¶ 1, 34, 36. Preventing a disruption of income thus is not a harm that the emergency relief that Gebert seeks can rectify. *See Campbell v. Schmidt*, Civ. A. No. 20-1785 (CRC), 2020 WL 6445874, at *12 (D.D.C. Nov. 3, 2020) ("The injury in question must be one that the court could remedy by issuing [an] injunction," so emergency relief is unwarranted if "this Court cannot conclude that" an "injunction would make a difference").

The asserted downstream consequences of Gebert's anticipated loss of a job do not support emergency relief, either. He asserts he "will lose his health insurance," Pl.'s Mem. at 35, but this

contradicts his prior representation that he already lost his health insurance, *see* 1st Am. Compl. ¶¶ 103, 165, 173, ECF No. 34; 2d Am. Compl. ¶¶ 105-06; Mem. Op. at 17; *see also El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 876 (D.C. Cir. 2014) ("factual allegations in operative pleadings are judicial admissions of fact"); *Frank R. Jelleff, Inc. v. Braden*, 233 F.2d 671, 681 n.3 (D.C. Cir. 1956) (party is "bound by statements made in formal pleadings"); *Ciralsky v. CIA*, 689 F. Supp. 2d 141, 158 n.10 (D.D.C. 2010) ("Though the initial complaint was stricken, Defendants remain free to rely on its contents as persuasive evidence."). Emergency relief thus cannot prevent Gebert from losing health insurance that he already lost. *See Campbell*, 2020 WL 6445874, at *12.

Gebert's assertion that he "will lose his pension" if he loses his job, in turn, Pl.'s Mem. at 35, is just inaccurate. Federal employees retain their retirement benefits when fired except in very limited conditions. *See* 5 U.S.C. §§ 8312 (conviction of certain serious crimes, e.g., espionage), 8313 (fleeing United States to avoid prosecution), 8314 (refusal to testify about relationship to foreign government or certain national security or defense matters); 8315 (falsifying employment application concerning certain matters, e.g., conviction of certain serious offenses or membership in organization advocating forcefully, violently, or unconstitutionally overthrowing government); *Morrison v. Dep't of Navy*, No. PH-0752-14-0669-I-1, 2015 WL 738110, at *2 (M.S.P.B. Feb. 23, 2015) ("Retirement benefits earned over the course of one's federal career are generally available upon separation from federal service, even when that separation is agency initiated.").

Gebert also asserts that he "will lose any other fringe-benefits," which he does not specify, Pl.'s Mem. at 35, but "this vague assertion, without more, does not support a finding of irreparable injury," *Miller v. MSPB*, Civ. A. No. 23-0015 (CJN), 2023 WL 2239354, at *1 n.1 (D.D.C. Feb. 27, 2023); *accord Document Techs., LLC v. Hess*, Civ. A. No. 19-3257 (RCL), 2019 WL 6910137, at *4 (D.D.C. Dec. 19, 2019) (an assertion was "simply too vague to constitute irreparable harm

worthy of" emergency relief). Gebert fails to establish either that he continues to receive these unspecified fringe benefits, whatever they may be, or that he will lose these benefits if he is fired.

Finally, "loss of reputation," Pl.'s Mem. at 35, cannot support emergency relief for a simple reason—the reputational harm already has occurred. A plaintiff who seeks "injunctive relief must establish an ongoing or future injury that is certainly impending and may not rest on past injury." *Weissman v. Nat'l R.R. Passenger Corp.*, 21 F.4th 854, 857 (D.C. Cir. 2021) (quotation marks omitted). But any harm to Gebert's reputation occurred in 2019 when the *Southern Poverty Law Center* published its expose of his white nationalist activities and associations, *see* 2d Am. Compl. ¶ 17, resulting in "several news sources" reporting that he "had already been suspended," *id.* ¶ 18, and a "media frenzy" in which "[d]ozens of articles were written" about him, *id.* ¶ 21. Indeed, Gebert previously alleged that the Department already "deprived [him] of his liberty interest in his reputation," 1st Am. Compl. ¶ 129, which is incompatible with the notion that emergency relief can now prevent such reputational harm from occurring. *See Fort Myer Constr. Corp. v. Shrensky*, Civ. A. No. 23-2275 (CJN), 2024 WL 181075, at *3 (D.D.C. Jan. 17, 2024) ("even assuming some irreparable harm to his reputation, [plaintiff] does not establish that equitable relief would cure it"); *Campbell*, 2020 WL 6445874, at *12 (injury must be one that injunction could redress). "[N]o order of this Court can avert the risk that people . . . may discover" this adverse information about him. *Brodie v. Dep't of Health & Hum. Servs.*, 715 F. Supp. 2d 74, 85 (D.D.C. 2010).

