**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MATTHEW GEBERT,

                    *Plaintiff*,

       v.

DEPARTMENT OF STATE,

                   *Defendant*.

Civil Action No. 22-2939 (DLF)

## <u>MOTION FOR RECONSIDERATION</u>

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**     **i-iv**

**INTRODUCTION**     **1**

**BACKGROUND**     **2**

**LEGAL STANDARDS**     **3**

   I.  Rule 59(e)     3

   II.  Rule 60(b)     4

   III. Each of the Arguments Presented on Reconsideration Have Previously
      Been Presented to the Court but Have Gone Unaddressed     5

**ARGUMENT**     **6**

   I. Subject Matter Jurisdiction     6

     A. The Court Should Reconsider its Ruling to Prevent Manifest Injustice
       and the Clear Error Made in Determining that the Court Did Not Have
       Subject Matter Jurisdiction     6

     B. The Court Should Reconsider it Ruling to Prevent Manifest Injustice
       and the Clear Error in Dismissing the Complaint Based Upon the
       Requested Relief     12

     C. The Court Should Reconsider its Ruling to Prevent Clear Error and
       Manifest Injustice as New Evidence Demonstrates that the Court
       Erred in Finding that Mr. Gebert Faced No Risk of Imminent and
       Substantial Harm     17

     D. The Court Should Reconsider its Decision as Plaintiff Has Met the
       Exacting Standard of Manifest Injustice     22

**RELIEF REQUESTED**     **24**

**CONCLUSION**     **24**

# TABLE OF AUTHORITIES

**Cases**

*Albuquerque Indian Rights v. Lujan,*
  289 App. D.C. 164, 930 F.2d 49 (D.C. Cir. 1991)                                    17

*Anyanwutaku v. Moore,*
  331 U.S. App. D.C. 379, 151 F.3d 1053, 1057-58 (1998)                             4

*Bierly v. Dep't of Def.,*
  Civ. A. No. 23-2386 (RCL), 2024 WL 4227154
  at *21 (D.D.C. Sept. 18, 2024                                                 17, 18

*Brackett v. Mayorkas,*
  Civil Action No. 17-988 (JEB), 2021 U.S. Dist. LEXIS 231117
  (D.D.C. Dec. 2, 2021)                                                        2, 9, 11
  LEXIS 231117, 12-15                                                               10

*Bolger v. District of Columbia,*
  510 F. Supp. 2d 86, 93 (D.D.C. 2007)                                              20

*Burke v. Wiedefeld,*
  No. 19-cv-3145 (JMC), 2024 U.S. Dist. LEXIS 126452,
  at *5-6 (D.D.C. July 18, 2024)                                                17, 20

*City of L.A. v. Lyons,*
  461 U.S. 95 (1983)                                                               17
  461 U.S. 101-02, 109                                                         17, 19

*Clark v. Library of Cong.,*
  242 U.S. App. D.C. 241, 750 F.2d 89, 94 (1984)                                   20

*Comput. Professional for Soc. Responsibility v. United States Secret Serv.,*
  315 U.S. App. D.C. 258, 72 F.3d 897, 903 (1996)                                   4

*Cont'l Transfert Technique, Ltd. v. Fed. Gov't of Nigeria,*
  603 F. App'x 1, 4-5 (D.C. Cir. 2015)                                         12, 14

*Crawford-El v. Britton,*
  863 F. Supp. 6, 8 (1994)                                                         23

*Department of the Navy v. Egan,*
  484 U.S. 518, 108 S. Ct. 818 (1988)                                      2, 6-7, 9, 16

*Doe v. United States Dep't of Justice,*
  243 U.S. App. D.C. 354, 753 F.2d 1092, 1104 (1985)                           12, 14

**Cases Continued**

*Firestone v. Firestone*,
    76 F.3d 1205, 1208 (D.C. Cir. 1996)                                    4, 6

*Garcia v. Pompeo*,
    No. 1:18-cv-01822 (APM), 2020 U.S. Dist. LEXIS 5159,
    at *23 (D.D.C. Jan. 13, 2020)                                         2, 10-11
    LEXIS 5159, 24-25                                                        10

*Haase v. Sessions,*
    835 F. 2d 902, 911 (D.C. Cir. 1987)                                    18-19
    835 F. 2d 910                                                            19

*Jenner v. United States DOJ,*
    2025 U.S. Dist. LEXIS 99015                                              8

*Jud. Watch, Inc. v. Dep't of State,*
    282 F. Supp. 3d 338, 341 (D.D.C. 2017)                                   4

*Lee v. Garland,*
    120 F.4th 880 (D.C. Cir. 2024)                                     6-8, 11, 16
    120 F.4th 885                                                         8, 16
    120 F.4th 887                                                            7
    120 F.4th 888                                                           7-8
    120 F.4th 890                                                           6-7
    120 F.4th 892                                                            7
    120 F.4th 894                                                         11, 15

*Leidos, Inc. v. Hellenic Republic,*
    434 U.S. App. D.C. 236, 240, 881 F.3d 213, 217 (2018)            4-6, 16, 22-23

*Nat'l Fed'n of Fed. Emps. v. Greenberg (Greenburg I),*
    789 F. Supp. 430 (D.D.C. 1992)                                    11, 13, 16, 19
    789 F. Supp. 437, 438                                                    19

*Nat'l Fed'n of Fed. Emps. v. Greenberg (Greenberg II),*
    983 F.2d 286 (D.C. Cir. 1993)                                    2, 6, 11, 15-16
    983 F.2d 289                                                            8-9
    983 F.2d 290                                                         2, 6, 16

*Nat'l Student Asso. v. Hershey,*
    134 U.S. App. D.C. 56, 412 F.2d 1103, 1119 (1969)                       21

*People for the Ethical Treatment of Animals v. United States HHS,*
    438 U.S. App. D.C. 159, 170-71, 901 F.3d 343, 354-55 (2018)             4-6

**Cases Continued**

*Rattigan v. Holder,*
  636 F. Supp. 2d 89 (D.D.C. 2009) ........................................... 8

*Ryan v. Reno,*
  168 F.3d 520 (D.C. Cir. 1999) ................................................ 8

*State v. Am. Broad. Cos., Inc.,*
  12 F. Supp. 3d 30, 35 (D.D.C. 2013) ...................................... 23

*TransUnion LLC v. Ramirez,*
  594 U.S. 413, 435 (2021) ........................................................ 18

