UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MATTHEW GEBERT, | |
| Plaintiff, | |
| v. | Civil Action No. 22-2939 (DLF) |
| DEPARTMENT OF STATE, | |
| Defendant. | |
| MATTHEW GEBERT, | |
| Plaintiff, | |
| v. | Civil Action No. 25-2180 (DLF) |
| DEPARTMENT OF STATE, | |
| Defendant. | |
| ANNA V. GEBERT, | |
| Plaintiff, | |
| v. | Civil Action No. 25-2181 (DLF) |
| DEPARTMENT OF STATE, | |
| Defendant. | |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTIONS TO DISMISS AND FOR SUMMARY
JUDGMENT AND OPPOSITION TO MOTION FOR RECONSIDERATION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... iii

BACKGROUND ................................................................................................................. 1

LEGAL STANDARDS ........................................................................................................ 5

I.     Reconsideration............................................................................................................. 5

II.    Failure to State a Claim............................................................................................... 5

III.   Summary Judgment .................................................................................................... 5

ARGUMENT ....................................................................................................................... 6

I.     Mr. Gebert is Not Entitled to Reconsideration .................................................... 6

     A.    Mr. Gebert's Insistence that This Court Failed to Understand that He
            Challenges Only the Investigative Process, Does Not Merit Reconsideration ....... 6

     B.    Mr. Gebert's Argument that the Court Erred in Finding that the Relief Sought
            Would Necessitate Reinstating His Clearance Does Not Merit Reconsideration... 9

     C.    Mr. Gebert's Ostensible "New Evidence" Does Not Merit Reconsideration ....... 12

II.    Collateral Estoppel Precludes Mr. and Mrs. Gebert's New Claims ................................ 14

III.   Mr. and Mrs. Gebert Do Not Plausibly Allege That Any of the Ostensible Privacy Act
       Non-Access Violations Were Intentional or Willful ......................................... 17

IV.   Mrs. and Mrs. Geberts' "Signed Privacy Act Statements" Claims Warrant Dismissal.... 20

     A.    The Privacy Act Did Not Require the Department to Obtain "Signed Privacy
            Act Statements" From Mr. and Mrs. Gebert ....................................................... 20

     B.    Any Failure to Obtain Signed Statements Was Harmless ................................... 22

V.    The Department Had Authority to Collect Information About Mr. and Mrs. Gebert's
       First Amendment Activities as Part Mr. Gebert's Security Clearance Investigation ....... 23

VI.   Mr. and Mrs. Gebert Does Not Plausibly Allege Privacy Act "Routine Use"
       Violations .................................................................................................................. 25

VII.  Mrs. Gebert Does Not Plausibly Allege that Any Records About Her Are Retrievable
       and Actually Retrieved from a System of Records By Her Name or Personal
       Identifier .................................................................................................................... 27

VIII.   The Information About Mr. Gebert that the Department Collected Fell Within the
        Scope of a System of Records Notice ................................................................ 28

IX.     Mrs. Gebert Does Not Plausibly Allege an "Adverse Effect" On Her ........................... 32

        A.      Mrs. Gebert Does Not Plausibly Allege that Loss of Her Husband's Income
                Constitutes an "Adverse Effect" on Her ................................................. 32

        B.      Mrs. Gebert Does Not Plausibly Allege that Reputational Harm Constitutes an
                "Adverse Effect" on Her ....................................................................... 34

X.      Mrs. Gebert Does Not Plausibly Allege "Actual Damages" ........................................... 36

XI.     The Access Claims Fail Because the Records Requests are Unreasonably
        Burdensome ............................................................................................................. 40

        CONCLUSION .......................................................................................................... 45

# TABLE OF AUTHORITIES

**Cases**

*Ahmed v. Kable*,
  Civ. A. No. 21-3333 (TJK), 2023 WL 6215024 (D.D.C. Sept. 25, 2023) ............................... 35

*Am. Fed'n of Gov't Emps. v. Dep't of Com.*,
  907 F.2d 203 (D.C. Cir. 1990) ...................................................................... 41, 43, 44

*Anderson v. Watts*,
  138 U.S. 694 (1891) .......................................................................................... 13

*Asbill v. Housing Auth. of Choctaw Nation*,
  726 F.2d 1499 (10th Cir. 1984) ....................................................................... 35

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................... passim

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
  575 U.S. 138 (2015) .......................................................................................... 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................................... 35

*Biden v. IRS*,
  752 F. Supp. 3d 97 (D.D.C. 2024) .................................................................... 37

*Bishop v. Wood*,
  426 U.S. 341 (1976) .......................................................................................... 35

*Brayton v. Off. of Tr. Rep.*,
  641 F.3d 521 (D.C. Cir. 2011) ............................................................................ 5

*Brownback v. King*,
  592 U.S. 209 (2021) .......................................................................................... 14

*Cardamone v. Cohen*,
  241 F.3d 520 (6th Cir. 2001) ............................................................................ 23

*Conte v. Justice*,
  996 F.2d 1398 (2d Cir. 1993) ............................................................................ 17

*Cortes v. NLRB*,
  145 F.4th 57 (D.C. Cir. 2025) ...................................................................... 10, 11

**Cases (cont.)**

*Ctr. for Immigr. Stud. v. USCIS*,
   628 F. Supp. 3d 266 (D.D.C. 2022) ............................................................ 42, 44, 45

*Ctr. for the Study of Servs. v. Dep't of Health & Hum. Servs.*,
   874 F.3d 287 (D.C. Cir. 2017) ........................................................................... 41

*David v. Nemerofsky*,
   41 A.2d 838 (D.C. 1945) ................................................................................... 15

*Davis v. Buchanan Cnty.*,
   5 F.4th 907 (8th Cir. 2021) ............................................................................... 36

*deLeon v. Wilkie*,
   Civ. A. No. 19-1250 (JEB), 2020 WL 210089 (D.D.C. Jan. 14, 2020)................... 37

*Dep't of Navy v. Egan*,
   484 U.S. 518 (1988) ............................................................................................ 3

*Dickson v. Off. of Pers. Mgmt.*,
   828 F.2d 32 (D.C. Cir. 1987) ............................................................................. 34

*Doe v. Chao*,
   540 U.S. 614 (2004)........................................................................................... 37

*Doe v. Cheney*,
   885 F.2d 898 (D.C. Cir. 1989) ........................................................................... 35

*Doe v. Stephens*,
   851 F.2d 1457 (D.C. Cir. 1988) ......................................................................... 18

*EEOC v. Waffle House, Inc.*,
   534 U.S. 279 (2002)........................................................................................... 38

*Elhady v. Kable*,
   993 F.3d 208 (4th Cir. 2021) ............................................................................. 35

*Eubanks v. FDIC*,
   977 F.2d 166 (5th Cir. 1992) ............................................................................. 15

*Exxon Shipping Co. v. Baker*,
   554 U.S. 471 (2008)..................................................................................... 5, 7, 9

*FAA v. Cooper*,
   566 U.S. 284 (2012)..................................................................................... passim

**Cases (cont.)**

*Feds for Freedom v. Dep't of Def.*,
  Civ. A. No. 23-3607 (TJK), 2025 WL 522017 (D.D.C. Feb. 18, 2025)................. 42, 43, 44, 45

*Feld v. Feld*,
  688 F.3d 779 (D.C. Cir. 2012) ......................................................................................... 13

*Felter v. Salazar*,
  679 F. Supp. 2d 1 (D.D.C. 2010) ..................................................................................... 17

*Ferris v. Cuevas*,
  118 F.3d 122 (2d Cir. 1997).............................................................................................. 17

*Firestone v. Firestone*,
  76 F.3d 1205 (D.C. Cir. 1996) ........................................................................................... 5

*Fleck v. Dep't of Veterans Affs.*,
  596 F. Supp. 3d 24 (D.D.C. 2022) .................................................................................... 37

*Freedom Watch v. Dep't of State*,
  925 F. Supp. 2d 55 (D.D.C. 2013) .............................................................................. 44, 45

*Garnes v. Gulf & W. Mfg. Co.*,
  789 F.2d 637 (8th Cir. 1986) ...................................................................................... 38, 39

*Gen. Tel. Co. of Nw. v. EEOC*,
  446 U.S. 318 (1980) .......................................................................................................... 38

*Haig v. Agee*,
  453 U.S. 280 (1981)........................................................................................................... 32

*Haleem v. Dep't of Def.*,
  Civ. A. No. 23-1471 (JEB), 2024 WL 230289 (D.D.C. Jan. 22, 2024).................................. 41

*Harrison v. Bowen*,
  815 F.2d 1505 (D.C. Cir. 1987) ........................................................................................ 35

*Hassan v. Postal Serv.*,
  842 F.2d 260 (11th Cir. 1988) .......................................................................................... 39

*Hawaii v. Standard Oil Co. of Cal.*,
  405 U.S. 251 (1972)........................................................................................................... 38

*Hill v. Air Force*,
  795 F.2d 1067 (D.C. Cir. 1986) ........................................................................................ 41

**Cases (cont.)**

*Hitaffer v. Argonne Co.*,
   183 F.2d 811 (D.C. Cir. 1950) .......................................................................... 38

*Horsey v. Dep't of State*,
   170 F. Supp. 3d 256 (D.D.C. 2016) ................................................................... 22

*Hoska v. Dep't of Army*,
   677 F.2d 131 (D.C. Cir. 1982) .......................................................................... 31

*Hudson v. Lazarus*,
   217 F.2d 344 (D.C. Cir. 1954) .......................................................................... 38

*Huynh v. Carlucci*,
   679 F. Supp. 61 (D.D.C. 1988) ......................................................................... 31

*In re JMV Holdings, LLC*,
   No. 23-40373, 2024 WL 885126 (5th Cir. Mar. 1, 2024) .................................. 15

*In re Off. of Pers. Mgmt. Data Sec. Breach Litig.*,
   928 F.3d 42 (D.C. Cir. 2019) ............................................................................ 18

*Joyner v. Morrison & Foerster LLP*,
   140 F.4th 523 (D.C. Cir. 2025) ......................................................................... 21

*Kareem v. Haspel*,
   986 F.3d 859 (D.C. Cir. 2021) .......................................................................... 11

*Kassman v. Am. Univ.*,
   546 F.2d 1029 (D.C. Cir. 1976) .................................................................... 37, 40

*Keene Corp. v. United States*,
   508 U.S. 200 (1993) .......................................................................................... 13

*Kelley v. FBI*,
   67 F. Supp. 3d 240 (D.D.C. 2014) ..................................................................... 18

*Klayman v. Rao*,
   49 F.4th 550 (D.C. Cir. 2022) ........................................................................... 14

*Langeman v. Garland*,
   88 F.4th 289 (D.C. Cir. 2023) ........................................................................... 33

*Lee v. Garland*,
   120 F.4th 880 (D.C. Cir. 2024) ................................................................. 3, 7, 8, 9

**Cases (cont.)**

*Lutz v. United States,*
   Civ. A. No. 06-1177, 2007 WL 1954438 (D.D.C. July 5, 2007) ............................................. 19

*Madison v. Colby,*
   348 N.W.2d 202 (Iowa 1984) ............................................................................................. 39

*Maydak v. United States,*
   630 F.3d 166 (D.C. Cir. 2010) ........................................................................................... 18

*McDaniel v. McDaniel,*
   201 N.E.2d 215 (Ind. 1964) ............................................................................................... 39

*McKenna v. Austin,*
   134 F.2d 659 (D.C. Cir. 1943) ........................................................................................... 38

*Medina v. District of Columbia,*
   643 F.3d 323 (D.C. Cir. 2011) ..................................................................................... 37, 40

*Milner v. Dep't of Navy,*
   562 U.S. 562 (2011) ........................................................................................................... 24

*Miskunas v. Union Carbide Corp.,*
   399 F.2d 847 (7th Cir. 1968) ............................................................................................. 39

*Mittleman v. Off. of Pers. Mgmt.,*
   76 F.3d 1240 (D.C. Cir. 1996) ........................................................................................... 24

*Mobley v. CIA,*
   806 F.3d 568 (D.C. Cir. 2015) ........................................................................................... 28

*Molerio v. FBI,*
   749 F.2d 815 (D.C. Cir. 1984) ........................................................................................... 34

*Morgan Drexen, Inc. v. CFPB,*
   785 F.3d 684 (D.C. Cir. 2015) ........................................................................................... 34

*Morley v. CIA,*
   508 F.3d 1108 (D.C. Cir. 2007) ......................................................................................... 24

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,*
   429 U.S. 274 (1977) ........................................................................................................... 38

*Muldrow v. City of St. Louis,*
   601 U.S. 346 (2024) ........................................................................................................... 21

**Cases (cont.)**

*Mullan v. Torrance,*
    22 U.S. (9 Wheat.) 537 (1824) ............................................................................. 13

*Nagel v. Dep't of Health, Educ. & Welfare,*
    725 F.2d 1438 (D.C. Cir. 1984) ............................................................................. 24

*Nat'l Sec. Couns. v. CIA,*
    969 F.3d 406 (D.C. Cir. 2020) ............................................................................... 41

*Nat'l Treasury Emps. Union v. Von Raab,*
    489 U.S. 656 (1989) .............................................................................................. 31

*Nolles v. State Comm. for Reorg. of Sch. Dists.,*
    524 F.3d 892 (8th Cir. 2008) ................................................................................ 16

*Nurriddin v. Bolden,*
    818 F.3d 751 (D.C. Cir. 2016) ............................................................................... 28

