# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MATTHEW GEBERT,

                    *Plaintiff*,

        v.                                          Civil Action No. 22-2939 (DLF)

DEPARTMENT OF STATE,

                    *Defendant*.

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**     **i-iii**

**INTRODUCTION**     **1**

**ARGUMENT**     **1**

I. Plaintiff is Entitled to Reconsideration to Correct Clear Error, Prevent Manifest Injustice, and Consider New Evidence.     2

    A. The Finding that the Court Does Not Have Subject Matter Jurisdiction is Erroneous as this Court Misunderstood the Argument Presented     3

    B. The Court Should Reconsider it Ruling to Prevent Manifest Injustice and the Clear Error in Dismissing the Complaint Based Upon the Requested Relief     6

    C. The Court Should Reconsider its Ruling to Prevent Clear Error and Manifest Injustice as New Evidence Demonstrates that the Court Erred in Finding that Mr. Gebert Faced No Risk of Imminent and Substantial Harm     11

    D. The Issue of the Department of State Violating Mr. Gebert's First Amendment Rights is Not Moot     17

    E. The Court Should Reconsider it Ruling to Prevent Manifest Injustice as this Case Presents a Harm Capable of Repetition yet Evading Review     18

**RELIEF REQUESTED**     **20**

**CONCLUSION**     **20**

# TABLE OF AUTHORITIES

**Cases**

*Anyanwutaku v. Moore,*
  331 U.S. App. D.C. 379, 151 F.3d 1053, 1057-58 (1998)      2

*Bierly v. Dep't of Def.,*
  Civ. A. No. 23-2386 (RCL), 2024 WL 4227154
  at *21 (D.D.C. Sept. 18, 2024      13

*City of L.A. v. Lyons,*
  461 U.S. 95, 101-102, 109 (1983)      13

*Chastain v. Kelley,*
  167 U.S. App. D.C. 11, 510 F.2d 1232, 1235 (D.C. Cir. 1975)      16

*Clark v. Library of Cong.,*
  242 U.S. App. D.C. 241, 750 F.2d 89 (1984)      4
  750 F.2d 90      4
  750 F.2d 91      4
  750 F.2d 92      5
  750 F.2d 94      4-5
  750 F.2d 95      5
  750 F.2d 401      5

*Commissioned Officers Ass'n v. Bunch,*
  Civil Action No. 21-853 (JDB), 2022 U.S. Dist. LEXIS 112426,
  at *5 (D.D.C. June 25, 2022)      12

*Department of the Navy v. Egan,*
  484 U.S. 518, 108 S. Ct. 818, 825 (1988)      7, 11

*Doe v. U.S. Air Force,*
  259 U.S. App. D.C. 22, 812 F.2d 738, 740, 741 (1987)      16

*Dunn v. Blumstein,*
  *405 U.S. 330 (1972)*      19

*Exxon Shipping Co. v. Baker,*
  554 U.S. 471, 486 n.5, 128 S. Ct. 2605 (2008)      9

*Firestone v. Firestone,*
  76 F.3d 1205, 1208 (D.C. Cir. 1996)      11-12

*Gov't of Manitoba v. Bernhardt,*
  440 U.S. App. D.C. 398, 404, 923 F.3d 173, 179 (2019)      9, 17

*Guan v. Mayorkas,*

530 F. Supp. 3d 237, 262 (E.D.N.Y. 2021) — 16

*Haase v. Sessions,*
835 F. 2d 902, 911 (D.C. Cir. 1987) — 14

*Haleem v. United States DOD,*
Civil Action No. 23-1471 (JEB), 2025 U.S. Dist. LEXIS 143082, — 6, 8
at *2 (D.D.C. July 25, 2025) — 3-4, 8
at *3 — 4

*Hobson v. Wilson,*
237 U.S. App. D.C. 219, 737 F.2d 1, 65 (D.C. Cir. 1984) — 16

*Johnson v. Panetta,*
953 F. Supp. 2d 244, 250 (D.D.C. 2013) — 6, 9, 17

*Keene Corp. v. United States,*
508 U.S. 200, 207 (1993) — 13

*Lee v. Garland,*
120 F.4th 880 (D.C. Cir. 2024) — 7
120 F.4th 885 — 7

*Leidos, Inc. v. Hellenic Republic,*
434 U.S. App. D.C. 236, 240, 881 F.3d 213, 217 (2018) — 2

*Norman-Bloodsaw v. Lawrence Berkeley Lab.,*
135 F.3d 1260 (9th Cir. 1998) — 16

*People for the Ethical Treatment of Animals v. Gittens,*
364 U.S. App. D.C. 386, 391, 396 F.3d 416, 421 (2005) — 7

*Rockwell Int'l Corp. v. United States,*
549 U.S. 457, 473 (2002) — 13

*Schneider v. Kissinger,*
412 F.3d 190, 200 n.1, 366 U.S. App. D.C. 408 (D.C. Cir. 2005) — 9, 17

*Spencer v. Kemna,*
523 U.S. 1, 17, 118 S. Ct. 978, 988 (1998) — 18

*Southern Pacific Terminal Co. v. ICC,*
219 U.S. 498 (1911) — 18-19

*Super Tire Eng'g Co. v. McCorkle,*
416 U.S. 115, 125-26, 94 S. Ct. 1694, 1700 (1974) — 19