To the extent that Gebert argues that the Panel hearing will cause some new harm to his reputation, he fails to specify why or how this is, so it cannot support injunctive relief. *See Brodie*, 715 F. Supp. 3d at 84 (asserted "harm to reputation" was too "vague and unsupported" to support emergency relief). Notably, Panel hearings are not public, undermining any notion that the hearing itself somehow will harm his reputation. Gebert also fails to show that relief after a final judgment

on the merits would be inadequate to cure any ostensible new reputational harm resulting from the Panel hearing, i.e., that any new reputational harm owing to the hearing will remain unremedied "even after receiving his requested relief on the merits," and thus truly is "irreparable." *Bullock v. Hana Sec. Servs.*, Civ. A. No. 22-2608 (DLF), 2022 WL 17976507, at *2 (D.D.C. Oct. 15, 2022).

### 2.    Gebert's Asserted Harm is Self-Inflicted

For purposes of obtaining either a temporary restraining order or preliminary injunction, "self-inflicted injuries do not constitute irreparable harm." *Steele v. Dep't of Def.*, Civ. A. No. 22-3604 (CJN), 2022 WL 22329872, at *1 (D.D.C. Dec. 8, 2022); *see also Safari Club Int'l v. Jewell*, 47 F. Supp. 3d 29, 35 (D.D.C. 2014) ("the harm is self-inflicted and" so "not the irreparable harm that supports injunctive relief"); *Second City Music, Inc. v. City of Chi.*, 333 F.3d 846, 850 (7th Cir. 2003) ("self-inflicted wounds are not irreparable injury"); *Salt Lake Tribune Publ'g Co., LLC v. AT&T Corp.*, 320 F.3d 1081, 1106 (10th Cir. 2003) ("We will not consider a self-inflicted harm to be irreparable"); *cf. Nat'l Family Planning & Repro. Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) ("We have consistently held that self-inflicted harm doesn't satisfy the basic requirements for standing."). Gebert's asserted injuries are self-inflicted for three reasons: he (1) affirmatively agreed to the hearing date, (2) rejected the Department's multiple offers to postpone the Panel hearing until after this Court resolves his claims, and (3) delayed moving for a temporary restraining order or preliminary injunction for nearly two weeks after he learned the hearing date.

*First*, Gebert affirmatively consented to the June 27, 2025, hearing date. On April 30, 2025, the Department emailed Gebert and his counsel to ask whether they were "available" on June 27. Ex. C, Emails at 2. Gebert's counsel responded, "We can make June 27th work." *Id.* at 1. The De[artment replied "Thank you . . . . We will notify the [Panel] that you have accepted the hearing date on June 27, 2025." *Id.* Gebert did not respond further, either himself or through counsel. *Id.* Because Gebert affirmatively consented to the hearing date, he cannot now be heard to complain

about it now. *See O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1017 (10th Cir. 2004) (McConnell, J., concurring), *aff'd*, 546 U.S. 418 (2006) (no irreparable harm when plaintiff "consented to the supposed injury"); *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 92 (1990) ("each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney" (quotation marks omitted)).

*Second*, Gebert repeatedly turned down the Department's multiple offers to delay the Panel hearing until after this Court resolved the merits of Gebert's claims. *See* Ex. D, Emails; Ex. E, Emails. And before that, when the hearing previously was scheduled for May 23, the Department asked Gebert: "Please let us know if you are now requesting a further delay of the hearing beyond May 23. If so, please specify the length of the continuance you are seeking." Ex. B, Emails at 3. Gebert did not respond to this request; instead, his counsel said that he would be present that day. *See id.* at 2-3. Having rejected numerous offers to delay the hearing pending this Court's resolution of his claims, Gebert cannot now be heard to argue that the hearing constitutes irreparable harm.