*Thompson v. Sessions,*
  278 F. Supp. 3d 227, 251 (D.D.C. 2017) .............................. 17-19

*Town of Portsmouth v. Lewis,*
  813 F.3d 54, 61 (1st Cir. 2016) ............................................... 12

*Turner v. U.S. Agency for Glob. Media,*
  502 F. Supp. 3d 333, 381 (D.D.C. 2020) ............................... 23

*United States v. All Assets Held at Bank Julius, Baer & Co., Ltd.,*
  315 F. Supp. 3d 90, 96 (D.D.C. 2018) ................................... 22

*W.C. & A.N. Miller Cos. v. United States,*
  173 F.R.D. 1, 3 (1997) ............................................................. 4

*Webster v. Doe,*
  486 U.S. 592, 108 S. Ct. 2047 (1988) ................................. 2, 8
  486 U.S. 594 .............................................................................. 8
  486 U.S. 596, 600-605 ............................................................. 9

**Rules**

Federal Rules of Civil Procedure
  Rule 54(c) ...................................................................... 11, 12, 14
  Rule 59(e) ...................................................................... 1, 3-5, 23
  Rule 60(b) ...................................................................... 1, 4-5
  Rule 60(b)(1) ................................................................. 4
  Rule 60(b)(6) ................................................................. 4

**Statues**

Administrative Procedure Act, 5 U.S.C. § 555 ............................ 8-9

**Statues Continued**

Executive Order 13467, Section 2.3, and Section 2.3(iii)                    21

Privacy Act, 5 U.S.C. § 552a
  552a(e)(7)                                                     2, 20-21

**Other Authorities**

12 FAM 234.3 Suspension of Security Clearance Appeals Section (h)          15

National Security Act of 1947
  Section 102(c)                                                   8-9

Office of the Director of National Intelligence (ODNI)
  ODNI-17 - Personnel Security Records: 76 FR 42739 (Jul. 19, 2011)  21

Security Executive Agency Directive (SEAD)                                 21

## INTRODUCTION

Plaintiff Matthew Gebert, by and through undersigned counsel, respectfully moves under Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure for reconsideration of this Court's June 26, 2025 Memorandum and Order (ECF 78), which dismissed his complaint for lack of subject matter jurisdiction. Reconsideration is warranted for three independent reasons: (1) the Court misapprehended the nature of the claims by treating them as a challenge to the clearance outcome rather than a constitutional challenge to the investigative process; (2) the Court erred in finding that the relief sought would necessarily reinstate Mr. Gebert's clearance; and (3) new evidence confirms that the same unconstitutional questions were used again during his appeal, proving that the harm is ongoing and systemic.

The Court's ruling rests on a pivotal error of fact and law. It incorrectly concluded that the three challenged questions posed to Mr. Gebert during his security clearance reinvestigation were "unique"—implying they were isolated or tailored only to him. That is simply not true. These questions are standard, routine components of the Department of State's security clearance process. They are asked of every applicant. This is not—and never has been—about one man's clearance. It is about a systemic constitutional violation embedded in the agency's nationwide vetting process.

That distinction is everything.

Mr. Gebert is not challenging the revocation of his clearance. He is not asking this Court to reinstate his job, reverse the agency's decision, or substitute its judgment for that of the Executive. What he is challenging—narrowly, precisely, and constitutionally—is the government's continued use of three vague, overbroad, and deeply intrusive questions that violate the First Amendment. These questions chill protected speech, compel disclosure of

political and associational beliefs, and collect information Congress has expressly forbidden agencies from maintaining.

This Court's holding that Mr. Gebert's claims "flow inexorably" from the revocation decision collapses the line that every federal court, including the D.C. Circuit, has drawn between substantive clearance decisions (which are non-justiciable under *Egan*) and constitutional challenges to investigative methods (which are justiciable under *Greenberg*, *Webster*, *Brackett*, and *Garcia*). When an agency builds unconstitutional questioning into its standard clearance process—as the State Department has here—federal courts not only may intervene, they must.

Moreover, new evidence confirms that during his June 27, 2025 Security Appeal Panel hearing, Mr. Gebert was again subjected to these same three unconstitutional questions. The injury is neither speculative nor past. It is active, ongoing, and irreparable. Unless enjoined, these questions will continue to be asked of every applicant, continuing to chill speech, violate privacy, and suppress political affiliation in direct contravention of the First Amendment and the Privacy Act.

This case is not about one clearance. It is about the Constitution.

For the reasons set forth below, and to prevent manifest injustice, this Court should reconsider its ruling and allow this challenge to proceed.

## BACKGROUND

The pertinent facts and background of this action have been extensively detailed in this Court's prior decisions and the parties' filings. Plaintiff therefore recounts only the recent history salient to the instant motion.

On June 27, 2025, Mr. Gebert attended a hearing before a Department of State Security Appeal Panel (SAP) to appeal the Defendant's decision to revoke his security clearance.[1] Affidavit of Sean Rogers. During the SAP proceeding, while Plaintiff's counsel was soliciting testimony from Plaintiff, one of the members of the SAP interrupted and asked Mr. Gebert "whether he was truthful when he answered the investigator's questions." *Id*. at  ¶5. The panel member then read the three challenged questions contained in the August 16, 2019, Summary and Analysis. *Id*. The panel member proceeded to ask Mr. Gebert if he responded truthfully when the Department asked him: (1) if he "had any association with any person group or business venture that could be used even unfairly to criticize, impugn or attack your character or qualifications for a government position…"; (2) "(Whether [he was]) aware of people or organizations that would take steps, overtly or covertly, fairly or unfairly, to criticize or oppose ([his]) employment in a government position. …" and (3) "if there was any information, including information regarding other members of your family that could suggest a conflict of interest or be a possible source of embarrassment to [him], the Department or to the United States." *Id*. at ¶¶6-8. In other words, the SAP member once more subjected Mr. Gebert to the same unconstitutional, overly broad, and vague questions asked of every State Department Employee during the SAP proceeding.