*Ovanova, Inc. v. Dep't of Agric.,*
    Civ. A. No. 24-2769 (JEB), 2025 WL 343118 (D.D.C. Jan. 30, 2025)................... 34

*Paige v. DEA,*
    818 F. Supp. 2d 4 (D.D.C. 2010) .......................................................................... 27

*Palmieri v. United States,*
    896 F.3d 579 (D.C. Cir. 2018) ............................................................................... 24

*Parklane Hosiery Co. v. Shore,*
    439 U.S. 322 (1979) .............................................................................................. 15

*Pollard v. Cockrell,*
    578 F.2d 1002 (5th Cir. 1978) ........................................................................ 16, 17

*Porzecanski v. Azar,*
    943 F.3d 472 (D.C. Cir. 2019) ............................................................................... 13

*Power the Future v. White House Council on Env't Quality,*
    Civ. A. No.24-1942 (RC), 2025 WL 2206947 (D.D.C. Aug. 4, 2025) ............. 41, 43

*Pretzman v. Mayorkas,*
    Civ. A. No. 23-2577, 2024 WL 3887384 (D.D.C. Aug. 20, 2024) .......................... 41

*Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex.,*
    740 F.3d 195 (D.C. Cir. 2014) ............................................................................... 24

**Cases (cont.)**

*Rattigan v. Holder*,
  689 F.3d 764 (D.C. Cir. 2012) ............................................................................. 31

*Rockwell Int'l Corp. v. United States*,
  549 U.S. 457 (2007) ............................................................................................. 13

*Royal Canin U.S.A., Inc. v. Wullschleger*,
  604 U.S. 22 (2025) ............................................................................................... 13

*Rtskhiladze v. Mueller*,
  110 F.4th 273 (D.C. Cir. 2024) ............................................................................ 18

*Rudder v. District of Columbia*,
  Civ. A. No. 92-2881, 1994 WL 495767 (D.D.C. Sept. 6, 1994) ........................... 17

*Sack v. Dep't of Def.*,
  823 F.3d 687 (D.C. Cir. 2016) .............................................................................. 24

*Scott v. Harris*,
  550 U.S. 372 (2007) ............................................................................................... 5

*Sheptock v. Fenty*,
  707 F.3d 326 (D.C. Cir. 2013) .............................................................................. 15

*Sherven v. Nat'l Archives & Recs. Admin.*,
  Civ. A. No. 23-3903 (CRC), 2024 WL 519801 (D.D.C. Feb. 2, 2024) .................. 41

*Snowden v. D. C. Transit Sys., Inc.*,
  454 F.2d 1047 (D.C. Cir. 1971) ............................................................................ 38

*Solomon v. Dechert LLP*,
  Civ. A. No. 22-3137 (JEB), 2023 WL 6065025 (D.D.C. Sept. 18, 2023) ............. 19

*Stehney v. Perry*,
  907 F. Supp. 806 (D.N.J. 1995) ............................................................................ 22

*Stewart v. Dutra Const. Co.*,
  543 U.S. 481 (2005) ............................................................................................. 40

*Sussman v. Marshals Serv.*,
  494 F.3d 1106 (D.C. Cir. 2007) ................................................................. 17, 27, 28

*Taylor v. Blakey*,
  Civ. A. No. 03-0173, 2006 WL 279103 (D.D.C. Feb. 6, 2006) ............................ 17

**Cases (cont.)**

*Thompson v. Dep't of State,*
     400 F. Supp. 2d 1 (D.D.C. 2005) ..................................................................... 18, 33

*TIG Ins. Co. v. Rep. of Argentina,*
     967 F.3d 778 (D.C. Cir. 2020) ............................................................................. 13

*Tijerina v. Walters,*
     821 F.2d 789 (D.C. Cir. 1987) ............................................................................. 32

*TransUnion LLC v. Ramirez,*
     594 U.S. 413 (2021) ....................................................................................... 10, 11

*Trent v. Dep't of Homeland Sec.,*
     Civ. A. No. 18- 2591 (ABJ), 2020 WL 1429881 (D.D.C. Mar. 24, 2020) ............................ 41

*Van Vallis v. Transcontinental Insurance Co.,*
     Civ. A. No. 07-0026, 2008 WL 11349758 (D. Mont. Aug. 19, 2008) ...................................... 39

*Vasquez v. Bridgestone/Firestone, Inc.,*
     325 F.3d 665 (5th Cir. 2003) ............................................................................... 17

*Watkins Law & Advocacy, PLLC v. Dep't of Just.,*
     78 F.4th 436 (D.C. Cir. 2023) ............................................................................. 42

*Wolf v. CIA,*
     569 F. Supp. 2d 1 (D.D.C. 2008) ......................................................................... 43

*Yang v. Fund Mgmt. Int'l, LLC,*
     847 F. App'x 419 (9th Cir. 2021) ......................................................................... 16

**Statutes**

5 U.S.C. §552a ........................................................................................................ 2, 3, 4

5 U.S.C. §552a(e)(3) ......................................................................................... passim

5 U.S.C. §552a(e)(7) ......................................................................................... passim

5 U.S.C. § 552(a)(3)(A) .......................................................................................... 40

5 U.S.C. § 552a(b) ......................................................................................... 25, 26, 27

5 U.S.C. § 552a(b)(3) ............................................................................................... 4

5 U.S.C. § 552a(b)(7) ............................................................................................... 4

**Statutes (cont.)**

5 U.S.C. § 552a(e)(4) ................................................................................ 29

5 U.S.C. § 552a(f)(3) ................................................................................ 41

5 U.S.C. § 552a(g)(1)(D) ............................................................ 17, 22, 32, 36

5 U.S.C. § 552a(g)(4) ................................................................................ 18

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................ 5

Fed. R. Civ. P. 56(a) ................................................................................ 5

Fed. R. Civ. P. 59(e) ................................................................................ 5

Fed. R. Evid. 201(b)(2) ................................................................................ 33

**Regulations**

22 C.F.R. § 171.22(b) ................................................................................ 41

**Other Authorities**

18A Charles A. Wright et al., Federal Practice and Procedure (3d ed. May 2025 update) .......... 15

Exec. Order 12,968,
    60 Fed. Reg. 40,234 (Aug. 2, 1995) ................................................................ 31

Privacy Act of 1974; System of Records,
    83 Fed. Reg. 28,058, 28,058 (June 15, 2018) ................................................... 29, 30

Defendant Department of State (the "Department"), by and through undersigned counsel, respectfully files this memorandum of points and authorities in support of its motions to dismiss Plaintiffs Matthew and Anna V. Geberts' complaints in their new lawsuits, ECF No. 1, Civ. A. No. 25-2180; ECF No. 1, Civ. A. No. 25-2181, and for partial summary judgment, and opposition to Mr. Gebert's motion for reconsideration in his original suit, ECF No. 81, Civ. A. No. 22-2939.

After this Court dismissed Mr. Gebert's pleadings for a second time, three things happened. First, Mr. Gebert moved for reconsideration. Second, he also filed a new lawsuit raising the same claims that this Court previously rejected on the merits at an earlier stage of this suit. He did not disclose this case on the civil cover sheet for his new suit, and indeed, affirmatively represented that there are no related cases, so the case was assigned to another Judge. Third, his wife filed her own suit raising three of the exact same claims, challenging the process by which the Department investigated her husband's background and asserting her husband's harms as her own. Like her husband, she represented that no related cases exist, so the case was assigned to a different Judge.

There comes a point where spirited advocacy crosses over to vexatious litigation. Wherever that line lies, Mr. and Mrs. Gebert have crossed it. Filing two new suits, in his name and his wife's, to relitigate claims that this Court already has rejected on the merits, without disclosing this case's existence—and thus, drawing a different Judge—is not appropriate. This Court should deny Mr. Gebert's motion for reconsideration, then dismiss his and his wife's new suits on issue preclusion grounds. Should the Court reach the merits of their claims, it should dismiss their non-access claim for failure to state a claim and grant the Department summary judgment as to their access claims.

## BACKGROUND

Given this Court's familiarity with these cases, the Department recites only those facts that pertain to the instant motions. Mr. Gebert is a former Department employee who lost his security clearance after the Department discovered that he had concealed and omitted information about

his extensive white nationalist activities and associations during his security clearance background reinvestigation. *See* Mem. Op. at 11, ECF No. 47. Mr. Gebert sued, challenging the revocation of his security clearance. *Id.* He later amended his complaint. ECF No. 32. This Court dismissed his amended complaint, concluding that he did not plausibly allege that the Department revoked his clearance for any reason other than what the Department said the reason was—his dishonesty. *Id.*

Mr. Gebert again moved for leave to amend his pleadings. ECF No. 48. His proposed new claims largely mirrored the claims this Court had just rejected, with only minor cosmetic changes, but he did raise six new claims challenging the process by which the Department investigated his background. *Id.* Two of his six new claims arose under the Constitution, while the remaining four arose under the Privacy Act. *Id.* ¶¶ 181-98, 229-62. The Privacy Act claims were styled as follows:

**COUNT XI**
**Violation of the Privacy Act, 5 U.S.C. §552a (Defendant's Failure to Obtain a Signed Privacy Act Statement)**

**COUNT XII**
**Violation of the Privacy Act, 5 U.S.C. §552a(e)(3) (Collecting Information that is not contained in the State Department's System of Records Notice Act (SORN) Volume 83, Number 116, Public Notice 10450; Page 28058)**

**COUNT XIII**
**Violation of the Privacy Act, 5 U.S.C. §552a(e)(7) (Collecting First Amendment Information Without Proper Authority)**

**COUNT XIV**
**Improper Sharing of Information Under the Routine Use Provision of 5 U.S.C. §552a(e)(3) and 5 U.S.C. §552a(e)(7)**

Prop. 2d Am Compl. at 41-42, 44-45, ECF No. 49. The Court denied leave to amend the complaint to raise these four Privacy Act counts on the ground that any such amendments would be futile. *See* Mem. Op. & Order 9-10, ECF No. 54. The Court explained that these counts could not survive a motion to dismiss because they failed to state a claim to relief. *Id.* The Court allowed Mr. Gebert

to raise the two constitutional challenges to the process by which the Department had investigated his background. *Id.* at 10. Mr. Gebert later moved for a preliminary injunction. ECF No. 64.

This Court dismissed Mr. Gebert's second amended complaint and denied his motion for a preliminary injunction. *See* Mem. Op. & Order, ECF No. 78. The Court concluded that most of the relief he sought—including backpay, reinstatement, and an injunction barring the Department's Security Appeals Panel (the "Panel") from considering his answers to the challenged background reinvestigation questions during an upcoming hearing on Mr. Gebert's administrative challenge to his security clearance revocation—are nonjusticiable under *Department of Navy v. Egan*, 484 U.S. 518 (1988), and *Lee v. Garland*, 120 F.4th 880 (D.C. Cir. 2024). *Id.* at 4. The Court concluded that his request for an injunction prohibiting the Department from asking him the challenged questions again in the future was justiciable, but that he lacked standing to seek such relief because he failed to show a sufficiently imminent and substantial risk that the Department ever would ask him these questions again. *Id.* at 4-5. The next day, the Panel held a hearing on Mr. Gebert's challenge to the revocation of his clearance, *see* Rogers Decl., ECF No. 81-2, and affirmed the decision soon after.

Mr. Gebert moved for reconsideration of the dismissal of his second amended complaint. *See* Mot. Reconsideration, ECF No. 1. At around the same time, he also filed a new lawsuit raising access claims under the Freedom of Information Act ("FOIA") and Privacy Act challenging the Department's response to his request for certain records about himself. *See* Compl. ¶¶ 59-78, ECF No. 1, Civ. A. No. 25-2180. He also raised the following four Privacy Act non-access claims:

**COUNT III**
**Violation of the Privacy Act, 5 U.S.C. § 552a (Defendant's Failure to Obtain a Signed Privacy Act Statement)**

**COUNT IV**
**Violation of the Privacy Act, 5 U.S.C. § 552a(e)(3) (Collecting Information that is not contained in the ODNI's System of Records Notice Act (SORN), ODNI-17, 89 FR 54,077)**

**COUNT V**
**Violation of the Privacy Act, 5 U.S.C. § 552a(e)(7) (Collecting First Amendment Information Without Proper Authority)**

**COUNT VI**
**Improper Sharing of Information Under the Routine Use Provision of 5 U.S.C. § 552a(b)(3) and 5 U.S.C. § 552a(b)(7)**

*Id.* at 21-22, 24-25-26. These are the exact same four claims that this Court previously concluded failed to state a claim to relief. *See* Prop. 2d Am Compl. at 41-42, 44-45, ECF No. 49, Civ. A. No. 22-2939. Mr. Gebert failed to disclose his existing suit on the civil cover sheet that accompanied his new complaint. When asked about "related case(s) if any," Mr. Gebert's counsel checked the "No" box and signed the sheet. *See* Civil Cover Sheet at 2, ECF No. 1-7, Civ. A. No. 25-2180.