*TIG Ins. Co. v. Rep. of Argentina,*

967 F.3d 778, 783 (D.C. Cir. 2020)                                    13, 17

*TransUnion LLC v. Ramirez,*
  594 U.S. 413, 435 (2021)                                            11

*Thompson v. Sessions,*
  278 F. Supp. 3d 227, 251 (D.D.C. 2017)                              13

*United States v. Juvenile Male,*
  564 U.S. 932, 938, 131 S. Ct. 2860, 2865 (2011)                     18

*Wannall v. Honeywell, Inc.,*
  413 U.S. App. D.C. 384, 387, 775 F.3d 425, 428 (2014)               2

*Weinstein v. Bradford,*
  423 U.S. 147, 149, 96 S. Ct. 347, 348 (1975)                        18-19

**Rules**

Federal Rules of Civil Procedure
  Rule 54(c)                                                          7-9
  Rule 59(c)                                                          2
  Rule 59(e)                                                          2-3, 11-12
  Rule 60(b)                                                          1-4

United States District Court for the District of Columbia Local Civil Rule
  7(b)                                                                2

**Statues**

Freedom of Information Act, 5 U.S.C. § 552
FOIA Exemption
  3
  6                                                                   3
  7(C)                                                                3
  7(E)                                                                3
                                                                      3-4

**Other Authorities**

12 FAM 234.3 Suspension of Security Clearance Appeals                 10

## INTRODUCTION

Plaintiff Matthew Gebert, by and through undersigned counsel, respectfully replies in support of Plaintiff's Motion for Reconsideration of this Court's June 26, 2025 ruling. For the reasons set forth below, Plaintiff requests that the Court grant Plaintiff's motion in full, reconsider its ruling, and allow this challenge to proceed.

From the outset, Plaintiff wishes to clarify that he does not seek reinstatement of his security clearance, nor is this a challenge to the merits of that revocation. Rather, Plaintiff is asking the Court to find that the three questions asked by every Department of State investigator to **every** security clearance applicant violates the First Amendment. As the Security Appeals Panel (SAP) has already made its ruling, the Department no longer has jurisdiction over the Plaintiff's clearance and there is no possibility of it being reinstated until he reapplies. the Plaintiff seeks only prospective, equitable relief - primarily a declaratory judgment and injunction designed to prevent the continued use of unconstitutional investigatory questions in national security eligibility determinations. Additionally, the Plaintiff seeks the purging and sealing of all unlawfully obtained records.

## ARGUMENT

At the outset, as has become par for the course in this case, Defendant's opposition to the motion for reconsideration does nothing but attempt to unnecessarily complicate the matters before the Court through circuitous arguments and conclusory, unsupported statements. Notably, Defendant does not argue that the legal standards, clear error or prevention of manifest injustice were not present here. In fact, Defendant omits any argument regarding Rule 60(b). Instead, Defendant twists the legal precedent, previous arguments, and prior rulings of the court to fit its narrative. As such, here, Plaintiff will simplify and clarify the arguments and demonstrate why the Court should grant the motion for reconsideration.

I.    **Plaintiff is Entitled to Reconsideration to Correct Clear Error, Prevent Manifest Injustice, and Consider New Evidence.**

Defendant first argues that Plaintiff is not entitled to reconsideration as he "repackages arguments that were previously raised." ECF 91 at 18. Interestingly, however, previously raising an argument to the court is a requirement for bringing a motion for reconsideration as a party is not entitled to bring a *new* argument before the court at the motion for reconsideration phase. *See Leidos, Inc. v. Hellenic Republic,* 434 U.S. App. D.C. 236, 240, 881 F.3d 213, 217 (2018) (stating that Rule 59(e) motions are aimed at "reconsideration, not initial consideration.") Although Rule 59(e) is neither "a second opportunity to present [an] argument upon which the Court has already ruled," it is a means of correcting errors made at previous stages in the case, preventing manifest injustice, and considering new evidence, which are precisely the circumstances here. *See Anyanwutaku v. Moore*, 331 U.S. App. D.C. 379, 151 F.3d 1053, 1057-58 (1998) (stating that "Rule 59(e) motions need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.") (internal quotation marks and citations omitted)). Thus, Defendant's argument that Plaintiff is not entitled to reconsideration as he already raised the arguments presented plainly fails.

Further,  it should be noted that Plaintiff moved for reconsideration on the basis of both Rule 59(c) and Rule 60(b). *See* ECF 81-1 at 7, 9-11. In its Response, Defendant neglects to address Rule 60(b) in any regard. *See* ECF 91. As such, Defendant plainly concedes this issue. *See* D.D.C. R. 7(b) (noting that the court may treat a motion as conceded if the opposing party fails to respond); *Wannall v. Honeywell, Inc.*, 413 U.S. App. D.C. 384, 387, 775 F.3d 425, 428 (2014) (stating that that Local Rule 7(b) "is understood to mean that if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the

2

unaddressed arguments as conceded."). As such, this Court should grant the Motion for Reconsideration on the basis of Rule 60(b) alone.

Ultimately, reconsideration here is warranted as (1) the Court misapprehended the nature of the claims by treating them as a challenge to the clearance outcome rather than a constitutional challenge to the investigative process; (2) the Court erred in finding that the relief sought would necessarily reinstate Mr. Gebert's clearance; (3) new evidence, not previously available, confirms that the same unconstitutional questions were used again during his appeal, proving that the harm is ongoing and systemic; and (4) Defendant has conceded that Reconsideration is warranted pursuant to Rule 60(b).