*Third*, Gebert inexplicably delayed moving for a temporary restraining order or preliminary injunction for twelve days after he learned the Panel hearing date. *See Benisek v. Lamone*, 585 U.S. 155, 159 (2018) ("a party requesting a preliminary injunction must generally show reasonable diligence"); *Hanson v. District of Columbia*, 120 F.4th 223, 246 (D.C. Cir. 2024) ("unhurried litigation tactics counsel against a finding of irreparable harm"); *Cayuga Nation v. Zinke*, 302 F. Supp. 3d 362, 373 (D.D.C. 2018) ("an unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm" (cleaned up)). Gebert learned the hearing date on April 30, but did not seek a temporary restraining order or preliminary injunction until May 12. *See* Ex. C, Emails at 1-2; Pl.'s Mot. This twelve-day delay amounts to over twenty percent of the total period between when he learned the hearing date

and the hearing date itself, depriving this Court of limited and valuable time to consider Gebert's motion, and Gebert offers no excuse or explanation for it. *See Hanson*, 120 F.4th at 246 ("such action, when unexplained, undercuts claims of irreparable harm"); *Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90 (D.D.C. 2014) (delay undue "particularly where the party seeking an injunction had knowledge of the pending nature of the alleged irreparable harm").

### C.    Gebert Fails to Show that the Equities or Public Interest Favor Relief

"The balance of the equities and the public interest merge when, as here, the Government is the opposing party." *Singh*, 56 F.4th at 107 (cleaned up). Initially, because Gebert fails to show either a likelihood of success on the merits or irreparable injury, the equities and public interest alone cannot merit emergency relief. *See, e.g.*, *Shaw v. Austin*, 539 F. Supp. 3d 169, 184 (D.D.C. 2021) ("Because . . . Plaintiff has failed to show either a likelihood of success on the merits or irreparable harm, the Court need not consider the balance of equities or the public interest"); *FTC v. Staples, Inc.*, 190 F. Supp. 3d 100, 116 (D.D.C. 2016) ("if [a plaintiff] is unable to demonstrate a likelihood of success on the merits, the equities alone cannot justify an injunction"); *Cardinal Health, Inc. v. Holder*, 846 F. Supp. 2d 203, 230 (D.D.C. 2012) ("Without a showing of likely success on the merits or irreparable harm, [a plaintiff] cannot obtain preliminary injunctive relief").

Regardless, Gebert fails to show that either the balance of equities or public interest favor emergency relief. The Department has a "compelling interest in withholding national security information from unauthorized persons," *Egan*, 484 U.S. at 527; *accord Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 677 (1989); *Haig v. Agee*, 453 U.S. 280, 307 (1981), and thus has a compelling interest in completing the administrative process of adjudicating the revocation of Gebert's clearance. *See, e.g.*, *JEM Broad. Co. v. FCC*, 22 F.3d 320, 325 (D.C. Cir. 1994) ("We place a high value on finality in administrative processes"); *Kentron Hawaii, Ltd. v. Warner*, 480 F.2d 1166, 1182 (D.C. Cir. 1973) ("the relief sought would gravely interfere with the on-going

conduct of the Government's business"). Gebert's interest in further delaying this administrative process, in contrast, is comparatively modest for all the reasons explained above. *See supra* § I.B.

## II.    <u>**This Court Should Dismiss This Case**</u>

For the same reasons Gebert fails to establish likely success on the merits, his claims also warrant dismissal. *See Smith v. United States*, 237 F. Supp. 3d 8, 10 (D.D.C. 2017), *aff'd*, 715 F. App'x 10 (D.C. Cir. 2018) (denying a "motion for a preliminary injunction . . . for the same reasons as the court's dismissal of the Complaint"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (quotation marks omitted)); *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 93 (D.C. Cir. 2002) ("where the defendant contests only the legal sufficiency of plaintiff's jurisdictional claims, . . . dismissal is warranted if no plausible inferences can be drawn from the facts alleged that, if proven, would provide grounds for relief"); *Metroil, Inc. v. Exxonmobil Oil Corp.*, 672 F.3d 1108, 1117 (D.C. Cir. 2012) (plaintiff "did not assert that claim in its complaint, and we therefore do not consider it").