## LEGAL STANDARDS

### I.  Rule 59(e)

Rule 59(e) permits a party to file "[a] motion to alter or amend a judgment . . . no later

---

[1] The SAP was composed of three Department of State officials, the Senior A Bureau Official, the Principal Deputy Assistant Secretary for Global Talent Management, and the Acting Assistant Secretary for Intelligence and Research. Affidavit of Sean Rogers at ¶4.

than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Rule 59(e) motions are "intended to permit the court to correct errors of fact appearing on the face of the record, or errors of law." *Jud. Watch, Inc. v. Dep't of State*, 282 F. Supp. 3d 338, 341 (D.D.C. 2017) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)). Motions pursuant to Rule 59(e) do not offer "a second opportunity to present [an] argument upon which the Court has already ruled, nor is it a means to bring before the Court theories or arguments that could have been advanced earlier." *W.C. & A.N. Miller Cos. v. United States*, 173 F.R.D. 1, 3 (1997). "Rule 59(e) motions need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Anyanwutaku v. Moore*, 331 U.S. App. D.C. 379, 151 F.3d 1053, 1057-58 (1998) (internal quotation marks and citations omitted). "'Manifest injustice' requires at least (1) a clear and certain prejudice to the moving party that (2) is fundamentally unfair in light of governing law."*Leidos, Inc. v. Hellenic Republic*, 434 U.S. App. D.C. 236, 240, 881 F.3d 213, 217 (2018) (internal quotation marks and citation omitted).

## II.    Rule 60(b)

Rule 60(b) permits a court to grant relief to a part from "a final judgment, order, or proceeding for[,]" in relevant part, "mistake, inadvertence, surprise, or excusable neglect" or "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (6). "In considering a Rule 60(b) motion, the district court must strike a delicate balance between the sanctity of final judgments . . . and the incessant command of a court's conscience that justice be done in light of all the facts." *People for the Ethical Treatment of Animals v. United States HHS*, 438 U.S. App. D.C. 159, 170-71, 901 F.3d 343, 354-55 (2018) (internal quotation marks and citations omitted). This form of relief should be used sparingly and only in extraordinary circumstances. *Comput. Professional*

4

*for Soc. Responsibility v. United States Secret Serv*. 315 U.S. App. D.C. 258, 72 F.3d 897, 903 (1996).

### III.    Each of the Arguments Presented on Reconsideration Have Previously Been Presented to the Court but Have Gone Unaddressed

Rule 59(e) motions are aimed at "reconsideration, not initial consideration." *Leidos, Inc. v. Hellenic Republic,* 434 U.S. App. D.C. 236, 240, 881 F.3d 213, 217 (2018). Additionally, relief pursuant to Rule 60(b) "should not be employed simply to rescue a litigant from strategic choices that later turn out to be improvident." *People for the Ethical Treatment of Animals v. United States HHS*, 438 U.S. App. D.C. 159, 171, 901 F.3d 343, 355 (2018) (internal quotation marks and citation omitted). In its Motion for Reconsideration, Plaintiff makes three arguments, that the Court should reconsider its June 26, 2025, ruling to prevent manifest injustice and correct clear error as it erred in determining that: (1) it did not have subject matter jurisdiction and the claims were not justiciable, and (2) the complaint should be dismissed based upon the requested relief, and (3) Mr. Gebert faced no risk of imminent and substantial harm. None of these arguments are new and have been presented to this Court in previous filings.

In the May 18, 2025, Memorandum of Law in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss the Second Amended Complaint and in Support of Plaintiff Motion for Summary Judgment and in the June 2, 2025, Reply in Support of Plaintiff's Motion for Temporary Restraining Order, Preliminary Injunction, and Summary Judgment, Plaintiff argued that this Court had subject matter jurisdiction over these claims and that they were justiciable. *See* ECF 69-1 at 12-17; ECF 73 at 10-15. Additionally, in each of these filings, Plaintiff argued that he was entitled injunctive relief and additional relief, even if it was relief that was not explicitly requested. *See* ECF 69-1 at 17-19; ECF 73 at 14-17. Finally, in the May 12, 2025, Memorandum of Law in Support of the Request for a Temporary Restraining Order

and Preliminary Injunction, and  June 2, 2025, Reply in Support of Plaintiff's Motion for

Temporary Restraining Order, Preliminary Injunction, and Summary Judgment, the Plaintiff

argued that he faced irreparable injury and substantial harm. *See* ECF 64-1 at 42-44; ECF 73 at

17-21.

Thus, Plaintiff is not asking this Court to consider arguments as an initial matter, nor is

Plaintiff attempting to rescue himself "from strategic choices that later turn[ed] out to be

improvident." *People for the Ethical Treatment of Animals*, 901 F.3d 343, 355; s*ee Leidos, Inc.,*

881 F.3d 213, 217. Plaintiff is merely asking the Court to reconsider these arguments to correct

clear errors, prevent manifest injustice, and consider the new evidence that demonstrates that this

Court erred in finding that Mr. Gebert faced no risk of imminent and substantial harm. *See*

*Firestone v. Firestone*, 316 U.S. App. D.C. 152, 76 F.3d 1205, 1208 (1996)

## ARGUMENT

### I.    Subject Matter Jurisdiction

#### A.   The Court Should Reconsider its Ruling to Prevent Manifest Injustice and the Clear Error Made in Determining that the Court Did Not Have Subject Matter Jurisdiction

In its June 26, 2025, Memorandum Opinion and Order, this Court found that it lacked

subject matter jurisdiction. ECF 78 at 1. This finding was made in error and warrants

reconsideration because it rests on a mischaracterization of the nature of Plaintiff's claims and

the applicable precedent. Mr. Gebert is not challenging the "wisdom of [the] discretionary

decision[] made by the political branches in the realm of foreign policy or national security." *Lee*

*v. Garland*, 120 F.4th 880, 890 (D.C. Cir. 2024). Rather, he is challenging "the manner in which

the objective is to be achieved." *Nat'l Fed'n of Fed. Emps. v. Greenberg (Greenberg II)*, 299 U.S.

App. D.C. 261, 983 F.2d 286, 290 (1993). This Court has routinely held justiciable constitutional challenges to the "methods used to gather information" for clearance decisions. *Id.*

In other words, Plaintiff does not seek to substitute the Court's judgment for that of the Executive in determining who may access classified information. He instead seeks judicial review of unconstitutional government conduct that infects the process – specifically, the routine use of vague, overbroad, and First Amendment-intrusive questions in the security clearance reinvestigation process.