Mrs. Gebert, meanwhile, represented by her husband's counsel, filed a suit of her own, also raising FOIA and Privacy Act access claims challenging the Department's response to her records request. *See* Compl. ¶¶ 32-51, ECF No. 1, Civ. A. No. 25-2181. Like Mr. Gebert, she also raised three Privacy Act non-access claims challenging the process by which the Department investigated her husband's background, asserting the harms that her husband had experienced as her own:

**COUNT III**
**Violation of the Privacy Act, 5 U.S.C. § 552a (Defendant's Failure to Obtain a Signed Privacy Act Statement)**

**COUNT IV**
**Violation of the Privacy Act, 5 U.S.C. § 552a(e)(7) (Collecting First Amendment Information Without Proper Authority)**

**COUNT V**
**Improper Sharing of Information Under the Routine Use Provision of 5 U.S.C. § 552a(b)(3) and 5 U.S.C. § 552a(b)(7)**

*Id.* at 11, 13-14. And like her husband, she failed to disclose the prior case on the civil cover sheet accompanying her complaint. When asked about "related case(s) if any," her counsel checked the "No" box and signed the sheet. *See* Civil Cover Sheet at 2, ECF No. 1-6, Civ. A. No. 25-2181.

Upon discovering the initial case's existence, the Court in the two new cases deemed Mr. and Mrs. Gebert's cases related to Mr. Gebert's initial case and transferred them to this Court. *See* Min. Orders (Aug. 25, 2025), Civ. A Nos. 25-2180 & 25-2181.

## LEGAL STANDARDS

### I.    Reconsideration

A court has discretion to "alter or amend a judgment." Fed. R. Civ. P. 59(e). The court may exercise this discretion based on an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). A motion to alter or amend the judgment "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008).

### II.    Failure to State a Claim

Dismissal is proper for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). This pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### III.    Summary Judgment

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "facts must be viewed in the light most favorable to the nonmoving party," but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of Tr. Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

**ARGUMENT**

Mr. Gebert is not entitled to reconsideration of this Court's order dismissing for lack of subject-matter jurisdiction his two challenges to the process by which the Department investigated his background. Further, issue preclusion bars the Privacy Act non-access claims that he and Mrs. Gebert raise in their new suits. Alternatively, their Privacy Act non-access claims merit dismissal for failure to state a claim. Finally, the Department is entitled to summary judgment on their FOIA and Privacy Act access claims, as their records requests are unreasonably burdensome.

## I.    <u>Mr. Gebert is Not Entitled to Reconsideration</u>

This Court should not reconsider its dismissals of Mrs. Gebert's challenges to the process by which the Department investigated his background. He argues that reconsideration is proper because (1) this Court misunderstood that he challenges only the investigative process, not the clearance denial itself, (2) the relief that he seeks would not require reinstating his clearance, and (3) new evidence—namely, certain questions posed to him during the Panel hearing—undermine this Court's reasoning. These three arguments lack merit and do not warrant reconsideration.

### A.    **Mr. Gebert's Insistence that This Court Failed to Understand that He Challenges Only the Investigative Process, Does Not Merit Reconsideration**

Mr. Gebert's insistence that "the Court misapprehended the nature of the claims by treating them as a challenge to the clearance outcome rather than a constitutional challenge to the investigative process," Pl.'s Mot. at 1, fails for two reasons. First, this argument merely repackages arguments that Mr. Gebert previously raised, which is an inappropriate basis for reconsideration. Second, and in any event, this Court understood Mr. Gebert's claims, but found them unpersuasive.

*First*, Mr. Gebert's assertion that this Court misunderstood the nature of his claims merely repackages arguments that he previously raised in his motion to dismiss and preliminary injunction briefing. In moving for a preliminary injunction, for example, Mr. Gebert emphasized that he

"wishes to reaffirm that he is not challenging the Department's revocation of his clearance. He is, instead, challenging the processes used to gather information as part of the security clearance investigation." Pl.'s Mem. Supp. Mot. PI at 24, ECF No. 64-1. He reiterated this point in opposing the Department's motion to dismiss, distinguishing "two separate and distinct arguments," namely, "(1) a challenge of the security clearance revocation, and (2) a challenge of the processes utilized by the Defendant in reinvestigating his clearance," and again emphasizing that he "solely argues the latter." Pl.'s Opp'n at 4, ECF No. 68-1. He stressed that he "reaffirms that the sole claims he makes by the Plaintiff in this case [sic] are that the process utilized by the Defendant during his security clearance reinvestigation are unconstitutional." *Id.* at 5. And in replying in support of his preliminary injunction motion, he stressed that he challenges only "Defendant's security clearance reinvestigation process," not "the revocation of the clearance." Pl.'s Reply at 10, ECF No. 10.

Accordingly, Mr. Gebert's insistence that this Court failed to appreciate that he challenges only the investigative process, not the denial of his clearance, merely repackages an argument that he has made from the very beginning. And contrary to his assertion, the Court already addressed that argument, concluding that some of his claims in fact challenge the clearance revocation itself despite his attempt to characterize them as challenges to the investigative process, and that he lacks standing to raise those claims of his that do indeed challenge the investigative process. *See* Mem. Op. & Order at 4-5 (June 26, 2025). Because this Court already has considered and rejected Mr. Gebert's argument, it does not warrant reconsideration. *See Exxon Shipping*, 554 U.S. at 486 n.5.

*Second*, and regardless, this Court did not misunderstand the nature of Mr. Gebert's claims. To the contrary, the Court's decision makes clear that it understood Mr. Gebert's characterization of his claims, but concluded that he mischaracterized his claims in certain respects and that in other respects, his claims fail even accepting his characterization of them. In *Lee v. Garland*, 120 F.4th

880, 893 (D.C. Cir. 2024), the D.C. Circuit explained that a plaintiff can challenge the investigative process, rather than the loss of his clearance itself, if his "alleged injur[y] . . . exist[s] regardless of how the government might have resolved any particular application." *Lee* further explained that if a plaintiff seeks "reinstatement, backpay, and compensatory damages from his termination," any such relief "flow[s] inexorably from the revocation decision" itself. *Id.* at 894; *see also id.* at 885 (claims were nonjusticiable because the plaintiff "sought reinstatement, backpay, and damages").

Applying *Lee*, this Court concluded that Mr. Gebert's claims for backpay and reinstatement were "inseparable from the Department's decision to revoke his security clearance" given that his "job requires an active security clearance," meaning that "his removal flowed inexorably from the revocation decision.'" Mem. Op. & Order at 4 (June 26, 2025) (quoting *Lee*, 120 F.4th at 894). The Court further concluded that Mr. Gebert's claim for "an injunction preventing the Security Appeal Panel from considering [his] answers to the allegedly unconstitutional questions" was "not 'discrete from the revocation decision.'" *Id.* That was so, the Court explained, "[b]ecause those answers to the challenged questions were the sole basis for revoking [his] security clearance," meaning that "granting such relief would necessarily reverse the Department's determination and, by extension, reinstate his security clearance." *Id.* Finally, the Court recognized that Mr. Gebert's claim for "an injunction preventing the Department from asking him the challenged questions in any future clearance investigation" did indeed challenge the investigative process rather than the revocation itself, but concluded that he lacked standing to raise such a claim, as he failed to show a sufficiently imminent and substantial risk that he would be asked the three challenged questions again. *Id.* at 4-5. This Court understood Mr. Gebert's characterization of his claims, but largely rejected his characterization of his claims, and otherwise concluded that his claims fail even as he characterizes them. The Court's analysis was correct, and plainly does not merit reconsideration.

**B.      Mr. Gebert's Argument that the Court Erred in Finding that the Relief Sought Would Necessitate Reinstating His Clearance Does Not Merit Reconsideration**

Equally unavailing is Mr. Gebert's argument that "the Court erred in finding that the relief sought would necessarily reinstate [his] clearance." Pl.'s Mem. at 1. As explained above, the Court correctly concluded that most of the relief that Mr. Gebert sought is inseparable from the clearance revocation decision, and to the extent the relief that he sought was separable from the revocation decision, he lacked standing to raise it. *See supra* § I.A. In an attempt to evade the Court's analysis, Mr. Gebert points to language in his prayer for relief generically requesting "such other relief as the Court deems just and proper." 2d Am. Compl. at 22, ECF No. 59. And he "now clarifies that he seeks the following remedies," ostensibly "to eliminate any doubt" about what he wants:

1. A declaratory judgment that the three challenged questions violate the First Amendment and the Privacy Act;

2. An injunction barring the Department from continuing to ask these questions in any future clearance investigations; and

3. An order sealing or purging Mr. Gebert's responses to the unconstitutional questions from further adjudicative use.

Pl.'s Mot. at 13. But to the extent that Mr. Gebert "now clarifies that he seeks [these] remedies," *id.*, that only underscores that he did not seek them previously. Indeed, he previously discussed his prayer for relief's generic "such other relief as the Court deems just and proper" language without ever mentioning the first or third forms of relief that he now seeks, i.e., a declaration that the three challenged questions violate the First Amendment and an order sealing or purging his responses to these questions from further adjudicative use. *See* Pl.'s Opp'n at 9-10, ECF No. 68-1; Pl.'s Reply at 10, ECF No. 73. The fact that he requests these three forms of relief for the first time in moving for reconsideration is a sufficient basis for denial. *See Exxon Shipping*, 554 U.S. at 486 n.5.

Even putting this defect aside, these three requests for relief fail to save Mr. Gebert's claims because he lacks standing to pursue them. Mr. Gebert lacks standing to seek these three forms of

relief for the same reason that this Court concluded he lacks standing to seek an injunction barring the Department from asking him the challenged questions again in the future: he fails to establish "a 'sufficiently imminent and substantial' risk" that the Department will ask him the challenged questions again. Mem. Op. & Order at 4 (June 26, 2025) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021)). Each of the three forms of relief Mr. Gebert now seeks is analytically indistinguishable from the relief that this Court held he lacks standing to pursue, i.e., an injunction prohibiting the Department from asking him the challenged questions again. Indeed, the second and third forms of relief that Mr. Gebert now seeks merely restate using slightly different language his request for an order prohibiting the Department from asking him the three challenged questions.

Mr. Gebert also lacks standing to seek a declaration that the challenged questions violate the First Amendment. A request for a declaratory judgment gives rise to a live case or controversy within a federal court's jurisdiction only where "the court's judgment will require the defendant to act in a way that will adversely affect its own interests and, in that way, have real meaning for the parties." *Cortes v. NLRB*, 145 F.4th 57, 62 (D.C. Cir. 2025) (cleaned up). If "the declaratory judgment [that the plaintiff] seek[s] would have no real-world consequences or real meaning for the parties," then the plaintiff lacks standing to pursue it. *Id.* at 62-63 (quotation marks omitted). If "answering that question would not affect any concrete interest of either party," then a request for declaratory relief cannot give rise to standing. *Id.* at 63. "Under Article III, the parties must have something beyond a debate of law to win or lose." *Id.* The question thus "is not whether the parties agree on every sub-issue in the case, but whether the resolution of any of those issues would create a judgment that adversely affects one party's concrete interests and benefits the other's." *Id.*

These settled principles foreclose Mr. Gebert's request for a declaration that the challenged questions are unlawful. Any such declaration "would have no real-world consequences or real

meaning for the parties," *Cortes*, 145 F.4th at 63, given Mr. Gebert's failure to demonstrate "a 'sufficiently imminent and substantial' risk" that the Department will ask him the three challenged questions again, Mem. Op. & Order at 4 (June 26, 2025) (quoting *TransUnion*, 594 U.S. at 435). In the absence of any tangible consequences for Mr. Gebert, a declaration that the three challenged questions violate the First Amendment is a purely academic matter, an answer to "a debate of law," and thus is insufficient to confer standing on him. *See Cortes*, 145 F.4th at 63.

Last, Mr. Gebert argues that "the Court's finding that the relief here was not discrete from the revocation decision is factually incorrect," Pl.'s Mot. at 14, but again, mere disagreement with this Court's reasoning is not a valid basis for reconsideration. *See supra* § I.A. In any event, the Court correctly concluded that precluding the Department from considering Mr. Gebert's answers to the challenged questions would compel the Department to reinstate his clearance. "Because those answers to the challenged questions were the sole basis for revoking [his] security clearance, granting such relief would necessarily reverse the Department's determination and, by extension, reinstate his security clearance." Mem. Op. & Order at 4 (June 26, 2025) (citation omitted); *see also* Decision to Sustain Clearance Revocation (Jan. 30, 2024), ECF No. 64-2 (specifying that Mr. Gebert's answers to the challenged questions were the sole basis for revoking his clearance). Mr. Gebert himself pleads as much. *See* 2d Am. Compl. ¶ 59 (alleging that the Department revoked his clearance solely due to his answers to the challenged questions). Against all this, Mr. Gebert offers no basis to conclude that the Department would or could sustain his clearance revocation without considering his answers to the challenged questions—only conclusory assertions, which are insufficient to establish standing. *See Kareem v. Haspel*, 986 F.3d 859, 866 (D.C. Cir. 2021). Mr. Gebert argues that the Department could have ordered a new investigation rather than reinstate his clearance, *see* Pl.'s Mot. at 15, but a new investigation would just kick the can down the road.

**C.**    **Mr. Gebert's Ostensible "New Evidence" Does Not Merit Reconsideration**

Finally, Mr. Gebert's argument that "new evidence confirms that the same unconstitutional questions were used again during his appeal, proving that the harm is ongoing and systemic," Pl.'s Mem. at 1, does not warrant reconsideration either. That is so for three reasons: (1) the Department did not ask Mr. Gebert the challenged questions during the Panel hearing—it asked him about his answers to those questions, (2) this later-in-time development is irrelevant to the standing inquiry, which is measured as of the time that the plaintiff filed the operative pleadings, and (3) any risk of future injury based on the Panel hearing is moot, given that the Panel hearing has already happened.