### A. The Finding that the Court Does Not Have Subject Matter Jurisdiction is Erroneous as this Court Misunderstood the Argument Presented

In the Motion for Reconsideration, Plaintiff argued that the Court misunderstood Plaintiff's argument and therefore, he should be entitled to reconsideration. This Court has previously granted a motion for reconsideration where a party presented arguments to the Court, felt that the Court misunderstood the arguments, presented and failed to address all arguments presented. *See Haleem v. United States DOD*, Civil Action No. 23-1471 (JEB), 2025 U.S. Dist. LEXIS 143082, at *2 (D.D.C. July 25, 2025). In *Haleem*, the court ordered the government to produce seventeen pages of records following litigation regarding a Freedom of Information and Privacy Act request. *Id*. The court found that these seventeen pages were not covered by FOIA Exemption 7(E). *Id*. In moving for reconsideration, however, the government argued that the court erred as it failed to consider the arguments the government made that the records were exempt from disclosure pursuant to FOIA Exemptions 3, 6, and 7(C). *See Haleem*, Civil Action No. 23-1471 (JEB), Defendant's Motion for Partial Reconsideration, ECF 44 at 11. Additionally, the government felt that the court misunderstood its arguments related to Exemption 7(E). *Id*. at

23. As such, the court considered the clarification as to the Exemption 7(E) argument and ultimately granted the Motion for Reconsideration, finding it was appropriate pursuant to Federal Rules of Civil Procedure 59(e) and 60(b). *See Haleem*, 2025 U.S. Dist. LEXIS 143082 at \*2-3.

Analogously, here, Plaintiff argues that the Court did not address all of the arguments presented and also that the Court misunderstood him to be challenging the revocation of the clearance rather than the process itself, a claim over which this Court has subject matter jurisdiction pursuant to established caselaw. *See* ECF 81-1 at 7-8, 12-17. Specifically, Plaintiff argued that this case is not about Mr. Gebert as an individual security clearance holder, but this case is about the greater issue of Defendant's security clearances process, to which Mr. Gebert was subjected. *Id*. In other words, the core of the case is not about whether Mr. Gebert's clearance was properly revoked or whether it should be restored. The core of the case is that the Department of State is engaging in practices in its security clearance investigations that violate the constitution. The Court did not address this argument, which as explained in the Motion for Reconsideration, is justiciable and over which it has subject matter jurisdiction.

Plaintiff once more wishes to draw the Court's attention to the fact this is a First Amendment case at heart, and "[l]ike other citizens, government employees also have a constitutional right to form political beliefs and lawful associations without governmental intrusion or compelled disclosure." *Clark v. Library of Cong.*, 242 U.S. App. D.C. 241, 750 F.2d 89, 94 (1984). In *Clark*, the court examined a situation similar to that before us here. There, the Federal Bureau of Investigation (FBI) began conducting an investigation into the political beliefs and activities of an employee of the Library of Congress. *Id*. at 90-91. Like Mr. Gebert, the plaintiff had been involved with legal non-violent political groups advocating social change, and also like Mr. Gebert, the government investigated the plaintiff's family . *Id*. at 91. Unbeknownst

to the plaintiff, the FBI maintained these investigatory files, which prevented him from advancing in his career. *Id*. at 92. The district court declined to decide whether the plaintiff's First Amendment rights were violated, and on appeal, the court noted that an intrusive investigation on the basis of peaceful association with a lawful political organization was justiciable. *Id*. at 92, 94.

In conducting its analysis, the court noted that "[s]ignificant impairments of these first amendment rights must withstand exacting scrutiny and may not be justified on a showing of a mere legitimate state interest." *Id*. at 94. It further noted that "[e]xacting scrutiny is especially appropriate where the government action is motivated solely by an individual's lawful beliefs or associations, for government action so predicated is imbued with the potential for subtle coercion of the individual to abandon his controversial beliefs or associations." *Id*. Ultimately, the court determined that the "full field investigation carried out against [the plaintiff] constituted a 'broad and sweeping inquiry' into [his] political beliefs and associations and must  be justified under the" exacting scrutiny standard. *Id*. at 94-95. The appellate court "remanded to the district court for further consideration consistent with this standard." *Id*. at 401.

Defendant has failed to demonstrate, or even argue, that exacting scrutiny was utilized by the Department in this situation despite also engaging in a broad and sweeping inquiry into Mr. Gebert's political beliefs and associations. Consequently, as Defendant has not established exacting scrutiny for compelling Mr. Gebert to disclose his lawful associations, it has violated his First Amendment rights.

Further, interestingly enough, Defendant continues to ignore the argument that the Court did not address all of Plaintiff's arguments in its Response to the Motion for Reconsideration. Rather, it merely argues that the Court "has considered and rejected Mr. Gebert's argument[,]"

and it generally cites pages 4 and 5 of the June 26, 2025 Memorandum Opinion and Order in support of this contention. ECF 91 at 19. As such, Defendant has waived this argument. *See Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) (stating that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived."). Contrary to Defendant's contention, a reading of the June 26, 2025 Memorandum Opinion, however, reveals that the Court did not in fact consider the argument that this case is about more than one man's security clearance, but is about the processes that the Department of State is using in its security clearance investigations, to which one man fell victim. In fact, the Memorandum Opinion demonstrates that the analysis was solely about Mr. Gebert and whether his clearance would be restored. *See* ECF 78 at 1 (stating that the basis of the case was that "Mr. Gebert sued the U.S. Department of State for revoking his security clearance."). Therefore, given that Plaintiff previously raised this argument, a contention that Defendant does not dispute, and the Court has not properly considered it, Plaintiff is entitled to reconsideration as the finding that the Court does not have subject matter jurisdiction is erroneous. *See Haleem*, 2025 U.S. Dist. LEXIS 143082.