Gebert's assertion that the Department does not allege that he fails to state a claim, *see* Pl.'s Resp. at 15, 18, is perplexing, as that is one of the principal bases of the Department's motion to dismiss. He insists that the Department does not argue "the alleged insufficiency of any facts pled by [him]," but rather, he says, "appears to be making a legal argument that, on the facts before the Court, the challenged questions do not violate the" vagueness or overbreadth doctrines, which he contends are "argument[s] more appropriately made in opposition to the motion to amend the first amended complaint or at the summary judgment stage." *Id.* What Gebert seems to be saying is that a motion to dismiss for failure to state a claim is not a vehicle to test a complaint's legal sufficiency —only to test its factual sufficiency. *Id.* In fact, the principle that a "Rule 12(b)(6) motion tests the legal sufficiency of a claim or complaint" is one of the most well-established rules of federal civil

litigation. *Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338, 344 (D.C. Cir. 2018); *accord Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017) (same); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002); *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999) (same).

## III.    Gebert is Not Entitled to Summary Judgment

Last, Gebert is not entitled to summary judgment for all the reasons that dismissal is proper and he is not entitled to a temporary restraining order or preliminary injunction. *See Gabriel v. Corr. Corp. of Am.*, 211 F. Supp. 2d 132, 140 (D.D.C. 2002) ("Failure to state a claim or to allege a prima facie case can serve as bases for granting a summary judgment motion"); *Haneke v. Sec'y of Health, Ed. & Welfare*, 535 F.2d 1291, 1294 (D.C. Cir. 1976) ("The District Court granted summary judgment for defendants, stating that 'the complaint fails to state a claim upon which relief can be granted'"); *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 223 n.8 (3d Cir. 2015) ("summary judgment for a defendant [is proper] if the complaint does not state a claim on which relief may be granted"); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992) (summary judgment for the defendant proper if district court lacks jurisdiction); *Harris v. Dep't of Veterans Affs.*, 776 F.3d 907, 916 (D.C. Cir. 2015) ("We affirm the grant of summary judgment . . . because [plaintiff] did not properly plead the claim in his amended complaint."); *Holly Sugar Corp. v. Conner*, No. 06-5323, 2007 WL 2935624, at *1 (D.C. Cir. Oct. 4, 2007) (affirming where "[t]he District Court denied summary judgment . . . because the [plaintiff] failed to raise the claim in its complaint").

Gebert also is not entitled to summary judgment for a more fundamental reason: he adduces no evidence that supports his claims. "A party asserting that a fact cannot be . . . genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). Put succinctly, Gebert must offer evidence in support of

his claims to obtain summary judgment, not just rely on his pleadings. And not just any evidence will do. Instead, Gebert can obtain summary judgment only if "the evidence is such that it would require a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986) (quotation marks omitted). Gebert thus bears "the burden of producing in turn evidence that would support a jury verdict." *Id.* at 256; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of . . . identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact").

Gebert, however, adduces no evidence that supports his claims. He offers no evidence that any of the events alleged in his complaint—including the background reinvestigation interview at issue or that investigators even asked him any of the challenged questions—actually happened. The only evidence he adduces is a Standard Form 86 and a declaration about administrative appeals of security clearance denials or revocations from his own counsel's employee, ECF Nos. 69-2, 69-3, which do not come close to proving Gebert's claims. These materials do not "require a directed verdict," *Liberty Lobby*, 477 U.S. at 251, and indeed do not even support his claims. He seems to rely on his pleadings to support his claims, but cannot rely on his own pleadings to obtain summary judgment. *See id.*; *Celotex Corp.*, 477 U.S. at 323; *Konah v. District of Columbia*, 971 F. Supp. 2d 74, 81 (D.D.C. 2013) (the complaint's "allegations are not evidence" for purposes of summary judgment); *Newton v. Architect of the Capitol*, 840 F. Supp. 2d 384, 397 (D.D.C. 2012) ("The facts alleged in a complaint are not evidence for the purposes of a motion for summary judgment."); Fed. R. Civ. P. 56(c)(1). Gebert's failure to adduce any evidence supporting his claims, certainly not evidence requiring entry of judgment in his favor, precludes summary judgment in his favor.