The court may review challenges to the security clearance process based on First Amendment violations, not the actual adjudication. This is grounded in the principle that government procedures, even in sensitive national security contexts, must not penalize the exercise of constitutional rights. The D.C. Circuit has recognized the justiciability of constitutional claims in the context of the security clearance process. While *Egan*, 484 U.S. 518, 108 S. Ct. 818 (1988), bars judicial review of the substantive merits of clearance decisions, it does not preclude scrutiny of the methods used to gather information.

The decision in *Lee*, was based on the principle established in *Egan*, that courts may not review the merits of a security clearance denial. *Lee*, 120 F. 4th 880. The court in *Lee* explicitly stated that it could not second-guess the Executive Branch's judgment regarding the relevance of certain considerations in determining access to classified information as such decisions are committed to the discretion of the Executive Branch under *Egan*. *See Lee,* 120 F.4th 880 at 887–88. However, the court also clarified that its holding did not foreclose constitutional challenges to agency procedures. *Id.* at 892. It noted that while constitutional claims challenging the substantive basis of clearance decisions are not justiciable, the question of whether *Egan* bars courts from considering constitutional challenges to adverse clearance decisions remains

7

unresolved. *Id.* The court acknowledged that adjudicating such constitutional challenges could involve questions outside the scope of *Egan*'s prohibition, such as the constitutionality of the methods used in clearance decisions. *Id.* To bar judicial review of these questions entirely would risk creating the kind of constitutional vacuum that the Supreme Court warned against in *Webster v. Doe*, 486 U.S. 592, 108 S. Ct. 2047 (1988), where the Court "stressed that it would present a 'serious constitutional question' to deny a plaintiff any judicial forum in which to raise colorable constitutional challenges to agency actions." *Id*. at 888.

Thus, *Lee* does not bar Plaintiff's claim, as it focused on nonjusticiability in the context of challenging the final denial of a security clearance rather than the constitutionality of the process itself. *Id.* at 885. The plaintiff in *Lee* alleged a constitutional violation stemming from the revocation of his clearance, while here, Plaintiff asserts that the clearance process infringed upon his First Amendment rights. This critical distinction places the case within a line of decisions—such as *Rattigan v. Holder*, 636 F. Supp. 2d 89 (D.D.C. 2009), and *Jenner v. United States DOJ*, 2025 U.S. Dist. LEXIS 99015—that supports judicial review of constitutional claims tied to the means by which clearance-related information is obtained or interpreted.

The reasoning in *Egan* reflects a necessary deference to the Executive Branch's discretion over classified information, but it does not create blanket immunity from constitutional scrutiny. As the D.C. Circuit made clear in *Ryan v. Reno*, 168 F.3d 520 (D.C. Cir. 1999), judicial review remains available where the process implicates constitutional violations. This Court held in *Greenberg II* that "[i]t is simply not the case that all security-clearance decisions are immune from judicial review." *Greenberg II*, 983 F.2d 286  at 289. In making this determination, the court examined the Supreme Court's decision in *Webster*.

In *Webster*, a former Central Intelligence Agency (CIA) employee brought an action under the Administrative Procedure Act after he was terminated pursuant to the National Security Act of 1947 (NSA). *Webster*, 486 U.S. 592 at 594. Section 102(c) of the NSA provided that: "The Director of Central Intelligence may, in his discretion, terminate the employment of any officer or employee of the Agency whenever he shall deem such termination necessary or advisable in the interests of the United States . . . ." *Id*.

The employee argued that the termination violated both the Administrative Procedure Act (APA) and his constitutional rights. *Id*. at 596. The Court held that judicial review was precluded under the APA as the NSA "fairly exudes deference to the Director, and appears . . . to foreclose the application of any meaningful judicial standard of review." *Id*. at 600. However, it held that Section 102(c) did not preclude the judicial review of the constitutional claims. *Id*. at 603. Further, it held that national security did not justify denying the courts the ability to review constitutional claims and "ordered the district court to adjudicate [the] terminated employee's colorable constitutional challenge to the CIA's denial of his security clearance." *Greenberg II*, 983 F.2d 286 at 289; *see Webster*, 486 U.S. 592 at 601-05.

That same principle must govern here. Mr. Gebert's claims are not only colorable, they are anchored in First Amendment law and aimed squarely at the process the agency uses, not the outcome it reached. Denying review would sanction a process that chills protected speech and gathers constitutionally protected information in violation of federal privacy law.

### 1. Recent Case Law Demonstrates that this Case is Justiciable

In *Webster*, the Supreme Court emphasized that courts must not presume Congress intended to bar review of constitutional claims without a clear statement. 486 U.S. 592 at 603. That foundational principle has been reaffirmed repeatedly in post-*Greenberg* decisions.

In *Brackett v. Mayorkas*, the plaintiff challenged the process used to gather information that led to the suspension of her clearance. *Brackett v. Mayorkas*, Civil Action No. 17-988 (JEB), 2021 U.S. Dist. LEXIS 231117 (D.D.C. Dec. 2, 2021). Again, this court recognized that *Egan* foreclosed review of the "substance of an underlying decision to deny or revoke a security clearance[.]" *Brackett v. Mayorkas,* Civil Action No. 17-988 (JEB), 2021 U.S. Dist. LEXIS 231117, at *12-13 (D.D.C. Dec. 2, 2021) (internal citation and quotation marks omitted). However, the court noted that the plaintiff was not challenging the suspension of her security clearance. *Id*. at *14. Rather, the court noted that the plaintiff was not challenging the result, but the government's investigative methods. Because the plaintiff alleged a constitutional violation based on how the information was collected – not the outcome - the court held the claim was justiciable. *Id*. at 15.

Similarly, in *Garcia v. Pompeo*, this court considered a claim that the State Department violated a plaintiff's First Amendment rights when it denied him a security certification. *Garcia v. Pompeo*, No. 1:18-cv-01822 (APM), 2020 U.S. Dist. LEXIS 5159, at *23 (D.D.C. Jan. 13, 2020). The court noted that it must first decide if the First Amendment claim was foreclosed by *Egan*. *Id*. The court stated that "[t]he D.C. Circuit consistently has held that valid constitutional claims are not foreclosed by *Egan*." *Id*. at *24. The court explained that "constitutional claims may well be the only check on agency actions that determine a person's career," reinforcing the role of the courts as a vital backstop against Executive overreach. *Id*. (internal citations and quotation marks omitted). Ultimately, this court noted that "Egan does not stand in the way of a well-pleaded constitutional claim that . . . would appear to have record support." *Id*. at *25. Thus, the court determined that the First Amendment claim was justiciable. *Id*.