*First*, the Department did not ask Mr. Gebert of the challenged questions again during the Panel hearing—it asked about his answers to those questions. As Mr. Gebert himself puts it, "[a] member of the [Panel] explicitly restated all three challenged questions and asked [him] whether he had answered them truthfully." Pl.'s Mem. at 18-19. Asking Mr. Gebert about his answers to the challenged questions—i.e., asking whether he had answered the questions truthfully—plainly is not the same thing as asking the challenged questions themselves again. Rather, as this Court explained, "any follow up questions by the appeal panel would only be derivative of the original questions." Mem. Op. & Order at 5 (July 26, 2025) (quotation marks omitted). To have standing to seek an injunction prohibiting the Department from asking him the challenged questions again, Mr. Gebert must show a sufficiently imminent and substantial "future risk that he will face [the challenged] questions again." *Id.* at 4. The fact that a Panel member asked Mr. Gebert about his answers to the challenged questions logically does not suggest that the Department ever again will ask him the challenged questions themselves again, and thus does nothing to establish standing.

*Second*, even had the Panel asked Mr. Gebert the same questions again, such a fact would not impact the standing analysis because it occurred after Mr. Gebert filed the operative pleadings. As a general matter, "subject-matter jurisdiction 'depends on the state of things at the time of the

action brought.'" *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473 (2007) (quoting *Mullan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539 (1824)). Typically, then, "jurisdiction 'is determined by the condition of the parties at the commencement of the suit.'" *TIG Ins. Co. v. Rep. of Argentina*, 967 F.3d 778, 783 (D.C. Cir. 2020) (quoting *Anderson v. Watts*, 138 U.S. 694, 702-03 (1891)).[1] Likewise, "district courts determine how to rule on a motion to dismiss by 'looking to the facts existing when the complaint is filed.'" *Id.* (quoting *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993)). This aligns with "the usual rules governing civil litigation, according to which district courts generally assess facts at the time of filing." *Id.* Because the Panel hearing occurred after Mr. Gebert filed the operative pleadings, nothing that happened during the hearing can impact standing.

*Third*, to the extent that Mr. Gebert asserted a risk of future harm based on the possibility of being asked the challenged questions again during the Panel hearing, such a risk of harm is moot now that the Panel hearing already has occurred. A claim is moot "if intervening events make it impossible to grant any effectual relief." *Porzecanski v. Azar*, 943 F.3d 472, 479 (D.C. Cir. 2019); *accord Feld v. Feld*, 688 F.3d 779, 782 (D.C. Cir. 2012) (claim moot if it is "overtaken by events"). Because the Panel hearing has now occurred, Mr. Gebert no longer faces any ongoing risk of being asked the challenged questions again during the hearing. And plainly, it is impossible to enjoin the Department from asking Mr. Gebert the challenged questions during the Panel hearing given that it has now occurred already. Any risk of being asked the challenged questions again during the

---

[1]    Although "an amendment [to the pleadings] can wipe the jurisdictional slate clean," *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 34 (2025), this rule has no application here, as the Panel hearing occurred after Mr. Gebert filed the operative pleadings. Even then, amending the pleadings can affect jurisdiction only to the extent that jurisdiction depends on "the claims and parties that the plaintiff includes in a complaint," e.g., federal question or diversity jurisdiction. *Id.* at 36 n.5. Amending the pleadings has no jurisdictional effect to the extent that jurisdiction turns on "the actual 'state of things' relevant to jurisdiction," i.e., "the facts on the ground," which courts continue to assess as of the time of the case's filing. *Id.* (quoting *Rockwell Int'l*, 528 U.S. at 473).

Panel hearing thus is moot. Mr. Gebert thus cannot rely on the Panel hearing to argue that he faces an imminent and substantial risk that the Department will ask him the challenged questions again.

## II.    <u>Collateral Estoppel Precludes Mr. and Mrs. Gebert's New Claims</u>

The rule of "issue preclusion, also known as collateral estoppel . . . precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment." *Brownback v. King*, 592 U.S. 209, 215 n.3 (2021). Stated simply, "the general rule is that when an issue of fact or law is actually litigated and determined by a valid and final judgment,[2] and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015) (quotation marks omitted). Thus, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit . . . involving a party to the first case." *Klayman v. Rao*, 49 F.4th 550, 553 (D.C. Cir. 2022).

In Mr. Gebert's prior suit, he tried to amend his complaint to raise the same four Privacy Act claims that he now raises in his new suit. *Compare* Compl. at 21-22, 24-25-26, Civ. A. No. 25-2180, *with* Prop. 2d Am Compl. at 41-42, 44-45, ECF No. 49, Civ. A. No. 22-2939. This Court denied leave to amend to raise these four claims on the ground that any such amendment would be futile because these claims fail to state a claim upon which relief can be granted. *See* Mem. Op. & Order at 9-10 (Jan. 6, 2025). Issue preclusion thus bars Mr. Gebert from relitigating these claims.

Issue preclusion likewise bars Mrs. Gebert's Privacy Act non-access claims, each of which mirror a claim Mr. Gebert previously had raised in his earlier suit. *Compare* Compl. at 11, 13-14, Civ. A. No. 24-2181, *with* Prop. 2d Am Compl. at 41-42, 44-45, ECF No. 49, Civ. A. No. 22-2939.

---

[2]    To the extent that the motion for reconsideration tolls the finality of the Court's judgment, this Court should deny reconsideration, and then deny the new claims on issue preclusion grounds.

Issue preclusion applies to not only "the same party" as in an earlier suit, but also to "his privy." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979); *accord Sheptock v. Fenty*, 707 F.3d 326, 330 (D.C. Cir. 2013) (same). Although Mrs. Gebert was not a party to her husband's earlier suit, issue preclusion nonetheless applies because she and her husband are in privity. Not only are Mr. and Mrs. Gebert married, but her Privacy Act non-access claims are closely aligned—indeed, inextricably intertwined—with his interests. Mrs. Gebert raises the same Privacy Act non-access claims that her husband had raised in his earlier suit and raises in his new suit; her claims arise out of and challenge the legality of the process by which the Department investigated her husband's background; the only harms that she asserts are harms that she argues flowed directly from her husband's loss of a security clearance and ensuing loss of pay; and the same lawyer represents her and her husband in all three suits, underscoring that they are acting together as part of a common course of action. Given all this, Mr. and Mrs. Gebert are in privity, so issue preclusion applies.

*First*, to begin, Mr. and Mrs. Gebert are married. *See* Compl. ¶¶ 14-15 & Ex. A, Civ. A. No. 25-2181. Although that fact alone may not establish privity, it lends support to the conclusion that Mr. and Mrs. Gebert are in privity, especially given the other factors present here. *See David v. Nemerofsky*, 41 A.2d 838, 840 (D.C. 1945) ("Res judicata is applied as between the same parties or their privies, and appellant's wife should be so regarded." (quotation marks omitted)).

*Second*, Mrs. Gebert's claims arise out of and challenge the legality of the process by which the Department had investigated her husband's background. *See* Compl. ¶¶ 52-76, Civ. A. No. 21-2581. "Spouses are in privity with one another when, as here, the nonparty spouse's interest in an original suit derives from, and is closely aligned with, their spouse's interests." *In re JMV Holdings, LLC*, No. 23-40373, 2024 WL 885126, at *4 (5th Cir. Mar. 1, 2024) (citing *Eubanks v. FDIC*, 977 F.2d 166, 170 (5th Cir. 1992)); *see also* 18A Charles A. Wright et al., Federal Practice

and Procedure § 4459 (3d ed. May 2025 update) ("Claims derived from injury to another family member provide the most common departures from the basic rule that preclusion does not embrace nonparty family members." (citing cases)); *cf. Yang v. Fund Mgmt. Int'l, LLC*, 847 F. App'x 419, 421 (9th Cir. 2021) ("Spouses are in privity with each other where the cause of action in the prior litigation was community in nature and the proceeds of any judgment that might have been recovered would have belonged to both husband and wife, as community property." (cleaned up)).

*Third*, Mrs. Gebert's Privacy Act non-access claims are nearly identical to those that her husband raised in his prior suit and raises in his new suit. The similarity of Mr. and Mrs. Gebert's claims underscores their privity. *See Pollard v. Cockrell*, 578 F.2d 1002, 1008 (5th Cir. 1978) (finding privity where "the complaints [were] identical except for their jurisdictional averments").

*Fourth*, the only harms that Mrs. Gebert attributes to the Department's alleged Privacy Act non-access violations are harms that she contends flowed directly from her husband's loss of a security clearance and ensuing loss of pay. For each Privacy Act non-access claims, Mrs. Gebert offers the same boilerplate assertion: "Plaintiff was adversely affected as the information collected subsequent to the Defendant's failure to provide the Privacy Notice was used against her husband and continues to be used against him. This has had an adverse effect on her in the form of, financial impact to her family (as the information about her First Amendment protected activities was used as a basis to revoke her husband's security clearance, a condition of his employment) as well as harm to her reputation." Compl. ¶¶ 57, 67, 74, Civ. A. No. 25-2181. Her insistence that her asserted harms resulted directly from her husband's loss of a security clearance reinforces their privity.

*Fifth*, and finally, the same attorney represents both Mr. and Mrs. Gebert in all three of their suits, a fact that illustrates that they are acting together as part of a common course of action. *See, e.g.*, *Nolles v. State Comm. for Reorg. of Sch. Dists.*, 524 F.3d 892, 905 (8th Cir. 2008) (privity

existed where "one of [the] Plaintiffs is the spouse of one of the litigants in [an earlier suit], and the Plaintiffs here are represented by the same counsel as the [prior] plaintiffs"); *Ferris v. Cuevas*, 118 F.3d 122, 127 (2d Cir. 1997) (fact "that the two parties had had the same attorney . . . is of singular significance" (quotation marks omitted)); *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 677 (5th Cir. 2003) ("Given that both seek wrongful death claims on behalf of [the same person] and are represented by the same counsel, they are in privity with one another"); *Conte v. Justice*, 996 F.2d 1398, 1402 (2d Cir. 1993) ("Clearly, the appearance of the same attorney in both actions creates the impression that the interests represented are identical."); *Pollard*, 578 F.2d at 1008 ("the plaintiffs in each case are represented by the same attorneys"); *Felter v. Salazar*, 679 F. Supp. 2d 1, 11 (D.D.C. 2010) (privity existed when "the same lawyer represented the parties in both of the cases"); *Taylor v. Blakey*, Civ. A. No. 03-0173, 2006 WL 279103, at *2 (D.D.C. Feb. 6, 2006) (parties "who successively used the same lawyer to seek identical information" were in privity); *Rudder v. District of Columbia*, Civ. A. No. 92-2881, 1994 WL 495767, at *4 (D.D.C. Sept. 6, 1994) ("Plaintiffs are challenging the same [ ] practices as the [prior] Plaintiffs litigated, they name the same Defendants . . . and they are represented by the same counsel . . . . Thus, the rights and interests of the parties are so similar that privity exists").

### III.    Mr. and Mrs. Gebert Do Not Plausibly Allege That Any of the Ostensible Privacy Act Non-Access Violations Were Intentional or Willful

Mr. and Mrs. Gebert's Privacy Act non-access claims fail because they do not plausibly allege that any violation was intentional or willful. The only relief that they seek as to their Privacy Act non-access claims—and the only relief the Privacy Act authorizes—is damages. *See* Compl. ¶¶ 86, 96, 106, 113, Civ. A. No. 25-2180; Compl. ¶¶ 59, 69, 76, 82, Civ. A. No. 25-2181; 5 U.S.C. § 552a(g)(1)(D), (g)(4)(A); *see also FAA v. Cooper*, 566 U.S. 284, 303 n.1 (2012) (noting "the absence of equitable relief in suits under [Section] 552a(g)(1)(D)"); *Sussman v. Marshals Serv.*,

494 F.3d 1106, 1122 (D.C. Cir. 2007) ("only monetary damages, not declaratory or injunctive relief, are available to § 552a(g)(1)(D) plaintiffs"); *Doe v. Stephens*, 851 F.2d 1457, 1463 (D.C. Cir. 1988) (Privacy Act's "subsection on civil remedies authorizes entry of injunctive relief in only two specific situations" and "precludes other forms of declaratory and injunctive relief").

Damages are available under the Privacy Act only where a violation "was intentional or willful." 5 U.S.C. § 552a(g)(4). This is a high bar, because an "intentional or willful" Privacy Act violation requires conduct that is "in flagrant disregard of [a person's] rights under the Act." *In re Off. of Pers. Mgmt. Data Sec. Breach Litig.* ("*OPM*"), 928 F.3d 42, 63 (D.C. Cir. 2019). This requires conduct "so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful." *Rtskhiladze v. Mueller*, 110 F.4th 273, 278-79 (D.C. Cir. 2024). That "sets a high bar." *Thompson v. Dep't of State*, 400 F. Supp. 2d 1, 12 (D.D.C. 2005), *aff'd*, 210 F. App'x 5 (D.C. Cir. 2006). It is not enough to plead that an agency "acted negligently, . . . handled a matter in a disjointed, or confused manner, or . . . acted inadvertently to contravene the Act." *Maydak v. United States*, 630 F.3d 166, 180 (D.C. Cir. 2010). The need for "intentional and willful misconduct is an element" of a Privacy Act non-access claim "that must be pleaded and supported by sufficient facts to state a claim for relief." *Kelley v. FBI*, 67 F. Supp. 3d 240, 254 (D.D.C. 2014).