And, most importantly, the Plaintiff's security clearance has been revoked thereby eliminating any concerns that the reconsideration request is an attempt to have the courts intervene in the security clearance adjudication.

### B. The Court Should Reconsider it Ruling to Prevent Manifest Injustice and the Clear Error in Dismissing the Complaint Based Upon the Requested Relief

Turning now to the requested relief, Defendant appears to attempt to misconstrue the Court's findings on this issue. First, Defendant argues that the court concluded that "some of [Mr. Gebert's] claims in fact challenge the clearance revocation itself despite his attempt to characterize them as challenges to the investigative process[.]" It must be noted, however, that

6

the Court never found that Plaintiff in any way was attempting to mischaracterize his claims in some apparent ploy to fool the Court as Defendant implies. As Defendant itself points out, in listing the numerous times Plaintiff has made his argument, *see* ECF 91 at 18-19, Plaintiff has, at every turn, attempted to clarify his arguments and shed light on the true issues in this case. Thus, contrary to Defendant's argument, the Court did not find that Plaintiff was attempting to reshape his argument to fit a mold. *See* ECF 78.

Rather, as Plaintiff points out in the Motion for Reconsideration, the Court considered *some* of the requested relief, but failed to consider that Plaintiff requested "such other relief as the Court deems just and proper."[1] ECF 81-1 at 18-19. Specifically, the Court found that some of the requested remedies - backpay and reinstatement - were the same remedies rejected in *Lee v. Garland*, 120 F.4th 880, 885 (D.C. Cir. 2024). ECF 78 at 4. It then found that, as to the requested injunctive relief, it was not "discrete from the revocation decision" as the questions asked of Mr. Gebert "were the sole basis for revoking Gebert's security clearance."[2] ECF 78 at 4. However,

---

[1] Plaintiff notes that he requested "such other relief as the Court deems just and proper" in the Second Amended Complaint. *See* ECF 59 at 19, 21-22. As explained in the Motion for Reconsideration, a complaint should not be dismissed for legal insufficiency based on an improper demand for relief. *See* ECF 81-1 at 18-19; *People for the Ethical Treatment of Animals v. Gittens*, 364 U.S. App. D.C. 386, 391, 396 F.3d 416, 421 (2005) (noting not only that that Federal Rule of Civil Procedure 54(c) "empowers courts to grant the relief to which the prevailing party is entitled, regardless whether the party specifically requested the relief in its complaint[,]" but also that the language "such other and further relief as the Court may deem just and proper" permits a district court to award damages for a claim even when it was not pled).

[2] Importantly, as noted in the introduction, the restoration of the clearance is no longer a concern as this issue is now moot. The SAP has upheld the revocation, and Plaintiff has no additional remedies through the agency. Further, as has been well established, pursuant to *Dep't of the Navy v. Egan,* 484 U.S. 518, 108 S. Ct. 818, 825 (1988), this Court has no power to reinstate the clearance. Thus, the Court should no longer be concerned with overstepping in this regard. The mootness of the security clearance, however, does not change the fact that the agency violated Mr. Gebert's rights in impermissibly collecting First Amendment protected information, and it continues to use these unconstitutional practices in its security clearance investigations, two issues which are not moot.

the Court did not consider any additional relief as Plaintiff requested in the amended complaint. *See id*. This warrants reconsideration. *See Haleem*, 2025 U.S. Dist. LEXIS 143082.

Defendant frames Plaintiff's request for the Court to consider "such other relief as the Court deems just and proper" very clearly requested in the Second Amended Amended Complaint (ECF 59 at 19, 21-22), to be an "attempt to evade the Court's analysis." ECF 91 at 21. Plaintiff fails to see how asking the Court to properly consider a claim for relief that was raised, but not previously addressed, to be an attempt to circumvent an analysis. *See Haleem*, 2025 U.S. Dist. LEXIS 143082 at *2 (granting a Motion for Summary Judgment where a party asked the court to reconsider an argument that was previously raised but went unaddressed). The fact of the matter is that an analysis was not performed as to any other available remedies, and therefore, there is no analysis to evade.