Perhaps Gebert is under the impression that the relevant facts are undisputed or admitted, but if so, he is mistaken. Although the Department assumes the allegations in Gebert's pleadings

to be true solely for purposes of its motion to dismiss, that does not mean it admits these allegations as a general matter. *See Iqbal*, 556 U.S. at 678-79 (at the "motion to dismiss" stage, the pleadings' "factual matter" is "accepted at true" to assess whether they "state a claim to relief that is plausible on its face" so movant "assume[s]" the "veracity" of plaintiff's "well-pleaded factual allegations"); *Lujan*, 504 U.S. at 561 ("In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts" (quotation marks omitted)); Def.'s Mem. at 7 (reciting *Iqbal* standard and explaining that it "accepted [Gebert's allegations] as true" for purposes of ascertaining whether he "state[s] a claim to relief that is plausible on its face"). Notably, because the Department moved to dismiss Gebert's claims, it has not yet filed an answer, *see* Fed. R. Civ. P. 12(a)(4) (defendant can file motion under Rule 12(b) in lieu of an answer), in which it would "admit or deny the allegations asserted against it by an opposing party," Fed. R. Civ. P. 8(b)(1)(B). Nor has the Department ever said that it admits the allegations in Gebert's pleadings. Lest there be doubt, the Department does not admit them.[4]

\*　　　\*　　　\*

---

[4]    Should Gebert attach new exhibits to his reply, this Court should disregard them due to the Department's lack of a meaningful opportunity to address them prior to the motions hearing. "It is well-established that new . . . evidence may not be raised for the first time in a reply brief." *Romero v. RBS Constr. Corp.*, Civ. A. No. 18-0179 (EGS), 2022 WL 522989, at \*6 (D.D.C. Feb. 22, 2022) (quotation marks omitted). "If a court accepts a [r]eply containing new evidence and the opposing party has no opportunity to respond, that court cannot rely on the new material in deciding a motion for summary judgment." *Id.*; *see also, e.g.*, *Canady v. Erbe Elektromedizin GmbH*, 307 F. Supp. 2d 2, 11 (D.D.C. 2004) ("the parties must place their best arguments and supportive evidence in their opening briefs rather than selectively discussing some of their points in opening briefs while reserving other missives for closing briefs"). Because Gebert's reply is due on June 2, 2025, and the motions hearing is scheduled for June 3, 2025, at 1 PM, *see* Min. Order (May 16, 2025), the Department would lack a meaningful opportunity to address any new exhibits attached to the reply.

**CONCLUSION**

This Court should dismiss this case and deny Gebert's motions for a temporary restraining order, preliminary injunction, and summary judgment.

Dated: May 26, 2025
    Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:    *Bradley G. Silverman*
    BRADLEY G. SILVERMAN, D.C. Bar #1531664
    Assistant United States Attorney
    601 D Street NW
    Washington, DC 20530
    (202) 252-2575
    bradley.silverman@usdoj.gov

*Attorneys for the United States of America*

36

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MATTHEW GEBERT,

         Plaintiff,

   v.

DEPARTMENT OF STATE,

         Defendant.

Civil Action No. 22-2939 (DLF)

**[PROPOSED] ORDER**

UPON CONSIDERATION of Defendant's motion to dismiss and Plaintiff's motions for a temporary restraining order, preliminary injunction, and summary judgment, the memoranda and exhibits submitted in support thereof and opposition thereto, and the entire record herein, it is

ORDERED that that Defendant's motion to dismiss is GRANTED;

ORDERED that Plaintiff's motion for a temporary restraining order is DENIED;

ORDERED that Plaintiff's motion for a preliminary injunction is DENIED;

ORDERED that Plaintiff's motion for summary judgment is DENIED;

ORDERED that this action is DISMISSED.

SO ORDERED.


This is a final and appealable order.


_____

Dated

_____

DABNEY L. FRIEDRICH
United States District Court Judge