These recent cases reaffirm that claims challenging how the government solicits or uses information in the clearance process—when constitutional rights are at stake—are reviewable. Thus, when a plaintiff alleges that his security clearance was jeopardized due to violations of the First Amendment, the challenge pertains to the legality of the process, not the discretionary outcome of the security clearance. These cases are distinctly distinguishable from *Lee* because in *Lee* the claims "rest[ed] squarely on harms from the revocation decision itself and they squarely challenge[d] the substantive basis for that decision." *Lee*, 120 F. 4th 880, 894. Here, unlike *Lee*, but analogous to *Garcia* and *Brackett*, Mr. Gebert is challenging, on a constitutional basis, the processes used to gather information that ultimately resulted in the revocation of his clearance, not the revocation of the clearance itself. Thus, this issue is justiciable.

This Court in *Greenberg I* and *Greenberg II* considered the questions posed on a security clearance questionnaire and their implications to potential security clearance applicants, whereas *Lee* focused on the plaintiff's security clearance adjudication - an issue that Plaintiff is not raising here. *Nat'l Fed'n of Fed. Emps. v. Greenberg (Greenberg I)*, 789 F. Supp. 430 (D.D.C. 1992), vacated on other grounds by *Greenberg II*, 983 F.2d 286; *Greenberg II*, 983 F.2d 286; *Lee*, 120 F. 4th 880. In the present case, Mr. Gebert's issue stems from the three challenged questions posed to him in the security clearance reinvestigation. This Court has subject matter jurisdiction in this case because this is exactly the type of case for which *Lee, Greenberg I,* and *Greenberg II, Garcia,* and *Brackett* allow judicial review. Accordingly, Plaintiff's procedural challenge is legally viable, narrowly tailored, and consistent with binding precedent preserving access to courts where constitutional rights are at stake. Thus, the Court should reconsider its ruling to prevent manifest injustice and the error made in finding that the Court did not have subject matter jurisdiction.

11

**B.  The Court Should Reconsider it Ruling to Prevent Manifest Injustice and the Clear Error in Dismissing the Complaint Based Upon the Requested Relief**

A complaint should not be dismissed for legal insufficiency based on an improper demand for relief. *See* Fed. R. Civ. P. 54(c) (Except as to a default judgment, "[e]very other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."); *Town of Portsmouth v. Lewis,* 813 F.3d 54, 61 (1st Cir. 2016) ("a district court need not dismiss a cause of action upon which relief is plausible, even if that relief was not sought in the complaint."); *Doe v. United States Dep't of Justice*, 243 U.S. App. D.C. 354, 753 F.2d 1092, 1104 (1985) ("Courts are traditionally encouraged to adjudicate the basic legal claim, even where the plaintiff has failed to seek the precisely correct relief but has instead relied on a general request for "other appropriate relief."); *Cont'l Transfert Technique, Ltd. v. Fed. Gov't of Nigeria,* 603 F. App'x 1, 4-5 (D.C. Cir. 2015) (explaining that Rule 54(c) "has been liberally construed, particularly when, as here, the complaint contains a general request for 'such other and further relief as [the court] deems just, proper, and equitable[.]'").

In its June 26, 2025, Memorandum Opinion this Court found that "[m]ost of the relief" Mr. Gebert sought was "inseparable from the Department's decision to revoke his security clearance." ECF 78 at 4. It noted that "[m]ost significantly, he [sought] backpay and reinstatement - the exact remedies the D.C. Circuit rejected in *Lee*." *Id*. Although the Court noted that Mr. Gebert also also requested injunctive relief, it dismissed the complaint on the basis that Mr. Gebert's "answers to the challenged questions were the sole basis for revoking Gebert's security clearance . . . granting [injunctive] relief would necessarily reverse the Department's determination and, by extension, reinstate his security clearance." ECF 78 at 4.

This conclusion was in error. This Court failed to recognize in its June 26, 2025 Memorandum Opinion that Mr. Gebert, along with backpay, reinstatement, and injunctive relief,

Mr. Gebert requested "such other relief as the Court deems just and proper." ECF 59 at 22. Under Rule 54(c), that language preserves his right to pursue prospective and constitutionally permissible relief, even if not expressly demanded in the prayer for relief.

Moreover, to eliminate any doubt, Plaintiff now clarifies that he seeks the following remedies:

1. A declaratory judgment that the three challenged questions violate the First Amendment and the Privacy Act;

2. An injunction barring the Department from continuing to ask these questions in any future clearance investigations; and

3. An order sealing or purging Mr. Gebert's responses to the unconstitutional questions from further adjudicative use.

Nothing in this requested relief compels the Department to reinstate Mr. Gebert's clearance or second-guesses the merits of its national security determination. Instead, it asks only that the Department cease using unconstitutional questions and remove tainted information from the decision-making process. This forward-looking relief is entirely distinct from reinstatement or backpay and can be granted without entangling the Court in the merits of the revocation decision.

As the D.C. Circuit held in *Greenberg*, courts may enjoin the use of unconstitutional investigative methods even if that process relates to security clearances. As the court explained, the Constitution does not evaporate simply because an agency invokes the phrase "national security."

Indeed, the Department could eliminate these questions from its interviews tomorrow with no impact on its national security mission – only an increase in constitutional compliance.

To Plaintiff's knowledge, no other federal agency, including the Department of Defense, CIA, NSA, or FBI, asks these questions as part of its security clearance reinvestigation process. That is no accident. These questions appear nowhere in Standard Form 86,[2] are unsupported by any statute or Executive Order, and violate established Privacy Act limitations on the collection of First Amendment–protected information. The State Department is an outlier, and its continued use of these unauthorized questions only underscores the need for judicial intervention. This is not a burdensome remedy. Eliminating three unauthorized and constitutionally defective questions—used by no other federal clearance agency—does not impede the Department's ability to safeguard national security. It simply requires that it do so within constitutional bounds.

Mr. Gebert's request for injunctive relief and other relief as the Court deems just and proper does not constitute inadequate relief. However, even if he had, this Court erred in dismissing the complaint as he still had standing pursuant to Federal Rule of Civil Procedure 54(c). *See Cont'l Transfer Technique, Ltd. v. Fed. Gov't of Nigeria,* 603 F. App'x 1, 4-5. Rather, the Court should have adjudicated the basic legal claim, the constitutional issue, and awarded Mr. Gebert the appropriate relief regardless of that requested in the complaint. *See Doe,* 753 F.2d 1092, 1104.