Mr. and Mrs. Gebert do not plausibly allege that any of their Privacy Act non-access claims were intentional or willful under this high standard. Even assuming for argument's sake that the Department's actions violated the Privacy Act, Mr. and Mrs. Gebert plead no facts to support a plausible inference that such actions were "in flagrant disregard of [their] rights under the Act." *OPM*, 928 F.3d at 63, i.e., that the actions were "so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful." *Rtskhiladze*, 110 F.4th at 278-79.

To the contrary, Mr. and Mrs. Gebert rely for this point exclusively on generic boilerplate. Mr. Gebert twice recites that "[t]he Defendant acted in a manner which was intentional and willful as Defendant knew of the requirements for the Privacy Act, yet acted with flagrant disregard of it. Defendant collected information about Plaintiff's First Amendment protected activities without his consent. Defendant acted without grounds for believing it to be lawful in a manner that was so patently egregious that anyone undertaking the conduct should have known it unlawful." Compl. ¶¶ 85-95, Civ. A. No. 25-2180. He also twice recites that "[t]he Defendant acted in a manner which was intentional and willful as Defendant knew that the Privacy Act prohibited the collection of First Amendment protected information here, yet acted with flagrant disregard of it. Defendant collected information about Plaintiff's exercise of his First Amendment rights without authority. Defendant acted without grounds for believing it to be lawful in a manner that was so patently egregious that anyone undertaking the conduct should have known it unlawful." *Id.* ¶¶ 105, 112.

Mrs. Gebert, for her part, recites three times that "[t]he Defendant acted in a manner which was intentional and willful as Defendant knew" that its alleged action violated the Privacy Act, "yet acted with flagrant disregard of it." Compl. ¶¶ 58, 68, 74, Civ. A. No. 25-2181. As in Mr. Gebert's previous lawsuit, "the entire basis for [Mr. and Mr. Geberts'] claims are [their] conclusory statements that the Department 'acted in a manner which was intentional and willful,'" which are insufficient to state a plausible claim to relief. Mem. Op. & Order at 9-10 (Jan. 6, 2025); *see also Iqbal*, 556 U.S. at 678 (same); *Solomon v. Dechert LLP*, Civ. A. No. 22-3137 (JEB), 2023 WL 6065025, at *13 (D.D.C. Sept. 18, 2023) (refusing to credit "boilerplate" allegation that challenged actions were "intentional"); *Lutz v. United States*, Civ. A. No. 06-1177, 2007 WL 1954438, at *1 (D.D.C. July 5, 2007) (refusing to credit "boilerplate" allegation that challenged actions were "intentional" and "willful"). For this reason, even setting aside issue preclusion altogether, Mr. and

Mrs. Gebert simply do not plausibly allege that the alleged Privacy Act non-access violations were intentional or willful, as required to state such claims. For this reason alone, their claims fail.

## IV.    **Mrs. and Mrs. Geberts' "Signed Privacy Act Statements" Claims Warrant Dismissal**

Mr. and Mrs. Gebert both challenge the Department's failure to obtain signed Privacy Act statements from them, but these claims fail for two reasons. The Privacy Act does not require an agency to obtain such a statement from a person before collecting her information. And any failure to inform Mr. and Mrs. Gebert why the Department was collecting their information was harmless.

### A.    **The Privacy Act Did Not Require the Department to Obtain "Signed Privacy Act Statements" From Mr. and Mrs. Gebert**

5 U.S.C. § 552a(e)(3), provides, in full, as follows:

(e)    Agency Requirements.—Each agency that maintains a system of records shall—

(3)    inform each individual whom it asks to supply information, on the form which it uses to collect the information or on a separate form that can be retained by the individual—

(A)    the authority (whether granted by statute, or by executive order of the President) which authorizes the solicitation of the information and whether disclosure of such information is mandatory or voluntary;

(B)    the principal purpose or purposes for which the information is intended to be used;

(C)    the routine uses which may be made of the information, as published pursuant to paragraph (4)(D) of this subsection; and

(D)    the effects on him, if any, of not providing all or any part of the requested information

Mr. Gebert alleges that the Department violated this provision as it "did not collect nor ask [him] to sign a Privacy Act Statement before the subject interview where the investigators willfully asked him First Amendment protected questions." Compl. ¶ 80, Civ. A. No. 25-2180. Mrs. Gebert, too,

says the Department "did not collect nor ask [her] to sign a Privacy Act Statement before collecting information about her First Amendment protected activities." Compl. ¶ 53, Civ. A. No. 25-2181.

The problem with this argument is that nothing in 5 U.S.C. § 552a(e)(3) requires an agency to obtain a signed statement from an individual before collecting information about him or her. The statute requires an agency to inform an individual whom it asks to supply information of four things—(1) the authority by which it seeks the information (and whether disclosure is mandatory or voluntary), (2) the principal purpose(s) for which the information is intended to be used, (3) the routine uses that may be made of the information, and (4) any effects on the individual of not providing the information. 5 U.S.C. § 552a(e)(3). But it does not require an agency to obtain a signed statement from the individual prior to collecting information. There simply is no language in the statute that creates such a requirement, and courts "will not add words to the law." *Muldrow v. City of St. Louis*, 601 U.S. 346, 358 (2024) (quotation marks omitted). Mr. and Mrs. Gebert's challenges to the Department's failure to obtain signed Privacy Act statements from them thus fail.

Mrs. Gebert's claim also fails for an additional reason: 5 U.S.C. § 552a(e)(3) applies only to a person whom an agency "asks to supply information," but Mrs. Gebert does not allege that the Department asked her to supply First Amendment information. She alleges that the Department collected criminal history information from her, but she expressly authorized it to collect this information. *See* Compl., Ex. B, Auth. to Conduct Crim. History Inquiry for Spouse or Cohabitant, Civ. A. No. 25-2181, ECF No. 1-1; *Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 529 (D.C. Cir. 2025) (courts consider documents "attached to . . . the complaint" in deciding whether plaintiff states a claim). She also alleges that the Department asked Mr. Gebert to supply information, and that it conducted an investigation into him. *See* Compl. ¶¶ 15, 19, Civ. A. No. 25-2181. But nowhere in her pleadings does she allege that the Department ever asked her to supply any First

Amendment information, as required to trigger 5 U.S.C. § 552a(e)(3). Mrs. Gebert's challenge to the Department's failure to collect a signed statement from her thus fails for that additional reason.

## B.    Any Failure to Obtain Signed Statements Was Harmless

Even assuming that the Privacy Act required the Department to obtain signed statements from Mr. and Mrs. Gebert, any such failures were harmless. Privacy Act non-access plaintiffs must plead both an "adverse effect" and "actual damages" from a violation, meaning they must plausibly allege that the agency's violation actually harmed them. 5 U.S.C. § 552a(g)(1)(D), (4)(A). But Mr. and Mrs. Gebert do not plausibly allege that they would have refused to provide information, or provided different information, had the Department informed them of why it was collecting such information. Given the context—a background reinvestigation for a security clearance—Mr. and Mrs. Gebert were on notice that refusing to provide information could have resulted in loss of Mr. Gebert's clearance. *See Horsey v. Dep't of State*, 170 F. Supp. 3d 256, 261 (D.D.C. 2016) ("failure to cooperate and/or provide the information where requested may result in a recommendation for an adverse action regarding his eligibility for access to classified information" (cleaned up)); *Stehney v. Perry*, 907 F. Supp. 806, 818 (D.N.J. 1995), *aff'd*, 101 F.3d 925 (3d Cir. 1996) (the "relevant regulations and policy memoranda not only authorize revocation of a security clearance based solely on a failure to cooperate with the polygraph interview, they expressly envision that revocation normally will be the appropriate result of such a refusal" (cleaned up)); Off. of the Dir. Nat'l Intel. Security Executive Agent Directive 13 (June 8, 2017) ("The following will normally result in an unfavorable national security eligibility determination, security clearance action, or cancellation of further processing for national security eligibility . . . refusal, or failure without reasonable cause, to undergo or cooperate with security processing, including but not limited to meeting with a security investigator for subject interview, completing security forms or releases").

Given that reality, Mr. and Mrs. Gebert do not plausibly allege that they would have refused

to provide information had the Department informed them why it was collecting their information.

*See Cardamone v. Cohen*, 241 F.3d 520, 530 (6th Cir. 2001) ("there is no evidence that any of the

witnesses in this case would have testified differently, or not at all, had they known more about

the purpose of the investigation, nor is there any evidence that [plaintiff] suffered as a result of the

way in which the interviews were conducted . . . The absence of a causal connection between

[plaintiff's] alleged adverse effects . . . and the failure of [the agency] to inform witnesses [of] the

principal purpose of the investigation . . . is fatal to [plaintiff's] § 552a(e)(3) claim"). Nor do they

plausibly allege that they would have provided different information had they known why the

Department was collecting the information—any indeed, such argument necessarily would mean

either that they lied to the Department or would have lied if given a sufficient motive to do so.

## V. The Department Had Authority to Collect Information About Mr. and Mrs. Gebert's First Amendment Activities as Part Mr. Gebert's Security Clearance Investigation

Mr. and Mrs. Gebert's claims that the Department lacked authority to collect information

about their First Amendment activities, *see* Compl. ¶¶ 97-106, Civ. A. No. 25-2180; Compl. ¶¶ 60-

69, Civ. A. No. 25-2181, fails because the Department was able to do so as part of the clearance

investigation. 5 U.S.C. § 552a(e)(7) states: "Each agency that maintains a system of records shall

. . . maintain no record describing how any individual exercises rights guaranteed by the First

Amendment unless expressly authorized by statute or by the individual about whom the record is

maintained or unless pertinent to and within the scope of an authorized law enforcement activity."

Mr. and Mrs. Gebert each allege that the Department collected information about their First

Amendment activities in the course of Mr. Gebert's security clearance investigation. *See* Compl.

¶ 20, Civ. A. No. 25-2180; Compl. ¶ 15, Civ. A. No. 25-2181. But the D.C. Circuit squarely has

held that information collected during the course of an agency's security clearance investigation

is "pertinent to and within the scope of an authorized law enforcement activity." *Palmieri v. United States*, 896 F.3d 579, 585 (D.C. Cir. 2018). The plaintiff there challenged an agency's collection of information about "his associations" in the course his security clearance investigation, but the Court held that the Privacy Act authorized the agency to do so. *Id.* (cleaned up). So, too, here.

Indeed, "[b]ackground investigations conducted to assess an applicant's qualification, such as clearance and investigatory processes, inherently relate to law enforcement." *Sack v. Dep't of Def.*, 823 F.3d 687, 694 (D.C. Cir. 2016) (quoting *Morley v. CIA*, 508 F.3d 1108, 1128-29 (D.C. Cir. 2007)); *see also Mittleman v. Off. of Pers. Mgmt.*, 76 F.3d 1240, 1243 (D.C. Cir. 1996) ("The principal purpose of a background investigation is to ensure that a prospective employee has not broken the law or engaged in other conduct making her ineligible for the position. The check also helps to determine whether there are any law enforcement or security issues in her past that could affect her ability to carry out the position. . . . background investigation information was compiled for 'law enforcement purposes.'" (cleaned up)); *Nagel v. Dep't of Health, Educ. & Welfare*, 725 F.2d 1438, 1441 (D.C. Cir. 1984) ("An employer's determination whether an employee is performing his job adequately constitutes an authorized law enforcement activity under Section (e)(7)."); *cf. Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex.*, 740 F.3d 195, 203 (D.C. Cir. 2014) ("the ordinary understanding of law enforcement includes proactive steps designed . . . to maintain security" (cleaned up, quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 582 (2011) (Alito, J., concurring))). The security clearance investigation of Mr. Gebert was "an authorized law enforcement activity" and the information about Mr. and Mrs. Gebert's First Amendment activities the Department collected was "pertinent to and within the scope of" that investigation, so the Department was authorized to collect it. 5 U.S.C. § 552a(e)(7).

## VI.    Mr. and Mrs. Gebert Does Not Plausibly Allege Privacy Act "Routine Use" Violations

Finally, Mr. and Mrs. Gebert allege that the Department violated the Privacy Act's "routine use" provisions, *see* Compl. ¶¶ 107-13, Civ. A. No. 25-2180; Compl. ¶¶ 70-76, Civ. A. No. 25 -2181, but these claims fail for three reasons. Mr. and Mrs. Gebert do not plausibly allege that the Department disclosed their records to another agency, as necessary to trigger the "routine use" bar. Their claims rests on the false premise that the Department lacked authority to collect information about their First Amendment activities. And whether or not the Department had such authority has nothing to do with the Privacy Act's "routine use" provisions. Their "routine use" claims thus fail.

The Privacy Act generally prohibits an agency from disclosing a covered record "to another agency . . . unless disclosure of the record would be" pursuant to an enumerated exception to the bar on disclosure. 5 U.S.C. § 552a(b). One exception permits disclosure "for a routine use." *Id.* § 552a(b)(3). A "routine use" is, "with respect to the disclosure of a record, the use of such record for a purpose which is compatible with the purpose for which it was collected." *Id.* § 552a(a)(7). "Each agency that maintains a system of records shall," subject to certain limits, "publish in the Federal Register upon establishment or revision a notice of the existence and character of the system of records, which notice shall include . . . each routine use of the records contained in the system, including the categories of users and the purpose of such use." *Id.* § 552a(e)(4)(D).

Mr. Gebert argues that the Department violated the Privacy Act's "routine use" provision, in his own words, as follows: "Since the Plaintiff did not sign a Privacy Act Statement specific to the collection of his First Amendment activity and did not request or consent to records pertaining to his First Amendment activities being stored in a system accessible by an agency conducting a security clearance investigation, this is a violation of 5 U.S.C. § 552a(b) as the information was collected and stored in violation and contrary to the Routine Use notice – or lack thereof - and was not for a legally authorized civil or criminal law enforcement activity." Compl. ¶ 109, Civ. A. No.