As Plaintiff made clear in the Motion for Reconsideration, under Rule 54(c), asking the Court for "such other relief as the Court deems just and proper" preserves the right to pursue prospective and constitutionally permissible relief, even if it is not expressly demanded. *See* ECF 81-1 at 19. Plaintiff then provided the Court with other forms of relief that would be just and proper, which included:

1. A declaratory judgment that the three challenged questions violate the First Amendment and the Privacy Act;

2. An injunction barring the Department from continuing to ask these questions in any future clearance investigations; and

3. An order sealing or purging Mr. Gebert's responses to the unconstitutional questions from further adjudicative use.

Plaintiff would also like to add that purging and sealing of unlawfully obtained records is another form of relief that would be just and proper. Defendant, however, in its Response argues that because these "forms of relief [were requested] for the first time in moving for reconsideration[, this] is a sufficient basis for denial." ECF 91 at 21. Defendant does not address Rule 54(c), however, or explain its reasoning for this conclusory statement. Rather, it solely attempts to bolster its unsupported assertion by inexplicably citing to a footnote from *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5, 128 S. Ct. 2605 (2008). In essence, Defendant's Response here fails because it did not present a valid supported argument. It solely noted its opinion that Plaintiff should not be able to provide the court with options for relief that is just and proper in a motion for reconsideration. This opinion is insufficient to support denying Plaintiff the opportunity to have this clear error remediated. *See Gov't of Manitoba v. Bernhardt*, 440 U.S. App. D.C. 398, 404, 923 F.3d 173, 179 (2019) (noting that "A party forfeits an argument by mentioning it only 'in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.'" (citing *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1, 366 U.S. App. D.C. 408 (D.C. Cir. 2005)); *Johnson,* 953 F. Supp. 2d 244, 250 (stating that "perfunctory and underdeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived.").

Furthermore, as Plaintiff argued in the Motion for Reconsideration, the Court erred in finding that the relief was not discrete from the revocation decision as this is factually incorrect. ECF 81-1 at 20. In its Response, Defendant frames Plaintiff's argument as a "mere disagreement with this Court's reasoning." ECF 91 at 23. However, Plaintiff's argument here is far from mere disagreement. In fact, Plaintiff explains in detail that a grant or revocation are not the only two options at the State Department's disposal, as demonstrated by its own procedures, contained in

12 FAM 234.3. *See* ECF 81-1 at 21. Defendant, however, neglected to address these procedures in its Response. Instead, it argues that Plaintiff "offers no basis to conclude that the Department would or could sustain his clearance revocation without considering his answers to the challenged questions." ECF 91 at 23.

Plaintiff must admit that this statement is baffling. First, it is not for Plaintiff to dictate what the Department should or would do with his clearance. However, it is clear from the Department's own procedures that this is not solely a binary outcome, and further, this is not what this case is about. This case is about the Department's security clearance investigation processes and the fact that it is impermissibly asking **every** security clearance holder, including Mr. Gebert, about their First Amended protected information. As Plaintiff has stated time and time again, this case is not about the revocation or reinstatement of the clearance. This is about whether the agency was permitted to ask and is permitted to continue asking these unconstitutionally vague and overly broad questions as part of the security clearance investigation process. To the extent that Defendant is stating that the agency cannot make a determination on the clearance without those questions, as Plaintiff has argued, those questions should have never been asked in the first place.

Put more succinctly, the Plaintiff is asking the Court to find that the three questions asked by every Department of State investigator to **every** security clearance applicant violates the First Amendment and should not be utilized. Since the SAP has already made its ruling, Plaintiff cannot obtain a security clearance reinstated until he reapplies. Thereby proving this motion is not about the Plaintiff's security clearance, rather the motion for reconsideration is solely concerned about the constitutionality of the questions asked during the security clearance interview.

Plaintiff suggested in the Motion for Reconsiderations that one of the potential options available for the Department would be to order a new security clearance investigation without the use of the challenged questions. This should not be misunderstood as the Court requiring the Defendant to grant Gebert's clearance. ECF 81-1 at 21. In response, Defendant again neglects to address the argument, merely stating that "a new investigation would just kick the can down the road." ECF 91 at 23. Defendant provides no explanation for what this statement is intended to mean. However, Plaintiff can surmise that Defendant is saying that a new investigation, without the challenged questions, will demonstrate that Mr. Gebert is not a security risk, and it will be forced to grant him a clearance. This, however, is purely speculative and firmly outside the scope of this Court's jurisdiction as has been dictated by *Dep't of the Navy v. Egan,* 484 U.S. 518, 529, 108 S. Ct. 818, 825 (1988) (stating that "Predictive judgment of this kind must be made by those with the necessary expertise in protecting classified information.").

Nonetheless, Defendant argues that Plaintiff has no standing for these forms of relief for the same reason that the Court determined he did not have standing in the June 26, 2025 Memorandum Opinion and Order, he failed to establish a "'sufficiently imminent and substantial' risk of harm." *See* ECF 91 at 22 (citing ECF 78 at 4 (quoting *TransUnion LLC . Ramirez*, 594 U.S. 413, 435 (2021)). This brings us our next argument made in the Motion for Reconsideration.

### C. The Court Should Reconsider its Ruling to Prevent Clear Error and Manifest Injustice as New Evidence Demonstrates that the Court Erred in Finding that Mr. Gebert Faced No Risk of Imminent and Substantial Harm

At the outset, it should be noted that Rule 59(e), is precisely intended to address circumstances like these, where new facts emerge that fundamentally change the posture of the claims before the Court. *See Firestone v. Firestone*, 316 U.S. App. D.C. 152, 76 F.3d 1205, 1208

(1996) (noting that Rule 59(e) motions "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." (internal quotation marks and citation omitted)). As *Commissioned Officers Ass'n v. Bunch*, Civil Action No. 21-853 (JDB), 2022 U.S. Dist. LEXIS 112426, at *5 (D.D.C. June 25, 2022), makes clear, Rule 59(e) motions on the basis of new evidence are appropriate only where the evidence is newly discovered or previously unavailable. That is exactly the case here. Although Plaintiff alleged that he would be subjected to the challenged questions in the SAP, he could not prove it until after the SAP occurred and he was subjected to those questions. Now, however, the SAP has occurred and Plaintiff has demonstrated that he was indeed subjected to the questions, thus constituting new evidence for this Court to consider.