Furthermore, the Court's finding that the relief here was not discrete from the revocation decision is factually incorrect. Although Mr. Gebert's answers to the challenged questions ostensibly served as the basis for the revocation of the security clearance, granting Mr. Gebert an injunction that would prevent the SAP from considering his answers to the challenged questions would not necessarily reverse the Department's determination and, by extension, reinstate his security clearance, and there is no evidence in the record indicating such a result. *See id.* The

---

[2] See also ODNI, "Standard Form 86 – Questionnaire for National Security Positions," available at https://www.opm.gov/forms/pdf_fill/sf86.pdf. The challenged questions appear nowhere in the official investigative framework.

focus of this analysis is not what happens with unconstitutionally collected information, instead, the analysis should only be on whether the Agency could ask and continue to ask unconstitutionally vague and overly broad questions as part of their security clearance process.

12 FAM 234.3 governs the State Department's security clearance Appeals Procedures. Section (h) provides that the "SAP may decide to sustain the denial or revocation, or grant or reinstate the security clearance, *and, to the extent authorized by law, take such other steps as it deems appropriate*." As such, the SAP is not limited to merely sustaining or overturning Mr. Gebert's security clearance. 12 FAM 234.3(h) allows the SAP the discretion to take any other action, authorized by law. Therefore, there is nothing that would prevent the SAP from ordering that a new security clearance reinvestigation be initiated without the unconstitutionally vague and overbroad questions at issue here. Thus, the Court's finding that granting Mr. Gebert relief would necessarily reinstate his security clearance is erroneous. And furthermore, because the SAP is not limited to merely agreeing or disagreeing with the security clearance revocation, granting relief in the manner described above would be wholly "discrete from the revocation decision." *Lee*, 120 F.4th at 894.

The Court's reasoning insulates the most serious constitutional violations from judicial review. If the Department had asked unconstitutional questions but imposed no consequences, Plaintiff might have been able to challenge them. But because the Department acted on those questions and revoked his clearance, the Court deems the matter nonjusticiable. That logic flips constitutional accountability on its head: the greater the harm, the less chance of review. Agencies could violate First Amendment rights with impunity, as long as they embed the violation in a revocation decision. That cannot be the law.

The court in *Greenberg II* expressly condemned this type of reasoning, stating,

> No one would suggest the government . . . could, despite the Fourth Amendment, conduct random searches without warrants in the hope of uncovering information about employees seeking security clearances. Still less would anyone consider such unconstitutional searches and seizures to be immune from judicial review. The government may have considerable leeway to determine what information it needs from employees holding security clearances and how to go about getting it. But a large measure of discretion gives rise to judicial deference.

*Greenberg II,* 983 F.2d 286, 290.

This is not a hypothetical. That exact constitutional dynamic is what occurred here. The government asked Mr. Gebert unconstitutional questions about his protected associations, then used those answers to revoke his clearance. And under the Court's current ruling, that entire process escapes review—because the violation was successful. That is precisely what *Greenberg II* warns against. As *Greenberg II* makes clear, it was never the intention of *Lee* or *Egan* to grant agencies a free pass to violate the Constitution simply because the stakes involve security clearances.

Not only is the reasoning of this Court's ruling constitutionally unsound in practice, but it is not in line with the holding in *Lee*. Unlike the situation in *Lee*, Mr. Gebert's claims do not stem from the revocation of decision, but solely from the agency's procedures. *See Lee*, 120 F. 4th 880 at 885 (stating "[a]ll of Lee's claims stem from the revocation decision."). Here, Mr. Gebert, like in *Greenberg I* and *Greenberg II*, is challenging the *procedures* that ultimately led to his inability to hold a security clearance, not the underlying decision. As such, the Court erred in determining that any relief afforded to Mr. Gebert would not be discrete from the revocation decision.

Plaintiff respectfully requests that the Court reconsider its June 26, 2025, ruling dismissing Plaintiff's complaint. Granting Plaintiff's motion would allow the Court to correct a clear error and mistake and prevent manifest injustice. The Court's June 26, 2025 ruling prejudices Mr. Gebert as it is "fundamentally unfair in light of governing law[,]" as established

in *Lee*, *Greenberg I*, and *Greenberg II*. *See Leidos*, 881 F.3d 213, 217. As Mr. Gebert is not challenging the underlying security clearance determination, relief is distinct from the revocation decision, and holding otherwise is not constitutionally sound as it would allow agencies to freely violate the constitutional rights of security clearance holders without consequence.  Thus, the Court should reconsider its ruling to prevent manifest injustice and the error made in dismissing the complaint on the basis of the requested relief.

> **C. The Court Should Reconsider its Ruling to Prevent Clear Error and Manifest Injustice as New Evidence Demonstrates that the Court Erred in Finding that Mr. Gebert Faced No Risk of Imminent and Substantial Harm**

A Plaintiff lacks standing if the alleged injury is speculative or hypothetical. *See Albuquerque Indian Rights v. Lujan,* 289 App. D.C. 164, 930 F.2d 49 (D.C. Cir. 1991). "A plaintiff has standing where they have suffered an injury in fact, there is a causal connection between the injury and the conduct complained of, and it is likely that the injury will be redressed by a favorable decision." *Burke v. Wiedefeld*, No. 19-cv-3145 (JMC), 2024 U.S. Dist. LEXIS 126452, at *5-6 (D.D.C. July 18, 2024) (internal quotation marks and citation omitted).

In *City of L.A. v. Lyons*, 461 U.S. 95 (1983) the Supreme Court determined that the plaintiff's burden is demonstrating that "he . . . 'is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct" and that he establishes standing if he shows that he is "realistically threatened by a repetition of his experience." *Lyons*, 461 U.S. 95, 101-02, 109; *Bierly v. Dep't of Def*., Civ. A. No. 23-2386 (RCL), 2024 WL 4227154 at *21 (D.D.C. Sept. 18, 2024 (noting that the plaintiff "lack[ed] standing to seek an order requiring the defendants to refrain from using the challenged criteria to adjudicate a future clearance application . . . because [he] has not concretely alleged that he will ever again be subject to a security clearance screening by any of the defendants); *Thompson v. Sessions*, 278 F. Supp. 3d

227, 251 (D.D.C. 2017 (finding that the plaintiff lacked standing to challenge a former employer's investigative procedures because he failed to demonstrate "that he will ever be subject to the [agency's] investigation . . . procedures again."); and *Haase v. Sessions*, 835 F. 2d 902, 911 (D.C. Cir. 1987) (noting that a plaintiff must show that he is "likely to be subjected to the policy again" to establish standing). ECF No. 62-1 at 13-15.