25-2180. Mrs. Gebert's argument essentially is identical. *See* Compl. ¶ 72, Civ. A. No. 25-2181. Their arguments thus depend entirely on the premise that the Department lacked authority to collect information about their First Amendment activities. This argument fails for several reasons.

*First*, Mr. and Mrs. Gebert do not plausibly allege that the Department disclosed any of their records "to another agency," as required to trigger the Privacy Act's "routine use" provision in the first place. 5 U.S.C. § 552a(b). The only allegations they offer to support this contention is that the Department "violated the routine use of the information collected by sharing it in a security clearance repository that can be accessed by other government agencies." Compl. ¶ 50, Civ. A. No. 25-2180; Compl. ¶ 25, Civ. A. No. 25-2181. But these allegations are conclusory, and Mr. and Mrs. Gebert plead no other facts to make them plausible. They provide no facts about either the unspecified repository or the Department's alleged placement of records into this repository, much less any allegations that suffice to "nudge" their bald assertions "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 683. Their conclusory allegations that the Department placed their records into a security clearance repository are the just sort of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," that "do not suffice" to state a plausible claim that the Department disclosed their records in violation of the Privacy Act. *Id.* at 678. These allegations thus are due no weight. *Id.* Because Mr. and Mrs. Gebert do not plausibly allege that the Department disclosed their records to another agency at all, their claims that the Department violated the "routine use" provisions in disclosing their records fails at the threshold.

*Second*, Mr. and Mrs. Gebert's "routine use" claims rest on the incorrect premise that the Department lacked authority to collect information about their First Amendment activities. *See* Compl. ¶ 109, Civ. A. No. 25-2180; Compl. ¶ 72, Civ. A. No. 25-2181. But as explained, that is incorrect—the Department was authorized to collect information about their First Amendment

activities in the course of conducting Mr. Gebert's clearance investigation. *See supra* § V. Because Mr. and Mrs. Gebert's "routine use" claims depend on that not being so, they necessarily fail.

*Third*, even assuming for argument's sake that the Department lacked authority to collect information about Mr. and Mrs. Gebert's First Amendment activities, that still would not violate the Privacy Act's "routine use" provisions. While any unauthorized collection of information about their First Amendment activities may well offend 5 U.S.C. § 552a(e)(7), it simply has nothing to do with the "routine use" provisions, which are separate parts of the statute, *id.* § 552a(a)(7), (b)(3), (e)(3)(C), (e)(4)(D). Mr. and Mrs. Gebert's "routine use" claims thus rests on a pure non-sequitur.

## VII.    Mrs. Gebert Does Not Plausibly Allege that Any Records About Her Are Retrievable and Actually Retrieved from a System of Records By Her Name or Personal Identifier

The Privacy Act's limits on disclosure apply only to records that are "contained in a system of records." 5 U.S.C. § 552a(b). The Privacy Act likewise requires an "an agency that maintains a system of records" to disclose to an individual only those records pertaining to her "contained in the system." *Id.* § 552a(d)(1). The Privacy Act defines a "system of records" as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." *Id.* § 552a(a)(5). Thus, "in order to recover, [Mrs. Gebert] must show [the Department] improperly disclosed materials located in records retrievable by [her] name as opposed to someone else's name." *Sussman v. Marshals Serv.*, 494 F.3d 1106, 1123 (D.C. Cir. 2007) (cleaned up). To state a Privacy Act disclosure or access claim, then, Mrs. Gebert must plausibly allege that the records at issue were "retrieved by [her] name" or personal identifier. *Id.* (emphasis omitted). "If a record is retrievable by reference to some name [or personal identifier] other than [Mrs. Gebert's own]," then she fails to state a claim. *Id.*; *see also Paige v. DEA*, 818 F. Supp. 2d 4, 10 (D.D.C. 2010), *aff'd*, 665 F.3d 1355 (D.C. Cir. 2012) ("liability attaches only where records were actually

retrieved from a system of records by plaintiff's name"). Additionally, Mrs. Gebert must plausibly

allege that the records at issue were not merely "retrievable" by her name or personal identifier,

but "actually retrieved" in such a manner. *Mobley v. CIA*, 806 F.3d 568, 587 (D.C. Cir. 2015).

Mrs. Gebert does not plausibly allege that the records at issue were retrievable or actually

retrieved by her own name or personal identifier. Rather, common sense suggests that any records

pertaining to Mrs. Gebert that the Department maintained were retrievable by her husband's name

or personal identifier, as the Department collected these records for the purpose of investigating

and adjudicating her husband's eligibility for access to classified information, not to investigate or

adjudicate Mrs. Gebert's own eligibility for access to classified information. *See Iqbal*, 556 U.S.

at 679 ("Determining whether a complaint states a plausible claim for relief will . . .  be a context-

specific task that requires the reviewing court to draw on its judicial experience and common

sense"). At a minimum, the fact that the Department collected information about Mrs. Gebert only

for the purpose of her husband's security clearance decision makes it "more likely" than not that

her records were retrievable and/or actually retrieved by her husband's name or personal identifier

rather than her own. *Id.* at 681; *accord Nurriddin v. Bolden*, 818 F.3d 751, 762 (D.C. Cir. 2016)

(plausibility standard requires plaintiff to plead facts that make her claim "more likely than not").

Because Mrs. Gebert pleads no facts to support a plausible inference that the records at issue were

retrievable and retrieved by her own name or personal identifier, rather than her husband's, she

fails to state a plausible Privacy Act disclosure or access claim. *See Sussman*, 494 F.3d at 1123.

## VIII.    The Information About Mr. Gebert that the Department Collected Fell Within the Scope of a System of Records Notice

Mr. Gebert's argument that Department collected information about him that fell outside

the scope of any System of Records Notice is meritless. "Each agency that maintains a system of

records shall . . . publish in the Federal Register upon establishment or revision a notice of the

existence and character of the system of records, which notice shall include" certain enumerated categories of information. 5 U.S.C. § 552a(e)(4). All of the information about Mr. Gebert that the Department collected about Mr. Gebert falls within the scope of a System of Records Notice.[3]

The Department has published a System of Records Notice for a system of records called "Security Records." *See* Privacy Act of 1974; System of Records, 83 Fed. Reg. 28,058, 28,058 (June 15, 2018). The notice provides that "[t]he information maintained in Security Records may be used to determine general suitability for employment or retention in employment, to grant a contract or issue a license, grant, national security eligibility, security clearance, or Department credential." *Id.* at 28,059. It identifies "[p]resent and former employees of the Department of State" and "individuals requiring access to the official Department of State premises who have undergone or are undergoing security clearance" as among the categories of individuals whom it covers. *Id.* It specifies that categories of records in the system include "investigative material relating to any category of individual described above, including case files containing items such as . . . security evaluations and clearances," "national security eligibility determinations," "evidence collected during investigations," "social media account communications and/or findings for individuals undergoing background or security investigations," and, finally, "publicly available social media communications of third parties with individuals undergoing background investigations." *Id.* And it specifies that proper uses of this information include "mak[ing] a determination of or verify[ing] general suitability for employment, fitness, or retention in employment, to grant a contract or issue a license, grant, security clearance, national security eligibility, credential or accreditation," and "obtain[ing] information relevant to an agency investigation, a decision concerning the hiring or

---

[3]    The Department does not raise this argument as to Mrs. Gebert only because her records are not retrievable from a system of records by her name or personal identifier, an essential element of any Privacy Act claim that depends on a system of records, in the first place. *See infra* § VII.

retention of an employee or other personnel action, the issuance of a security clearance or the initiation of administrative . . . action." *Id.* at 28,060. These exhaustive descriptions of the persons whom the system of records covers, type of information it contains, and permissible uses of this information plainly covers information about Mr. Gebert that the Department collected during his security clearance investigation, and Mr. Gebert does not plausibly show otherwise.

Mr. Gebert's only argument to the contrary rests on a tendentious non-sequitur: he insists that because the System of Records Notice for the "Security Records" system of records "does not reference First Amendment activities" specifically, the Department lacks authority to collect such information. Compl. ¶ 89, Civ. A. No. 25-2180. But the System of Records Notice specifically authorized the Department to collect numerous categories of information about Mr. Gebert that cover any information the Department might collect during the course of his security clearance investigation—namely, "investigative material relating to any category of individual described above, including case files containing items such as . . . security evaluations and clearances," "national security eligibility determinations," "evidence collected during investigations," "social media account communications and/or findings for individuals undergoing background or security investigations," and, finally, "publicly available social media communications of third parties with individuals undergoing background investigations." 83 Fed. Reg. at 28,060. Given the categories of information about Mr. Gebert that the Department had authority to collect, Mr. Gebert pleads no facts to support a plausible inference that the Department collected any information about him beyond the System of Records Notice's scope. He instead seems to be arguing that the Department cannot collect any at all information about his First Amendment activities—even information that otherwise falls within the scope of the categories of information that the System of Records Notice expressly authorizes the Department to collect—unless the System of Records Notice specifies

"First Amendment activities" as a freestanding category of information that the Department can collect. Compl. ¶ 89, Civ. A. No. 25-2180. Nothing in the Privacy Act contains such a requirement.

Indeed, such a rule not only would contradict the Privacy Act's plain text, which imposes no such requirement, but would make conducting effective security clearance investigations nearly impossible. "The ultimate determination of whether the granting of a clearance must be . . . based upon all available information, both favorable and unfavorable." *Hoska v. Dep't of Army*, 677 F.2d 131, 136 (D.C. Cir. 1982). Agencies thus "need all the evidence they can get to control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to have access to such information." *Rattigan v. Holder*, 689 F.3d 764, 769 (D.C. Cir. 2012) (cleaned up); *see also Huynh v. Carlucci*, 679 F. Supp. 61, 65 (D.D.C. 1988) ("Accurate information about an individual's background is necessary to make an informed judgment as to whether or not granting a security clearance to an individual is clearly consistent with the national interest."). A rule prohibiting the Department from collecting information about First Amendment activities, even if otherwise within the scope of a permissible category of information, because the relevant System of Records Notice "does not reference First Amendment activities" specifically, Compl. ¶ 89, Civ. A. No. 25-2180, would frustrate the Department's ability to make a reliable determination as to whether granting a person "access to classified information is clearly consistent with the public interest." Exec. Order 12,968 § 3.1(d), 60 Fed. Reg. 40,234, 40,250 (Aug. 2, 1995).

As such, while Mr. Gebert's "System of Records Notice" claim fails on the Privacy Act's plain text, the national security implications of accepting his position only supply more reason to reject it. *See Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 677 (1989) (the government "has a compelling interest in protecting truly sensitive information from those who, under compulsion of circumstances or for other reasons, might compromise such information" (cleaned

up)); *Haig v. Agee*, 453 U.S. 280, 307 (1981) ("It is obvious and unarguable that no governmental interest is more compelling than the security of the Nation" (quotation marks omitted)).

IX.   **Mrs. Gebert Does Not Plausibly Allege an "Adverse Effect" On Her**

Nor does Mrs. Gebert plausibly allege an "adverse effect." 5 U.S.C. § 552a(g)(1)(D). She alleges two adverse effects due to the Department's actions—namely, (1) reputational harm and (2) loss of Mr. Gebert's income. *See* Compl. ¶¶ 57, 57, 74, Civ. A. No. 25-2181. But she does not plausibly allege that the Department's actions caused her either of these two harms.

A.   **Mrs. Gebert Does Not Plausibly Allege that Loss of Her Husband's Income Constitutes an "Adverse Effect" on Her**

Mrs. Gebert does not plausibly allege that the loss of her husband's income is an "adverse effect" on her. Mr. Gebert's loss of income is not an adverse effect on Mrs. Gebert as a matter of law under controlling precedent, and in any event, Mrs. Gebert does not plausibly allege causation.

First, D.C. Circuit precedent precludes Mrs. Gebert's argument that her husband's loss of income counts as an adverse effect on her. In *Tijerina v. Walters*, 821 F.2d 789, 791 (D.C. Cir. 1987), an agency notified a state bar that a man scheduled to sit for the bar exam had committed loan fraud. Both the man and his wife sued the agency under the Privacy Act, with the wife seeking damages "for the government's disclosure of personal information about her." *Id.* at 794. The D.C. Circuit determined that the wife did not "allege that she suffered any adverse effect from these disclosures" because "[t]he only harm" that she alleged was "having shared the costs occasioned by [her husband's] defense before the [state bar]." *Id.* The D.C. Circuit concluded that the wife could not "cannot maintain an action . . . because she has failed to demonstrate any adverse effect to her from that governmental conduct." *Id.* If the cost of the husband's bar defense, which fell in part on the wife, did not constitute an "adverse effect" on the wife in *Tijerina, see id.*, then by the same logic, Mr. Gebert's loss of income does not constitute an adverse effect on Mrs. Gebert either.

Second, regardless, Mrs. Gebert does not plausibly allege that the Department's collection of her information caused her husband's loss of income. She pleads no facts to support a plausible inference that her husband would have kept his security clearance—and thus, his income—had the Department not collected information about her. That is because the Department concluded that Mr. Gebert concealed or omitted information in responding to three questions, only one of which was about Mrs. Gebert. The Department asked him "(1) whether he had any association with any person, group, or business venture that could be used, even unfairly, to criticize, impugn, or attack his character or qualifications for a government position; (2) whether he was aware of any people or organizations that would criticize or oppose his employment in a government position; and (3) whether there was any information regarding members of his family that would be a possible source of embarrassment to the United States Department of State." Mem. Op. at 2, ECF No. 47 (cleaned up).[4] It later concluded that he answered all three questions dishonestly. *Id.* at 3.