In the Motion for Reconsideration, Plaintiff argued that the Court erred in finding that he did not have standing because Plaintiff alleged that he would be subjected to the challenged questions once more through the appeals process, that came to be proven as fact in the form of new evidence obtained through the SAP process. Thus, exactly as Plaintiff had alleged, he was subjected once more to the challenged questions in the SAP, demonstrating that he was indeed a risk of "sufficiently imminent and substantial" harm. *See* ECF 81-1 at 24.

The Defendant makes two fatal mistakes in refuting the Plaintiff's argument: (1) the Defendant intentionally ignores pieces of the new evidence wherein the attorney representing Mr. Gebert swore, before the court, that the SAP stated the exact questions, to which Mr. Gebert had to respond; and (2) the Defendant incorrectly attempts to raise subject matter jurisdiction. In other words - the court had subject matter jurisdiction to consider whether the SAP would ask the three unconstitutional questions prior to the SAP, but now this Court, after the SAP, cannot

consider new evidence that the SAP did in fact present Mr. Gebert with the same three

unconstitutional questions![3]

The Defendant illogically cites *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473

(2002), for the propositions that subject-matter jurisdiction "depends on the state of things at the

time of the action brought." ECF 91 at 25. And as such, "district courts determine how to rule on

a motion to dismiss by 'looking to the facts existing when the complaint is filed.'" *TIG Ins. Co.

v. Rep. of Argentina*, 967 F.3d 778, 783 (D.C. Cir. 2020) (quoting *Keene Corp. v. United States*,

508 U.S. 200, 207 (1993)). Therefore, this Court should look at the circumstances of the case

prior to the June 26, 2025 ruling and prior to the SAP.

Defendant then goes on to argue that because the SAP occurred after the complaint was

filed, it cannot inform or impact standing. ECF 91 at 25. This is absurd because, in order to

establish standing, Mr. Gebert was required to show that "he . . . '[wa]s immediately in danger of

sustaining some direct injury' as the result of the challenged official conduct" and that he was

"realistically threatened by a repetition of his experience." *Lyons*, 461 U.S. 95, 101-02, 109;

*Bierly v. Dep't of Def.*, Civ. A. No. 23-2386 (RCL), 2024 WL 4227154 at *21 (D.D.C. Sept. 18,

2024 (noting that the plaintiff "lack[ed] standing to seek an order requiring the defendants to

refrain from using the challenged criteria to adjudicate a future clearance application . . . because

[he] has not concretely alleged that he will ever again be subject to a security clearance screening

by any of the defendants); *Thompson v. Sessions*, 278 F. Supp. 3d 227, 251 (D.D.C. 2017

(finding that the plaintiff lacked standing to challenge a former employer's investigative

procedures because he failed to demonstrate "that he will ever be subject to the [agency's]

---

[3]It should be noted that during the June 23, 2025 Hearing, counsel for Defendant stated that "it [was] at best speculative that [the SAP] will ask the same questions and there's not really a good reason to ask those questions." June 23, 2025, Transcript of Hearing at 43-44. The Court then relied on that representation in reaching its June 26, 2025 ruling. *See* ECF 73.

investigation . . . procedures again."); and *Haase v. Sessions*, 835 F. 2d 902, 911 (D.C. Cir. 1987) (noting that a plaintiff must show that he is "likely to be subjected to the policy again" to establish standing). ECF No. 62-1 at 13-15. To be threatened by a repetition of the experience, is naturally something that has yet not occurred but will occur in the future, i.e. the SAP. Thus, Defendant's argument is entirely illogical.

Plaintiff has argued throughout this litigation that in being required to endure the SAP, he would be subjected to the unconstitutional questions again, establishing that he was "realistically threatened by a repetition of his experience" in the January 28, 2019 reinvestigation interview. *See* ECF 69-1 at 18. In its June 26, 2025 ruling, however, the Court found that he was not at risk for sufficiently imminent and substantial harm as "it [was] not plausible that the [SAP would] ask him the same questions." ECF 78 at 4-5. As explained in the Motion for Reconsideration, new evidence, specifically Mr. Gebert's experience in the SAP, demonstrates that Mr. Gebert was in fact subject to the challenged questions once again. ECF 81-1 at 24-25.

Defendant argues, however, that Mr. Gebert was not subjected to the challenged questions during the SAP because he was merely asked about his answers to the questions. ECF 91 at 24. This is plainly not the case. As Defendant itself recognizes, the original challenged questions were read word for word into the record. *See id*. As explained in Plaintiff's counsel's declaration the following events unfolded in the SAP: An SAP member "interrupted [Plaintiff's counsel] by asking Mr. Gebert directly whether he was truthful when he answered the investigator's questions. [The SAP member] referred to printed material in front of him and read aloud to Mr. Gebert" the three challenged questions from the Summary and Analysis. ECF 81-2. The SAP member then read the three challenged questions verbatim. *Id*. Finally, "Mr. Gebert stated that he was telling the truth when he answered "no" to those questions in January 2019."