In its June 26, 2025, Memorandum Opinion, this Court found that Mr. Gebert "face[d] no such risk" of "sufficiently imminent and substantial harm." ECF 78 at 4 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021). Specifically, this Court stated that "apart from the appeals process itself, which the Court has already addressed, Gebert does not allege any future risk that he will face these unconstitutional questions again." *Id.*

Critically, the appeals process is precisely where the continuing harm occurred. Mr. Gebert expressly stated and explained, on three occasions, that, during the SAP, "he [would be] questioned regarding his answers to the three questions at issue in this litigation." ECF 64-1 at 25; ECF 69-1 at 18; ECF 73 at 16. Notwithstanding, the Court found that "it [was] not plausible that the [SAP would] ask him the same questions during the [June 27, 2025] review hearing."[3] ECF 78 at 5.

That finding has now been overtaken by fact. New evidence, namely, the Affidavit of Sean Rogers, demonstrates that this is exactly what occurred during the SAP. Id. at ¶¶5–8. A

---

[3] The Court noted that Plaintiff "acknowledge[d] that any follow up questions by the appeal panel would be 'derivative' of the original questions." ECF 78 at 5. The Court seemed to have interpreted this statement by Plaintiff's counsel to mean that the questions to be posed by the SAP were somehow incidental such that they would be insufficient to establish standing. However, in stating that the questions to be posed by the SAP would be "derivative" of the original three challenged questions, Plaintiff's counsel was stating that the questions to be posed by the SAP would be a byproduct of the original questions - for all intents and purposes, inseparable and indistinguishable from the original questions. *See* Transcript of Hearing (Tr.) at 26 (June 23, 2025).. However, this miscommunication is immaterial at this point as the new evidence shows that the original three challenged questions were indeed posed to Mr. Gebert during the SAP proceeding. Affidavit of Sean Rogers at ¶¶5-8.

member of the SAP panel explicitly restated all three challenged questions and asked Mr. Gebert whether he had answered them truthfully. *Id.*

Thus, the court erred in finding that Plaintiff lacked standing as the new evidence demonstrates that Plaintiff properly showed that he would be "realistically threatened by a repetition of his experience." *Lyons*, 461 U.S. 95 at 101-102, 109. Further, Plaintiff concretely alleged that he would be subjected to the agency's challenged questions again. *See Thompson*, 278 F. Supp. 3d 227 at 250; *Haase*, 835 F. 2d 902 at 910-911; *Bierly v. Dep't of Def.*, Civ. A. No. 23-2386 at *21.

The Department's repetition of this experience - asking the three unconstitutionally vague and overbroad questions during the SAP - resulted in continuing harm to the Plaintiff as these unconstitutional questions served as the basis for the revocation of his security clearance, without which he will lose his employment and future career opportunities. This court has already found in *Greenberg I* that this type of harm, "the loss of position as a consequence of unconstitutional action[,] . . . is an injury from which the courts will afford protection." *Greenberg I,* 789 F. Supp. 430, 437. Further, the *Greenberg I* court noted that "the loss of a job is not the end of it" as irreparable injury flows not only from the individual's failure to answer questions is a manner determined to be sufficient by the agency, but also from "the intrusive nature of the compelled disclosure" of First Amendment protected activities. *Id*. at 438.

Plaintiff contends, however, that his injuries extend even further. He is presently harmed by the existence of a permanent government record containing compelled responses to unconstitutional questions. Plaintiff is presently injured because his prior compelled responses to unconstitutional questions are being used now and in all future clearance adjudication. Plaintiff will suffer irreparable and continuing harm as his First Amendment protected information is part

of a federal record that will follow him to any job to which he will apply requiring a security clearance. Thus, Plaintiff will continue to have to respond to and defend his First Amendment protected activities despite Congress prohibiting the agency from gathering and maintaining this type of information. *See* 5 U.S.C. § 552a(e)(7) (stating that an agency "shall . . . maintain no record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained  unless pertinent to and within the scope of an authorized law enforcement activity[.]"). Plaintiff's inability to escape these records detailing his First Amendment protected activities constitutes a live controversy - not a speculative future injury - and continuing harm. *See Bolger v. District of Columbia*, 510 F. Supp. 2d 86, 93 (D.D.C. 2007) (noting that the "risk of continued harm or a repeated injury" exists if a plaintiff can establish that records of his "past activities . . . *currently* exist." (emphasis in original)); *Burke,* 2024 U.S. Dist. LEXIS 126452, at *12 (finding that the plaintiff's fear of adverse consequences was not speculative as there was a causal connection between plaintiff's injury and the law's operation).

In being asked the unconstitutional questions as part of the security clearance investigation, Plaintiff's speech was compelled and it is inflicting harm. This alone confers standing in a First Amendment case. Further, Mr. Gebert faces real and immediate chilling effects that interfere with his ability to (1) respond to future investigations and (2) engage in constitutionally protected associations or speech. *See Clark v. Library of Cong.,* 242 U.S. App. D.C. 241, 750 F.2d 89, 94 (1984) ("Where the government's action inflicts a palpable injury on the individual because of his lawful beliefs, it has the direct and consequent effect of chilling his rights to freedom of belief and association."). This harm is not hypothetical as it has and will continue to occur. In other words, these First Amendment chilling effects are sufficient in and of

themselves to confer standing. *Nat'l Student Asso. v. Hershey*, 134 U.S. App. D.C. 56, 412 F.2d 1103, 1119(1969) ("To establish that there is a case or controversy *as to [him]*, [the person] must be vulnerable to the chilling effect . . ..") (emphasis in original)).

Lastly, Plaintiff notes, to the extent that the Court understood Plaintiff's counsel's statement during the June 23, 2025, hearing about the "unique" nature of the questions to mean that the questions were only asked to Mr. Gebert, this is an erroneous interpretation. *See* ECF 78 at 5. When Plaintiff's counsel stated that the questions were "unique," he was pointing out that these are questions asked solely by Defendant to its security clearance applicants. Tr. at 27-28. In other words, these questions are unique in that, to the best of Plaintiff's knowledge, no other federal agency asks them during a security clearance investigation. *See* Tr. at 27 (reflecting Plaintiff's counsel's statement that he has held a security clearance for 17 years and had never been asked about his organizational affiliations). This is problematic as Security Executive Agency Directive (SEAD)[4] 1 focuses on the standardization of the security clearance process.