Because only the third question was limited to family, but the Department found that Mr. Gebert answered all three dishonestly, Mrs. Gebert does not plausibly allege that Mr. Gebert would have kept his security clearance (and thus, his income) had the Department never collected her information. While the Department conceivably may have reached a different conclusion as to the truthfulness of Mr. Gebert's answer to the third question had it never collected information about Mrs. Gebert, there is no plausible argument that it would have reached a different conclusion as to

---

[4]    In determining whether a plaintiff states a plausible claim to relief, this Court can consider "matters of which [it] may take judicial notice." *Langeman v. Garland*, 88 F.4th 289, 291 (D.C. Cir. 2023). Courts can take judicial notice of facts "not subject to reasonable dispute because" they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Mrs. Gebert cannot reasonably dispute the accuracy of Mr. Gebert's description of the questions posed to him during his security clearance investigations in his pleadings in his prior suit, from which this Court drew the facts in its *Gebert I* opinion, and it is the Department's understanding that she does not dispute his description of those questions.

the truthfulness of his answers to the first and second questions had it never collected information about Mrs. Gebert, given the breadth, and depth of his publicly reported white nationalist activities and associations. *See* Mem. Op. at w, ECF No. 47. Accordingly, Mrs. Gebert does not plausibly allege that the Department's collection of her information caused her husband's loss of income. *See Dickson v. Off. of Pers. Mgmt.*, 828 F.2d 32, 37 (D.C. Cir. 1987) ("The adverse effect must be proximately caused by the Privacy Act violation."); *Molerio v. FBI*, 749 F.2d 815, 826 (D.C. Cir. 1984) (plaintiff "had to establish that the reason he was not hired was the erroneous report").

### B. Mrs. Gebert Does Not Plausibly Allege that Reputational Harm Constitutes an "Adverse Effect" on Her

Nor does Mrs. Gebert plausibly allege that reputational harm is an "adverse effect" on her. Her allegation of reputational harm is conclusory and she again does not plausibly allege causation.

*First*, Mrs. Gebert's allegation of reputational harm is entirely conclusory. She pleads no facts to support a plausible inference that she experienced any reputational harm, such as what the ostensibly damaging information even was, who heard this information, or how this information harmed her reputation. Because her allegation of reputational harm is conclusory, it cannot support a plausible claim to relief. *See Iqbal*, 556 U.S. at 678; *see also, e.g.*, *Morgan Drexen, Inc. v. CFPB*, 785 F.3d 684, 692–93 (D.C. Cir. 2015) (plaintiff "proffered no specific facts tending to show reputational harm, such as loss of clients or other business"); *Ovanova, Inc. v. Dep't of Agric.*, Civ. A. No. 24-2769 (JEB), 2025 WL 343118, at *4 (D.D.C. Jan. 30, 2025) ("vague and conclusory assertions of reputational harm are thus insufficient to establish injury in fact" (cleaned up)).

*Second*, even if Mrs. Gebert experienced reputational harm, she does not plausibly allege that the Department caused it. She does not allege that the Department publicized any information about her. And merely placing her information in a security clearance repository accessible only "by other government agencies," Compl. ¶ 25, Civ. A. No. 25-2181, did not harm her reputation

as a matter of law. *See Doe v. Cheney*, 885 F.2d 898, 910 (D.C. Cir. 1989) (agency's "actions do not . . . appear to be stigmatizing because [it] did not make public accusations that will damage [plaintiff's] standing and associations in the community . . . Restricted disclosure of such material to other federal agencies, with clear limits on further distribution, is not stigmatizing"); *Harrison v. Bowen*, 815 F.2d 1505, 1518 (D.C. Cir. 1987) ("there was no publication of the reasons for her dismissal, and thus no stigmatic harm"); *Asbill v. Housing Auth. of Choctaw Nation*, 726 F.2d 1499, 1503 (10th Cir. 1984) ("intragovernment dissemination, by itself, falls short of the Supreme Court's notion of publication: 'to be made public.'" (quoting *Bishop v. Wood*, 426 U.S. 341, 348 (1976)); *Elhady v. Kable*, 993 F.3d 208, 225-26 (4th Cir. 2021) ("The federal government's intragovernmental dissemination of [ ] information to other federal agencies and components, to be used for federal law enforcement purposes, is not 'public disclosure' . . . . That comports with common sense; government could not function if every intra- or interdepartmental memo critical of a person created a constitutional claim."); *Ahmed v. Kable*, Civ. A. No. 21-3333 (TJK), 2023 WL 6215024, at *17 (D.D.C. Sept. 25, 2023) (an agency's disclosures to "various participating agencies" and "foreign governments . . . are not public and so cannot support Plaintiff's claim").

Indeed, Mrs. Gebert's own pleadings make clear that the *Hatewatch* article's publication, which revealed her information to the world, is what caused any reputational harm she may have experienced, not any action by the Department. *See* Compl. ¶ 16, Civ. A. No. 25-2181. Given that any reputational harm to Mrs. Gebert is "more likely explained by" the *Hatewatch* article than by the Department's actions, she does not plausibly allege that the Department harmed her reputation, as the failure to account for "more likely explanations" for an alleged harm precludes a plausible claim to relief. *Iqbal*, 556 U.S. at 680 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## X.  **Mrs. Gebert Does Not Plausibly Allege "Actual Damages"**

A "waiver of sovereign immunity must be unequivocally expressed in statutory text." *FAA v. Cooper*, 566 U.S. 284, 290 (2012) (quotation marks omitted). "Any ambiguities in the statutory language are to be construed in favor of immunity, so that the Government's consent to be sued is never enlarged beyond what a fair reading of the text requires." *Id.* (citation omitted). "Ambiguity exists if there is a plausible interpretation of the statute that would not authorize money damages against the Government." *Id.* at 290-91. Even when a statute expressly waives sovereign immunity, courts "construe any ambiguities in the scope of a waiver in favor of the sovereign." *Id.* at 291.

To plead a damages claim under the Privacy Act, a plaintiff must plausibly allege "actual damages sustained . . . as a result" of the agency's violation. 5 U.S.C. § 552a(g)(1)(D), (4)(A). The Supreme Court has held that because the Privacy Act waives federal sovereign immunity, "the question [that courts] must answer" in interpreting the statute's civil remedies provision simply "is whether it is plausible to read the statute[ ] as the government does," or whether the statute instead compels the plaintiff's contrary position "unequivocally." *Cooper*, 566 U.S. at 299. The issue thus is not the best reading of the Privacy Act's civil remedies provision were a court writing on a clean state, but only whether the statute "requires" the plaintiff's reading; if not, "then [a court will] take the interpretation most favorable to the Government." *Id.* at 290-91. In this way, while sovereign immunity "does not permit [a court] to rewrite the statute," it does "require [a court] to put a thumb on the scale against waiver." *Davis v. Buchanan Cnty.*, 5 F.4th 907, 910 (8th Cir. 2021).

Mrs. Gebert alleges that the Department's ostensible Privacy Act violations caused her two harms: namely, "financial impact to her family (as the information about her First Amendment protected activities was used as a basis to revoke her husband's security clearance, a condition of his employment) as well as harm to her reputation." Compl. ¶¶ 57, 67, 74, Civ. A. No. 25-2181. But the Privacy Act does not authorize a damages award for either of these two alleged harms.

Starting with the latter of these harms, the Privacy Act does not authorize a damages award for reputational harm. *See Cooper*, 566 U.S. at 295-96, 298, 300 (interpreting the term "actual damages" under the Privacy Act as limited to "special damages for proven pecuniary loss," which "are limited to actual pecuniary loss," and rejecting the argument that the term encompasses "loss of reputation" or "impairment of reputation"); *Biden v. IRS*, 752 F. Supp. 3d 97, 112 (D.D.C. 2024) ("reputational" harm is not "actual damages" under the Privacy Act); *Fleck v. Dep't of Veterans Affs.*, 596 F. Supp. 3d 24, 38 (D.D.C. 2022) ("Actual damages under the Privacy Act are limited to pecuniary harms only and do not extend to recoveries for 'loss of reputation'" (quoting *Cooper*, 566 U.S. at 296)); *deLeon v. Wilkie*, Civ. A. No. 19-1250 (JEB), 2020 WL 210089, at *7 (D.D.C. Jan. 14, 2020) ("non-economic damages, including 'loss of reputation, shame, mortification, injury to the feeling and the like' are not covered under the Act" (quoting *Cooper*, 566 U.S. at 296)). As such, Mrs. Gebert's allegation of reputational harm does not support her Privacy Act claims.

Nor does the Privacy Act permit Mrs. Gebert to recover damages for her husband's loss of income. The Supreme Court has read the term "actual damages" as used in the Privacy Act in light of background legal principles. *See Cooper*, 566 U.S. at 295 (ascribing interpretive significance to the parallels between the Privacy Act's "actual damages" provision and "the remedial scheme for the common-law torts of libel *per quod* and slander"); *Doe v. Chao*, 540 U.S. 614, 625 (2004) (adopting an interpretation that "parallels another remedial scheme that the drafters of the Privacy Act would probably have known about" under the "common law"). One such principle is "[t]he doctrine of double recovery," which generally precludes recovery of "the same damages twice, even though the recovery is based on two different theories." *Medina v. District of Columbia*, 643 F.3d 323, 326 (D.C. Cir. 2011). This rule is "a cardinal principle of law," intended to ensure that relief "make[s] the plaintiff whole, but certainly not more than whole." *Kassman v. Am. Univ.*, 546

F.2d 1029, 1033 (D.C. Cir. 1976) (cleaned up, quoting *Snowden v. D. C. Transit Sys., Inc.*, 454 F.2d 1047, 1048 (D.C. Cir. 1971)); *see also Hudson v. Lazarus*, 217 F.2d 344, 349 (D.C. Cir. 1954) ("Double recovery for the same elements of damage should of course be avoided"); *McKenna v. Austin*, 134 F.2d 659, 664 (D.C. Cir. 1943) ("the injured person [cannot] have more than full satisfaction, except as punitive damages. He has no right to make profit from his harm"). The Supreme Court likewise has said it 'goes without saying that the courts can and should preclude double recovery.'" *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002) (quoting *Gen. Tel. Co. of Nw. v. EEOC*, 446 U.S. 318, 333 (1980)); *see also Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 264 (1972) (rejecting statutory interpretation that could not "cope with the problems of double recovery"); *cf. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285 (1977) (relief should not "place an employee in a better position as a result of" his harm than if it did not happen).

While the rule against double recovery often applies when a single plaintiff seeks to recover for the same harm under multiple theories, it also prevents spouses and other family members from recovering for the same injury to one of them. The D.C. Circuit has cautioned that "if the wife is allowed to sue" for injury to her husband, "there could be a double recovery in regard to the service element of consortium, if the husband's recovery is not taken into account in measuring the wife's damages." *Hitaffer v. Argonne Co.*, 183 F.2d 811, 814 (D.C. Cir. 1950), *overruled on unrelated grounds by Smither & Co. v. Coles*, 242 F.2d 220 (D.C. Cir. 1957). And in *Garnes v. Gulf & Western Manufacturing Co.*, 789 F.2d 637, 638-39, 644 (8th Cir. 1986), an injured worker raised tort claims against a company that had designed and manufactured a piece of equipment, while his wife and two minor sons sought loss of consortium damages. Although the Court allowed the wife and children to recover, it distinguished loss of consortium claim from a lost earnings claim, and expressly rejected the idea "that both the injured party and the consortium claimants are entitled

to recover the injured party's lost earnings." *Id.* at 644. It held that a lost earnings claim (what it called "loss of support"), unlike loss of consortium, "plainly belongs to the injured person . . . until the injured person's death." *Id.* (quoting *Madison v. Colby*, 348 N.W.2d 202, 209 (Iowa 1984)).

Other courts are in agreement. In *Hassan v. Postal Service*, 842 F.2d 260, 265 n.10 (11th Cir. 1988), for example, the Eleventh Circuit explained "that an award of damages for loss of services is only appropriate in those cases in which the award would not result in a double recovery for the plaintiff. Double recovery would be possible if, for example, the court were to award a plaintiff's spouse damages for loss of consortium based on those same services." In *Miskunas v. Union Carbide Corp.*, 399 F.2d 847, 849-50 (7th Cir. 1968), the Seventh Circuit explained that "if the wife is permitted a separate recovery for her loss of consortium resulting from injuries (to her husband), there is, in effect, a double recovery for the same matter . . . [b]ecause a husband can recover for lost earnings, [the state] could reasonably conclude that it would be undesirable to give the wife an action that might permit double recovery" (cleaned up, citing *McDaniel v. McDaniel*, 201 N.E.2d 215, 218 (Ind. 1964)). And in *Van Vallis v. Transcontinental Insurance Co.*, Civ. A. No. 07-0026, 2008 WL 11349758, at *5 (D. Mont. Aug. 19, 2008), the district court explained that "[i]n loss of consortium cases the court must consider the possible duplication of damages awarded to an injured party and the injured party's spouse in order to prevent double recovery." (quotation marks omitted). The rule that emerges from cases such as these is clear—in order to prevent double recovery, courts typically will not award both spouses damages for the same harm to one of them.