*Id*. To say that being asked about the answers to the questions after the questions were reread verbatim during the SAP is splitting the finest of hairs. To be able to answer a question about his answer to the original questions, Mr. Gebert must be subjected to the original questions, which is precisely why the SAP member read the questions into the record. Without the questions, consideration of Mr. Gebert's answers are meaningless.[4]

Defendant appears to argue that because "a Panel member asked Mr. Gebert about his answers to the challenged questions logically does not suggest that the Department ever again will ask him the challenged questions themselves again, and thus does nothing to establish standing." This, however, is not relevant. ECF 91 at 24. For the purposes of the Motion for Reconsideration, Plaintiff is arguing that it was an error to find that he was not at a sufficiently imminent and substantial risk that he would "face the unconstitutional questions again." ECF 78 at 4; *see* ECF 81-1 at 23-25. New evidence demonstrates that he was in fact at risk because he did face the questions again during the SAP. This was the error that needs to be corrected. At this stage, contrary to what Defendant appears to suggest, Mr. Gebert has no obligations to show that he will face these questions once more. However, as explained in the Motion for Reconsideration, Mr. Gebert continues to be harmed as protected First Amendment information continues to exist in his government records, which will follow him indefinitely, and as explained further below, when Mr. Gebert reapplies for a clearance, he will inevitably be asked these questions again. *See* ECF 81-1 at 25-26.

---

[4] To the extent that Defendant argues that the court found that any questions from the SAP would be derivative of the original questions, ECF 91 at 24, Plaintiff notes that this is not an accurate interpretation of the June 26, 2025 Memorandum Opinion and Order. Rather, the Court noted that Plaintiff "acknowledge[d] that any follow up questions by the appeal panel would only be 'derivative' of the original questions." ECF 78 at 5. In making this statement, Plaintiff was solely arguing, however, that the questions that would be asked during the SAP would be, for all intents and purposes, legally indistinguishable from the original questions as they would be derived directly from those questions. *See* June 23, 2025, Transcript of Hearing at 43-44.

This assertion is supported by the following caselaw. In *Guan v. Mayorkas*, 530 F. Supp. 3d 237, 262 (E.D.N.Y. 2021), the plaintiff alleged that U.S. Customs and Border Protection retention of records documenting secondary inspections constituted an independent harm as they feared "their ability to travel freely and work as freelance journalists [was] imperiled."[5] *Id*. The Court noted that even though the plaintiffs failed to explain how they anticipated the records would impede their future travel, "the retention of the information itself constitutes an injury regardless of its effect on Plaintiffs." *Id*. Similarly, in *Doe v. U.S. Air Force*, , the court noted that where government possession of information was obtained unconstitutionally, retention of the information "is at least the result of unlawful activity."[6] 259 U.S. App. D.C. 22, 812 F.2d 738, 740 (1987). In the final case highlighted here, but by no means the end of this line of caselaw, in *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, the court noted:

> Even if the continued storage, against plaintiffs' wishes, of [] information that was allegedly taken from them by unconstitutional means does not *itself* constitute a violation of law, it is clearly an ongoing "effect" of the allegedly unconstitutional and discriminatory testing, and expungement of the test results would be an appropriate remedy for the alleged violation. … At the very least, the retention of [] information obtained in an unconstitutional and discriminatory manner would constitute a continuing "irreparable injury" for purposes of equitable relief.

---

[5] It should be noted that just as Plaintiff suggested would be "just and proper" relief, the court noted in *Guan* that expungement of records is appropriate to vindicate a violation of First Amendment rights violations. 530 F. Supp. 3d 237, 263.

[6] The court also cited *Chastain v. Kelley*, 167 U.S. App. D.C. 11, 510 F.2d 1232, 1235 (D.C. Cir. 1975), which stated, "[t]he federal courts are empowered to order the expungement of Government records where necessary to vindicate rights secured by the Constitution or by statute[]" and to *Hobson v. Wilson*, 237 U.S. App. D.C. 219, 737 F.2d 1, 65 (D.C. Cir. 1984), which stated, [i]t is equally well-established that expungement of records is, in proper circumstances, a proper remedy in an action brought directly under the Constitution." *Doe,* 812 F.2d 738, 741.

135 F.3d 1260, 1275 (9th Cir. 1998).

### D. The Issue of the Department of State Violating Mr. Gebert's First Amendment Rights is Not Moot

Defendant argues that Plaintiff's "risk of future harm based on the possibility of being asked the challenged questions again during the Panel hearing" is now moot as the SAP has already occurred. ECF 91 at 25. This argument is absurd for the very reason that Defendant pointed out in its own Response, "district courts generally assess facts as the time of filing." *TIG Ins. Co.*, 967 F.3d 778, 783. At the time the second amended complaint was filed in this case, the SAP had not yet occurred and did not occur until the day following this Court's June 26, 2025 ruling. As such, when considering whether there was error for the purposes of the Motion for Reconsideration, the fact that the SAP already occurred has no bearing on the analysis. As Defendant itself pointed out, the Court must look at the state of the facts at the time of the Complaint, not at the time of the Motion for Reconsideration. Along with explicitly citing precedent that supports Plaintiff's argument here, Defendant provides no argument or support as to why the Court would treat this case differently. There is nothing about this case that would justify the Court treating it any differently. *See Gov't of Manitoba*, 440 U.S. App. D.C. 398, 404, (noting that "A party forfeits an argument by mentioning it only 'in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.'" (citing *Schneider*, 412 F.3d 190, 200 n.1); *Johnson*, 953 F. Supp. 2d 244, 250 (stating that "perfunctory and underdeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived."). As such, Defendant's argument fails.