The reason that Defendant is the only agency asking these questions is because these questions, which seek such broad information to include First Amendment protected information, are beyond the scope of the Questionnaire for National Security Positions or Standard Form 86 (SF-86). Therefore, they are not authorized by either Executive Order 13467 or the SEADs. This is demonstrated by the System of Records Notice that dictates what information the agency may maintain in its database about security clearance applicants. *See* ODNI-17 - Personnel Security Records: 76 FR 42739 (Jul. 19, 2011). Nowhere is First

---

[4] As Plaintiff explained in the Memorandum in Support of the Temporary Restraining Order and Preliminary Injunction, security clearance adjudications are controlled by Executive Orders, the most applicable being Executive Order 13467. *See* ECF 64-1 at 14. Executive Order 13467 appoints the Office of the Director of National Intelligence (ODNI) as the Security Executive Agent who promulgates all rules, policies, guidelines, and oversight for all security clearances issued under Executive Authority. E.O. 13467, Section 2.3. The ODNI has created the SEADs. *Id*. at Section 2.3(iii).

Amendment protected information, to include one's organizational affiliations, included on this list. *Id*. Further, as stated above, the Privacy Act further demonstrates that this information is not authorized to be maintained unless permitted by statute or the permission of the individual. *See* 5 U.S.C. § 552a(e)(7). There is no statute that authorizes the collection of First Amendment protected information in a security clearance investigation, and Mr. Gebert did not give his permission for this information to be collected. As such, questions to which the answers encompass the collection of First Amendment protected information, such as those being asked of security clearance applicants at the State Department are not authorized.

Consequently, these questions are not unique in that they were only asked to Mr. Gebert. Rather, they are unique in that the State Department is asking them of **all** security clearance applicants despite not being authorized to do so. Thus, when counsel stated that they were unique, this statement was not indicative of a position that the questions would be unlikely to be asked again. It was a clarification to the Court that no other agency asks such vague, overbroad, or unauthorized questions in their security clearance investigations.

Thus, for the foregoing reasons, Plaintiff respectfully requests that the Court reconsider its June 26, 2025, ruling dismissing Plaintiff's complaint. Granting Plaintiff's motion would allow the Court to correct a clear error and mistake and prevent manifest injustice. The Court's June 26, 2025 ruling prejudices Mr. Gebert as it is "fundamentally unfair in light of governing law." *See Leidos*, 881 F.3d 213, 217.

### D. The Court Should Reconsider its Decision as Plaintiff Has Met the Exacting Standard of Manifest Injustice

"Ultimately, the moving party has the burden to demonstrate that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied." *United States v. All Assets Held at Bank Julius, Baer & Co., Ltd.*, 315 F. Supp. 3d 90, 96 (D.D.C. 2018)

(quotation omitted). Plaintiff recognizes that the hurdle it must clear for reconsideration under rule 59(e) is a significant one. *See e.g., Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018) (describing a Rule 59(e) grant as "an extraordinary measure"). Certainly, manifest injustice is an "exceptionally narrow concept," *State v. Am. Broad. Cos., Inc.*, 12 F. Supp. 3d 30, 35 (D.D.C. 2013), that does not arise purely because a "harm may go unremedied." *Id*. However, Plaintiff meets this exacting standard here.

The harm articulated in this case is significant: Plaintiff's First Amendment rights have been violated through the gathering of information about his protected activities, which resulted in him losing his employment and his livelihood. Furthermore, as a result of this violation, any organization that can access his government records for the purposes of employment will have access to information about his First Amendment activities. This has inherently created a chilling effect as Mr. Gebert is concerned about his associations going forward. He no longer feels free, as he is constitutionally entitled to be, to associate with those of like minded belief as these associations have cost him his ability to earn a living. *See Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333, 381 (D.D.C. 2020) ("Government action rises to the level of chilling speech when it is likely to deter a person of ordinary firmness from the exercise of First Amendment rights.") (internal quotation marks and citations omitted)).

This is not a case where Plaintiff's rights were merely threatened, as in *Crawford-El v. Britton*, 863 F. Supp. 6, 8 (1994), where the court denied reconsideration because the alleged First Amendment harm was speculative. Here, Mr. Gebert's rights have been actually and repeatedly violated. That distinction makes reconsideration not only warranted, but essential**.**

Finally, the Government has put forth no argument that in enjoining them from asking the challenged questions harms them in any way. To the contrary, prohibiting these vague,

overbroad, and unauthorized questions would serve only to protect the constitutional rights of clearance applicants and ensure that the government adheres to lawful investigative procedures.

## RELIEF REQUESTED

Plaintiff respectfully requests that the Court:

1. Vacate its June 26, 2025 dismissal order;

2. Reinstate the complaint;

3. Allow the claims to proceed to adjudication on the merits.

Plaintiff does not seek reinstatement or monetary damages. He seeks only declaratory and injunctive relief designed to end the government's use of unconstitutional investigative questions and to prevent their future use against him and others.

## CONCLUSION

This Court has the authority - and the responsibility - to prevent the government from using constitutionally defective questions in clearance investigations. Reconsideration is necessary to correct clear errors, address new evidence, and ensure that federal agencies remain subject to constitutional limits.

This is not a one-off dispute. Without judicial intervention, the Department will continue to collect and retain First Amendment–protected information from thousands of clearance applicants, without oversight and in direct violation of constitutional and statutory limits.

For the foregoing reasons, Plaintiff respectfully requests that the Court reconsider its June 26, 2025, ruling dismissing Plaintiff's complaint. Granting Plaintiff's motion would allow the Court to correct clear errors and mistakes as well as consider the new evidence now available.

Dated: July 21, 2025                      Respectfully submitted,


                                          By: */s/ Brett O'Brien*
                                          BRETT O'BRIEN, ESQ
                                          DC Bar License #: 1753983
                                          NATIONAL SECURITY LAW FIRM, LLC
                                          1250 Connecticut Avenue NW
                                          Washington, DC 20036
                                          Phone: (202) 600-4996
                                          Fax:    (202) 545-6318