This is where Mrs. Gebert's claim for damages based on her husband's loss of income fails. A person who loses his income due to an agency's Privacy Act non-access violation generally can recover his own lost salary as actual damages under the Privacy Act, assuming he can satisfy the remaining elements of his claim. *See Cooper*, 566 U.S. at 298. Allowing his spouse to recover her

- 39 -

own damages for his loss of income would result in double recovery for the same harm. Under

such an approach, if one spouse loses income, both spouses could recover the full amount of the

lost income, giving them a windfall and making them "more than whole." *Kassman*, 546 F.2d at

1033. That is what the doctrine of double recovery is intended to prevent. *See Medina*, 643 F.3d

at 326. Such an interpretation of the Privacy Act is all the more plausible given that the rule against

double recovery—and cases applying this rule in the specific context of a plaintiff's claim based

on a spouse's loss of income—constituted part of the legal "backdrop against which Congress

enacted" the Privacy Act back in 1974. *Stewart v. Dutra Const. Co.*, 543 U.S. 481, 487 (2005).

Against this background legal context, "it is plausible to read the [Privacy Act]" as not

allowing a plaintiff to recover damages for her spouse's loss of income, at least in circumstances

where, as here, her spouse is able to bring his own claim for his loss of income. *Cooper*, 566 U.S.

at 299. Even if one could read the Privacy Act to allow a plaintiff to recover damages for a spouse's

loss of income, one cannot say that "a fair reading of the text requires" such a reading. *Id.* at 290.

Rather, given the background rule against double recovery, "there is a plausible interpretation of

the statute that would not authorize" such a recovery. *Id.* at 290-91. The statute at a minimum does

not "unequivocally" say otherwise. *Id.* at 290. Because a construction of the Privacy Act that would

not allow a plaintiff to recover her spouse's lost income is plausible, the principle that courts must

construe waivers of sovereign immunity narrowly means that such an interpretation is mandatory.

*Id.* For that reason, Mrs. Gebert cannot recover damages based on her husband's loss of income.

## XI.    <u>The Access Claims Fail Because the Records Requests are Unreasonably Burdensome</u>

Last, Mr. and Mrs. Gebert's FOIA and Privacy Act access claims fail because their requests

are unreasonably burdensome. FOIA requires an agency to respond to a request for records only

if it "reasonably describes such record[s]." 5 U.S.C. § 552(a)(3)(A). A request thus "triggers the

agency's obligation to search for and disclose all responsive records" only when it "reasonably

describes the records sought." *Ctr. for the Study of Servs. v. Dep't of Health & Hum. Servs.*, 874 F.3d 287, 288 (D.C. Cir. 2017) (cleaned up). Courts also read the Privacy Act to require that a request reasonably describe the records sought. *See Pretzman v. Mayorkas*, Civ. A. No. 23-2577, 2024 WL 3887384, at *5 (D.D.C. Aug. 20, 2024) ("the 'reasonably describes' requirement . . . also applies to a [Privacy Act] request" (citing cases)); *Haleem v. Dep't of Def.*, Civ. A. No. 23-1471 (JEB), 2024 WL 230289, at *8 (D.D.C. Jan. 22, 2024) (same); *Sherven v. Nat'l Archives & Recs. Admin.*, Civ. A. No. 23-3903 (CRC), 2024 WL 519801, at *1 (D.D.C. Feb. 2, 2024) (same).[5]

A request does not reasonably describe the records sought if it is "so broad as to impose an unreasonable burden upon the agency," meaning it "would require the agency to locate, review, redact, and arrange for inspection a vast quantity of material." *Am. Fed'n of Gov't Emps. v. Dep't of Com.*, 907 F.2d 203, 209 (D.C. Cir. 1990). An agency "need not honor [such] a request." *Nat'l Sec. Couns. v. CIA*, 969 F.3d 406, 410 (D.C. Cir. 2020). As such, "even if an agency is able to sufficiently identify the requested records, an agency is not required to process a request for which its post-search efforts would 'impose an unreasonable burden.'" *Power the Future v. White House Council on Env't Quality*, Civ. A. No.24-1942 (RC), 2025 WL 2206947, at *3 (D.D.C. Aug. 4, 2025) (quoting *Am. Fed.*, 907 F.3d at 209). "Requesters may not make unreasonable demands of an agency, such as by seeking whatever document they want from whomever and wherever they

---

[5]   Indeed, an agency regulation states that "[r]equests for access should describe the requested record(s) in sufficient detail to permit identification of the record(s)," 22 C.F.R. § 171.22(b), which this Court has applied to require that a Privacy Act request reasonably describe the records sought, *see* Mem. Op. at 17-19, ECF No. 47; *compare Pretzman*, 2024 WL 3887384, at *5 (construing a similarly phrased regulation to create a "reasonably describes" requirement); 5 U.S.C. § 552a(f)(3) (agency may "establish procedures for [ ] disclosure" of records). "A Privacy Act plaintiff . . . must exhaust his or her administrative remedies prior to bringing an amendment suit." *Hill v. Air Force*, 795 F.2d 1067, 1070 (D.C. Cir. 1986). "A failure to seek review in accordance with the agency's procedures makes a lawsuit subject to dismissal for failure to exhaust." *Trent v. Dep't of Homeland Sec.*, Civ. A. No. 18- 2591 (ABJ), 2020 WL 1429881, at *3 (D.D.C. Mar. 24, 2020).

choose. Despite its seemingly boundless breadth, FOIA still protects agencies from undue

burdens." *Ctr. for Immigr. Stud. v. USCIS*, 628 F. Supp. 3d 266, 271 (D.D.C. 2022) (cleaned up).

Mr. and Mrs. Gebert's records requests, which seek records about themselves, are unduly

burdensome. The Department's search for records responsive to Mr. Gebert's request yielded

about 8.474 million pages, while the initial search for records responsive to Mrs. Gebert's request

yielded about 27,400 pages. Ex. A, Weetman Decl. ¶ 36.[6] To determine how long processing the

requests would take, the Department processed a random sample of five records responsive to Mr.

Gebert's request. *Id.* ¶ 40. Processing each page in this sample took an average of three minutes.

*Id.* Assuming this is a representative sample, which there is no reason to doubt, and extrapolating

this result to the full sets of potentially responsive records, processing Mrs. Gebert's request alone

would take approximately 1,370 hours. *Id.* ¶ 41. Assuming that a single employee processed Mrs.

Gebert's request continuously twenty-hours a day without any breaks processing her request would

take over eight weeks. *Id.* Assuming a standard forty-hour workweek, meanwhile, processing the

request would take thirty-four weeks if the processor worked on nothing else. *Id.*[7]

Processing Mr. Gebert's request, meanwhile, would take approximately 423,700 hours. *See*

Weetman Decl. ¶ 42. Assuming that a single person processed Mr. Gebert's request continuously

without stopping, processing his request would take over forty-eight and a half years. *Id.* Assuming

---

[6]     In the FOIA context, "agency affidavits that are relatively detailed and non-conclusory are accorded a presumption of good faith," *Watkins Law & Advocacy, PLLC v. Dep't of Just.*, 78 F.4th 436, 450 (D.C. Cir. 2023) (quotation marks omitted), including when an agency gives an informed, reasonable estimate for how long processing a request is likely to take, *see, e.g.*, *Feds for Freedom v. Dep't of Def.*, Civ. A. No. 23-3607 (TJK), 2025 WL 522017, at *4 (D.D.C. Feb. 18, 2025).

[7]     Although processing Mrs. Gebert's request would take less time than some requests held to be reasonable, "burdensomeness does not boil down to a simple game of numbers." *Feds for Freedom*, 2025 WL 522017, at *5. Mrs. Gebert's request is unduly burdensome not only because of its size, but also its overbreadth relative to her purpose in seeking these records and, importantly, her refusal to narrow her request in any way whatsoever, as discussed further below *infra*.

a standard forty-hour workweek, meanwhile, processing would take over 203 years if the processor worked on nothing else. *Id.* Even if the Department assigned all fifteen of its reviewers to work full-time on processing Mrs. and Mrs. Gebert's requests and do nothing else, processing still would take them over three years, or over 13.5 years assuming a forty-hour workweek. *Id.* ¶ 43.

Of course, the Department could not ignore all other records requests to focus exclusively on Mr. and Mrs. Gebert's requests. The Department has over 30,700 pending FOIA requests, about 225 of which are in active litigation, and receives about 25,000 new requests a year—numbers that are increasing each year. *See* Weetman Decl. ¶¶ 43, 45. It has only twenty-two specialists total responsible for processing these requests. *Id.* ¶ 51. And it is subject to various other logistical and technical limitations, as described in far greater detail in the attached declaration. *See generally id.* Courts have found requests unreasonably burdensome under similar circumstances. *See, e.g.*, *Feds for Freedom*, 2025 WL 522017, at *3 ("if a search would require a multi-member team to spend every working hour for a year or more on a FOIA request, a court may be able to conclude that the search is burdensome"); *Wolf v. CIA*, 569 F. Supp. 2d 1, 9 (D.D.C. 2008) (request that "would take approximately 3675 hours" to process is unreasonably burdensome); *Power the Future*, 2025 WL 2206947, at *4 (request was overbroad as "[t]he initial processing would consume virtually all the time of the Agency's limited FOIA staff for over a three-year period" (cleaned up, citing cases)).

"The unreasonableness of [this] burden," moreover, "is only more obvious when one realizes that it is largely unnecessary to [Mr. and Mrs. Gebert's] purpose." *Am. Fed'n*, 907 F.2d at 209. Mr. and Mr. Gebert made their requests in connection with Mr. Gebert's "Security Clearance Revocation." Mr. Gebert Request at 1, ECF No. 1-5, Civ. A. No. 25-2180; Mrs. Gebert Request at 1, ECF No. 1-4, Civ. A. No. 25-2181. But their two records requests go far beyond Mr. Gebert's clearance revocation, seeking various categories records that plainly are unrelated to it. Mr. Gebert,

for example, requests numerous categories of records related to his clearance revocation, but also separately seeks all "records" or "correspondence" that merely mention either his name or Social Security number, whether or not it has anything to do with his clearance revocation. Mr. Gebert Request at 1-2. Given that Mr. Gebert requests numerous categories of records about his clearance revocation, any records that fall within the scope of his catch-all request for records that mention his name or Social Security number, but do not fall within the scope of his more narrowly-tailored requests for information relating to his clearance revocation specifically, are unlikely to contain information that is relevant to his clearance revocation, and thus, that is of interest to him. Mrs. Gebert likewise seeks not only records relating to the clearance revocation, but also all "records" or "correspondence" that merely mention her name or Social Security number, which are unlikely to contain information of interest to her for the reasons explained. *See* Mrs. Gebert Request.

The fact that Mr. and Mrs. Gebert seek a broad array of records that are "in no way tied to their expressed concern with" Mr. Gebert's clearance revocation makes their requests all the more unreasonable. *Am. Fed'n*, 907 F.2d at 209; *compare Feds for Freedom*, 2025 WL 522017, at *5 (request unreasonable as it sought "records well beyond [plaintiff's] asserted interest, and it would undoubtedly require the agency to process thousands of pages with no conceivable relation to the policies in which Plaintiff proclaims an interest" (cleaned up)); *Ctr. for Immigr. Stud.*, 628 F. Supp. 3d at 273-74 (where plaintiff "has not tailored its requests" to its "purpose" in seeking the records, the burden was "more obviously unreasonable given this mismatch between the material [plaintiff] says it wants and the material that [its] requests will force [the agency] to review" (cleaned up)); *Freedom Watch v. Dep't of State*, 925 F. Supp. 2d 55, 61 (D.D.C. 2013) (request not limited to personnel who "might have had something to do" with plaintiff's interest was unreasonable).

Finally, despite the foregoing, Mr. and Mrs. Gebert have refused to narrow their requests' scopes. *See* Ex. A, Weetman Decl. ¶ 39; Ex. B, Emails. The Department made multiple good faith attempts to work with Mr. and Mrs. Gebert to narrow their records requests' scope to manageable proportions, but both Mr. and Mrs. Gebert repeatedly refused to narrow their requests in any way, even though their requests plainly seek broad swaths of information that on its face is of little if any interest to them. *Id.* Mr. and Mrs. Gebert's refusals to narrow their requests in any way, despite the Department's good faith attempts to work with them to do so, only makes the burden that their requests impose on the Department all the more unreasonable. *See Feds for Freedom*, 2025 WL 522017, at *5 (request's burden more unreasonable because "regrettably, Plaintiff chose not to work with Defendant to narrow its request to focus on records in which it is truly interested"); *Ctr. for Immigr. Stud.*, 628 F. Supp. 3d at 274 n.3 (request was unreasonably burdensome where agency "repeatedly asked [plaintiff] to narrow the request," but plaintiff repeatedly refused to do so).

## CONCLUSION

For these reasons, this Court should deny Mr. Gebert's motion for reconsideration, dismiss Mr. and Mrs. Gebert's new suits on issue preclusion grounds, or, alternatively, dismiss the Privacy Act non-access claims and grant the Department summary judgment on the access claims.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

BRIAN P. HUDAK, D.C. Bar #90034769
Chief, Civil Division

By:           */s/ Bradley G. Silverman*
       BRADLEY G. SILVERMAN,
        D.C. Bar #1531664
       Assistant United States Attorney
       601 D Street, NW
       Washington, DC 20530
       (202) 252-2575
       bradley.silverman@usdoj.gov

       *Attorneys for the United States of America*