### E. The Court Should Reconsider it Ruling to Prevent Manifest Injustice as this Case Presents a Harm Capable of Repetition yet Evading Review

To the extent Defendant argues that the Court should not grant the Motion for Reconsideration as the security clearance has already been adjudicated, *see* ECF 91 at 22-23, this situation is an issue capable of repetition yet evading review. In *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498 (1911), the Supreme Court first articulated the branch of mootness law excepting harm "capable of repetition yet evading review." In W*einstein v. Bradford*, 423 U.S. 147, 149, 96 S. Ct. 347, 348 (1975), the Court noted that in *Southern Pacific*, it was held:

> that because of the short duration of the … order challenged, it was virtually impossible to litigate the validity of the order prior to its expiration. Because of this fact, and the additional fact that the same party would in all probability be subject to the same kind of order in the future, review was allowed even though the order in question had expired by its own terms.

*Weinstein,* 423 U.S. 147, 149. Thus, arose the exception to the mootness doctrine. The Supreme Court has a two part test for determining whether to utilize this exception. *See United States v. Juvenile Male*, 564 U.S. 932, 938, 131 S. Ct. 2860, 2865 (2011). The Court has stated that this exception applies only where: "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Id*. (quoting *Spencer v. Kemna*, 523 U.S. 1, 17, 118 S. Ct. 978, 988 (1998)).

Mr. Gebert establishes both factors of this test. As to the first factor, as stated above, the matter of the restoration Plaintiff's security clearance is now moot as his clearance has been revoked, and the agency has lost jurisdiction. As Plaintiff argued in the Motion for Preliminary Injunction (ECF 64-1), and as we saw through the litigation of this case, security clearance appeals are inherently time-limited. As such, it is nearly impossible to litigate the constitutionality of the processes used by any agency prior to its final adjudication of the

clearance. *See* W*einstein* 423 U.S. 147, 149 (interpreting *Southern Pacific Terminal Co.*, 219 U.S. 498). Therefore, the first factor is established.

As to the second factor, here, just as Mr. Gebert was subjected to these questions in the SAP, Mr. Gebert will "in all probability be subject to" these same questions in the future in reapplying for a clearance. *Id*. This is because his federal records now reflect that he was denied a clearance as a result of being subjected to these questions, and as such the questions will be the subject of consideration in any future investigation.[7] Further, in applying for a new security clearance, Mr. Gebert will be required to complete the Standard Form 86 (SF 86) which asks all applicants, "Have you **EVER** had a security clearance eligibility/access authorization denied, suspended, or revoked?" *See* Standard Form 86, Section 25, 25.2. Mr. Gebert will additionally be required to "[p]rovide an explanation of the circumstances of the denial, suspension or revocation action." *Id*. Consequently, Mr. Gebert satisfies the second factor. *See Super Tire Eng'g Co. v. McCorkle,* 416 U.S. 115, 125-26, 94 S. Ct. 1694, 1700 (1974) (finding that when analyzing whether a harm is capable of repetition yet evading review, "[i]t is sufficient . . . that the litigant show the existence of an immediate and definite governmental action or policy that has adversely affected and continues to affect a present interest.")

For the foregoing reasons, despite the clearance already being adjudicated by the agency, the Court should reconsider its dismissal as this is a circumstance for which there is an exception to mootness

---

[7] Furthermore, although this is not a class action case like the Supreme Court considered in *Dunn v. Blumstein*, 405 U.S. 330 (1972), we cannot overlook the important fact that the Department continues to ask these questions to security clearance holders and applicants in violation of those individuals' First Amendment rights.

**RELIEF REQUESTED**

For the reasons articulated in the July 21, 2025 Motion for Reconsideration and those detailed above, Plaintiff respectfully requests that the Court:

1. Vacate its June 26, 2025 dismissal order;

2. Reinstate the complaint;

3. Allow the claims to proceed to adjudication on the merits;

4. Purge and seal unlawfully obtained records.

Plaintiff does not seek reinstatement or monetary damages. He seeks only declaratory and injunctive relief designed to end the government's use of unconstitutional investigative questions and to prevent their future use against him and others.

**CONCLUSION**

This Court has the authority - and the responsibility - to prevent the government from using constitutionally defective questions in clearance investigations. Reconsideration is necessary to correct clear errors, address new evidence, and ensure that federal agencies remain subject to constitutional limits.

This is not a one-off dispute. Without judicial intervention, the Department will continue to collect and retain First Amendment–protected information from thousands of clearance applicants, without oversight and in direct violation of constitutional and statutory limits.

As such, Plaintiff respectfully requests that the Court reconsider its June 26, 2025, ruling dismissing Plaintiff's complaint. Granting Plaintiff's motion would allow the Court to correct clear errors and mistakes as well as consider the new evidence now available.

Dated: September 12, 2025                          Respectfully submitted,

By: */s/ Brett O'Brien*
BRETT O'BRIEN, ESQ
DC Bar License #: 1753983
NATIONAL SECURITY LAW FIRM, LLC
1250 Connecticut Avenue NW
Washington, DC 20036
Phone: (202) 600-4996
Fax:    (202) 545-6318